3

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

DEC 1 2 2003

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MANUEL TORRES and DOMINGA TORRES, Individually and as next Friends of DEREK TORRES; ERIKA DUREE, Individually and as Next Friend of ERIN JONATHON DUREE, | § § § § § § | |
| vs. | § § | CIVIL ACTION NO. 03-CV-222 |
| AMERICAN HOME PRODUCTS d/b/a WYETH, WYETH LABORATORIES, WYETH-AYERST, WYETH AYERST LABORATORIES, WYETH LEDERLE WYETH LEDERLE VACCINES, and LEDERLE LABORATORIES; AVENTIS PASTEUR, INC., Individually and as Successor in Interest to CONNAUGHT LABORATORIES, INC., PASTEUR MERIEUX and PASTEUR MERIEUX CONNAUGHT; GLAXOSMITHKLINE, Individually and as Successor in Interest to SMITHKLINE BEECHAM CORP.; MERCK & CO., INC. BAXTER INTERNATIONAL, INC., Individually and as Successor in Interest to NORTH AMERICAN VACCINE, INC.; DOW CHEMICAL COMPANY; ELI LILLY AND COMPANY; SIGMA ALDRICH; ORIBI, INC., Individually and d/b/a MERIDIAN CHEMICAL & EQUIPMENT, INC. and d/b/a GLOBAL FINE CHEMICALS and NATIONAL ASSOCIATION OF COMPOUNDING PHARMACISTS. | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | JURY |

**DEFENDANT SIGMA-ALDRICH, INC.'S MOTION TO DISMISS
AND BRIEF IN SUPPORT**

# TABLE OF CONTENTS

Page(s)

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Index of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

I.    Nature And Stage Of Proceeding . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   Issue Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  Standard Of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.   Summary Of Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.    Plaintiffs' Vaccine-Related Claims Against Sigma-Aldrich Should Be
      Dismissed Pursuant To The Vaccine Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      A.    The Vaccine Court Has Assumed Jurisdiction Over Thimerosal
            Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    The Chief Special Master of the Vaccine Court Has Recognized That
            Claims for Injuries Resulting from Thimerosal in Vaccines Are
            Covered by the Vaccine Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

      C.    Multiple Courts Across the Country, Including Texas Federal Courts,
            Have Dismissed Vaccine-Related Claims Against Sigma-Aldrich . . . . . . . . . . . . 6

      D.    Multiple Provisions of the Vaccine Act Mandate Dismissal in Favor
            of the Vaccine Court's Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

            1.    42 U.S.C. § 300aa-11(a)(5)(b) Mandates That Plaintiffs Cannot
                  Maintain Actions in "Two Fora" for Their Vaccine-related Claims . . . . 13

            2.    42 U.S.C. § 300aa-11(c) Also Mandates Dismissal of Plaintiffs'
                  Civil Action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

            3.    42 U.S.C. § 300aa-15(a)(1)(a) Mandates Dismissal of the Parents'
                  Claims for Expenses Incurred by or on Behalf of the Minor Child . . . . . 14

VI.   The Parent Plaintiffs' Claim For Loss Of Consortium Must Be Dismissed
      Based On Texas Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

i

VII.  Sigma-Aldrich Adopts And Joins In The Vaccine Defendants' And
      Defendant Eli Lilly's Motions To Dismiss And Briefs In Support . . . . . . . . . . . . . . . . . 16

VIII. Conclusion And Prayer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

ii

## INDEX OF AUTHORITIES

## CASES                                                                    Page(s)

*Agbebaku v. Sigma-Aldrich, Inc.*,
    Case No. 24-C-02-004243 (Md. Cir. Ct. June 19, 2003) ........................ 7, 9

*Amendola v. Secretary of Health and Human Services*,
    23 Fed. Cl. Ct. 621(July 16, 1991), *aff'd*, 989 F.2d 1180 (Fed. Cir. 1993) ........... 14

*Ashton v. Aventis Pasteur, Inc.*,
    No. 04026 (Ct. C.P., Philadelphia County, May 22, 2003) ...................... 7, 8

*Benasco v. American Home Products*,
    Civil Action No. 02-3577 (E.D. La. September 10, 2003) ......................... 7

*Blackmon v. American Home Products Corp.*,
    No. G-02-179 (S.D. Tex. May 8, 2002) ......................................... 8

*Botter v. Aventis Pasteur, Inc.*,
    Civil Action No. 9:02-CV-181 (E.D. Tex. January 15, 2003) .................... 7, 8

*Brausewetter v. HHS*,
    No. 99-278V, 1999 WL 562700 (Fed. Cl. July 16, 1999) ......................... 5

*Carabine v. Aventis Pasteur, Inc.*,
    Civil Action No. A-02-CA-501-SS (W.D. Tex. October 8, 2002) .................. 7

*Carr v. Aventis Pasteur, Inc.*,
    CV 02-J-3096-NE (N.D. Ala. February. 27, 2003) ............................. 15

*Cheskiewicz v. Aventis Pasteur, Inc.*,
    No. 0952 (Ct. C.P., Philadelphia County, December. 16, 2002) .............. 7, 12, 15

*Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.*,
    467 U.S. 837 (1984) .......................................................... 5

*Chiles v. American Home Products Corp.*,
    Civil Action No. 4:03-CV-802-A (N.D. Tex. October 2, 2003) .............. 7, 15, 16

*Cyr v. Aventis Pasteur, et al.*,
    No. 01-C-663 (N.H. Sup. Ct., Hillsborough County, August 8, 2003) ........... 7, 11

iii

*Daigle v. Aventis Pasteur, Inc.*,
  Civil Action No. 02-CV-11664-RGS (D. Mass. June 13, 2003) . . . . . . . . . . . . . . . . . . . . 7

*Grant v. HHS*,
  956 F.2d 1144 (Fed. Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Holder v. Abbott Laboratories, Inc.*,
  Civil Action No. 4:02CV148LN (S.D. Miss. October 15, 2002) . . . . . . . . . . . . . . . 7, 11

*John Corp. v. City of Houston*,
  214 F.3d 573 (5th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Laughter v. Aventis Pasteur, Inc., et al.*,
  Civil Action No. 1:02CV01087 (M.D.N.C. November 12, 2003) . . . . . . . . . . . . . . . 7, 10

*Leffall v. Dallas Ind. School Dist.*,
  28 F.3d 521 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Leroy v. HHS*,
  No. 02-392V, 2002 WL 31730680 (Ct. Fed. Cl. October. 11, 2002) . . . 5, 6, 8, 10, 11, 14

*Liu v. Aventis Pasteur, Inc.*,
  219 F.Supp.2d 762 (W.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mann v. Glaxo SmithKline Beecham Corporation*,
  Civil Action No. 1:02-CV-2660-CAP (N.D.Ga., July 8, 2003) . . . . . . . . . . . . . . . . . 7, 9

*McDonald v. Abbott Laboratories, Inc.*,
  Civil Action No. 3:02CV77LN (S.D. Miss. August 1, 2002) . . . . . . . . . . . . . . . . . . 7, 10

*Moss v. Merck & Co.*,
  Civil Action No. 03-0334 (W.D. La. June 19, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 7, 9

*Nolan v. Boeing Co.*,
  919 F.2d 1058 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Nowak v. Ironworkers Local 6*,
  81 F.3d 1182 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*O'Connell v. American Home Products Corp.*,
  No. G-02-184 (S.D. Tex. May 7, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

iv

*Owens v. American Home Products Corp.*,
    203 F.Supp.2d 748 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Pannell v. HHS*,
    No. 94-658V, 1995 WL 432643 (Fed. Cl. July 7, 1995) . . . . . . . . . . . . . . . . . . . . . . . 6

*Radulovic v. American Home Products*,
    Case No. 02-05033 (Fla. Cir., Hillsborough Co., March 5, 2003) . . . . . . . . . . . . . . . 7, 11

*Roberts v. Williamson*,
    111 S.W.3d 113 (Tex. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Russak v. Aventis Pasteur, Inc.*,
    Civil Action No. A-02-CA-480-SS (W.D. Tex. September 7, 2002) . . . . . . . . . . . . . . . 7

*Shalala v. Whitecotton*,
    514 U.S. 268 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Shanaughy v. Wyeth Co.*,
    No. 02-1517 (Fla. Cir., Pasco Co., December. 5, 2002) . . . . . . . . . . . . . . . . . . . . . 7, 11

*Strauss v. American Home Products Corp.*,
    208 F.Supp.2d 711 (S.D. Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Swafford v. Aventis Pasteur, Inc.*,
    Civil Action No. A-03-CA-055-SS (W.D. Tex. March 7, 2003) . . . . . . . . . . . . . . . . . . 7

*The Vaccine Cases*,
    Civil Case No. JCCP 4246 (Cal. Sup. Ct. Sept. 25, 2003) . . . . . . . . . . . . . . . . . . . 7, 10

*Wax v. Aventis Pasteur, Inc.*,
    240 F.Supp.2d 191 (E.D.N.Y. October 30, 2002), *as clarified*
    (December 16, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11, 12

*White, et al. v. Aventis Pasteur, et al.*,
    No. 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CIV (Miss., 1st Jud. Dist., Hinds County, November 17, 2003) . . . 7, 10

*Young v. Aventis Pasteur, Inc.*,
    Civil Action No. A-02-CA-734-SS (W.D. Tex. January 6, 2003) . . . . . . . . . . . . . . . . . 7

## STATUTES AND RULES

42 U.S.C. § 300aa-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

42 U.S.C. § 300aa-11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 300aa-11(a)(2)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 12, 13

42 U.S.C. § 300aa-11(a)(2)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13

42 U.S.C. § 300aa-11(a)(5)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 300aa-11(a)(5)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

42 U.S.C. § 300aa-11(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 300aa-11(b)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . : . 15

42 U.S.C. § 300aa-11(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 300aa-11(c)(1)(E) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

42 U.S.C. § 300aa-15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

42 U.S.C. § 300aa-15(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15

Fed. R. Civ. P. 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## DEFENDANT SIGMA-ALDRICH, INC.'S MOTION TO DISMISS
## AND BRIEF IN SUPPORT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, Defendant SIGMA-ALDRICH, INC., incorrectly named as "Sigma-Aldrich," (hereinafter "Sigma-Aldrich"), and files this its Motion to Dismiss and Brief in Support:

### I.
### NATURE AND STAGE OF PROCEEDING

Plaintiffs filed this action in state court on their behalf and that of their minor children for personal injury under theories of strict products liability, negligence, breach of warranty and civil conspiracy, **all** related to a preservative known as thimerosal allegedly contained in childhood vaccines administered to Plaintiffs' minor children. The case was subsequently removed to this Court on the basis of diversity. Sigma-Aldrich moves to dismiss Plaintiffs' vaccine-related claims for lack of subject matter jurisdiction pursuant to the National Vaccine Injury Compensation Act ("Vaccine Act") 42 U.S.C. § 300aa-1, *et seq.*, which requires that a civil action alleging "vaccine-related" injuries be dismissed unless the plaintiff first files a petition in the Court of Federal Claims ("Vaccine Court") and exhausts all administrative remedies under the Act. As Plaintiffs claims against Sigma-Aldrich are based on injuries allegedly caused by thimerosal-containing vaccines, such claims fall within the exclusive, initial jurisdiction of the Vaccine Court. Sigma-Aldrich also moves to dismiss the parent Plaintiffs' claims for loss of consortium damages for failure to state a claim under Texas law.

### II.
### ISSUE STATEMENT

Whether Plaintiffs' vaccine-related claims against Sigma-Aldrich should be dismissed pursuant to the Vaccine Act and FED. R. CIV. P. 12(b)(1) and (6) to the exclusive, initial jurisdiction

of the Vaccine Court, and whether the Plaintiff parents' claim for loss of consortium should be
dismissed pursuant to FED. R. CIV. P. 12(b)(6) for failure to state a claim under Texas law.

## III.
## STANDARD OF REVIEW

Sigma-Aldrich moves for dismissal of Plaintiffs' claims pursuant to FED. R. CIV. P. 12(b)(1)
(lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim). A case is properly
dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when, as here, the court "lacks
the statutory or constitutional power to adjudicate the case." *John Corp. v. City of Houston*, 214
F.3d 573, 576 (5th Cir. 2000) (quoting *Nowak v. Ironworkers Local 6*, 81 F.3d 1182, 1187 (2d Cir.
1996)). A case is properly dismissed for failure to state a claim under Rule 12(b)(6) when the face
of the plaintiffs' pleading establishes that the plaintiffs cannot prove any set of facts that would
entitle them to relief. *See Leffall v. Dallas Ind. School Dist.*, 28 F.3d 521, 524 (5th Cir. 1994).

## IV.
## SUMMARY OF ARGUMENT

This is a products liability case in which the Plaintiffs allege that their minor child has
suffered neurological injuries as a result of being administered one or more FDA-approved
childhood vaccines containing a preservative known as thimerosal. Plaintiffs seek to recover
damages for: (i) the child's medical care, loss of earning capacity, physical impairment,
disfigurement, physical pain, and mental anguish; and (ii) the parent Plaintiffs' loss of consortium,
loss of services and loss of companionship. Plaintiffs' pleading clearly describes claims that are
compensable under the Vaccine Act, which expressly requires that a civil action alleging "vaccine-
related" injuries be dismissed unless the plaintiff <u>first</u> files a petition in the Vaccine Court <u>and</u>

exhausts all administrative remedies. *See* 42 U.S.C. § 300aa-11(a)(2)(A).  It is undisputed that Plaintiffs have not exhausted their administrative remedies under the Vaccine Act.

While Sigma-Aldrich specifically denies liability for Plaintiffs' claims, Plaintiffs allege that all Defendants, including Sigma-Aldrich, are liable for injuries the minor plaintiff sustained as a result of being administered thimerosal-containing vaccines.  Because Plaintiffs' claims against Sigma-Aldrich are based on injuries allegedly caused by vaccines containing thimerosal, such claims fall within the exclusive, initial jurisdiction of the Vaccine Court and, thus, must be filed first in that court and fully exhausted under the Vaccine Act.

<div align="center">

## V.
## PLAINTIFFS' VACCINE-RELATED CLAIMS AGAINST SIGMA-ALDRICH SHOULD BE  DISMISSED PURSUANT TO THE VACCINE ACT

</div>

In this case, Plaintiffs allege that all Defendants, including Sigma-Aldrich, "designed, manufactured, marketed, and distributed" the thimerosal-containing vaccines administered to Plaintiffs' minor child.  The Vaccine Act requires that a civil action alleging "vaccine-related" injuries be dismissed unless the plaintiff first files a petition in the Vaccine Court. *See* 42 U.S.C. § 300aa-11(a)(2)(A).  The Vaccine Act expressly mandates that all claims in excess of $1,000 for "vaccine-related" injuries, whether brought individually or in a representative capacity, must be filed first in Vaccine Court before any traditional tort suit may be pursued in state or federal court. *Id.* Additionally, a plaintiff must exhaust all administrative remedies in the Vaccine Court before proceeding in a civil suit. If a plaintiff fails to first file a petition in the Vaccine Court or fully exhaust the Vaccine Act's compensation remedy and proceedings, the Act mandates dismissal of the plaintiff's civil action. *See* 42 U.S.C. § 300aa-11(a)(2)(B)("If a civil action which is barred under subparagraph (A) is filed in State or Federal court, **the court shall dismiss the action**.") (emphasis

added); *see also Shalala v. Whitecotton*, 514 U.S. 268, 270 (1995) ("a claimant alleging more than $1,000 in damages resulting from a vaccination...must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any *de novo* civil action in state or federal court.").

It is undisputed that Plaintiffs have not exhausted their administrative remedies under the Vaccine Act. Therefore, according to the mandatory provisions of the Vaccine Act, Plaintiffs' claims against Sigma-Aldrich in this case must be dismissed.

## A.    The Vaccine Court Has Assumed Jurisdiction Over Thimerosal Cases

On July 3, 2002, the Vaccine Court issued Autism General Order #1 and, in so doing, assumed jurisdiction over hundreds (now thousands) of thimerosal-related claims to determine whether thimerosal-containing vaccines can cause autism and/or similar neurodevelopmental disorders. *See Autism General Order #1.* This general causation inquiry, termed the "Omnibus Autism Proceeding," will likely be decided sometime in late 2004 or early 2005. *See Autism Update and Order, entered on September 24, 2003.* Removing all doubt as to the application of the Vaccine Act to thimerosal-related claims, the Vaccine Court has also created a Master Autism Petition for claimants seeking vaccine compensation, which alleges that:

> As a direct result of one or more vaccinations covered under the National Vaccine Injury Compensation Program, the vaccinee in question has developed a neuro-developmental disorder.... This disorder was caused...by the "thimerosal" ingredient in certain [vaccines].

*Id.* The Vaccine Court's assumption of jurisdiction over thimerosal-related claims is definitive on the question of whether such claims are "vaccine-related" claims for purposes of applying the Vaccine Act. This is so because the Vaccine Court exercises jurisdiction only over "vaccine-related" injury claims, and, pursuant to the Vaccine Act, its initial jurisdiction over such claims is exclusive.

**B.**    **The Chief Special Master of the Vaccine Court Has Recognized That Claims for Injuries Resulting from Thimerosal in Vaccines Are Covered by the Vaccine Act**

Chief Special Master Gary J. Golkiewicz of the Office of Special Masters of the Court of Federal Claims has conclusively held that injuries allegedly arising from thimerosal-containing vaccines are "definitely 'vaccine-related'" within the plain meaning of the language of the Vaccine Act and "petitioners alleging an injury or death from the thimerosal preservative in vaccines are *statutorily obligated* to file their claim...in the Court of Federal Claims, *in the first instance.*" *Leroy v. HHS,* No. 02-392V, 2002 WL 31730680, at *17 (Ct. Fed. Cl. October. 11, 2002) (emphasis in original and added). Chief Special Master Golkiewicz emphasized that his interpretation of "vaccine-related injury" is completely consistent with the legislative history and the statutory scheme of the Vaccine Act. *Leroy,* at *9. Moreover, the Chief Special Master concluded that thimerosal is not an adulterant or contaminant and that exclusive jurisdiction of these "vaccine-related" claims resides in the first instance in the Vaccine Court. *Id.* at *6.

Significantly, the Chief Special Master in *Leroy* construed the provisions of the Vaccine Act to include components of vaccines such as thimerosal. The Chief Special Master held that "the meaning of 'vaccine-related injury or death'...includes injuries allegedly caused by the thimerosal component of a vaccine." *Leroy,* at *6. The Chief Special Master specifically concluded that "*[i]t is reasonable to construe the plain meaning of 'vaccine' to encompass the thimerosal component because, within its ordinary usage, the term 'vaccine' strongly implies the inclusion of bacterium and additional ingredients.*" *Leroy,* at *7 (emphasis added).[1] *See also Brausewetter v. HHS,* No.

---

[1]    The Vaccine Court's holding in *Leroy* is controlling under the United States Supreme Court's *Chevron* doctrine. *See Chevron U.S.A., Inc. v. Natural Resources Defense Counsel, Inc.,* 467 U.S. 837, 844 (1984) (holding that a court should defer to an administrative agency's reasonable construction of a statute).

99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (Act applies when there has been exposure to the "**chemical/biological** *components* of the...vaccine); *Pannell v. HHS*, No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (Vaccine Court defined a "vaccine-related injury" as one caused by the vaccine or *by something contained therein*"); *Grant v. HHS*, 956 F.2d 1144 (Fed. Cir. 1992).

The Chief Special Master held that "an injury or death arising from the thimerosal component is encompassed within the statutory definition of 'vaccine-related injury or death,' thereby granting jurisdiction over such claims" to the Vaccine Court. *Leroy*, at *17. As noted above, Plaintiffs specifically allege injuries from "vaccines manufactured and distributed by Defendants." Thus, the claims stated in Plaintiffs' pleading against Sigma-Aldrich are vaccine-related as defined by the Act, and must be dismissed in favor of the initial, exclusive jurisdiction of the Vaccine Court.[2]

## C.   Multiple Courts Across the Country, Including Texas Federal Courts, Have Dismissed Vaccine-Related Claims Against Sigma-Aldrich

The question of whether Plaintiffs' claims for injuries allegedly arising from the thimerosal preservative of the vaccines is well-settled. Federal and state courts across the country have uniformly held that plaintiffs' claims for injuries allegedly arising from the thimerosal component of vaccines are "vaccine-related" and must be filed and adjudicated in the Vaccine Court first.

---

[2] To the extent Plaintiffs are bringing suit against Sigma-Aldrich for allegedly manufacturing or distributing the thimerosal component of the vaccines which allegedly injured Plaintiffs, the same reasoning in support of dismissal applies here. The Chief Special Master observed that "the plain meaning of the term 'vaccine' allows for the composition of different ingredients in the vaccine product, including a preservative such as thimerosal, therefore, a vaccine component is a constituent part of the vaccine." *Id.* at *5. "It is reasonable to construe the plain meaning of 'vaccine' to encompass the thimerosal *component* . . . ." *Id.* at *7 (emphasis in original). Therefore, it is reasonable to construe the plain meaning of "vaccine manufacturer and distributor" to encompass a "thimerosal component manufacturer or distributor." Based on the Vaccine Court's interpretation that the definition of "vaccine" includes the thimerosal component, it consistently follows that vaccine-related claims against vaccine component manufacturers or distributors must be dismissed pursuant to the Vaccine Act. Accordingly, any claims made by Plaintiffs against Sigma-Aldrich as an alleged manufacturer or distributor of the thimerosal component of a vaccine should be dismissed in favor of the exclusive, initial jurisdiction of the Vaccine Court.

Further, the overwhelming majority of courts have extended the protections of the Vaccine Act to claims against both manufacturers and distributors of the vaccines and the vaccine component thimerosal, resulting in a national consensus that claims such as those asserted by Plaintiffs must be filed first in the Vaccine Court.[3]

Recently, the United States District Court for the Northern District of Texas in *Chiles v. American Home Products Corp.*, Civil Action No. 4:03-CV-802-A (N.D. Tex. October 2, 2003), dismissed the minors' claims against all defendants. The court held that the plaintiffs' vaccine-related claims against manufacturers of the vaccines or vaccine components must be first brought in the Vaccine Court. *Id.*

Likewise, in *Liu, Russak, Carabine, Young,* and *Swafford,* the United States District Court for the Western District of Texas dismissed the minor plaintiffs' vaccine-related claims against all defendants, including the thimerosal component manufacturers and distributors, requiring such claims to be brought first in the Vaccine Court. *See, e.g., Liu,* 219 F. Supp. 2d at 767-78.

---

[3]     *See Mann v. Glaxo SmithKline Beecham Corporation*, Civil Action No. 1:02-CV-2660-CAP (N.D. Ga. July 8, 2003); *Moss v. Merck & Co.*, Civil Action No. 03-0334 (W.D. La. June 19, 2003); *Liu v. Aventis Pasteur, Inc.*, 219 F.Supp.2d 762, 767 (W.D. Tex. 2002); *Russak v. Aventis Pasteur, Inc.*, Civil Action No. A-02-CA-480-SS (W.D. Tex. September 7, 2002); *Carabine v. Aventis Pasteur, Inc.*, Civil Action No. A-02-CA-501-SS (W.D. Tex. October 8, 2002); *Young v. Aventis Pasteur, Inc.*, Civil Action No. A-02-CA-734-SS (W.D. Tex. January 6, 2003); *Swafford v. Aventis Pasteur, Inc.*, Civil Action No. A-03-CA-055-SS (W.D. Tex. March 7, 2003); *Botter v. Aventis Pasteur, Inc.*, Civil Action No. 9:02-CV-181 (E.D. Tex. January 15, 2003); *Chiles v. American Home Products Corp.*, Civil Action No. 4:03-CV-802-A (N.D. Tex. October 2, 2003); *McDonald v. Abbott Laboratories, Inc.*, Civil Action No. 3:02CV77LN (S.D. Miss. August 1, 2002); *Holder v. Abbott Laboratories, Inc.*, Civil Action No. 4:02CV148LN (S.D. Miss. October 15, 2002); *Wax v. Aventis Pasteur, Inc.*, 240 F.Supp.2d 191, 196 (E.D. N.Y. October 30, 2002), *as clarified* (December 16, 2002); *Cyr v. Aventis Pasteur, et al.*, No. 01-C-663 (N.H., Sup. Ct., Hillsborough County, August 8, 2003) *as clarified* (September 24, 2003); *Cheskiewicz v. Aventis Pasteur, Inc.*, No. 0952 (Ct. C.P., Philadelphia County, December 16, 2002); *Ashton v. Aventis Pasteur, Inc.*, No. 04026 (Ct. C.P., Philadelphia County, May 22, 2003); *Radulovic v. American Home Products*, No. 02-05033 (Fla. Cir., Hillsborough Co., March 5, 2003); *Shanaughy v. Wyeth Co.*, No. 02-1517 CAWS (Fla. Cir., Pasco Co., December. 5, 2002); *Agbebaku v. Sigma-Aldrich, Inc.*, No. 24-C-02-004243 (Md. Cir. Ct. June 19, 2003); *Benasco v. American Home Products*, Civil Action No. 02-3577 (E.D. La. September 10, 2003); *Daigle v. Aventis Pasteur, Inc.*, Civil Action No. 02-CV-11664-RGS (D. Mass. June 13, 2003); *The Vaccine Cases*, Civil Case No. JCCP 4246 (Cal. Sup. Ct. Sept. 25, 2003); *Laughter v. Aventis Pasteur, Inc., et al.*, Civil Action No. 1:02CV01087 (M.D.N.C. November 12, 2003); *White, et al. v. Aventis Pasteur, et al.*, No. 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CIV (Miss., 1st Jud. Dist., Hinds County, November 17, 2003).

The same result was reached by the United States District Court for the Eastern District of Texas. *See Botter v. Aventis Pasteur, Inc.*, Civil Action No. 9:02-CV-181 (E.D. Tex. January 15, 2003). In *Botter*, the court dismissed the minor's claims against the vaccine and component manufacturers and distributors requiring the claims to be first presented in the Vaccine Court.[4]

Similarly, the Court of Common Pleas of Philadelphia County held that it lacked jurisdiction under the Vaccine Act because claims of thimerosal-related injuries are "vaccine-related" under the Act. *See Ashton v. Aventis Pasteur*, No. 04026 (Ct. C.P., Philadelphia County, May 22, 2003). In *Ashton*, the court found as a matter of law that thimerosal component manufacturers and distributors are afforded the same protections under the Vaccine Act as the vaccine manufacturers. The court "rejected as without authority the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of the vaccine manufacturers...." *Ashton*, at p. 10. Relying on the Vaccine Court's opinion in *Leroy*, the court agreed that the thimerosal ingredient "is interchangeable with the vaccine for the purposes of the [thimerosal] defendants' jurisdictional defense." *Id.* at p. 11. The court in *Ashton* expressly concluded, "***Thus, the explicit jurisdiction of the Vaccine Court should, this Court holds, apply to manufacturers, suppliers, and distributors as well.***" *Id.* The *Ashton* decision demonstrates that Plaintiffs' vaccine-related claims against all defendants in this case, including Sigma-Aldrich, must be dismissed.

---

[4]    Only one Texas federal court has distinguished between manufacturers of vaccines and the vaccine components. The United States District Court for the Southern District of Texas, Galveston Division, stayed rather than dismissed the plaintiffs' vaccine-related claims against the thimerosal component manufacturers, pending resolution of the plaintiffs' claims in the Vaccine Court in *Owens v. American Home Products Corp.*, 203 F.Supp. 2d 748 (S.D. Tex. 2002), *Blackmon v. American Home Products Corp.*, No. G-02-179 (S.D. Tex. May 8, 2002), and *O'Connell v. American Home Products Corp.*, No. G-02-184 (S.D. Tex. May 7, 2002). However, these decisions predate the Vaccine Court's decision in *Leroy* holding that a "vaccine" includes its components and were issued prior to the overwhelming majority of the decisions from federal (including other Texas federal district courts) and state courts dismissing vaccine-related claims against thimerosal component manufacturers and distributors.

In *Agbebaku v. Sigma-Aldrich, Inc.*, Case No. 24-C-02-004243 (Cir. Ct., Baltimore City, June 19, 2003), the court dismissed the plaintiffs' vaccine-related claims against the vaccine and thimerosal components manufacturers and distributors for lack of subject matter jurisdiction in fifty-three (53) related cases. *Id.* at p. 15.

Significantly, in *Mann v. Glaxo SmithKline Beecham*, Judge Pannell of the United States District Court for the Northern District of Georgia dismissed the entire case against the vaccine and thimerosal component manufacturers and distributors based on the Vaccine Act. *See Mann v. Glaxo SmithKline Beecham*, , No. 1:02-CV-2660-CAP (N.D.Ga., July 8, 2003). The *Mann* court observed that it was proper to dispose of a case procedurally rather than reach the plaintiffs' motion to remand where "dismissal would be inevitable" due to a lack of subject matter jurisdiction. *Id.* at *2. The *Mann* court expressly considered judicial economy and expeditious resolution of the matter, and held that the Vaccine Act required any party with a "vaccine-related" claim to first file in Vaccine Court and exhaust their remedies, and plaintiffs' failure to do so deprived "this court and all state courts" of subject matter jurisdiction over their complaint. *Id.* at *4 (emphasis added).

Likewise, on June 19, 2003, the United States Court for the Western District of Louisiana issued an Order and Memorandum Ruling dismissing the claims against all vaccine and component manufacturers and distributors, finding that plaintiffs' vaccine-related claims must first be pursued in the Vaccine Court. *See Moss v. Merck & Co.*, Civil Action No. 03-0334 (W.D. La. June 19, 2003).

Recently, the court handling a statewide coordinated proceeding in California (involving at least sixteen separate cases) dismissed all vaccine-related claims against the vaccine and thimerosal component manufacturers and distributors pursuant to the Vaccine Act.    *See* Coordinated

Proceeding, *The Vaccine Cases*, Civil Case No. JCCP 4246 (Cal. Sup. Ct. Sept. 25, 2003) ("[b]ecause the Vaccine Court has held that the terms 'vaccine' and 'thimerosal' are interchangeable for purposes of Vaccine Act jurisdiction, claims asserted against the thimerosal defendants are also barred by the Act.").

Further, in <u>thirteen</u> cases involving plaintiffs alleging injuries from thimerosal-containing vaccines, the United States District Court for the Middle District of North Carolina noted that <u>none</u> of the plaintiffs who had filed in Vaccine Court — nor those that had failed to file — had exhausted their administrative remedies, as required by the Vaccine Act. *See Laughter v. Aventis Pasteur, et al.*, No.1:02CV01087, at p. 8 (M.D.N.C. November 12, 2003). Applying *Leroy*, the *Laughter* court held the plaintiffs' claims were vaccine-related and, under the Vaccine Act, the vaccine and thimerosal component manufacturers and distributors were entitled to the Act's protections. *Id.* at 6-7. Accordingly, the court dismissed without prejudice all vaccine-related claims, pending the resolution of those claims in the Vaccine Court. *Id.* at 12.

Most recently, the First Judicial District Court of Hinds County, Mississippi specifically ruled that the Vaccine Act unambiguously directs the conclusions that: (1) thimerosal is a vaccine component; (2) thimerosal manufacturers and distributors are included within the definition of "manufacturers" for purposes of the Vaccine Act *because* thimerosal is a vaccine component; and (3) the Court *must* dismiss the claims because the plaintiffs failed to file a claim in Vaccine Court. *See White v. Aventis Pasteur, et al.*, No. 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CIV (Miss., 1st Jud. Dist., Hinds County, November 17, 2003). In the transcript of the hearing incorporated in the order, the court held it had "no authority to stay anything," and dismissed both the child's and parents' claims against the alleged thimerosal manufacturers and distributors. *Id. See also McDonald v. Abbott Laboratories*,

*Inc.*, Civil Action No. 3:02CV77LN (S.D. Miss. August 1, 2002); *Holder v. Abbott Laboratories, Inc.*, Civil Action No. 4:02CV148LN (S.D. Miss. October 15, 2002).

Two different circuit courts in Florida have likewise held that the Vaccine Court maintains initial jurisdiction over plaintiffs' "vaccine-related" claims and dismissed these claims against both the vaccine and thimerosal component manufacturers and distributors. *See Radulovic v. American Home Products*, Case No. 02-05033 (Fla. Cir., Hillsborough Co., March 5, 2003); *Shanaughy v. Wyeth Co.*, No. 02-1517 CAWS (Fla. Cir., Pasco Co., December. 5, 2002). In *Radulovic*, the court found *Leroy* to be persuasive authority and adopted the findings and conclusions articulated in *Leroy* as relate to the initial jurisdiction of the Vaccine Court and "the lack of jurisdiction of this Court" over such claims. *Radulovic*, at p. 2. In *Shanaughy*, the court held that dismissal of the plaintiffs' vaccine-related claims was appropriate due to the "Court's lack of initial jurisdiction over such claims." *Shanaughy*, at p. 2.

Moreover, Judge Weinstein of the United States District Court for the Eastern District of New York dismissed the entire case against the vaccine and thimerosal component manufacturers and distributors based on the Vaccine Act. *See Wax v. Aventis Pasteur, Inc.*, 240 F.Supp.2d 191, 196 (E.D.N.Y. October 30, 2002), *as clarified* (December 16, 2002). The court clarified its previous order that stayed the case by subsequently "dismissing the case...." *Id.* Similarly, the Superior Court for the Northern District of New Hampshire dismissed the plaintiffs' claims against all defendants, including Sigma-Aldrich, pursuant to the directives of the Vaccine Act. *See Cyr v. Aventis Pasteur, et al.*, No. 01-C-663 (N.H. Sup. Ct., Hillsborough County, August 8, 2003) *as clarified* (September 24, 2003). The court in *Cyr* clarified its previous order staying the case by subsequently dismissing the plaintiffs' claims against all defendants. *Id.*

The Court of Common Pleas in Philadelphia County has also dismissed an entire action against all defendants, including the thimerosal component manufacturers and distributors. *See Cheskiewicz v. Aventis Pasteur, Inc.*, No. 0952 (Ct. C.P., Philadelphia County, December 16, 2002) (noting that "where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court"). In *Cheskiewicz*, the court explained that:

> The Vaccine Act, enacted by Congress, provides that all such causes of action resulting in harm from the use of certain enumerated vaccines must initially be brought before a specially constituted court of the United States Court of Federal Claims (hereinafter referred to as Vaccine Court). The Act unequivocally provides that *parties must first exhaust their remedies under this Act before commencing suit in either state or federal court. The Act further directs the state or federal courts to dismiss actions not first pursued under the Vaccine Act.*

*Cheskiewicz*, at pp. 1-2 (emphasis added). The *Wax* and *Cheskiewicz* court dismissed all of plaintiffs' vaccine-related claims against <u>all</u> defendants pursuant to the express language of the Vaccine Act, and the same result should attach in this case.

The rulings from the multiple courts referenced above, as well as the Vaccine Court's absolute declaration of jurisdiction over functionally indistinguishable thimerosal claims, dispel any doubt that Plaintiffs' claims are indeed "vaccine-related" and further confirm that Plaintiffs' "vaccine-related" claims must first be pursued in the Vaccine Court. The plain language of the Vaccine Act precludes this Court from exercising jurisdiction over Plaintiffs' claims for vaccine-related injuries until Plaintiffs have exhausted their administrative remedies in Vaccine Court.

**D.     Multiple Provisions of the Vaccine Act Mandate Dismissal in Favor of the Vaccine Court's Jurisdiction**

The Vaccine Act mandates that if a civil action is filed in state or federal court in violation of subsection 300aa-11(a)(2)(A), which this case most certainly is, "the court shall dismiss **the**

**action.**" *See* 42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added). "Action" means "the entirety of a civil proceeding," not just a part of it. *Nolan v. Boeing Co.,* 919 F.2d 1058, 1066 (5th Cir. 1990). Therefore, this Court must dismiss **all** vaccine-related claims against **all** defendants in this "action" before Plaintiffs may proceed in Vaccine Court.

> 1.    **42 U.S.C. § 300aa-11(a)(5)(B) Mandates That Plaintiffs Cannot Maintain Actions in "Two Fora" for Their Vaccine-Related Claims**

Dismissal of Plaintiffs' vaccine-related claims against Sigma-Aldrich is further mandated by the express provisions of the Vaccine Act that bar a claimant from seeking compensation in Vaccine Court if a civil claim for the same "vaccine-related injury or death" remains pending against anyone.

Specifically, § 300aa-11(a)(5)(B) of the Vaccine Act provides that:

> If a Plaintiff has pending a **civil action** for damages for a vaccine-related injury or death, such a person may not file a petition under subsection (b) for such injury or death.

42 U.S.C. § 300aa-11(a)(5)(B). By its plain terms, Section 300aa-11(a)(5)(B)'s bar is not limited to pending civil actions for damages for a vaccine-related injury or death against a "vaccine administrator or manufacturer." To the contrary, Congress deliberately elected not to limit this prohibition by omitting the terms "vaccine administrator or manufacturer" used earlier in part (a)(2)(A) of the same subsection. In fact, Congress has repeatedly amended Section 300aa-11(a)(5)(B), but has left intact its divergent language that is less restrictive than that of Section 300aa-11(a)(2)(A).

Courts have recognized that Section 300aa-11(a)(5)(B)'s prohibition regarding a pending "civil action for a vaccine-related injury or death" is broader than the bar set forth in Section 300aa-11(a)(2)(A):

Section 300aa-11(a)(5)(A) of the Act refers to "a civil action for damages for a vaccine-related injury or death." Congress does not distinguish a claim against a vaccine manufacturer from other types of claims.

*Amendola v. Secretary of Health and Human Services*, 23 Fed. Cl. Ct. 621, 627 (July 16, 1991), *aff'd*, 989 F.2d 1180, 1183 (Fed. Cir. 1993) (recognizing that a "plaintiff who has a civil suit pending...for a vaccine-related injury may not file a petition <u>at all</u>"). (Emphasis added.)

Pursuant to section 300aa-11(a)(5)(B), Plaintiffs are not entitled to have two actions pending for vaccine-related injuries, regardless of the types of claims alleged. As the Chief Special Master recognized in *Leroy*, claimants are prohibited from "***maintaining actions in two fora.***" *Id.* at *9. Accordingly, this case must be dismissed so Plaintiffs' petition in Vaccine Court can proceed until they have exhausted their administrative remedies.

### 2.    42 U.S.C. § 300aa-11(c) Also Mandates Dismissal of Plaintiffs' Civil Action

Dismissal of this <u>entire</u> action is further warranted because the Vaccine Act prohibits Plaintiffs from receiving a settlement or judgment for a "vaccine-related injury or death" prior to receiving compensation from the Vaccine Court. *See* 42 U.S.C. § 300aa-11(a)(7). In fact, § 300aa-11(c)(1)(E) of the Vaccine Act explicitly requires that any petitioner seeking compensation with the Vaccine Court affirmatively plead in his or her petition that he or she has "not previously collected an award or settlement of a civil action for damages for such vaccine-related injury or death." *See* 42 U.S.C. § 300aa-11(c)(1)(E). Again, this bar is not limited, but applies to <u>any</u> judgment or settlement against any defendant if it is for the same "vaccine-related injury or death." *Leroy*, at *9.

### 3.    42 U.S.C. § 300aa-15(a)(1)(A) Mandates Dismissal of the Parents' Claims for Expenses Incurred by or on Behalf of the Minor Child

The plaintiff-parents bring claims individually (parent claims) and in their representative capacity on behalf of their minor child (minor claims). Both parent claims and minor claims seek

damages which are recoverable under the Vaccine Act. Specifically, the plaintiff-parents seek expenses for their child's medical care, loss of earning capacity, physical pain, and mental anguish. *(Pet. at 11)* These alleged damages are recoverable under the Act. For example, 42 U.S.C. § 300aa-15(a)(1)(A) provides that a petitioner under section 300aa-11 for a vaccine-related injury is entitled to compensation for expenses that "have been or will be incurred by or on behalf of the person who suffered such injury."[5] In fact, the Vaccine Act provides compensation for actual and un-reimbursable expenses and projected expenses (incurred by the victim or on the victim's behalf) for medical or other remedial care determined to be reasonably necessary, actual and anticipated lost earnings, actual and projected pain and suffering and emotional distress of the victim. *See* 42 U.S.C. § 300aa-15(a); *see also Strauss v. American Home Products Corp.*, 208 F.Supp.2d 711, 715 n. 8 (S.D. Tex. 2002).

Because these damages for vaccine-related injuries are recoverable under the Act, Plaintiffs must first proceed with these claims in Vaccine Court. Indeed, Plaintiffs' efforts "to recover medical expenses through this action is nothing more than an attempt to circumvent the bar put in place by the Vaccine Act requiring a child to first seek recovery from the Vaccine Court for injuries related to a vaccine." *See Carr v. Aventis Pasteur, Inc.*, CV 02-J-3096-NE (N.D. Ala. February. 27, 2003); *see also Cheskiewicz v. Aventis Pasteur, Inc.*, No. 0952 (Ct. C.P., Philadelphia County, December. 16, 2002) (the "Act permits reimbursement for medical bills incurred by or on behalf of a minor"); *Chiles v. American Home Products Corp.*, Civil Action No. 4:03-CV-802-A (N.D. Tex. October 2, 2003) ("because the Vaccine Act provides for payment of expenses incurred on the minor child's

---

[5]     A petitioner may be any person who has sustained a vaccine-related injury or the legal representative of such person if that person is a minor or disabled. *See* 42 U.S.C. § 300aa-11(b)(1)(A).

behalf, such as medical expenses, these claims must also be dismissed"). Accordingly, because these claims are compensable under the Act, Plaintiffs' claims against Sigma-Aldrich for medical expenses, loss of earning capacity, physical pain and suffering, and emotional distress incurred by or on behalf of their child must be dismissed.

## VI.
## THE PARENT PLAINTIFFS' CLAIM FOR LOSS OF CONSORTIUM MUST BE DISMISSED BASED ON TEXAS LAW

The parent Plaintiffs' claims for loss of consortium, loss of services, and loss of companionship damages should be dismissed with prejudice. Here, the parent Plaintiffs assert a claim for loss of consortium damages against all defendants. (*See* Pet. at 11). However, in the recent case of *Roberts v. Williamson*, the Texas Supreme Court held that Texas parents have no cause of action for loss of consortium based on their minor child's non-fatal injuries. *Id.*, 111 S.W.3d 113, 120 (Tex. 2003). Accordingly, this Court should dismiss with prejudice the parent Plaintiffs' claims for loss of consortium, loss of services and loss of companionship for failure to state a cause of action upon which relief may be granted under Texas law. *Id. See also Chiles*, at pp. 4-5 (dismissing with prejudice the parent plaintiffs' claims for loss of consortium and loss of companionship and society).

## VII.
## SIGMA-ALDRICH ADOPTS AND JOINS IN THE VACCINE DEFENDANTS' AND DEFENDANT ELI LILLY'S MOTIONS TO DISMISS AND BRIEFS IN SUPPORT

Sigma-Aldrich hereby adopts, joins in, and incorporates as if fully set forth herein, the arguments and supporting legal authorities set forth in the Vaccine Defendants' and Defendant Eli Lilly's Motions to Dismiss and Briefs in Support.

# VIII.
## CONCLUSION AND PRAYER

WHEREFORE, PREMISES CONSIDERED, Defendant Sigma-Aldrich, Inc. respectfully prays that the Court grant its Motion to Dismiss and dismiss this action, reject and deny all of Plaintiffs' claims against Sigma-Aldrich, Inc., that Plaintiffs take nothing from Sigma-Aldrich, Inc., and that Sigma-Aldrich, Inc. recover its costs and fees in connection with this case. Sigma-Aldrich, Inc. also prays for such other and further relief, both at law and in equity, to which it may be justly entitled.

Respectfully submitted,

By: _David M. Macdonald / by permission DCC_

**David M. Macdonald, Attorney-In-Charge**
State Bar No. 12755300
Southern District of Texas Bar No. 22762
MCCAULEY, MACDONALD & DEVIN, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270-2014
(214) 744-3300
(214) 747-0942 (Facsimile)

**ATTORNEY-IN-CHARGE FOR
DEFENDANT SIGMA-ALDRICH, INC.**

**OF COUNSEL:**
David C. Colley
State Bar No. 04583600
Southern District of Texas Bar No. 17310
MCCAULEY, MACDONALD & DEVIN, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, TX 75270
(214) 744-3300
(214) 747-0942 (Facsimile)

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record via Certified Mail, Return Receipt Requested or United States first class mail as set forth below on this 11th day of December, 2003.

*Via Certified Mail*
Steve T. Hastings
Hastings Law Firm
101 N. Shoreline, Suite 430
Corpus Christi, Texas 78401

*Via Certified Mail*
Michael A. Simpson
Derrick S. Boyd
Simpson & Boyd, PLLC
P.O. Box 957
Decatur, Texas 76234

*Via Certified Mail*
Greg McCarthy
Miller & McCarthy
3811 Turtle Creek Blvd., Suite 1950
Dallas, Texas 75219
*Attorneys for Plaintiff*

Michael R. Klatt
Susan Burnett
Clark, Thomas & Winters, PC
300 West Sixth Street, 15th Floor
Austin, Texas 78701
*Attorneys for American Home Products Corporation
d/b/a Wyeth, Wyeth Laboratories, Wyeth-Ayerst,
Wyeth-Ayerst Laboratories, Wyeth Lederle,
Wyeth Lederle Vaccines and Lederle Laboratories*

Bradley S. Wolff
M. Diane Owens
Swift Currie, McGhee & Heiers, LLP
The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA 30309-3238
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

Wade L. McClure
Gibson McClure Wallace & Daniels
8080 N. Central Expressway
Suite 1300, LB 50
Dallas, Texas 75206-1808
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

Stephanie A. Smith
Fulbright & Jaworski, LLP
600 Congress Avenue, Ste. 2400
Austin, Texas 78701-3271
*Attorneys for GlaxoSmithKline, Individually and*
*as Successor-in-Interest to SmithKline Beecham Corp.*

Barclay Manley
Fulbright & Jaworski, LLP
1301 McKinney Street, Ste. 5100
Houston, Texas 77010-3095
*Attorneys for GlaxoSmithKline, Individually and*
*as Successor-in-Interest to SmithKline Beecham Corp.*

Richard L. Josephson
Baker Botts, LLP
3000 One Shell Plaza
910 Louisiana
Houston, TX 77002
*Attorneys for Merck & Co., Inc.*

Gene M. Williams
MeHaffey & Webber, P.C.
P.O. Box 16
Beaumont, Texas   77704
*Attorneys for Baxter International, Inc.*

John R. Gilbert
Gilbert & Gilbert, PLLC
222 N. Velasco Street
Angelton, Texas 77515
*Attorneys for the Dow Chemical Company*

Scott Michelman
Shook, Hardy & Bacon, LLP
600 Travis Street, Ste. 1600
Houston, Texas   77002-2911
*Attorneys for Eli Lilly and Company*

Deborah A. Moeller
Shook, Hardy & Bacon, LLP
One Kansas City Place
1200 Main Street
Kansas City, Missouri  64105-2118
*Attorneys for Eli Lilly and Company*

Matthew H. Hand
Brown & Fortunato, P.C.
905 South Fillmore, Suite 400
Amarillo, Texas   79101
*Attorneys for Oribi, Inc., Individually and*
*d/b/a Meridian Chemical & Equipment, Inc.,*
*and d/b/a Global Fine Chemicals and National*
*Association of Compounding Pharmacists*

**David M. Macdonald**

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| MANUEL TORRES and DOMINGA TORRES, Individually and as next Friends of DEREK TORRES; ERIKA DUREE, Individually and as Next Friend of ERIN JONATHON DUREE, | § § § § § § | |
| vs. | § § § | CIVIL ACTION NO. 03-CV-222 JURY |
| AMERICAN HOME PRODUCTS d/b/a WYETH, WYETH LABORATORIES, WYETH-AYERST, WYETH AYERST LABORATORIES, WYETH LEDERLE WYETH LEDERLE VACCINES, and LEDERLE LABORATORIES, et al. | § § § § § § | |

APPENDIX TO DEFENDANT SIGMA-ALDRICH, INC.'S
MOTION TO DISMISS AND BRIEF IN SUPPORT

## APPENDIX

## TABLE OF CONTENTS

CASES                                                                                          Tab

*Agbebaku v. Sigma-Aldrich, Inc.,*
     Case No. 24-C-02-004243 (Md. Cir. Ct. June 19, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 1

*Ashton v. Aventis Pasteur, Inc.,*
     No. 04026 (Ct. C.P., Philadelphia County, May 22, 2003) . . . . . . . . . . . . . . . . . . . . . . . 2

*Benasco v. American Home Products,*
     Civil Action No. 02-3577 (E.D. La. September 10, 2003) . . . . . . . . . . . . . . . . . . . . . . . . 3

*Blackmon v. American Home Products Corp.,*
     No. G-02-179 (S.D. Tex. May 8, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Botter v. Aventis Pasteur, Inc.,*
     Civil Action No. 9:02-CV-181 (E.D. Tex. January 15, 2003) . . . . . . . . . . . . . . . . . . . . . 5

*Carabine v. Aventis Pasteur, Inc.,*
     Civil Action No. A-02-CA-501-SS (W.D. Tex. October 8, 2002) . . . . . . . . . . . . . . . . . 6

*Carr v. Aventis Pasteur, Inc.,*
     CV 02-J-3096-NE (N.D. Ala. February. 27, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Cheskiewicz v. Aventis Pasteur, Inc.,*
     No. 0952 (Ct. C.P., Philadelphia County, December. 16, 2002) . . . . . . . . . . . . . . . . . . 8

*Chiles v. American Home Products Corp.,*
     Civil Action No. 4:03-CV-802-A (N.D. Tex. October 2, 2003) . . . . . . . . . . . . . . . . . . . 9

*Cyr v. Aventis Pasteur, et al.,*
     No. 01-C-663 (N.H. Sup. Ct., Hillsborough County, August 8, 2003) . . . . . . . . . . . . . 10

*Daigle v. Aventis Pasteur, Inc.,*
     Civil Action No. 02-CV-11664-RGS (D. Mass. June 13, 2003) . . . . . . . . . . . . . . . . . . 11

*Holder v. Abbott Laboratories, Inc.,*
     Civil Action No. 4:02CV148LN (S.D. Miss. October 15, 2002) . . . . . . . . . . . . . . . . . . 12

*Laughter v. Aventis Pasteur, Inc., et al.*,
    Civil Action No. 1:02CV01087 (M.D.N.C. November 12, 2003) . . . . . . . . . . . . . . . . . 13

*Mann v. Glaxo SmithKline Beecham Corporation*,
    Civil Action No. 1:02-CV-2660-CAP (N.D.Ga., July 8, 2003) . . . . . . . . . . . . . . . . . . . 14

*McDonald v. Abbott Laboratories, Inc.*,
    Civil Action No. 3:02CV77LN (S.D. Miss. August 1, 2002) . . . . . . . . . . . . . . . . . . . . . 15

*Moss v. Merck & Co.*,
    Civil Action No. 03-0334 (W.D. La. June 19, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*O'Connell v. American Home Products Corp.*,
    No. G-02-184 (S.D. Tex. May 7, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Radulovic v. American Home Products*,
    Case No. 02-05033 (Fla. Cir., Hillsborough Co., March 5, 2003) . . . . . . . . . . . . . . . . . 18

*Russak v. Aventis Pasteur, Inc.*,
    Civil Action No. A-02-CA-480-SS (W.D. Tex. September 7, 2002) . . . . . . . . . . . . . . . 19

*Shanaughy v. Wyeth Co.*,
    No. 02-1517 (Fla. Cir., Pasco Co., December. 5, 2002) . . . . . . . . . . . . . . . . . . . . . . . . 20

*Swafford v. Aventis Pasteur, Inc.*,
    Civil Action No. A-03-CA-055-SS (W.D. Tex. March 7, 2003) . . . . . . . . . . . . . . . . . . 21

*The Vaccine Cases*,
    Civil Case No. JCCP 4246 (Cal. Sup. Ct. Sept. 25, 2003) . . . . . . . . . . . . . . . . . . . . . . 22

*White, et al. v. Aventis Pasteur, et al.*,
    No. 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CIV (Miss., 1st Jud. Dist., Hinds County, November 17, 2003) . . . . . 23

*Young v. Aventis Pasteur, Inc.*,
    Civil Action No. A-02-CA-734-SS (W.D. Tex. January 6, 2003) . . . . . . . . . . . . . . . . . 24

3

AMBROSE AGBEBAKU and MARY           *        IN THE
GILBERT, Individually, and
as Parents and Next Friends of *             CIRCUIT COURT
ALLEN AGBEBAKU, a Minor
                                    *        FOR
       Plaintiffs
                                    *        BALTIMORE CITY
v.
                                    *        Case No: 24-C-02-004243*
SIGMA ALDRICH, INC., et al.
                                    *
       Defendants
*     *     *     *     *     *     *     *     *     *     *     *     *     *

## MEMORANDUM OPINION

**\*RELATED THIMEROSAL CASE NUMBERS:**

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

## INTRODUCTION

Plaintiffs allege that their minor children suffered an increase risk of developmental harm and specifically, autism, which were proximately caused by the administration of various childhood vaccines containing the preservative thimerosal, the composition of which contains mercury.  The Plaintiffs allege that their children suffered injuries resulting from repeated exposure to thimerosal, a mercury containing preservative added to some vaccines and other pharmaceutical products.  Plaintiffs further allege that their children's injuries were exacerbated by coal burning power plants owned and operated by Baltimore Gas & Electric Company and Constellation Energy Group.  Plaintiffs seek relief, including compensatory and punitive damages on numerous statutory and common law theories.

## PROCEDURAL HISTORY

On January 30, 2003, Judge Carol E. Smith (Judge-in-Charge of the Civil Docket for the Circuit Court for Baltimore City) issued "Maryland Thimerosal Litigation"[1] Order Number 1 in the above-captioned cases.  These cases include 49 cases that were remanded to this Court from the United States District Court for the District of Maryland by Order of Judge Andre M. Davis dated December 18, 2002.  Judge Smith's Order dated January 30, 2003

---

[1] For ease of reference, these cases will be described as the Maryland Thimerosal Litigation.

-2-

established a briefing schedule for the filing of "Master Briefs" as well as other preliminary motions, oppositions and replies supporting or opposing the Master Briefs.

Thereafter, four (4) additional cases were filed in the Circuit Court for Baltimore City (case numbers: 24-C-02-007224, 24-C-02-007231, 24-C-02-007234, and 24-C-02-002735). On March 21, 2003, Judge Smith executed an Order scheduling those cases along with the 49 other cases remanded from the United States District Court before this Court for a hearing on all preliminary motions on April 21 - 22, 2003.

Several preliminary motions were filed including:

1.    Vaccine Defendants'[2] Motion to Dismiss and Request for Stay (filed January 31, 2003);

2.    Thimerosal Defendants'[3] Motion to Dismiss (filed January 31, 2003);

---

[2] There are several categories of Defendants who, for ease of reference, are described as the "Vaccine Defendants," the "Thimerosal Defendants", the "Power Plant Defendants", and "Other Defendants". The Vaccine Defendants include: (1) Aventis Pasteur, Inc. (hereinafter "Aventis"); (2) Baxter Healthcare Corporation (hereinafter "Baxter"); (3) Merck & Co., Inc. (hereinafter "Merck"); (4) SmithKline Beecham Corporation d/b/a GlaxoSmithKline (hereinafter "GSK"); (5) Wyeth (formerly known a0XAmerican Home Products Corporation); and (6) Antex Biologics. On April 16, 2003, this Court granted a Stay as to Defendant Antex Biologics, Inc., and the proceedings against Antex Biologics were deferred to the Bankruptcy Court in accordance with Section 362 of Title 11 of the United States Code.

[3] The "Thimerosal Defendants" include: (1) Sigma-Aldrich, Inc.; (2) American International Chemical, Inc.; (3) Spectrum Laboratory Products, Inc. and (4)Eli Lilly and Company. For reasons unrelated to the merits of these Motions, Eli Lilly and Company filed its Motion to Dismiss separate and distinct from the Thimerosal Defendants' Motion. Nevertheless, Eli Lilly and Company will be considered with the "Thimerosal Defendants" for the purpose of the determination of all preliminary motions.

-3-

3.   Power Plant Defendants'⁴ Motion to Dismiss (filed January 31, 2003);

4.   Other Defendants'⁵ Motion to Dismiss and/or for Stay of All Claims and Proceedings.

The Plaintiff filed its Opposition to all preliminary Motions on February 20, 2003 and requested a hearing on the preliminary Motions.   On April 21 and 22, 2003, this Court (Berger, J.) conducted a hearing on the extant Motions and held its decision on all motions sub curia.   This Memorandum Opinion addresses all of the outstanding Motions that were ripe at the time of the hearing on April 21, 2003.⁶

### STANDARD OF REVIEW

In considering a motion to dismiss for failure to state a cause of action pursuant to Md. R. 322 (b)(2), a trial court must assume the truth of all well-pleaded relevant material facts in the

---

⁴ The "Power Plant Defendants" include: (1) Baltimore Gas & Electric, Co. (hereinafter "BG&E"); and (2) Constellation Energy Group, Inc. (hereinafter "CEG").

⁵ The "Other Defendants" include: (1) Ortho-Clinical Diagnostics, Inc. (hereinafter "OCD"); (2) Johnson and Johnson; and (3) Human Genome Sciences, Inc. (hereinafter "HGS").   Prior to the hearing on April 21, 2003, counsel for the Plaintiff and Human Genome Sciences, Inc. agreed to dismiss this action against HGS without prejudice.   This Court granted the dismissal of HGS without prejudice by Order dated April 25, 2003.

⁶ On the first day of the hearing, Plaintiffs' counsel presented the Court with an additional pleading captioned as "Supplemental Memorandum of Law in support of Maryland Thimerosal Plaintiffs' Opposition to Thimerosal-Laden Product Defendants (aka Vaccine Defendants) Motion to Dismiss and Request for Stay."   Inasmuch as said filing was not authorized by the Scheduling Orders signed by Judge Smith, this Court neither considered the filing nor allowed oral argument on the contents of this filing at the hearing on April 21 - 22, 2003.

-4-

Complaint and all inferences reasonably drawn therefrom.  Bobo v. State, 346 Md. 706, 708 (1997); Bd. of Education of Montgomery County v. Browning, 333 Md. 281, 286 (1994)("[the court] must accept as true all well-pleaded facts and allegations in the complaint"); Stone v. Chicago Title Ins. Co., 330 Md. 329, 333 (1993); Bennett Heating & Air Conditioning v. Nations Bank, 103 Md. App. 749, 757 (1995), rev'd on other grounds, 342 Md. 169 (1996). Additionally, in the context of a motion to dismiss, it would be improper to ask a judge to make any findings of fact.  Morris v. Osmore, 99 Md. App. 646, 658 (1994).

It is well settled that the facts comprising the cause of action must be pleaded with sufficient specificity.  Bobo v. State, supra, 346 Md. at 708.   Indeed, the Maryland Rules expressly provide that "a pleading that sets forth a claim for relief ... shall contain a clear statement of the facts necessary to constitute a cause of action and a demand for judgment for relief sought ..."  Md. Rule 2-305.   "Bald assertions and conclusory statements by the pleader will not suffice."  Id.; Professional Staff Nurses Assoc. v. Dimensions Health Corp., 110 Md. App. 270, 285 (1996).  Thus, the "grant of a motion to dismiss is proper if the complaint does not disclose on its face a legally sufficient cause of action."  Lubore v. RPM Assoc., 109 Md. App. 312, 322 (1996), cert. denied, 343 Md. 565 (1996).

Alternatively, the motion to dismiss must be denied when the

-5-

facts, if proven, would entitle Plaintiff to relief.  Morris v.
Osmose Wood Preserving, 99 Md. App. 646, 653 (1991)(citing Stone v.
Chicago Title Ins. Co. of Md., 330 Md. 329 (1993)).  When moving to
dismiss, a Defendant is asserting that even if the allegations of
the Complaint are true, Plaintiff is not entitled to relief as a
matter of law.  Lubore, supra, 109 Md. App. at 322.

<div align="center">SUBJECT MATTER JURISDICTION</div>

**A.   Vaccine Defendants**

Defendants argue that the Plaintiff's injuries are governed by
what is commonly referred to as the Vaccine Act.  Specifically, 42
U.S.C.S. § 300aa-11(a)(2)(A), provides that:

> No person may bring a civil action for damages in an
> amount greater than $1,000 or in an unspecified amount
> against a vaccine administrator or manufacturer in a
> State or Federal court for damages arising from a
> vaccine-related injury or death associated with the
> administration of a vaccine after the effective date of
> this part, and no such court may award damages in an
> amount greater than $1,000 in a civil action for damages
> for such a vaccine-related injury or death, unless a
> petition has been filed, in accordance with 42 U.S.C.S.
> § 300aa-16, for compensation under the Program for such
> injury or death.

Further, Defendants contend that Plaintiff's Complaint must be
dismissed because Plaintiffs failed to exhaust any and all remedies
provided by the Vaccine Act's no-fault compensation program before
they filed a civil Complaint.  Defendants maintain that before
filing a Complaint against manufacturers and distributors of a
vaccine, Plaintiffs must first file a petition for compensation in
a specially constituted court of special masters that is part of

-6-

the United States Court of Federal Claims (hereinafter the "Vaccine Court").

Plaintiffs argue that they are exempt from filing a Vaccine Act claim in the Vaccine Court for several reasons, including but not limited to: (1) there is no federal preemption of vaccine-related injury claims; (2) the Homeland Security Act makes it clear that thimerosal claims should not have been and will not in the future be handled by the Vaccine Act; (3) Defendants have not established that Plaintiffs' claims 'qualify' under the Vaccine Act; and (4) Plaintiffs have no outstanding administrative remedy within the Vaccine Act, and therefore, they are not required to exhaust it.

Initially, this Court must determine whether the thimerosal preservative in vaccines is an 'adulterant' or 'contaminant' as defined in the Vaccine Act. If the thimerosal preservative is an 'adulterant' or 'contaminant,' the Plaintiffs are exempt from filing a claim in the Vaccine Court. The Vaccine Act defines broadly the term 'vaccine related injury' as "an illness, injury, condition, or death associated with" vaccines listed in the Act, but not a condition "associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

Numerous courts have ruled on this issue and have held, as a matter of law, that thimerosal is not an adulterant or contaminant and have dismissed claims, identical to those brought here by

-7-

Plaintiff, for lack of subject-matter jurisdiction.[7] Significantly, a Texas court held recently that the "language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e., thimerosal) are within its scope...it is clear that Congress has spoken to the precise question at issue." Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748, 756 n. 11 (S.D. Tex. 2002).

Clearly, case law issued after the Vaccine Act and rules of statutory interpretation support the conclusion that injuries allegedly caused by the thimerosal preservative constitute vaccine-related injuries. Accordingly, this Court finds that the Plaintiffs' injuries caused by the thimerosal preservative indeed constitute vaccine-related injuries.[8]

---

[7] See Liu v. Aventis Pasteur, Inc. 219 F. Supp. 2d 762 (W.D. Tex. 2002); Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d 748 (S.D. Tex. 2002); O'Connell v. Am. Home Prods. Corp., No. G-02-184 (S.D. Tex. May 7, 2002); Blackmon v. Am. Home Prods. Corp., No. G-02-179 (S.D. Tex. May 8, 2002); Collins v. Am. Home Prods. Corp., No. 3:01CV979LN (S.D. Miss. Aug. 2, 2002); McDonald v. Abbott Labs, Inc.,3:02CV77LN (S.D. Miss. Aug. 2, 2002); Stewart v. Am. Home Prods. Corp., No. 3:02CV427LN (S.D. Miss. Aug. 2, 2002); Greene v. Aventis Pasteur, Inc., No. L-1228-012 (N.J. Super. Ct. Aug. 8, 2002); Colson v. Aventis Pasteur, Inc., No. L-1351-02 (N.J. Super. Ct. Aug. 8, 2002); Russak v. Aventis Pasteur, Inc., No. A-02-CA-480-SS (W.D. Tex. Sept. 9, 2002); Carabine v. Aventis Pasteur, Inc., No. A-02-CA-501-SS (W.D. Tex. Oct. 8, 2002); Holder v. Abbott Labs., No. 4:02-CV-148LN (S.D. Miss. Oct. 15, 2002); Wax v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW)(E.D.N.Y. Oct. 28, 2002); Mead v. Aventis Pasteur, Inc., No. 0107-07136 (Or. Cir. Ct. Nov. 6, 2002); Radulovic v. Am. Home Prods. Corp., No. 02-05033 (Fl. Cir. Ct. Nov. 19, 2002); Cheskiewicz v. Aventis Pasteur, Inc., No. 0952 (Pa. C. Dec. 16, 2002); Young v. Aventis Pasteur, Inc., No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003); Botter v. Aventis Pasteur, Inc., No. 9:02-CV-181 (E.D. Tex. Jan. 13, 2003); Shanaughy v. Wyeth, No. 02-1517 CAWS (Fl. Cir. Ct. Jan. 17, 2003); Murphy v. Aventis Pasteur, Inc., No. 1:02-CV-2257-CAP (N.D. Ga. Feb. 25, 2003).

[8] Plaintiffs argue that the Act does not apply to their claims because of the adulterant/contaminant exception of 42 U.S.C. § 300aa-33(5). Although the terms 'adulterant' and 'contaminant' are not defined in the Act, established principles of statutory construction mandate the conclusion thimerosal, when used as a preservative in licensed vaccines, is a constituent

-8-

The Vaccine Act provides that:

> No person may bring a civil action for damages in an
> amount greater than $1,000...against a vaccine
> administrator or manufacturer in a State or Federal court
> for damages arising from a vaccine-related
> injury...unless a petition has been filed, in accordance
> with section 300aa-16 of this title, for compensation
> under the Program for such injury...

42 U.S.C. § 300aa-11(a)(2)(A). It is well settled that the Court

must look at the plain language of the statute when determining its

meaning. Estate of Cowart v. Nicklos Drilling Co., 505 U.S. 469,

475 (1992). As long as the language of the statute is clear, the

function of the court is to enforce it according to its terms.

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 242

(1989).

However, if the plain language is ambiguous, the Court must

look to the legislative history of the statute. The Vaccine Act

expressly provides that: "[n]o person may bring a civil action for

damages in an amount greater than $1,000" for damages incurred from

a vaccine-related injury unless a petition has been filed in the

Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A). As virtually all of

the Courts interpreting the Vaccine Act have held, this Court finds

that the language in the Vaccine Act is clear and unambiguous.

See, e.g., Owens v. An. Home. Prods. Corp., supra, 203 F. Supp. at

_____

ingredient of the vaccines and not an adulterant or contaminant. In addition,
both the Vaccine Court and the Secretary of the Health and Human Services have
determined that thimerosal-related claims are included within the statutory
definition of "vaccine related injury" because thimerosal is not an
'adulterant' or 'contaminant.' Amendola v. Secretary of HHS, 989 F.2d 1180,
1186 (Fed. Cir. 1993); Leroy v. Secretary of HHS, No. 02-392V (Fed. Cl. Oct.
11, 2002).

756; <u>O'Connell v. Am. Home Prods. Corp.</u>, No. G-02-184 (S.D. Tex. May 7, 2002); <u>Blackmon v. Am. Home Prods. Corp.</u>, No. G-02-179 (S.D. Tex. May 8, 2002).

Although this Court need not look to the legislative history in interpreting the Act, a review of the legislative history solidifies the Act's plain meaning: "All individuals injured by a vaccine administered after the date of enactment of the legislation are required to go through the compensation program ... before other remedies may be pursued." H.R. Rep. No. 99-908, at 3, <u>reprinted</u> <u>in</u> 1986 U.S.C.C.A.N. at 6344.[9] It is only <u>after</u> a claimant has exhausted the no-fault compensation system that the claimant may elect to refuse any award or compensation and file a civil action. 42 U.S.C. § 300aa-21(a). This Court finds that Plaintiffs' injuries from the thimerosal preservative constitute vaccine-related injuries within the contemplation of the Vaccine Act. Accordingly, Plaintiffs failed to exhaust their remedies in the Vaccine Court before filing their action in this Court.

Further, the express terms of the Act are instructive. Section 42 U.S.C. § 300aa-11(a)(2)(B) expressly provides that: "If a civil action which is barred under [§ 300aa-11(a)(2)] is filed in

---

[9] The effective date of the Vaccine Act is November 15, 1988. In their oral argument, Plaintiffs stated that two to three minors of the 53 minor Plaintiffs included in the Complaint were exposed to thimerosal before October 1, 1988. However, Defendants maintain that according to Plaintiffs' Complaint, only one minor plaintiff was born before Congress enacted the Act (one minor plaintiff was born November 8, 1988). However, at oral argument on April 21, 2003, the Court was advised that the one minor plaintiff did not receive any vaccinations until six weeks after his birth, thereby making the plaintiff's exposure to thimerosal a post Vaccine Act case.

a State or Federal court, the court shall dismiss the action." Furthermore, state and federal courts have dismissed such cases for lack of subject-matter jurisdiction to decide the merits of vaccine-related injury claims. See Brown v. Secretary of HHS, 874 F. Supp. 238, 241 (S.D. Ind. 1994)(granting motion to dismiss for lack of subject-matter jurisdiction on this basis), aff'd mem., 61 F.3d 905 (7th Cir. 1995), 1995 WL 395753; Greene v. Aventis Pasteur & Colson v. Aventis Pasteur, Nos. L-1288-02, L-1351-02, slip op. at 5 (N.J. Super. Ct. Aug. 8, 2002)(dismissing thimerosal-related claims because "Plaintiffs' alleged injuries are vaccine-related and this Court lacks jurisdiction in these matters"). Accordingly, inasmuch as Plaintiffs' filed their claim in State court without first exhausting their remedies in the Vaccine Court, this Court must dismiss the vaccine-related injury claims for lack of subject-matter jurisdiction.

Moreover, Plaintiffs contend that the repeal of the Homeland Security Act amendments[10] to the Vaccine Act demonstrate that Congress did not intend to include thimerosal claims within the Vaccine Act. However, the mere fact that Congress clarified specific sections of the Vaccine Act and subsequently repealed

---

[10] Before its repeal, sections the Homeland Security Act ("HSA") clarified the definition of a vaccine-related injury by adding that "an adulterant or contaminant shall not include any component or ingredient listed in a vaccine's product license application or product label." Homeland Security Act of 2002, Pub. L. No. 107-296, § 1715. Section 1716 of the HSA clarified the definition of a vaccine to include "all components and ingredients listed in the vaccine's product license application and product label."

those clarifications does not indicate any intention of Congress to exclude thimerosal-related claims from vaccine-related injuries. On the contrary, the clarifications confirm the holdings of courts that had addressed whether thimerosal-related injuries are covered under the Vaccine Act before Congress enacted the HSA amendments.[11] See, e.g., Owens v. Am. Home Prods. Corp., 203 F. Supp. 2d, 748, 755 (S.D. Tex. 2002)(holding that "because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely 'vaccine-related'").

This Court is not persuaded by Plaintiffs' assertion that the HSA amendments "for the first time include Thimerosal claims within the Vaccine Act."    State and federal courts have included thimerosal claims within the Vaccine Act for at least three months before the effective date of the HSA in November, 2002.[12]   Indeed, state and federal courts continue to reach the same conclusion that thimerosal claims are within the Vaccine Act after Congress enacted the HSA amendments without regard to those amendments.[13]

_____

[11] Prior to the effective date of the HSA (November 15, 2002), numerous courts decided that vaccines include all constituent materials identified in the biological license such as preservatives (i.e. thimerosal), and injuries attributed to any such constituent are "vaccine-related" claims covered by the Vaccine Act and its administrative filing requirement. See supra note 7.

[12] See supra note 7.

[13] See Wax v. Aventis Pasteur, Inc., No. CV 02-2018 (JBW), slip op. at 4 (E.D.N.Y. Dec. 16, 2002)(declining to consider wehther the HSA amendments apply and dismissing complaint "based on the law prior to the effective date of the amendment"); Young v. Aventis Pasteur, Inc., No. A-02-CA-734-SS (W.D. Tex. Jan. 6, 2003), slip op. at 6 n.3 ("Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order.").

-12-

The repeal of the HSA amendments is identified as "non-prejudicial." Because the amendments merely clarified existing law, the repeal changes nothing. Significantly, in its repeal, Congress included the following language:

(a) Repeal. - In accordance with subsection (c), sections 1714-1717 of the [HSA] are repealed.

(b) Application of the Public health Service Act. - The Public Health Service Act (42 U.S.C. 201 et seq.) shall be applied and administered as if the sections repealed by subsection (a) had never been enacted.

(c) Rule of construction. - <u>No inference shall be drawn from the enactment of sections 1714 through 1717 of the [HSA], or from this repeal, regarding the law prior to the enactment of sections 1714 through 1717 of the [HSA]. Further, no inference shall be drawn that subsection (a) or (b) affects any change in that prior law, or that Leroy v. Secretary of Health and Human Sevs., Office of Special Master, No. 02-392V (October 11, 2002)[14] was incorrectly decided.</u> (Emphasis added).

H.J. Res. 2, 108th Cong. § 102(a-c). In sum, this Court finds -- as a matter of law -- that injuries related to the preservative thimerosal are encompassed within the definition of "vaccine-related injuries" in the Vaccine Act. This conclusion is based on several independent sources, including: (1) the decisions of state and federal courts before and after Congress enacted the HSA amendments; (2) the plain language of the repeal; (3) the repeal's express language reaffirming the Leroy decision; and (4) the

---

[14] The Vaccine Court in Leroy held that the "thimerosal preservative in vaccines is not an 'adulterant' or 'contaminant' under § 33(5) of the Vaccine Act" and that "petitioners alleging an injury ... from the thimerosal preservative in vaccines are statutorily obligated to file their claims against a manufacturer ... in the Court of Federal Claims, in the first instance." Slip op. at 26 (emphasis in original).

legislative history of the Act.  As a result, Plaintiffs must first file their claim with the Vaccine Court.  Inasmuch as this Court lacks subject-matter jurisdiction to preside over Plaintiffs' primary claims for vaccine-related injuries against the Vaccine Defendants, it must dismiss such claims for vaccine-related injuries.[15]

B.    **Thimerosal Defendants[16]**

The Thimerosal Defendants have adopted and incorporated the Vaccine Defendants' arguments regarding this Court's lack of subject-matter jurisdiction.  For reasons stated previously (see discussion at pp. 6 -15), this Court finds that the causes of action arising out of vaccines containing thimerosal are vaccine-related.  Further, this Court holds, as the Vaccine Court held in Leroy v. Secretary of the Dept. of Health & Human Servs., No. 02-382V (Fed. Cl. Oct. 11, 2002), that the preservative thimerosal is not an adulterant or contaminant because a "preservative is not an intentionally added ingredient of the vaccine meant to make impure, inferior, or contaminate the vaccine end product."  Id. at 7.

---

[15] Plaintiffs also allege that they are exempt from filing their claim in Vaccine Court because they are not qualified to do so, as they are beyond the 36-month statute of limitation time period to file a claim.  This Court finds such reasoning illogical.  Plaintiffs' argument, if considered valid, would allow all future vaccine-related injured plaintiffs to simply "sit on their hands" and wait for the 36-month statute of limitations to pass in order to bypass the no-fault compensation program in the Vaccine Court and go straight to state or federal court.  Such an approach is "counter to the intent of Congress." See McDonald v. Lederle Labs , 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001).

[16] In their Complaint, Plaintiffs have alleged that the Thimerosal Defendants manufactured and marketed thimerosal.

-14-

Rather, as a vaccine preservative, thimerosal is a constituent part or component part of the vaccine, thereby further buttressing this Court's decision that thimerosal-related injuries fall within the ambit of vaccine-related injuries.  Accordingly, Plaintiffs must first exhaust all administrative remedies in Vaccine Court before filing a civil action in this Court.  Because Plaintiffs failed to file their claims in the Vaccine Court "in the first instance", this Court must dismiss the action against the Thimerosal Defendants for lack of subject-matter jurisdiction.

### STATE CAUSES OF ACTION – THIMEROSAL AND VACCINE DEFENDANTS

**A.  Intentional Infliction of Emotional Distress – Count 16**

In order to establish a prima facie case for intentional infliction of emotion distress ("IIED"), Plaintiffs must allege and prove facts showing that: 1) the conduct in question was intentional or reckless; 2) the conduct was extreme and outrageous; 3) a causal connection exists between the conduct and the emotional distress; and 4) the emotional distress was severe.  Alcalde v. Deaton Specialty Hospital, Inc., 133 F. Supp. 2d 702, 712 (D. Md. 2001).  A complaint that fails to allege sufficient facts in support of each element of IIED must be dismissed.  Id.

Defendants assert that the Court must dismiss Plaintiffs' claims because Plaintiffs can not establish the intent or extreme and outrageous conduct elements of the tort of IIED.  In that context, Defendants maintain that they manufactured and distributed

-15-

FDA-approved vaccines. Defendants further argue that Plaintiffs failed to plead the intent, severe, and extreme and outrageous conduct elements of severe emotional distress with the specificity required by Maryland law. Specifically, Defendants contend that Plaintiffs failed to allege that Defendants either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from Defendants' conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress would follow.

Plaintiffs reply that Defendant's failure to include proper warnings with the vaccine about the known adverse side effects of thimerosal, coupled with the fact that the Defendants had actual knowledge at all relevant times that thimerosal is classified as a hazardous material, constitute intentional, extreme and outrageous conduct. Plaintiffs further maintain that by alleging in their Complaint that Defendants intentionally added thimerosal to the vaccine, and widely marketed and distributed the vaccine to the public, they have satisfied the intentional conduct element of the IIED tort.

Further, Defendants assert that Plaintiffs have failed to allege the requisite evidentiary particulars necessary to sustain

or whether any medical or psychological treatment was needed.

Moreover, Plaintiffs argue that Defendants failure to test the cumulative effects of persons repeated exposure to thimerosal demonstrate a causal connection between the Defendants' conduct and the Plaintiffs' injuries. Plaintiffs further allege that Defendants knowingly or intentionally exposed Plaintiffs to thimerosal, a mercury poison, which resulted in brain damage. As a result, Plaintiffs contend that they have satisfied the specificity requirement of pleading the severity element of IIED. Plaintiffs maintain that all that is necessary for them to sustain this cause of action is for them to allege that the parent Plaintiffs must care for their children, the minor Plaintiffs, who now suffer from brain damage due to Defendants' intentional and reckless conduct.

To meet the "intentional or reckless" criterion of the first element, Plaintiffs must allege and show with particularity that Defendants "either desired to inflict severe emotional distress, knew that such distress was certain or substantially certain to result from [their] conduct, or acted recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." Foor v. Juvenile Servs. Admin., 78 Md. App. 151, 175 (1989)(emphasis in original). This Court finds -- as a matter of law -- that Plaintiffs have failed to demonstrate that Defendants desired to inflict severe emotional distress, or knew that such distress was certain or substantially certain to result

-17-

from their conduct.  Further, Plaintiffs have failed to show that Defendants' conduct generated a "high degree of probability" that emotional distress would result.

In their Complaint, Plaintiffs allege that Defendants manufactured, distributed, supplied, promoted, labeled, packaged, licensed, designed, sold and/or profited from the sale of thimerosal-laden products.  Plaintiffs also allege that Defendants had actual knowledge of the toxicity of thimerosal.  However, Plaintiffs' Complaint is devoid of any allegation that Defendants intended to harm Plaintiffs.

In Walser v. Resthaven Memorial Gardens, Inc., 98 Md. App. 371 (1993), the Court of Special Appeals considered whether, in an IIED cause of action, a Complaint which merely asserted Defendant's conduct but failed to assert any motivation behind that conduct could survive a motion to dismiss.  The Court held that although an act may be intentional, the consequence of inflicting emotional distress may not be intentional.  In such a case, the infliction of emotional distress may be the result of conduct undertaken for a wholly different purpose.  Id. at 395.  Simply stated, "An actor is not liable where he has done no more than to insist upon his legal rights in a permissible way, even though he is well aware that such insistence is certain to cause emotional distress."  Id. (internal citations omitted).

Here, Defendants undisputably intended to add thimerosal into

-18-

the vaccine; without the preservative, the vaccine could not maintain its effectiveness.    Further, the Defendants clearly intended to expose minor Plaintiffs to the vaccine.    Plaintiffs have not demonstrated that Defendants ever intended to cause severe emotional distress or to cause brain damage.    The intent here was to add thimerosal into a vaccine to maintain the effectiveness of the vaccine, a motivation and act clearly "within its legal rights".

As pointed out in <u>Alcade v. Deaton Specialty Hospital Home, Inc., supra</u>, 133 F. Supp. 2d at 712, a significant issue is whether Defendants desired Plaintiffs to suffer severe emotional distress or acted with the appropriate degree of recklessness.    Based on the Complaint and the written submission by the parties, Plaintiffs have failed to satisfy that Defendants' conduct was intentional or reckless.    Because Plaintiffs failed to set forth sufficient facts establishing the first element of the tort as identified in <u>Alcade</u>, <u>supra</u>, 133 F. Supp. 2d at 712, this Court need not consider whether the remaining allegations are sufficient to support a cause of action for IIED.    For the foregoing reasons, this Court grants Defendants' Motion to Dismiss Count 16 of the Amended Complaint.

**B.    Fraud - Counts 11 and 13**

**1.    Fraud**

Defendants assert that Plaintiffs Amended Complaint is grossly deficient in alleging the facts necessary to sustain a cause of

-19-

action for fraud. Defendants maintain that the Complaint merely contains "broad, general, and conclusory allegations that have been deemed insufficient to sustain a claim of fraud." Defendants' Initial Memorandum at p. 44. Specifically, Defendants contend that Plaintiffs failed to plead facts establishing that Defendants made representations or withheld information with the intent to deceive Plaintiffs.

Plaintiffs assert that although there must be sufficient facts and circumstances pled to sustain a claim of fraud, they need not specifically detail the transaction in which the fraud was predicated.

In a cause of action for fraud, the Plaintiffs must set forth the facts constituting fraud with certainty and particularity. It is well settled that "a general allegation of fraud, however strong in expression, is not sufficient unless there is an allegation of the facts and circumstances relied on as constituting the alleged fraud." Sims v. Ryland Group, Inc., 37 Md. App. 470, 473 (1977)(internal citations omitted). Merely because a plaintiff uses the word "fraudulent" does not mean that the facts are sufficiently pled. Brack v. Evans, 230 Md. 548, 553 (1963). Charges of fraud, without allegations of facts and circumstances which constitute the fraud, does not sustain a sufficient pleading of the fraud. Id. There are no strict guidelines for the Court to determine how well facts and circumstances must be pled. As long as the allegations of fraud are supported by specific facts and circumstances, the Court must deny a motion to dismiss for failure

-20-

to state a claim for the relief granted.

To establish a claim for fraud, Plaintiffs must allege that:
1) Defendants made a false representation to Plaintiffs; 2)
Defendants knew of the falsity or made representations with
reckless indifference to its truth; 3) Defendants made the
misrepresentation for the purpose of defrauding Plaintiffs; 4)
Plaintiffs relied on the misrepresentation and had the right to
rely on it; and 5) Plaintiffs suffered compensable injury resulting
from the misrepresentation. Environmental Trust v. Gaynor, 370
Md. 89, 97 (2002); McGraw v. Loyola Ford, Inc., 124 Md. App. 560,
584-85 (1999). Plaintiffs' Amended Complaint is very detailed;
indeed its length is forty pages. In their Amended Complaint,
Plaintiffs allege that Defendants made a false representation about
the vaccines because they failed to:

> properly label, brand and warn about the toxic mercury
> contained in the [vaccine]. They specifically failed to
> identify the quantity of mercury in their products.
> Their products were in violation of the Maryland Food,
> Drug and Cosmetic Act, Md. Code Ann., Health-General II
> § 21-218 (2000).

Plaintiffs' Amended Complaint, ¶ 42.

Plaintiffs also allege that Defendants knowingly concealed
material facts that Defendants had a duty to disclose, such as the
presence of toxic mercury in the vaccines, the risks of mercury
exposure, and the amount of mercury in each dose. Plaintiffs'
Amended Complaint, ¶ 124. Plaintiffs allege that Defendants
concealed such information with the intent to deceive Plaintiffs
and that Plaintiffs relied and had a right to rely upon the

-21-

assumption that the concealed and undisclosed facts did not exist or were not harmful. Plaintiffs' Amended Complaint, ¶¶ 125-128. Finally, Plaintiffs allege that the acts or omissions of Defendants were a proximate cause of Plaintiffs' injuries and damages. Plaintiffs' Amended Complaint, ¶ 129.

This Court finds that Plaintiffs' allegations in their Amended Complaint are sufficient to support a claim of fraud. Plaintiffs specifically allege that Defendants failed to properly label, brand or warn about the toxicity of thimerosal in the vaccines. Plaintiffs allege facts and circumstances which -- if proven -- may constitute common law fraud. Accordingly, this Court denies Defendants' motion to dismiss Count 11 for failure to state a claim upon which relief can be granted.

   2.   **Fraud on the Marketplace (Fraudulent Misrepresentation/Fraudulent Concealment)**

Count 13 of Plaintiffs' Complaint alleges fraudulent misrepresentation under Section 310 of the Restatement (Second) of Torts, otherwise known as fraud on the marketplace. Section 310 provides:

> An actor who makes a misrepresentation is subject to liability to another for physical harm which results from an act done by the other or third person in reliance upon the truth of the representation, if the actor
>
> (a) intends his statement to induce or should realize that it is likely to induce action by the other, or a third person, which involves an unreasonable risk of physical harm to the other, and
>
> (b) knows
>
>     (i) that the statement is false, or

-22-

(ii) that he has not the knowledge which he
professes.

The Restatement provides examples of third party liability to
illustrate how Section 310 should be interpreted. One such example
is as follows:

A seller of an automobile who paints over a defective
wheel or axle and so conceals its dangerously defective
character is liable not only to his immediate buyer who
is harmed by the collapse of the wheel or axle, but also
to any person to whom the immediate buyer by sale, lease,
or license transfers the use of the car, and to other
travelers who sustain bodily harm or whose cars are
damaged when the defective car gets out of control
through the collapse of the wheel or axle.

Simply stated, a plaintiff claiming fraud on the marketplace is

relieved of the burden of demonstrating their personal reliance on

any alleged misrepresentations.    The theory of fraud on the

marketplace presumes reliance, while common law fraud requires

proof of actual reliance.  In re Medimmune, Inc. Sec. Litig., 873

F. Supp. 953, 968 (D. Md. 1995).  Maryland courts have consistently

held that "under Maryland law, there is no fraudulent

misrepresentation cause of action for statements made to third

parties."  Estate of White v. R.J. Reynolds Tobacco Co., 109 F.

Supp. 2d 424, 430 (D. Md. 2000)(citing Parlette v. Parlette, 88 Md.

App. 628, 635 (1991)); see also Strange v. Sofamor Danek Group,

Inc., 1999 U.S. Dist. 19717, at *2 (D. Md. 1999); In re Medimmune,

supra, 873 F. Supp. at 968; Cofield v. Lead Indus. Assoc., No. MJG-

99-3277 (D. Md. Aug. 17, 2000).

-23-

This Court finds that Plaintiffs' claim for fraudulent misrepresentation of third parties must fail as a matter of law because such a cause of action is inconsistent with venerable Maryland case law regarding fraud.[17]  A claim for fraudulent misrepresentation of third parties does not require the injured party to have relied upon the alleged misrepresentation.  Maryland law requires the injured person to _actually_ _rely_ on the alleged misrepresentation.  Accordingly, Defendants' motion to dismiss Count 13 is granted.[18]

**C.    Maryland Consumer Protection Act - Count 14**

The Consumer Protection Act ("CPA") prohibits a person from engaging in any unfair or deceptive trade practice in connection with certain enumerated activities.  MD. CODE ANN., COMM. LAW § 13-101 _et_ _seq._ (2000 Repl. Vol).  Among the activities subject to the CPA are the "sale, lease, rental, loan, or bailment of any consumer goods, consumer realty, or consumer services.    MD. CODE ANN., COMM. LAW § 13-303.  The General Assembly enacted the CPA and set minimum standards for the protection of consumers in response to

---

[17] _See_ _supra_ Part B, section 1 for common law fraud under Maryland law.

[18] Further, this Court finds that no confidential or fiduciary relationship existed between the parties which would have incurred a duty on Defendants to disclose to Plaintiffs any potential risks of its product. Plaintiffs argue that such a relationship exists because Defendants, not the physicians and other practitioners, had superior knowledge of the alleged defect in its product. However, in their Memorandum, Plaintiffs note that FDA panels have conducted studies that have proven the toxic effect of thimerosal. Plaintiffs' Opposition Motion at pp. 57-58. These studies serve as notice to physicians and other practitioners that indeed, thimerosal may have harmful effects.

concerns of the lack of "public confidence in merchants offering goods, services, realty, and credit." MD. CODE ANN., COMM. LAW § 13-102(b).

In their Complaint, Plaintiffs assert that the thimerosal-laden vaccine is a consumer good. A consumer good is defined as goods sold "which are primarily for personal, household, family, or agricultural purposes." MD. CODE ANN., COMM. LAW § 13-101(d). Plaintiffs support their argument with reference to the case of T-Up Inc. v. Consumer Protection Division, 145 Md. App. 27 (2002). In the T-Up case, defendants were alleged to have marketed deceptively to the general public an aloe vera extract that would cure diseases from cancer to AIDS.

Contrary to Plaintiffs' argument, the T-Up, Inc. case is wholly distinguishable from the issues present in this case. The defendants in T-Up used the following tactics to deceive potential victims: 1) Defendants falsely claimed they had Ph.D. degrees and even carried counterfeit diplomas from Germany; 2) Defendants mailed audio tapes entitled "There is Hope" to thousands of potential victims by using a purchase list; 3) the audio tape was a staged lecture with the Defendant acting as the speaker who held a question-answer session at the end of the tape; 4) Defendants gave false hope to the recipients of the audio tapes by including at the end of the recording "You and you alone can avoid becoming another statistic;" and 5) Defendants operated their corporation by

-25-

having telephone salespersons answer questions about the aloe vera extract using a desk reference manual. <u>Id.</u>, at 39-41. In the present case, Plaintiffs have not alleged that Defendants engaged in any such tactics for the purpose of profiting from the vaccine. Further, in <u>T-Up</u>, the defendants were directly dealing with the consumers and victims. Here, Defendants were never in contact with Plaintiffs, nor did they directly market its products to the Plaintiffs. Defendants are bona fide manufacturers and distributors producing and providing an FDA-approved vaccine to knowledgeable physicians who professionally administer the vaccine. This Court finds that such a claim is not actionable under the Consumer Protection Act.

In addition, section 13-104 of the CPA exempt certain professional services from the Act, including "medical or dental practitioners." MD. CODE ANN., COMM. LAW § 13-104. Vaccines are part of the medical services that physicians and other medical personnel recommend and administer to patients. Under the CPA, the physicians and other medical personnel who actually select, recommend, and administer the vaccine are exempt from liability should any injuries result. Accordingly, the manufacturer or distributor of the vaccine, an entity even more attenuated from the injured person than the medical practitioner who selected, recommended, and administered the vaccine, must also be exempt from liability under the CPA.

-26-

For the above-mentioned reasons, even if vaccines were consumer goods as defined by the CPA, any manufacturer or distributer of the vaccines would be exempt from liability under section 13-104. Accordingly, this Court grants Defendants' motion to dismiss Count 14 of Plaintiffs' Complaint.

### ORTHO-CLINICAL DIAGNOSTICS, INC. and JOHNSON & JOHNSON

During the relevant time periods, Ortho-Clinical Diagnostics, Inc. ("OCD") manufactured and distributed RhoGAM, a hemoglobin product that contains mercury-based Thimerosal. RhoGAM was injected into Rh negative mothers immediately before they gave birth, exposing their fetuses in utero to the thimerosal. RhoGAM is not considered a vaccine under the Vaccine Act.

Plaintiffs argue that they need not file any claims against OCD and Johnson & Johnson (hereinafter "J&J") in the Vaccine Court because OCD and J&J are not vaccine manufacturers within the Vaccine Act and its products are not vaccines. Therefore, according to Plaintiffs, the injuries caused by OCD's and J&J's products are not vaccine-related injures. Defendants argue that the fact that RhoGAM is not listed as a vaccine under the Vaccine Act does not relieve Plaintiffs from first exhausting all remedies against all Defendants in the Vaccine Court. Defendants maintain that all of Plaintiffs' claims are for vaccine-related injuries and expenses that must first be adjudicated in the Vaccine Court.

Plaintiffs contend that their injuries resulted from

accumulated exposure of RhoGAM and thimerosal. This Court has already established that any thimerosal-related injury must first be addressed in the Vaccine Court. Plaintiffs' Complaint is devoid of any allegation that maternal exposure to RhoGAM caused any minor plaintiff's injury. On the contrary, of the three minor Plaintiffs exposed to RhoGAM, all three were born "perfectly normal and healthy." Plaintiffs' Complaint at ¶¶ 36, 72). Consequently, any injury could only occur from an accumulation of exposure to RhoGAM and thimerosal, thereby making injuries from exposure to RhoGAM vaccine-related injuries. All vaccine-related injuries must first be adjudicated in Vaccine Court before being tried in state or federal court.[19]   Further, should this Court entertain Plaintiffs' cause of action against OCD and J&J for their vaccine-related injuries, the Vaccine Act would prohibit Plaintiffs from seeking compensation through the Vaccine Court.[20]

This Court has already held that Plaintiffs must first exhaust their administrative remedies in Vaccine Court before filing any claims in state court. Recently, in Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762 (W.D. Texas 2002), a Texas court dismissed the plaintiff's thimerosal-related injury claims against non-vaccine manufacturers, in addition to vaccine manufacturers, until

---

[19] See supra, pp. 6- 15.

[20] The Vaccine Act states: "If a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such a person may not file a petition under subsection (b) for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(B).

-28-

Plaintiff first exhausted all remedies in the Vaccine Court. The Texas court stated that entertaining the non-vaccine related injuries "would be wholly inconsistent with Congress' goal of minimizing litigation costs..." Id. at 767-68. Here, Plaintiffs' claim against OCD and J&J is clearly related to their claims against the Thimerosal Defendants and Vaccine Defendants. Therefore, Plaintiffs must first exhaust their remedies against OCD and J&J in the Vaccine Court. Accordingly, this Court grants Defendant OCD's and J&J's motion to dismiss.

## POWER PLANT DEFENDANTS

### A.    Constellation Energy Group

Plaintiffs maintain that Constellation Energy Group ("CEG") owns, operates, maintains and markets energy created in part by fossil-fuel/coal-burning power plants. To the contrary, CEG is a holding company which "holds" the stock of its various subsidies, one of which is Baltimore Gas and Electric ("BGE"). As a holding company for various subsidies, including BGE, CEG's primary function is to hold their stock.

CEG can only be an appropriate party if Plaintiff convinces this Court that they should be permitted to pierce the corporate veil. A party may pierce the corporate veil when the corporation or company has committed fraud. Plaintiffs fail to set forth any allegations in its Complaint that would necessitate piercing the corporate veil. Further, contrary to Plaintiffs' pursuit of this

-29-

litigation against CEG, this Court cannot - - and will not  - - allow Plaintiffs to "discover" whether they have a viable claim against CEG <u>after</u> filing suit CEG.  Plaintiffs must have a good faith basis for filing suit in the first instance.  <u>Southern Leasing Partners, Ltd. v. McMcullan</u>, 801 F. 2d 783, 788 (5th Cir. 1986) ("Appellants sued Phillips without knowing how he fit into the picture, apparently hoping that later discovery would uncover something").  Accordingly, this Court finds that CEG is an inappropriate party to this litigation and grants CEG's motion to dismiss for failure to state a claim against CEG.

**B.    BGE**

### 1. Public Nuisance - Count 19

Public nuisance is defined as "an unreasonable interference with a right common to the general public." <u>Tadjer v. Montgomery County</u>, 300 Md. 539, 552 (1984), citing Restatement (Second) of Torts § 821B.  Examples of an unreasonable interference with a public right include conduct that significantly interferes with the public health, public safety, public peace, or public convenience. <u>Id.</u>  The individual must suffer "some special or particular damage, different not merely in degree, but different in kind from that experienced in common with other citizens." <u>Hoffman v. United Iron & Metal Co.</u>, 108 Md. App. 117, 135 (1996), citing, <u>Baltimore & O.R. Co. v. Gilmore</u>, 125 Md. 610, 617 (1915). Further, conduct that is prohibited by statute, ordinance, or administrative regulation also

-30-

support a finding of public nuisance.  Id.

Defendants are authorized to manufacture, sell, and furnish electric power in any municipal corporation or county of the State in accordance with directives and licensing proceedings implemented by the Public Service Commission.  Defendants maintain that because it operates its power plants in accordance with authorizations from several sources including the Public Service Commission, the Maryland Department of the Environment, and the United States Environmental Agency, Plaintiffs' claim for public nuisance must fail as a matter of law.  Defendants assert that the cases Plaintiffs have supplied to support their public nuisance claim are distinguishable in that all of the cited cases involve claims seeking recovery for private nuisance rather than public nuisance. Defendants further argue Plaintiffs' suffered harm different in degree, but not in kind, than the general public.  This allegation, Defendants contend, is insufficient, as a matter of law, for a claim against Defendants for public nuisance.

Plaintiffs contend that "[v]irtually any conduct may amount to a nuisance so long as it would be offensive or inconvenient to the normal person."  Plaintiffs' Response to Power Plant Defendants' Motion to Dismiss, p. 20.  Plaintiffs maintain that neither the legislature nor the Maryland Code would authorize Defendants to poison the public with mercury and then cloak them with immunity for causing or contributing to mercury poisoning.  In their oral

-31-

argument, Plaintiffs contended that absent a clause exempting Defendants from liability where they complied with the statute but harm nevertheless results, Defendants remain liable for injuries incurred by the manufacturing of its products. Plaintiffs further allege that their claim of "debilitating brain damage" satisfies the public nuisance requirement that the Plaintiffs' injury is different in kind <u>and</u> degree from that experienced by the general public.

This Court finds, for the reasons that follow, that Plaintiffs' claim for public nuisance fails, as a matter of law. It is uncontradicted that Maryland has authorized Defendants to produce electricity by power plants that emit mercury. The Plaintiffs do not contend that Defendants have operated its power plants in contravention of such authorization and in derogation with directives and licensing proceedings implemented by the Public Service Commission. Pursuant to the Restatement (Second) of Torts § 821(B), "[a]lthough it would be a nuisance at common law, conduct that is fully authorized by statute, ordinance or administrative regulation does not subject the actor to tort liability." Restatement (Second) of Torts § 821(B) at Note F (1979). Moreover, "if there has been established a comprehensive set of legislative acts or administrative regulations governing the details of a particular kind of conduct, the courts are slow to declare an activity to be a public nuisance if it complies with the regulations." <u>Id.</u> Further, although this Court is cognizant of

-32-

§ 821(B) of the Restatement (Second), it does not root its decision solely on the Restatement.[21]

This Court is persuaded by Defendants' argument that Plaintiffs suffered injuries different in degree, but not in kind. In a public nuisance action, a plaintiff must allege that he or she has suffered a harm that is different in <u>kind</u> from that shared by the general public; to allege that any harm is different in <u>degree</u> is insufficient to support a public nuisance cause of action. <u>See</u>, <u>e.g.</u>, <u>Venuto v. Owens-Corning Fiberglas Corp.</u>, 22 Cal. App. 3d 116, 125 (1971)(Court considered an allegation that the public was suffering from a general irritation to the respiratory tract but plaintiffs were suffering a more severe irritation solely indicated that plaintiffs and the public were suffering from the same kind of harm but plaintiffs suffered to a greater degree). In <u>Venuto</u>, the California Appellate Court found that such an allegation did not support an action for public nuisance. <u>See also</u>, <u>Page v. Niagra Chem. Div. of Food Mach. & Chem. Corp.</u> 68 So.2d 382, 384 (Fla. 1953)(holding that plaintiffs failed to allege that their injuries were different in kind, not merely in degree, from the injury to the public and therefore such allegations were insufficient to sustain a public nuisance claim).

Here, Plaintiffs allege that while BGE's emissions affected all people by exposing them to mercury emissions, Plaintiffs'

_____

[21] The Court notes that as of the date this Opinion is issued, Maryland has not enacted any specific regulations regarding the emission of mercury.

children suffered greater harm than the general public because of their "heightened vulnerability." Complaint at ¶ 63. According to case law, if an individual who has an ailment, allergies for example, and files a public nuisance cause of action against a manufacturing plant alleging that pollution emitted aggravates their allergies and injures the health of the public, then the Court must dismiss the action for failing allege a harm different in kind and not degree.[22] This hypothetical is analogous to the case at bar. The same mercury omissions that Plaintiffs allege caused injury to them, allegedly caused injury to the general public in that area. Merely because Plaintiffs might be affected to a greater degree would not, under the case law, support a claim for public nuisance.

Accordingly, for all the reasons set forth, this Court grants Defendants motion to dismiss Count 19 of Plaintiffs' Complaint.[23]

### 2.  Negligence - Count 20

Defendants contend that Plaintiffs' negligence claim should be dismissed as a matter of law because it owed no duty to Plaintiffs. Specifically, Defendants argue that the United States Environmental

---

[22] On the other hand, if an ordinary person with ordinary sensibilities brings a public nuisance claim against the same manufacturing plant and alleges that pollution emitted has injured his or her respiratory tract and the health of the public, then a cause of action for public nuisance exists.

[23] In their response to Defendants' motion to dismiss, Plaintiffs cite and discuss several cases to support their public nuisance claim. However, the cases cited by the Plaintiffs involve causes of action for private nuisance, not public nuisance. Therefore, this authority is distinguishable from Plaintiffs' public nuisance claim.

Protection Agency studies the emissions of metals and other substances from power plants, regulating the power plants to the extent deemed appropriate. Further, the Maryland Department of the Environment, the Maryland Public Service Commission, and the federal Clean Air Act coexist for many purposes, including to "control the type and level of emissions that Power Plant Defendants may emit from their power generating facilities." Defendants' Motion to Dismiss at p. 14. Defendants maintain that it operated its coal-fired power plant in compliance with all regulations and that it had no duty to self-impose further obligations to avoid a suit for negligence. Further, by complying with the statute and regulations, Defendant maintain that they have satisfied any duty owed to Plaintiffs.

Plaintiffs argue that the duty Defendants owe to them arises from the responsibility each person or entity has to exercise due care to avoid unreasonable risks of harm to others. Plaintiffs' Response at 17. Plaintiffs further argue that an unreasonable risk, such that would give rise to a duty, can be determined by whether a reasonable person would or should know the harm is foreseeable. Id. at 17-18. Plaintiffs maintain the Defendants knew it was emitting dangerous levels of mercury, that Defendants knew of the potential harmful effects of its conduct, and still, Defendants failed to cease such emission or reduce it to safe levels.

-35-

To sustain a cause of action for negligence, Plaintiffs must show that: 1) Defendants owed a duty to Plaintiffs; 2) Defendants breached that duty; 3) Plaintiffs suffered injury; and 4) Plaintiffs' injury was proximately caused by Defendants' breach of its duty. Valentine v. On Target, 353 Md. 544, 549 (1999). Thus, there can be no negligence when no duty is due. In negligence actions, 'duty' is defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." Grimes v. Kennedy Krieger Institute, Inc., 366 Md. 29, 86 (2001), citing Prosser and Keeton [on Torts] §§ 53 [(W. Keeton 5th ed. 1984)]. In order to determine whether a duty exists, a Court must consider several factors; foreseeability being arguably the most important factor. Grimes, supra, 366 Md. at 82. Whether harm is foreseeable is generally determined by asking if a reasonable person knew or should have known that the alleged conduct would constitute an unreasonable risk of harm to another. B.N. v. K.K., 312 Md. 135, 141 (1988).

The issue of foreseeability is typically a question of fact for the trier of fact to determine. Yonce v. SmithKline Beecham Clinical Lab., 111 Md. App. 124, 141 (1996). However, merely because a result could be or should be foreseeable does not necessitate a finding that a duty exists. Grimes, supra, 366 Md. at 86. A duty is created when policy considerations lead the law to say that a particular plaintiff is entitled to protection. Ashburn v. Anne Arundel County, 306 Md. 617, 627-28 (1986). Such

-36-

policy considerations include "convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, [and] the moral blame attached to the wrongdoer." Id. (internal citations omitted). When determining whether a duty exists, the Court must also look to the seriousness of the potential harm along with the probability that harm will result. Faya v. Almaraz, 329 Md. 435, 449 (1993)(holding that a surgeon with AIDS had a duty to inform his patients he was infected because it was foreseeable that the surgeon would transmit the virus to his patients during surgery). Additionally, the Court must also consider the relationship that exists between the parties. Bobo v. State, 346 Md. 706, 715 (1997). Such a relationship can arise in a number of ways: "(1) by statute or rule; (2) by contractual or other private relationship; or (3) indirectly or impliedly by virtue of the relationship between the tortfeasor and the third party." Id. (internal citations omitted).

There is no relationship between Plaintiffs and Defendants that arises from statute or rule or by a contractual or other private relationship. Consequently, the only relationship that could exist between Plaintiffs and Defendants is one of an indirect or implied nature. Certain parties have an implied or indirect relationship: a lifeguard and swimmers on the lifeguard's shift, parents and children, researchers and human subjects, doctors and patients, common carriers and passengers, employers and employees, owners of land and licensees or invitees, innkeepers and their

-37-

guests, and custodians and their wards.  Restatement (Second) of Torts, §§ 314A-314B (1965).  There is no such relationship between a coal-fired power plant and the general public, including Plaintiffs.[24]  Absent some special relationship, Defendants do not have a duty to act affirmatively for the benefit of Plaintiffs. See Diane E. Hoffmann & Karen H. Rothenberg, Whose Duty is it Anyway?: The Kennedy Krieger Opinion and its Implications for Public Health Research, 6 J. Health Care L. & Pol'y 109, 112 (2002), quoting Dan B. Dobbs, The Law of Torts, § 227, at 579 (2000).

Neurological injury is most certainly a serious harm; however, this Court finds that it is not probable that such an injury would result from Defendants' ordinary operation of coal-fired power plants.  The facts in Faya v. Almaraz, supra, provide an example of the "seriousness of harm/high probability of resulting harm" element of a duty.  In Faya, a surgeon infected with the AIDS virus operated on numerous patients but failed to inform his patients that he had the virus.  Faya, supra.  Medical literature indicates the seriousness of potential harm, should one contract AIDS. Further, it is foreseeable that a surgeon might transmit the AIDS virus to his patients during invasive surgery.  The seriousness of the potential harm, coupled with its probability, creates a duty to prevent it.

---

[24] Moreover, Plaintiffs have never alleged that a special relationship exists between Defendant Power Plant and Plaintiffs or the general public.

Here, there is no indication that the emission of mercury caused or was a substantial factor in causing the minor Plaintiffs' neurological disorders.  If, in fact, emission of mercury was a cause or a substantial factor in causing the disorders, it woulXd indeed be considered a severe harm.  Further, Plaintiffs have failed to allege that there is a high probability that the emission of mercury caused the neurological disorders in the minor Plaintiffs.  Accordingly, Plaintiffs have not satisfied the "seriousness of harm/high probability of resulting harm" element of determining whether a duty exists on behalf of Defendants.

Maryland Courts must look to see whether the legislature has proffered various policy considerations that would dictate whether a duty exists.  Grimes, supra, 366 Md. at 100.  Absent any voice from the legislature, courts must look to case law.  Id.  Here the legislature has spoken by assigning the United States Environmental Protection Agency the responsibility of regulating and studying mercury emissions from power plants.  42 U.S.C. § 7412.[25]  When determining whether a duty exists, policy considerations are taken into account in order to compensate injured parties and deter the alleged wrongdoer from undesirable or risky behavior.  Hoffman & Rothenberg, supra, at 113.

These objectives arise from broader societal goals including

---

[25] Section 7412(n) provides for various studies and regulations pertaining to mercury emissions from "electric utility steam generating units, municipal waste combustion units, and other sources, including area sources." 42 U.S.C. § 7412(n).

-39-

"moral responsibility and corrective justice between parties and
societal welfare." Hoffman & Rothenberg, at 113. The corrective
justice goal stems from the desire to instill "personal and
institutional responsibility [within persons and entities] for
their harmful actions and to correct wrongs through some form of
redress or compensation." Id. at 114. Because the corrective
justice goal can sometimes conflict with the goal of societal
welfare, courts use a cost-benefit analysis to "take into account
the social utility of a particular outcome." Questions arise
including whether the result is so beneficial to society as to
warrant the alleged tortfeasor to continue its conduct? Id.
Further, are the plaintiff's interests entitled to legal protection
against the conduct of the defendant? The production of power is
patently essential to our everyday lives. The legislature has
taken steps to ensure Defendants operation of its power plants
complies with regulations. There is no claim that Defendants have
not operated their power plants in the manner authorized by the
various agencies that supervise them.

Inasmuch as Plaintiffs have failed to successfully allege
factors this Court must consider when determining whether a duty
exists, this Court finds that the issue of foreseeability is
instructive in determining whether a duty exists. Was it
foreseeable that Defendants' conduct, which resulted in mercury
emissions, would create an unreasonable risk of harm to others?

-40-

The concept of duty and the idea of foreseeability create a conundrum: to be charged with a duty, one must look to the foreseeable harm, yet foreseeability is an issue for the trier of fact and duty is a question of law for the Court to decide. Nonetheless, when determining whether a duty exists, Courts have consistently applied the "foreseeability of harm" test. Rosenblatt v. Exxon Co., 335 Md. 58, 77 (1994); Henley v. Prince George's County, 305 Md. 320, 333 (1986). This test is based on the concept that no duty exists for unreasonably remote consequences. The key word here is "unreasonable."

In evaluating whether harm is foreseeable, this Court must again look to the relationship between the parties. There exists no relationship or privity between Plaintiffs and Defendants which would have made it reasonably foreseeable that Defendants' acts or failure to act would result in harm to Plaintiffs.[26]  The relationship between the parties here is too attenuated to charge Defendants with foreseeability and duty.  To do so would hold Defendants liable to the entire general public.  Plaintiffs provide no indication that the majority of the general public suffer from the wholly unfortunate disorders that afflict minor Plaintiffs.  As such, minor Plaintiffs' injuries are unreasonably remote

---

[26] The Court of Appeals in Rosenblatt, supra, deferred to the foreseeability test and lack of relationship between the parties when it found that Exxon, a former occupant of land, owed no duty to Rosenblatt, a subsequent occupant of same land, when it was found that the land was contaminated.

-41-

consequences from any alleged harm that Defendants may have caused. Defendants cannot be held liable for unreasonably remote consequences.

For the foregoing reasons this Court finds that no duty exists upon Defendants for unreasonably remote consequences. Absent any finding of a duty due to Plaintiffs, Defendants could not have breached a duty to Plaintiffs. Therefore, no cause of action for negligence exists. Accordingly, Defendants' motion to dismiss Count 20 is granted.[27]

### 3.   Punitive Damages - Count 21

Inasmuch as this Court has granted Defendants' motion to dismiss the public nuisance claim, the punitive damages claim of Count 21 is dismissed as it relates to Plaintiffs' claim for public nuisance.

Plaintiffs' claim for punitive damages for Defendants' alleged negligence is also dismissed. This Court has granted Defendants' motion to dismiss Count 20, which in effect eliminates any claim for punitive damages based upon negligence. As a result, Count 21 is dismissed in its entirety.

### 4.   Battery - Count 22

On December 30, 2002, Plaintiffs amended their Complaint, and

---

[27] This Court is cognizant of Judge Andre M. Davis' Remand Order wherein Judge Davis outlined the possibility of a viable negligence claim under Maryland Law. However, after studying the plethora of filings and being fully briefed oral argument, this Court finds that Plaintiffs have failed to successfully allege a claim for negligence against Baltimore Gas & Electric Company.

thereafter, added four more Plaintiffs for a total of 53 Plaintiffs. The Plaintiffs allege that Defendant Power Plant committed a battery through its emission of mercury during the production of energy.

A battery is the intentional touching of a person without that person's consent. McQuiggan v. Boy Scouts of America, 73 Md. App. 705, 714 (1988). Touching includes the intentional putting into motion of anything which touches another person. Id. To establish a claim for battery, Plaintiffs must show that the unwanted touching is harmful or offensive. Ghassemieh v. Schafer, 52 Md. App. 31, 42-43 (1982).

Defendants argue that Plaintiffs cannot infer the requisite general intent. Defendants further argue that there was no offensive touching. Defendants liken Plaintiffs' argument to the average person emitting pollution while driving his car. It would be unreasonable, according to Defendants, to hold each driver liable for battery merely because the pollution emitted from the car 'touches' the general public.

Plaintiffs argue that Defendants need not intend to have harmed them, only that Defendants violated the legally protected interest of another. Plaintiffs further argue that Defendants intended to produce energy, thereby intending to emit mercury, resulting in harm that did not involve the Plaintiffs' consent.

This Court finds that no cause of action for battery exists

-43-

for the activities alleged in the Amended Complaint.   Plaintiffs
are correct in arguing that it is immaterial whether Defendants
intended to do harm.[28]   However, Plaintiffs have not inferred the
requisite general intent required to sustain a cause of action for
battery against the Defendants.   Specifically, Defendants must have
intended to unlawfully invade Plaintiffs' physical well-being
through the emission of mercury from its power plants.   See, e.g.,
Nelson v. Carroll, 355 Md. 593, 602 (1999).   This Court finds that
Defendants, through its ordinary conduct of producing energy, did
not commit a battery on the minor Plaintiffs.   As a result,
Defendants are not liable to Plaintiffs for battery.   See, e.g.,
Nelson, supra 355 Md. at 603 (recognizing that a defendant would be
liable to a plaintiff for harmful contact if the contact resulted
from a volitional act where the defendant intended to invade the
plaintiff's legally protected interests).   Accordingly, this Court
grants Defendants' motion to dismiss Count 22 of the Amended
Complaint.

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM

On April 21, 2003, the morning of the first day of oral
argument, Plaintiffs introduced a supplemental memorandum alleging
the unconstitutionality of the Vaccine Act.   This Court refused to
accept or consider the supplemental memorandum at the hearing, as
it was introduced clearly at the eleventh hour.   At the hearing on

---

[28] For example, horseplay or a prank can be a battery.   Ghassemieh v.
Schafer, 52 Md. App. 31 (1982).

April 21, 2003, this Court stated that it will not entertain Plaintiffs' supplemental memorandum as it plainly does not comply with Judge Smith's Order which set forth a briefing schedule with deadlines for Defendants' Motion to Dismiss, Plaintiffs' Opposition, and Defendants' Reply. Plaintiffs had ample opportunity in their thorough Opposition to expand on any unconstitutionality argument. Additionally, Plaintiffs' attempt to introduce the supplemental memorandum does not comply with the Maryland Rules.

Further, the unconstitutionality issues Plaintiffs raise in the supplemental memorandum are not based on new precedent that was unavailable when Plaintiffs filed their Opposition. Neither case law nor statutory law has changed since the filing of Plaintiffs' Complaint or Opposition that would precipitate raising these issues.

In light of this Court's decision, it is unnecessary to reach the Plaintiffs' argument that the Vaccine Act is unconstitutional. Accordingly, this Court grants Defendants motion to strike Plaintiffs' supplemental memorandum.

### STAY OF REMAINING CLAIMS

The state law claim that survives this Court's ruling on the preliminary motions is Count 11, Plaintiffs' claim of fraud. For the reasons set forth previously, this Court finds that Count 11 is viable under applicable state law.

-45-

Clearly, it is within this Court's discretion whether to grant or deny a stay. <u>Bancroft Info. Group v. Comptroller of the Treas.</u>, 91 Md. App. 100, 107 (1992), quoting <u>Dodson v. Temple Hill Baptist Church, Inc.</u>, 254 Md. 541, 546 (1969). A court may "stay proceedings before it pending the determination of another proceeding that may affect the issues raised," especially if "many of the factual and legal issues in [one] action are identical to or are interrelated with and dependent on factual and legal issues in the [other] action." <u>Vaughn v. Vaughn</u>, 146 Md. App. 264, 279-81 (2002).

Courts in other thimerosal actions have consistently stayed remaining claims. In <u>Liu v. Aventis Pasteur, Inc.</u>, 219 F. Supp. 2d 762 (W.D. Tex. 2002), the court noted that "[c]ourts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication." <u>Id.</u> at 768 (citations omitted). The court stayed all proceedings in the parents' individual causes of action against all defendants until their child's claims were heard in the Vaccine Court. <u>Id.</u>; <u>see also</u>, <u>Carabine v. Aventis Pasteur, Inc.</u>, No. A-02-CA-501-SS (W.D. Tex. Oct. 8, 2002); <u>Russak v. Aventis Pasteur, Inc.</u>, No. A-02-CA-480-SS (S.D. Tex. Sept. 7, 2002).

Based on this authority, this Court will stay all remaining non-vaccine related claims against Defendants pending resolution of minor Plaintiffs' primary claims in the Vaccine Court. As a

-46-

result, Count 11 will be stayed. To allow Plaintiffs to conduct discovery on some Defendants during the pendency of Plaintiffs' other claims in the Vaccine Court would be "wholly inconsistent with Congress's goal of minimizing litigation costs." Liu, supra, 219 F. Supp. 2d at 767-68. Accordingly, this Court will stay Count 11 and not permit discovery until Plaintiffs have satisfied all mandatory requirements of the Vaccine Act.

## Conclusion

Accordingly, all claims brought by or on behalf of the minor plaintiffs, and all claims brought by the parents of the minor plaintiffs for costs and expenses arising from the minors' alleged vaccine-related injuries are dismissed without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa - 10 et seq. Further, Defendants' Motion to Dismiss Count 11 is denied. Moreover, for the reasons stated in this Opinion, this Court grants Defendants' Motion to Dismiss Counts 13, 14, 19, 20, 21 and 22 with prejudice. The remaining non-vaccine related claim against Defendants will be stayed pending a resolution of the minor Plaintiffs' primary claims in the Vaccine Court.

<div align="right">

The Honorable Stuart R. Berger
The Judge's Signature Appears
on the Original Document Only

</div>

cc:  All Counsel of Record

<div align="center">-47-</div>

AMBROSE AGBEBAKU and MARY        *        IN THE
  GILBERT, Individually, and
  as Parents and Next Friends of  *       CIRCUIT COURT
ALLEN AGBEBAKU, a Minor
                                  *       FOR
        Plaintiffs
                                  *       BALTIMORE CITY
v
                                  *       Case No: 24-C-02-004243*
SIGMA ALDRICH, INC., et al.
                                  *
        Defendants
    *    *    *    *    *    *    *    *    *    *    *    *    *

## AMENDED ORDER

*RELATED THIMEROSAL CASE NUMBERS:

| | | |
|---|---|---|
| 24-C-02-004175 | 24-C-02-004238 | 24-C-02-004321 |
| 24-C-02-004176 | 24-C-02-004239 | 24-C-02-004322 |
| 24-C-02-004178 | 24-C-02-004240 | 24-C-02-004323 |
| 24-C-02-004179 | 24-C-02-004241 | 24-C-02-004324 |
| 24-C-02-004180 | 24-C-02-004242 | 24-C-02-004328 |
| 24-C-02-004181 | 24-C-02-004245 | 24-C-02-004935 |
| 24-C-02-004182 | 24-C-02-004246 | 24-C-02-005122 |
| 24-C-02-004183 | 24-C-02-004247 | 24-C-02-005868 |
| 24-C-02-004184 | 24-C-02-004249 | 24-C-02-005869 |
| 24-C-02-004185 | 24-C-02-004251 | 24-C-02-005870 |
| 24-C-02-004186 | 24-C-02-004252 | 24-C-02-005871 |
| 24-C-02-004188 | 24-C-02-004253 | 24-C-02-005872 |
| 24-C-02-004189 | 24-C-02-004254 | 24-C-02-005873 |
| 24-C-02-004190 | 24-C-02-004255 | 24-C-02-005936 |
| 24-C-02-004191 | 24-C-02-004256 | 24-C-02-007224 |
| 24-C-02-004192 | 24-C-02-004257 | 24-C-02-007231 |
| 24-C-02-004194 | 24-C-02-004320 | 24-C-02-007234 |
| | | 24-C-02-007235 |

Upon consideration of the preliminary motions filed on behalf of all Defendants, as well as the Plaintiffs' Oppositions filed thereto, and the reply memoranda submitted on behalf of the Defendants, and after oral argument having been held on April 21 - 22, 2003, it is this 28TH day of July 2003, by the Circuit Court for Baltimore City hereby ORDERED that, for the reasons stated in this Court's Memorandum Opinion:

1.  All claims brought by the parents on behalf of the minor plaintiffs against Aventis Pasteur, Inc., Baxter Healthcare Corporation, Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline and Wyeth f/k/a American Home Products Corporation (collectively the "Vaccine Defendants") and Sigma-Aldrich, Inc., American International Chemical, Inc. Spectrum Laboratory Products, Inc. and Eli Lilly and Company (collectively the "Thimerosal Defendants") and Ortho-Clinical Diagnostics, Inc. and Johnson & Johnson (collectively the "Other Defendants") be, and the same are, hereby DISMISSED without prejudice for lack of subject matter jurisdiction pursuant to the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300 aa-10 et seq.; and it is further ORDERED that:

2.  With the exception of Count 11 (Fraud), all claims brought by the parents individually against the Vaccine Defendants, the Thimerosal Defendants and Other Defendants be, and the same are, hereby DISMISSED with prejudice; and it is further ORDERED that

3.  All claims brought by the parents individually regarding Count 11 (Fraud) be, and the same are, hereby STAYED

2

pending the outcome of claims brought in the Vaccine Court; and it is further ORDERED that:

4.    Defendants' Motion to Dismiss Count 11 (Fraud) be, and the same is, hereby DENIED; and it is further ORDERED that

5.    Defendants' Motion to Dismiss Count 13 (Fraud on the Marketplace - Fraudulent Misrepresentation/Fraudulent Concealment) be, and the same is, hereby GRANTED with prejudice; and it is further ORDERED that:

6.    Defendants' Motion to Dismiss Count 14 (Maryland Consumer Protection Act) be, and the same is, hereby GRANTED with prejudice; and it is further ORDERED that:

7.    Defendants' Motion to Dismiss Count 16 (Intentional Infliction of Emotional Distress) be, and the same is, hereby GRANTED with prejudice; and it is further ORDERED that:

8     Defendant Constellation Energy Group's Motion to Dismiss be, and the same, is hereby GRANTED; and it is further ORDERED that:

9.    Plaintiffs' Amended Complaint be, and the same is, hereby DISMISSED with prejudice as to Defendant Constellation Energy Group; and it is further ORDERED that:

10.   Defendant Baltimore Gas & Electric Company's Motion to Dismiss be, and the same is, hereby GRANTED; and it is further ORDERED that:

3

Plaintiffs' Amended Complaint be, and the same is, hereby DISMISSED with prejudice as to Defendant Baltimore Gas & Electric Company; and it is further ORDERED that:

The Clerk shall forward a copy of this Order to all Counsel of Record in this proceeding.

**The Honorable Stuart R. Berger**
The Judge's Signature Appears
on the Original Document Only

Judge, Circuit Court for Baltimore City

cc: **All Counsel of Record**

4

CHARLES R. ASHTON, III and PENNY          :      COURT OF COMMON PLEAS
STARR-ASHTON, parents and natural         :      PHILADELPHIA COUNTY
guardians of MADIGAN ASHTON and           :
LUCINDA ASHTON, et al.                    :      COMMERCE PROGRAM
                                          :
                    vs.                   :
                                          :
AVENTIS PASTEUR, INC., individually and   :      JULY TERM, 2002
as successor in interest to CONNAUGHT     :
LABORATORIES, INC., PASTEUR MERIEUX,       :      NO. 04026
and PASTEUR MERIEUX CONNAUGHT, et al.  :
                                                 Control #011926, #011965,
                                                 #011982, #012004, #012017,
                                                 #012035, #012036, #012044,
                                                 #012045, #020310

## ORDER and MEMORANDUM

AND NOW, to wit, this 22 day of ~~~~, 2003, upon consideration of the

Preliminary Objections of the defendants and the plaintiffs' response thereto, it is hereby

ORDERED and DECREED said Preliminary Objections are SUSTAINED. The plaintiffs'

Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

GENE D. COHEN,                    J.

COPIES SENT
PURSUANT TO Pa. R.C.P. 236(b)

MAY 2 2 2003

First Judicial District of Pa.
User I.D.: JCY

CHARLES R. ASHTON, III and PENNY            :    COURT OF COMMON PLEAS
STARR-ASHTON, parents and natural           :    PHILADELPHIA COUNTY
guardians of MADIGAN ASHTON and             :
LUCINDA ASHTON, et al.                       :    COMMERCE PROGRAM
                                             :
            vs.                              :
                                             :
AVENTIS PASTEUR, INC., individually and     :    JULY TERM, 2002
as successor in interest to CONNAUGHT        :
LABORATORIES, INC., PASTEUR MERIEUX,        :    NO. 04026
and PASTEUR MERIEUX CONNAUGHT, et al.       :

                                                 Control #011926, #011965,
                                                 #011982, #012004, #012017,
                                                 #012035, #012036, #012044,
                                                 #012045, #020310

## MEMORANDUM

*COHEN, GENE D., J.*

### INTRODUCTION:

The instant action is a class action complaint brought by class representatives who seek

actual damages and damages in the form of "medical monitoring" based upon injuries they and

class members either currently have or may develop.  The plaintiffs allege that vaccinations

containing the chemical thimerosal were the source of their current and would-be injuries.  The

Court now has before it preliminary objections filed by all defendants – manufacturers of the

vaccines and thimerosal – urging this Court to dismiss the plaintiffs' complaint and hold that

for several reasons the plaintiffs have no cause of action.  The Court hereby sustains said

preliminary objections and dismisses the plaintiffs' complaint.

### BACKGROUND:

The plaintiffs seek damages and "medical monitoring" alleging they were poisoned by

the presence of the ingredient Thimerosal in childhood vaccinations they received.

Within a few years after birth most American children receive a series of vaccinations. The vaccines administered control the virulent consequences of such childhood diseases as measles, pertussis, rubella, polio, whooping cough, hepatitis, diphtheria and tetanus. These vaccines often contain either a killed bacteria or live but weakened viruses and, hence, can cause serious adverse affects. *See* O'Connell v. Shalala, 79 Fed. 3d 170, 172 (1st Cir. 1996) (citing Committee to Review the Adverse Consequences of Pertussis and Rubella Vaccines, Institute of Medicine, Adverse Affects of Pertussis and Rubella Vaccines 1 (1991)). In 1996, responding to the possibility of a socio-medical catastrophe that might arise if the victims of the adverse consequences of childhood vaccinations made use of the tort liability system, Congress enacted the National Childhood Vaccine Injury Act of 1996, Pub. L. No. 99-660, 1986 U.S.C.C.N. (100 Stat.) 3755 (Codified as amended at 42 U.S.C. §§300aa-1 to 34) (1994). The purpose of the Vaccine Act was to establish a vaccine injury compensation program that would allow claimants to petition to receive compensation for vaccine-related injuries or death. Congress in its wisdom believed that to subject such injuries and deaths to the marketplace of the tort liability system would drive up the prices of vaccines and discourage vaccine manufacturers from remaining in the marketplace as well as leaving many sufferers of vaccine-caused injuries uncompensated. To receive compensation the claimant must petition the Court of Federal Claims and demonstrate by a preponderance of the evidence that (1) the vaccinated child suffered an injury listed on a table or a complication or "sequela" thereof, or (2) that the vaccine caused or significantly aggravated the child's injury or condition. *See* §§300aa-11 to 13 and 14. *See also* 42 C.F.R. §100.3 (1996). The Act in pertinent part requires that a person injured directly by a vaccine first bring a Vaccine Court proceeding. Id. §300aa-11(a)(2)(A). Then the statute gives that person the choice either to accept the court's award and abandon his tort rights (which the Act transfers to the federal

- 2 -

government, Id. §§300aa-17), or to reject the judgment and retain his tort rights. Id. §§300aa-21(a);  300aa-11(a)(2)(A)(i).  A claimant can also keep his tort rights by withdrawing the Vaccine Court petition if the court moves too slowly.  Id. §§300aa-21(b); 300aa-11(a)(2)(A)(ii).)

This new remedial system further interacts with traditional tort law suits by limiting punitive damage awards and bifurcating trials.  The Act establishes a presumption of compliance with Food and Drug Administration requirements meaning the manufacturer provided proper directions and warnings and freeing the manufacturer from liability for not providing direct warnings to an injured person or his representatives.  Id. §§300aa-23(a), 23(d), 22(c), 22(b)(1).  See Schaeffer v. American Cyanimide Co., 20 Fed. 3d 1, 9 to 12 (1st Cir. 1994).

Further provisions of the Vaccine Act address the real issue of concern in these cases and that is whether the vaccine in question caused injury or death.  There are two ways to prove causation under the Act.  The Vaccine Injury Table lists certain injuries and conditions which if found to occur within a prescribed period of time following vaccination, create a rebuttable presumption of causation.  In such "on table" cases petitioners do not need to show proof of actual causation.  For instance, if a petitioner proves that her child received a DPT vaccine on July 20, 1998 and that she suffered an encephalopathy within three days thereafter or anaphylactic shock within 24 hours thereafter, causation is presumed.  The Act's Qualifications and Aids to Interpretation further define the compensable conditions.  A petitioner is no longer burdened with the onerous task of proving that the vaccine actually caused the condition in question.  In the vast majority of cases the presumption of causation does not, however, obviate expert medical testimony.  A qualified witness must still attest that the victim suffered the particular medical condition for which the compensation is being sought.

- 3 -

Where the symptoms fall outside the statutory time frames the petitioner must present evidence of causation and fact. The legislative history instructs that "simple similarity to conditions or time periods listed in the table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner. Petitioner need not, however, prove causation to a scientific certainty. Rather the petitioner must show a "logical sequence of cause and affect".

Once the petitioner establishes a *prima facie* case, the burden then shifts to the respondent who must prove by a preponderance of the evidence that the claimed injury is attributable to some factor unrelated to the vaccine. Such factors may not include "any idiopathic, unexplained, unknown, hypothetical or undocumentable cause, factor, injury, illness, or condition". In part because of belated participation by the respondent, the precise scope of the alternate cause injury has yet to be defined. Although the alternate cause determination is usually fact specific, the claims court has held as a matter of fact that proof of Sudden Infant Death Syndrome is insufficient to dispel the Act's presumption of causation. *See e.g.*, Daniel Green and Sandra Green, as legal representatives of the Estate of Chad Green v. Secretary of the Department of Health and Human Services, 19 Cl. Ct. 57 (1989).

The system thus establishes standards of proof under which individuals who suffer injuries within specified intervals after being administered a vaccine benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §300aa-11(c)(1)(C)(i). *See also*, Haggerty v. Wyeth Ayerst Pharmaceutical Co., 79 F.Supp. 2d 182, 184 (E.D.N.Y. 2000).

A program claimant may not file a civil action against a vaccine manufacturer or administrator (i.e., the person or organization on behalf of whom the person administered the

- 4 -

vaccination) unless the claimant initially files a timely petition in accordance with the program's guidelines. *See* Shalala v. Whitecotton, 514 U.S. 268, 270 (1995) and 42 U.S.C. §300aa-11(2)(A), explaining that a claimant alleging an injury after the Vaccine Act's effective date must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court. If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the court must dismiss the action. *See* 42 U.S.C. §300aa-11(a)(2)(B). Simply put, individuals who qualify as program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all. If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her program award, that individual may reject the award and pursue a traditional tort action in any forum. *See* 42 U.S.C. §300aa-21(a).

Under the Vaccine Act, then, a person may not sue in state or federal court for more than $1,000 for a vaccine-related injury unless that person has first filed a petition in Vaccine Court within thirty-six months of the injury. The plaintiffs herein seek to circumvent this bar by claiming (a) they need not file petitions under the Act because the statute of limitations under the Act has expired, and (b) they are not injured. To quote from the plaintiffs' surreply memorandum of law:

> "Without question, the Vaccine Act does not provide relief to the children for whom plaintiffs request medical monitoring relief. As set forth in plaintiffs' Memorandum in Opposition, this case presents a textbook example of the circumstances where medical monitoring should be awarded: *asymptomatic* children who need testing as a result of defendants' tortious conduct in order to determine the extent, if any, of damage caused by direct injection of mercury into their bodies, so early diagnosis or mitigation can occur. These children are *asymptomatic* and therefore unable to obtain relief from the Act. No amount of verbal calisthenics can change that fact."

- 5 -

Initially, and making reference to the amended complaint which is the subject matter of these proceedings, in conjunction with the foregoing assertion that "these children" are not injured and the plaintiffs' duties under the Vaccine Act, the Court's attention is inevitably drawn to the allegations in the complaint. Pages 6 and 7 of the complaint – a class action – name three representatives of the class. One is Madigan Ashton. She is described as "diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." The next class representative plaintiff is Samuel Kaplan, a minor child who "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." Another plaintiff, Robbie Powell, a minor, according to the complaint "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." And the fourth plaintiff, Lucinda Ashton, is described as having "achieved the neurological, social and developmental milestones anticipated for a child of her age." From pages 12 through 21 the complaint relates in detail the medical histories of each child, including their exposure to the vaccines in question. Each account of each child concludes with the statement, "In all [plaintiff] was poisoned with 237.5 micrograms of toxic mercury from the vaccines containing thimerosal." Overall, then, the Court has before it four plaintiffs, all "poisoned", three with injuries that the complaint alleges, inferentially if not directly, were caused by their thimerosal-containing vaccinations.

DISCUSSION:

Preliminary Objections pursuant to Pa.R.C.P. 1028(a)(1) and Pa.R.C.P. 1028(a)(4)

(a)     *This Court lacks jurisdiction under the Vaccine Act – Plaintiffs are Qualified Claimants under the Act.*

Without reiterating the foregoing discussion, it should be plain that this Court has

- 6 -

no jurisdiction to entertain the vaccine-related claims of the plaintiffs for the following reasons. This Court holds that the plaintiffs are persons who would qualify to file original actions under the Vaccine Act because they do allege damages for vaccine-related injuries. Each plaintiff alleges that he or she was "poisoned" by the substance thimerosal added to a series of vaccines. No amount of verbal calisthenics can conceal the fact that plaintiffs do allege injuries, even if they are incubating injuries that may manifest themselves later in time. The plaintiffs Ashton, Kaplan and Powell definitely assert injuries in the form of learning disorders. And, as stated, all four plaintiffs unequivocally state they were poisoned. Being poisoned is being injured. Being injured involves the plenary jurisdiction of the Vaccine Act. Plaintiffs claims are precluded for this reason.

**(b)**   *This Court lacks jurisdiction under the Vaccine Act — Thimerosal-related Injuries are "Vaccine-related".*

Every court that has had the opportunity to rule on this issue has held that thimerosal is not an "adulterant or contaminant" of the vaccines at issue, but a preservative inherent to the production of a vaccine. *See* McDonell v. Abbott Laboratories, C.A. No. 3:02 CV 437 LN slip opinion at pp. 2-3 (S.D.Miss. August 1, 2002); and Liu v. Aventis Pasteur, Inc., 219 F.Supp. 2d 7622 (W.D.Tex. 2002). What is more, an opinion by a fellow judge of this Court, Cheskiewicz et al. v. Aventis Pasteur, Inc., et al., May Term, 2002 #0952 (DiNubile, J. December 16, 2002) analyzes the very same contention — that thimerosal is an ingredient outside of the content of the vaccines thus enabling a separate state-related tort action to be brought against the manufacturers who use thimerosal — and holds that thimerosal does not fall within an exception or foreign substances added to vaccines. As the defendant vaccine manufacturers correctly point it is the unanimous position of the Secretary of United States Department of

- 7 -

Health and Human Services, the Vaccine Court and the Federal District and state trial courts that confronted the issue that thimerosal claims are covered by the Vaccine Act.

- (c) *This Court lacks jurisdiction under the Vaccine Act -- Plaintiffs were Qualified Claimants even though untimely.*

The plaintiffs through their lawyers support their identities as state tort plaintiffs by claiming that they failed to file their claims "within three years from the onset of a vaccine-related injury" and it is the latent nature of their purported injuries that caused them to do so. For this contorted reason the plaintiffs believe they are exempted from filing a petition in the Vaccine Court. This argument was rejected by the court in Cheskiewicz, *supra*. This Court will re-emphasize the rejection. The Court can simply re-recite the language of Cheskiewicz to dismiss the complaint on these grounds:

> "One cannot simply wait out the three-year limitations period and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in District Court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress." *See* McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J.Super.Ct.App.Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

The Vaccine Act by its terms unambiguously bars civil actions for damages for alleged vaccine-related injury "unless a petition has been filed in accordance with §300aa-16 of this title." That section provides that "no petition for compensation shall be filed for [a vaccine-related] injury after the expiration of 36 months from the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42

-8-

U.S.C. 300aa-16(a)(2).  Plaintiffs have admittedly missed filing under the foregoing provision within the acceptable period of time.  Because this Court holds that only the Vaccine Court has jurisdiction over their claims, their claims must be dismissed with prejudice.

(d)   *Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.*

In what this Court views as largely a rhetorical instrument aimed at circumventing the requirements of the Vaccine Act, the plaintiffs base their state tort claim on a right to "medical monitoring" for injuries yet to be ascertained.  The Court agrees with the defendants in holding that without an underlying tort no relief for medical monitoring can be asserted.  *See* Redland Soccer Club, Inc. v. Department of the Army, 696 A.2d 137 (Pa. 1997).  The Supreme Court in Redland held that proof of a defendant's negligence is a required element of a cause of action for medical monitoring.  The complaint by its terms suggests no proof of the defendants' negligence.  The substance at issue is a prescription drug.  As the defendants point out, manufacturers of prescription drugs can be held negligent only on a failure to warn formulation.  Were the manufacturers' alleged failures to warn issued to doctors insufficient then the manufacturers may be negligent.  *See* Demmler v. SmithKlineBeecham, 671 A.2d 1151, 1155 (Pa. Super. 1995) allocatur denied 684 A.2d 557 (Pa. 1996).  The plaintiffs are not suing the doctors who administered the vaccinations, so there is no proof that the prescribing doctors were independently aware of the risks at issue.  Therefore, proximate cause is not pleaded and thus absent.

The Court further holds that none of the attempted tort formulations the plaintiffs raise in their complaint have a basis under Pennsylvania law.  For example, the plaintiffs allege the vaccine defendants negligently failed to test their vaccines and negligently designed,

- 9 -

manufactured and packaged them by using multi-dose vials which require thimerosal as a preservative. *See* Paragraphs 163, 165 and 195(a) and (c) of the Amended Complaint. Again, a brother jurist in this Court has held that negligent failure to test is not an independent tort under Pennsylvania law. *See* In re: Phenylpropanolamine Litigation #0001, September Term, 2001 (Tereshko, J.).

      (e)   *Remaining Counts.*

        1.   Fraud

      While it may not be necessary for this Court to address the specific counts of the complaint, having held that the Vaccine Act applies exclusively to the plaintiffs' claims, the Court will specifically dismiss all remaining claims as having no basis under the law. What is more, plaintiffs' claim for fraud is not specifically pleaded as required by Rule 1019(b) of the Pennsylvania Rules of Civil Procedure. *See* Bash v. Bell Telephone Co., 601 A.2d 825, 831 (Pa.Super. 1992). Plaintiffs' claim for loss of consortium is not actionable not only because there is some ambiguity whether or not the plaintiffs are alleging loss of filial consortium due to injury or some other cause, but because this is not a recognized cause of action in Pennsylvania. *See* Quinn v. City of Pittsburgh, A. 353 (Pa. 1914); McCaskill v. Philadelphia Housing Authority, 615 A.2d 382, 384 (Pa.Super. 1992); Jackson v. Tastykake, 648 A.2d 1214, 1217 (Pa.Super. 1994).

        2.   Preliminary Objections as applied to the Vaccine suppliers

      This Court specifically rejects as without authority the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of the vaccine manufacturers and, therefore, regardless of the Court's ruling on the motion of the vaccine manufacturers,

- 10 -

should remain as defendants in this matter. The law contradicts this position. The Vaccine Court in <u>Leroy v. Secretary of HHS</u> No. 02-392V at 12 (Ct. Fed. Cl. Office of Special Masters, October 11, 2002) held that the term "vaccine" included the constituents of the vaccine and this takes in thimerosal as well. The Court agrees with the defendants thimerosal suppliers and distributors that the ingredient is interchangeable with the vaccine for the purposes of the defendants' jurisdictional defense. Thus the exclusive jurisdiction of the Vaccine Act should, this Court holds, apply to the manufacturers, suppliers and distributors of thimerosal as well.

## CONCLUSION:

Because the class plaintiffs have not stated a cause of action cognizable under Pennsylvania law, and principally because their claims are cognizable under the exclusive jurisdiction of the federal Vaccine Act, all defendants' preliminary objections will be sustained and the plaintiffs' complaint is dismissed with prejudice.

BY THE COURT:

GENE D. COHEN,                    J.

- 11 -

U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 SEP 10  PM 1: 46

LORETTA G. WHYTE
CLERK

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

THOMAS BENASCO, individually and      CIVIL ACTION
on behalf of Anthony Benasco;
and Joanne Benasco

**VERSUS**      No. 02-3577

AMERICAN HOME PRODUCTS, ET AL.      SECT. 'T'

## ORDER

Before the Court is a Motion to Dismiss and Alternatively Stay any Remaining Parental

Claims [doc. 10], filed by the Defendant, Eli Lilly, as well as a Motion to Dismiss [doc. 15],

filed by the Vaccine Defendants. Plaintiffs filed opposition memoranda to each motion, and the

respective movants followed with reply briefs. On June 4, 2003, the Court held oral arguments

on each motion. Having considered the briefs filed by the parties, the law, the record, and the

considerable volume of jurisprudence, this Court is now ready to rule.

I.      **Background and Procedure**

Plaintiffs filed the instant suit in the 22nd J.D.C. in St. Tammany on November 7, 2002,

alleging damages arising from the mercury poisoning of their autistic son, Anthony Benasco.

Plaintiff parents ['Thomas and Joanne'] are seeking damages from American Home Products,

1

DATE OF ENTRY

SEP 1 1 2003

___ Fee_____
___ Process____
_X_ Dktd___ ___
_✓_ CtRmDep____
___ Doc No_____

now known as Wyeth ['Vaccine Defendants'], on their own behalf, not in the capacity of the legal representative of their minor son. Specifically, the Plaintiffs have alleged that beginning as a newborn, Anthony was repeatedly poisoned with injections containing ethyl mercury, a known neurotoxin, which was needlessly and inexplicably added to vaccine products manufactured by the Vaccine Defendants. The mercury product that poisoned Anthony is known as Thimerosal, a chemical compound roughly 50 percent mercury by weight. Due to the claimed  mercury poisoning of their son, the Parent Plaintiffs have alleged damages against the Vaccine Defendant, including loss of consortium for the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, and any and all damages as allowed by law. In addition, Thomas Benasco, individually, and on behalf of Anthony Benasco, and Joanne Benasco, have alleged damages against, Eli Lilly, as producer of Thimerosal, for loss of consortium including the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, recovery of all past and future costs and expenditures necessitated by the alleged mercury poisoning, and any and all damages as allowed by law. Eli Lilly removed this case to federal court.

## II.    Law and Analysis

The issue is whether plaintiffs' claims are barred by the Vaccine Injury Act of 1986 ('The Act'). 42 U.S.C. §300 aa-11-34. The Act is a federal statute that provides a no-fault compensation system for injuries caused by the administration of childhood vaccines, and

2

thereby streamlines the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Young v. Aventis Pasteur*, No. A-02-734 (W.D.Tx) (Sparks, J.); *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1975). The Act, which establishes a procedure for the adjudication of these claims before a special master appointed by the United States Court of Federal Claims, requires that before an individual who sustained vaccine-related injuries (or the legal representatives of such an individual) may file a lawsuit against a vaccine manufacturer for damages greater than $1,000, he must first file a petition in the Vaccine Court for the alleged injury. 42 U.S.C. §300 aa-11(a)(2)(A); 300aa-(11)(a)(1); & 300aa-12(d). Petitioners need only prove causation, no negligence, in order to obtain a recovery that is paid out of the federal purse. Petitioners may reject the recovery that is offered by the Vaccine Court, and then file a civil lawsuit against the vaccine manufacturer. The purpose of the Act was to encourage vaccine development by sparing vaccine manufacturers of certain litigation expenses, as well as the insurance premiums that are associated with such costs. If a plaintiff fails to file a petition under the Act prior to suing in state or federal court, the court is required to dismiss the action. Plaintiffs did not file a petition under the Act because they assert that the Act covers claims brought by the individuals who suffer vaccine-related injuries but not claims brought by the parents of such individuals.

The Act provides in part, "no person may bring a civil action...for damages arising from vaccine related injury...unless a petition has been filed in accord with the Vaccine Act." 42 U.S.C. §300 aa-11(a)(2)(B). The Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with

3

an adulterant or contaminant intentionally added to such vaccines." 42 U.S.C. §300 aa-33(5).

Thus to the extent that parents file suit as a legal representative of their child to recover the

child's damages, such a suit is covered by the Act as long as the source of the suit comes from

the vaccine itself and not from a contaminant or an adulterant.  This is one of the key issues in

the present matter.  It is this Court's opinion that in keeping with a certain line of cases, each

injury allegedly resulting from thimerosal contained in vaccines are vaccine-related under the

meaning of the Act.  *Young v. Aventis Pasteur*, No. A-02-734 (W.D.Tx) (Sparks, J.); *Strauss v.*

*American Home Prod. Corp, et al.*, Cause No. G-02-226 (S.D. Tex. June 11, 2002); *Blackmon, et*

*al., v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002).  DHHS has

stated that Thimerosal is not a contaminant nor an adulterant of vaccines; it is a component part

of the vaccine, since at the time, it was impossible to receive the vaccine without Thimerosal.[1]

Furthermore, the Chief Special Master of the Vaccine Court has already concluded that the

claims alleging injuries from thimerosal are vaccine-related and are covered by the Vaccine Act.

*Leroy v. Secretary of HHS*, 2002 WL 31730680 (Fed. Cl. Oct. 11, 2002.); *See also, Collins v.*

*American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D.Miss. Aug 1, 2002); *Cheskiewicz*

*v. Aventis Pasteur*, May Term 2002, Case No. 0952 (Pa. C. Ct. 12/16/2002).  This Court holds

that thimerosal is not an adulterant nor a contaminant under the Act, and thus, Anthony

Benasco's alleged injuries are vaccine-related.  Accordingly, the Vaccine Act requires this Court

to dismiss all claims brought by the Parent Plaintiffs on behalf of Anthony Benasco without

prejudice to refiling after they have exhausted the requirements of the Act.

---

[1] "While the HHS's position is official, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron, U.S.A., Inc., v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984).  However, the HHS's official position holds persuasive authority."  *Young v. Aventis Pasteur*, No. A-02-734 (W.D.Tx) (Sparks, J.), FN 1.

4

The Plaintiffs argue that they are barred from going before the Vaccine Court due to the 36-month peremptory period which exists in the statute. 42 U.S.C. §300aa-11(a)(2)(B). However, this Court disagrees with the Plaintiffs assertions, as the Plaintiffs must not only bring their claims before the Vaccine Court, they must exhaust their remedies while before the Court of Special Masters. "If the instant suit were permitted, then every litigant who did not want to first assert the claims in the Vaccine Court could simply wait out the 36 month period if the tort actions were not banned by the statute then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress." *Cheskiewicz v. Aventis Pasteur*, May Term 2002, Case No. 0952, Order No. 100957 (Pa. C. Ct. 12/16/2002), p.3. Plaintiffs have failed to comply with the procedural mandate as the child has failed to file a petition with the Vaccine Court, and as far as the parents are concerned, they have not exhausted their administrative remedies either. Parent Plaintiffs, seeking redress on behalf of the child, must proceed to the Vaccine Court, where, if there are any, the timeliness issues will be handled there. This is what the office of special masters has stated. *Stewart v. Secretary of HHS*, (Dec. 30, 2002). Recently, on March 19, 2003, the Oregon circuit court issued a ruling that despite plaintiffs claims that they are barred by the 36 month limitation time period, the child's claims must proceed before the Vaccine Court. *See. Neiltsen et al., v. Wyeth*, (Ore. C.Ct. 3/19/03)( "42 U.S.C. 300aa-11(a)(2)(B) directs this Court to dismiss this action.").

This Court has discretion to stay proceedings. *Black Sea Inv. Ltd., v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass.n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985). Accordingly,

5

the Court stays all proceedings in the Parent Plaintiffs' individual causes of action against all

defendants until their son's claims have been exhausted in the Vaccine Court.

**A.    Law on Motion to Dismiss pursuant to Rule 12(b)(1):**

Rule 12 of the Federal Rules of Civil Procedure governs the manner in which defenses

and objections to the pleadings are to be brought by defendants in federal civil actions.

> Every defense, in law or in fact, to a claim for relief in any
> pleading, whether a claim, counterclaim, cross-claim, or third-
> party claim, shall be asserted in the responsive pleading thereto if
> one is required, except that the following defenses may at the
> option of the pleader be made by motion: (1) lack of jurisdiction
> over the subject matter,...Fed. R. Civ. P. 12(b)(1).

Rule 12(b)(1) requires that a defendant file a Motion to Dismiss the action if the court lacks

jurisdiction. Without jurisdiction over the subject matter, the nature of the case, and the relief

sought, a court is powerless to render a ruling on the conduct of persons or the status of the

proceeding.

**B.    Law on Motion to Dismiss pursuant to Rule 12(b)(6):**

In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6),

courts have found that dismissal pursuant to this provision "is viewed with disfavor and is rarely

granted." *Lowery v. Texas A&M University System*, 117 F.3d 242, 247 (5th Cir. 1997); *Kaiser*

*Aluminum & Chem. Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982). The

complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the

original complaint must be taken as true. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir.2002);

*Campbell v. Wells Fargo Bank*, 781 F.2d 440, 442 (5th Cir. 1980). A district court may not

dismiss a complaint under FRCP 12(b)(6) "unless it appears beyond doubt that the plaintiff can

6

prove no set of facts in support of his claim which would entitle him to relief." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001)(quoting *Conley, supra*), *cert. denied*, ____ U.S. ____, 122 S.Ct. 2665, 153 L.Ed.2d 838 (2002); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957); *Blackburn v. Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). The Fifth Circuit defines this strict standard as, "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Lowrey*, 117 F.3d at 247, *citing* 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, §1357, at 601 (1969). "In other words, a motion to dismiss an action for failure to state a claim admits the facts alleged in the complaint, but challenges the plaintiff's rights to relief based upon those facts,...[w]hen considering a Rule 12 (b)(6) motion to dismiss for failure to state a claim, the district court must examine the complaint to determine whether the allegations provide relief on any possible theory." *Ramming*, 281 F.3d at 161-62.

**C.    Eli Lilly's Motion to Dismiss Plaintiff's Vaccine Related Claims and in the Alternative, Stay any Remaining Parental Claims**

Parent Plaintiffs have brought claims in their individual capacity as well as in a capacity as representative for their child, against Eli Lilly, seeking loss of consortium including the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, recovery of all past and future costs and expenditures necessitated by the alleged mercury poisoning, and any and all damages as allowed by law.

As stated previously in this Order and Reasons, the Vaccine Act unequivocally states that "no person may bring a civil action...for damages arising from vaccine related injury...unless a petition has been filed in accord with the Vaccine Act." 42 U.S.C. §300 aa-11(a)(2)(B). Parent

7

Plaintiffs' claims on Anthony Benasco's behalf must be dismissed because such claims sought are for 'vaccine-related' injuries that must first be adjudicated in the Vaccine Court. As such, the court of first instance for proper jurisdiction as to the claims filed on behalf of the Anthony Benasco by the parent plaintiffs is the Vaccine Court. Plaintiffs have failed to bring the claims on behalf of Anthony Benasco in the Vaccine Court; hence, pursuant to the Vaccine Act, claims brought by the Parent Plaintiffs on behalf of the Anthony Benasco are **DISMISSED WITHOUT PREJUDICE.**

As for the claims of the Parent Plaintiffs brought in an individual capacity, this Court finds, that while the respective claims are not covered by the Vaccine Act, to allow the remaining claims not covered by the Vaccine Act to remain open to active litigation would frustrate the goals of the Vaccine Act.   While not all of the claims of the Parent Plaintiffs are compensable under the Vaccine Act, some are.  Under 42 U.S.C. § 300aa-15(a)(1)(A)(ii), the Act lists the areas of possible compensation due, and said compensation includes expenses which will be incurred by or on behalf of the person who suffered such injury.  In addition, § (4) includes a provision for actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00.  *Moss, et al., v. Merck & Co., et al.,* CA No. 03-0334 (W.D.La. June 19, 2003)(Doherty, J).  The Defendant moves to dismiss the individual claims of the Parent Plaintiffs because they are derivative of the representee's claims or are not cognizable under Louisiana law.  Without addressing the viability or sufficiency of the claims before the Court, this Court finds that any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**; any remaining claims not covered by the Act, brought on behalf of the Parent

8

Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court.[2]  The Plaintiffs state the case exactly when they state in their Opposition Brief to the Motion to Dismiss filed by the Vaccine Defendants, "...the real issue before the Court is not whether the Parent Plaintiffs can exercise rights against vaccine manufacturers, but when these rights may be exercised." *Id.* at 9.  As this Court has determined that Anthony Benasco is not barred by the 36-month peremptory period thereby placing jurisdiction with the Vaccine Court, the Court declines to hear any claims brought by the Parent Plaintiffs until the claims in this civil action, of Anthony Benasco, are adjudicated before the Vaccine Court.

### D.    Vaccine Defendants' Motion to Dismiss

Likewise, Parent Plaintiffs claim similar damages, only in an individual capacity, against the Vaccine Defendants.  Under their claims, the Parent Plaintiffs have alleged damages, against the Vaccine Defendant, including loss of consortium for the care and comfort and society of their child, hedonic damages [past and future], emotional distress [past and future], judicial interest from the date of the judicial demand, all costs incurred as a result of the prosecution of the case, and any and all damages as allowed by law.  The Vaccine Defendant now moves for a dismissal of all claims pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction over the subject matter, and pursuant to Fed. R. Civ.P. 12(b)(6) for failure to state a claim.

This Court finds that any claims brought by the Parent Plaintiffs, in their individual

---

[2] "Whether the claims made by the Parent Plaintiffs are merely claims for damages which are solely derivative of the minor child's cause of action, and thus, must be addressed within the minor child's cause of action or are causes of action owned by the parents themselves, and thus, can stand alone, is a question which this Court need not address at this time." *Moss, et al., v. Merck & Co., et al.,* CA No. 03-0334, at p.9-10 (W.D.La. June 19, 2003)(Doherty, J).

9

capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**; any remaining claims not covered by the Act. brought on behalf of the Parent Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court.

10

Accordingly,

IT IS ORDERED that the defendant Vaccine Manufacturer's Motion to Dismiss [Doc. 10] is **GRANTED IN PART AND DENIED IN PART**. Any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**. Any remaining claims not covered by the Act, brought on behalf of the Parent Plaintiffs in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court;

IT IS FURTHER ORDERED that the defendant Eli Lilly's Motion to Dismiss [Doc. 15] is **GRANTED**. Any claims brought on behalf of Anthony Benasco by Parent Plaintiffs are hereby **DISMISSED WITHOUT PREJUDICE** as to lack of jurisdiction. Any claims brought by the Parent Plaintiffs, in their individual capacity, which are covered by the Act are hereby **DISMISSED WITHOUT PREJUDICE**. Any remaining claims not covered by the Act, brought on behalf of the Parent Plaintiffs, in their individual capacity, are hereby **STAYED** pending exhaustion of the claims of Anthony Benasco in the Vaccine Court;

IT IS FURTHER ORDERED that the remaining Parent Plaintiff claims in the above-captioned matter be stayed until Monday, April 5, 2004;

IT IS FURTHER ORDERED that request of Plaintiff for leave to amend the petition to plead an amount of $1,000.00 is **DENIED**;

IT IS FURTHER ORDERED that the Clerk of Court mark this action closed for statistical purposes **ONLY**;

IT IS FURTHER ORDERED that the Court shall retain jurisdiction and that the case shall be restored to the trial docket and shall be reset by order of this Court upon motion of a

11

party if circumstances change, so that the case may proceed to final disposition. This order shall not prejudice the rights of the parties to this litigation.

New Orleans, Louisiana, this _____ day of September, 2003.


G. THOMAS PORTEOUS, JR.
UNITED STATES DISTRICT JUDGE

12

@002

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

JAY BLACKMON and KENDEL §
BLACKMON, individually and as next §
friends to TODD CHRISTOPHER §
BLACKMON; NORMAN KUEHN and §
MELISSA KUEHN, individually and as next §
friends to BRANDON HILTON KUEHN; and §
TIM SCOTT and SHARON SCOTT, §
individually and as next friends to COLBY §
BRENNAN SCOTT §
         Plaintiffs, §
§
v. §                                          CIVIL ACTION NO. G-02-179
§
AMERICAN HOME PRODUCTS §
CORPORATION, et al. §
         Defendants. §

**ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS,
MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING
SIGMA'S MOTION TO DISMISS, GRANTING PLAINTIFFS' MOTION FOR
LEAVE TO CONDUCT DISCOVERY AND TO EXTEND THE RESPONSE
DATE TO GDL'S AMENDED MOTION TO DISMISS AND DENYING
DEFENDANTS' REQUEST FOR ORAL ARGUMENT AS MOOT**

Plaintiffs Jay Blackmon and Kendel Blackmon, individually and as legal representatives of

their minor child Todd Christopher Blackmon ("Todd"); Norman Kuehn and Melissa Kuehn,

individually and as legal representatives of their minor child Brandon Hilton Kuehn ("Brandon");

and Tim Scott and Sharon Scott, individually and as legal representatives of their minor child Colby

Brennan Scott ("Colby"); bring this products liability lawsuit against Defendants Sigma Aldrich

Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc."); Eli Lilly and Company ("Eli

Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc. ("EM"); Wyeth ("Wyeth") f/k/a

American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc. ("Merck"); Smith Kline Beecham

Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1) a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1–300aa-34, filed by Wyeth, Aventis, Merck and Smith Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma Corp. and Sigma Inc. (collectively, "Sigma"); and (3) a Motion to Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth, Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is GRANTED IN PART and DENIED IN PART, Sigma's Motion to Dismiss pursuant to the Vaccine Act is DENIED and Plaintiffs are hereby ORDERED to conduct jurisdictional discovery before responding to the Motion to Dismiss filed by GDL.

## I. Background

While they were infants, Todd, Brandon and Colby were allegedly exposed to harmful levels of mercury via routine childhood vaccinations administered to them by their pediatricians. All or some of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and thus, mercury) introduced into the children's bodies by way of vaccination allegedly afflicted them with serious and lasting neurological injuries. Plaintiffs filed this action in a Texas state court seeking damages for the children's personal injuries both individually and on behalf of their children (as legal representatives). In their Original Petition, Plaintiffs assert four causes of action (strict liability, negligence, gross negligence and conspiracy) against two distinct

categories of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly, EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1] Defendants subsequently removed the action pursuant to this Court's diversity jurisdiction.

## II.  The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), reprinted in 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." Id. Two significant concerns accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. See id. at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[2] See Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

[2] The Program became effective on October 1, 1988.

3

Ct. 1477, 1478, 131 L. Ed. 2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345-6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. See Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . . before filing any de novo civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the

_____

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

4

Vaccine Court in order to pursue any vaccine-related claims at all.[4] Nonetheless, if an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[5] See 42 U.S.C. § 300aa-21(a).

### III.  Vaccine Manufacturers' Motion to Dismiss

In this case, it is undisputed that Plaintiffs have not filed a petition in the Vaccine Court in accordance with the Program. In their Motion to Dismiss, filed March 28, 2002, the Vaccine Manufacturers highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed. R. Civ. P. 12(b).[6] In response, Plaintiffs contend that they are not required to file a petition in the Vaccine Court because the children's injuries fall outside the scope of the Vaccine Act. Thus, the Court must initially determine

---

[4] There are a few exceptions. De minimis claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. See id.

[5] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(e). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

[6] Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(b)(3).

5

whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on behalf of their children ("Representative Claims"); or (2) their individual claims that are derivative of the children's injuries ("Individual Claims").

### Representative Claims Filed Against the Vaccine Manufacturers

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury or the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if the children sustained "vaccine-related injuries," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines 'vaccine-related injury' as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."7 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . . a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.8 Conversely, the Vaccine Manufacturers contend that thimerosal is not

---

7 The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitis B, haemophilii influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. See 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. See id. Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a prima facie case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. See id.

8 The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to the children. Rather, the Petition generally refers to vaccines that are "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3)

6

an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act, dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D.,

haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that the children's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that the children were injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

7

FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . .vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms," Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

_____

[9] A suspension is "a class of pharmacopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients,

8

Therefore, because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely "vaccine-related." See, e.g., Bruesewitz v. Sec'y of Health and Human Servs., No.99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Purnell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of claimant's injury). Clearly, the plain language of the Vaccine Act indicates that the children's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[13] Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for injuries to their children. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is GRANTED with respect to the Representative Claims asserted

---

preservatives, diluents and adjuvants).

[13] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine-related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, available at <http://www.hrsa.gov/osp/vicp/questds.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] ... must first file the claim with the [Program] before pursuing any other civil litigation").

against them. These claims are hereby DISMISSED WITHOUT PREJUDICE and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

### Individual Claims Against the Vaccine Manufacturers

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

### Vaccine Act Petition

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after receiving a vaccine. See 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. See Schafer, 20 F.3d at 7; Head v. Sec'y of Health and Human Servs., 26 Cl. Ct. 546, 547 n.1 (1992), aff'd, 996 F.2d 318 (Fed. Cir. 1993). In this case, none of the Plaintiffs allege to have

"suffered a relevant injury . . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs, 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an individual civil action for losses incurred by them."). Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

Loss of Consortium

In Sanchez v. Schindler, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. See id. at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. See id. At least two Texas courts have extended the Sanchez holding to cover situations involving a non-fatally injured child. See Roberts v. Williamson, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), petition for review filed (August 20, 2001); Enochs v. Brown, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or

11

parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); *Cf.* Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon the children's alleged injuries.

### Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by the children–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may

12

attempt to recover emotional distress damages is the bystander action. However, given the facts of this case, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex. 1998). Texas law requires the bystander's presence when the accident occurred and the contemporaneous perception of the accident. See id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal. Moreover, Plaintiffs did not even learn of the children's alleged mercury poisoning until the children's neurological problems were diagnosed by a physician, well after the suspect vaccines were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in

13

conformity with Texas law. On the other hand, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby DENIED IN PART with respect to Plaintiffs' Individual Claims for loss of consortium. The Court further ORDERS that Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are DISMISSED WITH PREJUDICE.

## IV.  Sigma's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002.[22] In that Motion, Sigma contends that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against itself and the other Chemical Manufacturers. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine manufacturer or administrator" prior to the filing c f a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma allegedly supplies thimerosal (a raw material) to the Vaccine Manufacturers, but does not manufacture or administer vaccines itself, Plaintiffs' claims against Sigma are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma's Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Those claims are hereby DISMISSED WITH

---

[22] On April 29, 2002, Sigma filed a second Motion to Dismiss and, alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded therein.

14

PREJUDICE. Regarding all other claims asserted by Plaintiffs against Sigma, its Motion to Dismiss is hereby DENIED.[15]

## V.  GDL's Motion to Dismiss

GDL (a Chemical Manufacturer) filed its Amended 12(b) Motion to Dismiss for Lack of Personal Jurisdiction on March 20, 2002. In response, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery of GDL. The Court finds that such jurisdictional discovery is indeed warranted. Accordingly, the Court hereby ORDERS that Plaintiffs have sixty (60) days from the date of this Order to conduct discovery pertaining solely to whether this Court may validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are ORDERED to file their Response to GDL's Motion to Dismiss. The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby DISMISSED WITHOUT PREJUDICE. Hence, the only claims against the Vaccine Manufacturers that Plaintiffs may properly assert in this forum are those seeking compensation for their individual loss of consortium. On the other hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers are subject to adjudication in this forum, with the exception of Plaintiffs' derivative claims for emotional distress and loss of services. GDL's Motion to Dismiss remains pending. Finally, this Order renders the Vaccine Manufacturers' Request for Oral Argument on their

---

[15] Sigma's Motion to Dismiss also urges for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma's Rule 19 request.

15

Motion to Dismiss MOOT. The Court will address all other pending concerns as soon as they are

ripe for consideration.

    IT IS SO ORDERED.

DONE this _2_ day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

16

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

KIRK BOTTER and DARLA BOTTER §
Individually and as Next Friend of
CODY WYATT BOTTER §

VS.                                              § CIVIL ACTION NO. 9:02 CV 181

AVENTIS PASTEUR, INC.,                §
Individually and as Successor-in-Interest
to CONNAUGHT LABORATORIES,   §
INC., et. al.

## ORDER

Plaintiffs Kirk Botter and Darla Botter bring this suit, individually and as legal

representative of their minor child, Cody Wyatt Botter, pursuant to Texas state law,

against Defendants Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Sigma Aldrich, Inc. and Sigma Aldrich

Corporation ("Sigma Inc."); the Dow Chemical Company ("Dow"); Eli Lilly and

Company ("Eli Lilly"); GDL International, Inc. ("GDL"); GlaxoSmithKline,

Individually and as Successor-in-Interest to  Smith Kline Beecham Corporation

("Smith Kline"); Merck and Company, Inc. ("Merck"); EM Industries, Inc. ("EM");[1]

Taylor Medical;  and Wyeth ("Wyeth") d/b/a Wyeth, Inc., Wyeth Laboratories,

---

[1]Plaintiffs have dismissed their claims against EM Industries, Inc.

1

Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth Lederle, Wyeth Lederle Vaccines, and Lederle Laboratories, and f/k/a American Home Products, Corp. Plaintiffs' complaint alleges the following causes of action: strict liability, negligence, gross negligence, fraud & conspiracy, and negligence in marketing. In their prayer for relief, the parents seek damages for loss of consortium of their child, Cody Wyatt.

Before the Court are the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline; Eli Lilly and Co.'s Motion to Dismiss or Stay Proceedings (doc. # 4) and its Amended Motion to Dismiss (doc. # 31); Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Alternative Motion to Stay Proceedings (doc. #33), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60); Aventis Pasteur Inc.'s Motion to Dismiss (doc. # 12); and Dow Chemical's Motion to Dismiss or Stay Proceedings and for Summary Judgment (docs. # 38 and # 39). After due consideration of the briefing and oral arguments of the parties and the relevant law, the Court finds that the motions are well taken in part and should be GRANTED IN PART.

## BACKGROUND

Plaintiffs claim their son, Cody Wyatt, was exposed to harmful levels of mercury received through injections of routine childhood vaccinations administered

2

to him by his pediatrician during the first eighteen months of his life, from April 16, 1998 through December 10, 1999. Plaintiffs allege that Cody now suffers, and in the future will continue to suffer, the toxic neurological effects of mercury poisoning as a result of certain Defendants'[2] negligent use of thimerosal preservative, containing mercury, in their vaccines. The Complaint, filed originally in the District Court of Angelina County, Texas, states that in the 1980's, the FDA proposed a regulation requiring the removal of thimerosal from all over-the-counter products and that in July of 1999 the American Academy of Pediatrics advised its members to use thimerosal-free vaccines due to concern regarding mercury poisoning.

Defendants removed the case from Angelina County claiming this Court has diversity and federal question jurisdiction under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-1, *et seq*.

Defendants assert the affirmative defense that the National Childhood Vaccine Injury Act ("The Act") prohibits a civil suit against a vaccine manufacturer or administrator for damages greater than $1,000 if the damages arise from a vaccine related injury or death and urge the Court to dismiss the case because Plaintiffs have not filed first with the U.S. Court of Federal Claims ("Vaccine Court") as required by the Act. In the alternative, Defendants request that we stay proceedings pending the

---

[2]The Complaint does not specify which of the Defendants to which it refers.

3

outcome of the suit before the Vaccine Court.[3]

## DISCUSSION

Claims Against Vaccine Manufacturers:

The National Childhood Vaccine Injury Act of 1986 sets forth a scheme for
compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11
(1988 ed., as amended 2002) .  Congress recognized that the "[v]accination of
children against deadly, disabling, but preventable infectious diseases has been one
of the most spectacularly effective public health initiatives this country has ever
undertaken. Use of vaccines has prevented thousands of children's deaths each year
and has substantially reduced the effects resulting from disease." H.R. Rep. No.
99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345.  However, while
most children enjoy measurable benefit from immunization programs, "a small but
significant number of have been gravely injured." *Knudsen v. Secretary of HHS*,
35 F.3d 543, 549 (Fed. Cir. 1994) (quoting H.R.Rep. No. 99-908, at 3, *reprinted in*
1986 U.S.C.C.A.N. 6344).

Congress,  therefore,  enacted the Act to streamline the process of seeking
compensation for vaccine-related injuries and to avoid the inconsistency, expense,
and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 269,

---

[3]While some Defendants state additional grounds for their motions to dismiss, pending
motions use the Vaccine Act provisions as a main basis for their motions to dismiss or to stay.

115 S.Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). The program established by the Act is designed to "ensure that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345- 6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby ... keep[s] manufacturers in the market." *Schafer v. Am. Cyanamid Co.*, 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires vaccine-related claims to be initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. *See Whitecotton*, 514 U.S. at 270, 115 S.Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; *Haggerty v. Wyeth Ayerst Pharm.*, 79 F.Supp.2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[4] *See* 42 U.S.C.

---

[4]A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

5

§ 300aa-11(2)(A); *Whitecotton,* 514 U.S. at 270, 115 S.Ct. at 1478 (explaining that

a claimant alleging an injury after the Vaccine Act's effective date "must exhaust

the Act's procedures ...before filing any de novo civil action in state or federal

court."). If a claimant seeks compensation in a state or federal court for

vaccine-related injuries prior to exhausting his or her remedies under the Vaccine

Act, the Court must dismiss the action. *See* 42 U.S.C. § 300aa-11(a)(2)(B). Simply

put, individuals who qualify as Program claimants must file petitions in the

Vaccine Court in order to pursue any vaccine-related claims at all.[5] If an individual

who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program

award, that individual may reject the award and pursue a traditional tort action in

any forum[6]. *See* 42 U.S.C. § 300aa-21(a).

---

[5] De minimis claims for less than $1,000, however, may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). The Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages be filed under the Program. *Id.*

[6] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(e). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

At the time of institution of this lawsuit the Plaintiffs had not filed a petition in the Court of Federal Claims. Plaintiffs' initial position was that they were not required to file originally in the Vaccine Court because the Vaccine Act does not require such a filing when the injury involved is not "vaccine-related." Plaintiffs have since informed the Court that they have filed a claim before the Vaccine Court in mid-December, 2002.

The term vaccine-related injury "does not include an illness, injury, condition or death associated with an adulterant or contaminant intentionally added to a vaccine." 42 U.S.C. § 300aa-33(5). Plaintiffs asserted that Cody's injuries were cause by thimerosal, which they claim is an "adulterant or contaminant" intentionally added to a vaccine and that, therefore, this lawsuit does not involve a "vaccine- related" injury as defined by the Vaccine Act. The Defendants, however, contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. In the face of overwhelming authority holding that thimerosal is a constituent material of the vaccines in question and is not an

———————————

7

adulterant or contaminant, Plaintiffs have all but abandoned their position.[7] The following cases have found injuries from thimerosal are "vaccine-related" under the Vaccine Act: *Liu v. Aventis Pasteur,* 219 F.Supp.2d 762 (W.D.Tex. 2002); *Owens v. Am. Home Prods. Corp.,* 203 F.Supp.2d 748 (S.D.Tex. 2002); *McDonald v. Abbott Labs,* 02-77 (S.D.Miss. Aug. 1, 2002); *Collins v. Am. Home Prods. Corp.,* 01-979 (S.D.Miss. Aug. 1, 2002); *Stewart v. Am. Home Prods. Corp.,* 02-427 (S.D.Miss. Aug. 1, 2002); *Strauss v. American Home Prod. Corp.,* 208 F.Supp.2d 711 (S.D.Tex. 2002); *Blackmon v. American Home Prod. Corp.,* Cause No. G-02- 179 (S.D.Tex. May 8, 2002); *O'Connell v. American Home Products Corp.,* 2002 WL 31455729 (S.D. Tex. May 7, 2002); *Wax v. Aventis Pasteur Inc.,* __ F. Supp.2d. __, 2002 WL 31444878 (E.D.N.Y. Oct. 30, 2002); *Bertrand v. Aventis Pasteur Laboratories, Inc.,* 226 F.Supp.2d 1206 (D. Ariz. 2002); *Leroy v. Secretary of Dept. of Health and Human Services,* 2002 WL 31730680 (Fed. Cl. Oct. 11, 2002).

Additionally, the Department of Health and Human Services has taken the position that thimerosal is not an adulterant or contaminant of vaccines. See "Statement of Interest" in *King ex rel King v. Aventis Pasteur, Inc.,* 210 F. Supp.2d 1201 (D. Or. 2002).

---

[7] See statement of Plaintiffs' counsel at the October 28, 2002 hearing held on motions, transcript of hearing at page 24.

Since the institution of this lawsuit and the filing of the motions under consideration here, Congress passed the Homeland Security Act of 2002 ("HSA"), which was enacted on November 25, 2002. The Homeland Security Act contains certain clarifying amendments to the Vaccine Act. According to § 1717 of the its provisions, the clarifying provisions became effective on the date of enactment and govern this case.[8]

The first amendment which directly affects this case is the clarification of the term "vaccine." This term is amended to include "all components and ingredients listed in the vaccine's product license application and product label." 42 U.S.C. §300aa-33(7) as clarified by § 1716 of the HSA.[9] It is clear that this definition would include thimerosal, if it was a component or ingredient listed in the vaccine's product application and product label. While the Court has no

_____

[8]"The amendments made by sections 1714, 1715, and 1716 shall apply to all actions or proceedings pending on or after the date of enactment of this Act, unless a court of competent jurisdiction has entered judgment (regardless of whether the time for appeal has expired) in such action or proceeding disposing of the entire action or proceeding."

[9]§ 1716. CLARIFICATION OF DEFINITION OF VACCINE.

Section 2133 of the Public Health Service Act (42 U.S.C.§ 300aa-33) is amended by adding at the end the following:
"(7) The term 'vaccine' means any preparation or suspension, including but not limited to a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin, developed or administered to produce or enhance the body's immune response to a disease or diseases and includes all components and ingredients listed in the vaccines's product license application and product label."

9

evidence of what was listed on the product application or label, given the fact that the FDA had apparently widely approved the use of thimerosal as a vaccine preservative since the 1930's, and required that preservatives be added to vaccines distributed in multi-use vials,[10] it seems logical to assume that thimerosal was listed on either the product application or label of the vaccines used in this case.

Even if this is not the case, in light of the overwhelming case law and the HHS's interpretation holding that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines, the Court finds that the claims of Cody Wyatt Botter against the Vaccine Manufacturers[11] concern a "vaccine related injury" and are covered by the provisions of the Vaccine Act.

Claims Against Non-Manufacturers:

Because of the recent enactment of the Homeland Security Act of 2002, Defendants Sigma-Aldrich and Eli Lilly join in the motion of the Vaccine Manufacturers. They do so based upon the second amendment to the Vaccine Act

---

[10] *See* C.F.R. § 610.15(a) and C.F.R. § 610.15.

[11] While Plaintiffs' Complaint does not specify which of the Defendants are "Vaccine Manufacturers," the following Defendants have identified themselves as such by their motion "Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. 12)":Merck and Company, Inc. ("Merck"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.;Aventis Pasteur, Inc. ("Aventis"); Smith Kline Beecham Corporation ("Smith Kline").

10

which clarifies the term "manufacturer."[12] This amendment shows that it is Congress' intention that the protections of the Vaccine Act cover distributors of components of vaccines. Section 1714 amends 42 U.S.C. §300aa-33(3) to define "manufacturer" to include any corporation, organization, or institution which manufactures, imports, processes, or distributes any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine.... The term "manufacture" means to manufacture, import, process or distribute a vaccine, including any component or ingredient of any such vaccine.

In addition Eli Lilly and Dow move to dismiss the Plaintiffs' claims against them, or in the alternative, for stay of the proceedings until the termination of the action before the Vaccine Court.[13] Dow also moves for summary Judgment. Both Lilly and Dow claim they did not manufacture or distribute the thimerosal or vaccines that allegedly caused Cody Botter's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and

---

[12]SEC. 1714. CLARIFICATION OF DEFINITION OF MANUFACTURER.
Section 2133(3) of the Public Health Service Act (42 U.S.C. 300aa-33(3)) is amended--
(1) in the first sentence, by striking "under its label any vaccine set forth in the Vaccine Injury Table" and inserting "any vaccine set forth in the Vaccine Injury table, including any component or ingredient of any such vaccine"; and
(2) in the second sentence, by inserting "including any component or ingredient of any such vaccine" before the period.

[13]While Lilly's motion is titled a Motion to Dismiss, it is converted to a motion for summary judgment under Rule 56 by the addition of evidence beyond the pleadings. Fed. R. Civ. P. 12(c).

11

stopped distributing thimerosal by 1992. *See* Affidavit of Scott Fishman, Exhibit "A" to Lilly's motion. Dow states it has not manufactured vaccines or been licensed to do so since 1978. See Dow's Motion to Dismiss, at page 3.

Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. also move to dismiss or, in the alternative, to stay, claiming they did not manufacture the vaccines or thimerosal at issue in this case.

These Defendants ask this Court to enter a no-liability judgment in their favor despite the Court's need to dismiss or stay the Plaintiffs' claims against the vaccine manufacturers until the Plaintiffs follow the exhaustion requirements of the Vaccine Act. In the alternative, these Defendants seek a dismissal of the claims against them or a stay of proceedings under the same posture as the vaccine manufacturers. Plaintiffs raise many of the same claims against these Defendants as against the vaccine manufacturer Defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy, and loss of consortium. To rule on the merits of some Defendants' substantive defenses would require a period of discovery allowing the Plaintiffs to investigate the Defendants' contentions. To allow the Plaintiffs to conduct discovery on some Defendants during the pendency of the minor's claims under the Vaccine Act against other

12

Defendants is inconsistent with Congress's goal of minimizing litigation costs. Therefore, the Court will stay any discovery until the termination of Plaintiffs' action before the Vaccine Court rather than allow discovery on some Defendants.

Kirk and Darla Botters' Individual Claims:

Kirk and Darla Botter bring claims individually and as next friend of their son. Individually, they seek recovery for all past and future costs associated with Cody's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled," may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Kirk and Darla Botter can only bring their claims as next friend of Cody, not their individual claims, in the Court of Federal Claims.

The Defendants move to dismiss the Botter's individual claims for damages because they are derivative of Cody's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while

13

the parents are representing Cody's' claims in the Court of Federal Claims.[14]

The Plaintiffs seek to proceed upon their individual claims during the pendency of their case before the Vaccine Court. It is clear that all of the individual claims of Kirk and Darla Botter, including the loss of consortium claim, are derivative of the claim of Cody Wyatt Botter. *Reagan v. Vaughn*, 804 S.W.2d 463, 466 (Tex. 1990); *Whittlesey v. Miller*, 572 S.W.2d 665, 667 (Tex. 1978); *Harris County v. White*, 823 S.W.2d 385, 388 (Tex.App.--Texarkana 1992, *no writ*); *Nash v. Selinko*, 14 S.W.3d 315, 317 (Tex.App.--Houston [14th Dist.] 1999, *pet. denied*). Since the underlying claim must proceed first in the Vaccine Court, judicial economy and concern for consistent results suggests the prudent course of action would be to allow the underlying cause before the Vaccine Court to terminate before proceeding with these individual claims.

The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751

---

[14]Tex. Civ. Prac. & Rem. Code § 16.003 (two-year statute of limitations in personal injury cases). The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the Defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. Tex. Civ. Prac. & Rem. Code § 16.001.

14

F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Kirk and Darla Botters' individual causes of action against all Defendants until Cody Wyatt Botter's claims have been administered in the Court of Federal Claims under the Vaccine Act.

<div align="center">CONCLUSION</div>

For the foregoing reasons, IT IS ORDERED that

the Vaccine Manufacturer Defendants' Rule 12(b) and 12(c) Motion to Dismiss (doc. # 12) brought by Aventis Pasteur, Merck, Wyeth, and Smith Kline is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Eli Lilly and Co.'s Motion to Dismiss (doc. # 4) and its Amended Motion to Dismiss (doc. # 31) are GRANTED IN PART as to the claims of Cody Wyatt

<div align="center">15</div>

Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Sigma-Aldrich Inc.'s Motion to Dismiss (doc. # 6), its Supplemental Motion to Dismiss (doc. # 34), and its second Supplemental Motion to Dismiss (doc. # 60) are GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and its Alternative Motion to Stay Proceedings (doc. #33) is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action;

Dow Chemical's Motion to Dismiss or Stay Proceedings (docs. # 38) is GRANTED IN PART as to the claims of Cody Wyatt Botter to be presented in the Court of Federal Claims, and their Alternative Motion to Stay is GRANTED IN PART as to Kirk and Darla Botter's individual causes of action. Dow's Motion for Summary Judgment (doc. # 39) is DENIED without prejudice to refiling upon a change of status of the case.

IT IS FURTHER ORDERED that Cody Wyatt Botter's claims against all Defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

16

IT IS FURTHER ORDERED that the Plaintiffs shall file a status report with this Court every six months from the date of this Order, informing the Court of the status of their petition filed on behalf of Cody Wyatt Botter in the Court of Federal Claims.

IT IS FURTHER ORDERED that this case be administratively closed pending the outcome of the Vaccine Court proceedings.

IT IS FINALLY ORDERED that any party may move for a lifting of the stay or other relief upon a change of circumstances.

SIGNED this _____13th_____ day of January, 2003.

JOHN HANNAH, JR.
UNITED STATES DISTRICT JUDGE

17

January 15, 2003

Re: 9:02-cv-00181

Notice sent to:

      Reich O Chandler
      George Edmond Chandler
      Charles S Siegel
      Charles Andrew Waters
      Rebecca Jo Reser
      John Ralph Gilbert
      Sandra L Phillips
      Erik Verne Larson
      Diana Lynn Panian
      Barclay A Manley
      Stephanie Ann Smith
      Claude Edward Welch
      Richard L Josephson
      Paul Reichert Elliott
      David Michael Macdonald
      Sudie Thompson
      Jennifer Dawn Liebhauser
      John Anthony Scully
      Marcos A Adrogue
      Michael R Klatt
      Susan E Burnett
      Daniel J Thomasch
      Lauren J Elliott
      Richard W Mark

JH-M

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2002 OC -8 AM 11: 52

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                    DEPUTY

PETE CARABINE and HEIDI CARABINE,
Individually and as Next Friend of Collin
Carabine,
                    Plaintiffs,

-vs-                                          Case No. A-02-CA-501-SS

AVENTIS PASTEUR, INC., et al.,
                    Defendants.

---

## ORDER

BE IT REMEMBERED on the ___8th___ day of October 2002 the Court reviewed the file in the

above-styled cause, specifically Defendant Eli Lilly & Company's Amended Motion to Dismiss

[#30], Plaintiffs' Response [#28] and Defendant's reply [#32]; Defendants Sigma-Aldrich

Corporation's and Sigma-Aldrich, Inc.'s Motion to Dismiss [#11] and Plaintiffs' Response [#21];

Defendants' Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Alternative Motion to Stay

Proceedings [#23]; Vaccine Defendants' Motion to Dismiss or Alternatively to Stay Proceedings

[#25] and Plaintiffs' Response [#33]; and Defendant Reliant Energy's Motion for Summary

Judgment [#31]. Having considered the motions and responses, the case file as a whole and the

applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Pete Carabine and Heidi Carabine, are Texas residents and the parents of

Collin Carabine, who is approximately six years old. *See* Petition, at ¶¶ 5; 25. They appear in this

lawsuit as individuals and as next friend of Collin Carabine. *Id.* at ¶ 5. The plaintiffs contend their

39

son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 25-27. Collin received the vaccines between November 6, 1995 and October 25, 1999.[1] *Id.* at ¶ 25. The plaintiffs further contend Collin's neurological damage was exacerbated by Defendant Houston Lighting and Power Company's ("Reliant") emission of air toxins such as mercury from power plants that burn fossil fuels near his residence. *Id.* at ¶¶ 31-38.

On July 3, 2002, the plaintiffs filed this lawsuit in the 201ˢᵗ Judicial District Court of Travis County, Texas, Cause No. GN202160. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Collin's injuries, Collin's pain and suffering, Pete and Heidi Carabine's lost wages and income, Pete and Heidi Carabine's emotional distress and loss of consortium, and the lost services Pete and Heidi Carabine could have provided to each other and Collin could have provided to them. *Id.* at 20. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant SmithKline Beecham Corporation, d/b/a GlaxoSmithKline, ("SmithKline") removed the case to this Court on

---

[1] The petition states Collin received the vaccines through October 25, "199." Because this typographical error prevents the Court from discerning the relevant date, the Court uses the year 1999 merely as a potential correct date.

-2-

August 9, 2002 after having obtained consent of all other served defendants.[2]   *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline, and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A).   Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Collin Carabine's injuries and, therefore, cannot be held liable.  Reliant moves for summary judgment on the merits.

<div align="center">**Analysis**</div>

I.     **The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-

---

[2] Defendant Reliant consented to the removal.  Reliant appears to be a Texas corporation, which would defeat diversity jurisdiction. In the notice of removal, SmithKline argues the plaintiffs' addition of Reliant as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction.  The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Reliant are based on different facts than their vaccine-related claims against the other defendants.  However, because this Court has no jurisdiction over Collin Carabine's primary causes of action, the plaintiffs have not moved to remand, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Reliant the same as the other defendants. This ruling is without prejudice to any party raising the issue or challenging this Court's jurisdiction after the stay in the case is lifted.

related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Collin Carabine's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Collin's injuries are not "vaccine-related" because they were caused not by the vaccines themselves

-4-

but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—
an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms
"adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of
the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have
ruled on the issue, including this one, has held injuries resulting from thimerosal contained in
vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home*
*Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal
are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause
No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203
F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human
Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of
vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an
adulterant, comports with common sense, since at the time Collin received the vaccines it was
impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act
claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been

---

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has
taken the position in court papers, it is not a regulation or other agency action entitled to judicial
deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,*
467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in
the category of "constituent materials," indicating the agency's view that preservatives are
components of vaccines, not adulterants. 21 C.F.R. § 610.15.

inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Collin Carabine's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Collin Carabine without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.     Claims against Non-Vaccine-Manufacturers

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Collin Carabine's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Amended Motion to Dismiss [#30], Ex. A ("Fishman Affidavit"), at 1.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the Vaccine Manufacturers until they follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available.").

The same reasoning holds true for Reliant's motion for summary judgment, to which the plaintiffs have not responded. Reliant contends it owed no duty to Collin preventing it from exposing him to normal power plant emissions because the risk of mercury poisoning to Collin was not foreseeable. *See* Reliant's Motion for Summary Judgment [#31], at 3-6. Reliant also argues the plaintiffs cannot establish Reliant's power plants caused Collin's injuries because the power plant emissions contain very low levels of mercury and no scientific studies have linked autism to power plant emissions. *Id.* at 7-10. These arguments on the merits obviously involve complicated factual determinations that this Court cannot make before allowing the plaintiffs a period of discovery

-7-

(despite the plaintiffs' failure to respond to Reliant's motion which, under the Local Rules, entitles the Court to grant the motion as unopposed). Additionally, the Court will not rule on the merits of the plaintiffs' claims against Reliant before determining if the claims are properly before this Court as an appendage to this cause of action. Accordingly, the Court will dismiss Collin Carabine's claims against all defendants rather than allow discovery on Eli Lilly and Reliant.

**III.    Pete and Heidi Carabine's Individual Claims**

Pete and Heidi Carabine bring claims individually and as next friend of Collin Carabine. Individually, they seek recovery for all past and future costs associated with Collin's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 20. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Pete and Heidi Carabine can only bring their claims as next friend of Collin, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Pete and Heidi Carabine's individual claims for damages because they are derivative of Collin's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Collin's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.

limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Pete and Heidi Carabine's individual causes of action against all defendants until Collin's claims have been administered in the Court of Federal Claims under the Vaccine Act.

        In accordance with the foregoing:

        IT IS ORDERED that Eli Lilly and Company's Motion to Dismiss [#4] is DISMISSED AS MOOT;

        IT IS FURTHER ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#25] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#25] is GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

---

42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s

Motion to Dismiss [#11] is GRANTED IN PART as to the claims of Collin Carabine to be presented

in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#23] is

GRANTED IN PART as to Pete Carabine and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Amended Motion to Dismiss

[#30] is GRANTED IN PART as to the claims of Collin Carabine to be presented in the Court of

Federal Claims, and DENIED IN PART as to Pete and Heidi Carabine's individual causes of action;

IT IS FURTHER ORDERED that Defendant Reliant Energy, Inc's Motion for Summary

Judgment [#31] is DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Collin Carabine

against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are

STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court

on June 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Collin

Carabine in the Court of Federal Claims.

SIGNED this the _8th_ day of October 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

03 FEB 27  AM 10: 07

U.S. DISTRICT COURT
N.D. OF ALABAMA

JIMMY CARR and SUSAN CARR,    )
                             )
        Plaintiffs,          )
                             )
vs.                          )        CV 02-J-3096-NE
                             )
AVENTIS PASTEUR, INC., et al.    )
                             )
        Defendants.          )
                             )

ENTERED
FEB 2 7 2003

## ORDER

Pending before the court are defendant Eli Lilly Company's motion to dismiss
(doc. 9), defendant Sigma Aldrich Inc.'s motion to dismiss, or in the alternative, motion
to stay (doc. 11), and defendants Aventis Pasteur Inc., SmithKline Beecham Corporation
d/b/a GlaxoSmithKline, Merck & Co., Inc., and Wyeth's motion to dismiss (doc. 7).

Plaintiffs Jimmy and Susan Carr have brought this action to recover damages for
loss of consortium and services on the basis of defendants' negligence, wantonness,
fraud, conspiracy and a violation of the Alabama Extended Manufacturers Liability
Doctrine (AEMLD), which plaintiffs allege caused injury to their child, Daniel Carr.
Daniel Carr allegedly suffers from an autism-like disorder as a result of taking a
childhood vaccine containing thimerosal, a chemical compound containing mercury,
which is used as a preservative in vaccines thereby enabling the manufacturers to supply
vaccines in multi-dose batches rather than in single units.

Defendants asserts that plaintiffs' claims are due to be dismissed pursuant to the

32

Vaccine Act. 42 U.S.C. § 300aa. The Vaccine Act provides a compensation system for injuries resulting from the administration of a childhood vaccine. *Id.* The intent behind this act was to limit litigation expenses for vaccine manufacturers thereby encouraging vaccine development. *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2 (1st Cir. 1994). Where an individual alleges vaccine related injuries he may bring a claim before a special master appointed by the United States Court of Federal Claims. An individual solely must prove that the vaccine caused his injuries in order to obtain a recovery. Subsequently, this individual may reject any recovery that he obtained and file a civil lawsuit against the manufacturers. 42 U.S.C. § 300aa-21.

Defendants assert that plaintiffs' claims are due to be dismissed because they have failed to first file a petition for relief before the special master/vaccine court. When an individual sustains vaccine-related injuries and files a civil lawsuit against a vaccine manufacturer alleging damages in excess of $1,000, he or she must first file a petition with the special master/vaccine court. 42 U.S.C. § 300aa-11(a)(2)(A); *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995). The court is required to dismiss any action by a plaintiff who fails to file a petition before filing a civil lawsuit. 42 U.S.C. § 300aa-11(a)(2)(B). However, only the claims of individuals (or the legal representatives of those individuals) who have sustained vaccine-related injuries are barred by this requirement. 42 U.S.C. § 300aa-11a(9) and 11b(1)(A).

This action is not due to be dismissed on these grounds. Parents bringing a civil

2

action, on their own behalf, for damages to themselves, arising from injuries to their child, need not first file a petition before the vaccine court. *Schafer*, 20 F.3d at 6; *Owens v. American Home Products*, 203 F.Supp.2d 748, 756 (S.D. Tex. 2002). Parents, suing for their own injuries, are not even eligible to file a petition before the vaccine court. *Id.*; 42 U.S.C. § 300aa-11(a)(9).

The court finds that plaintiffs may have viable claims for fraud, conspiracy, loss of services of the child and AEMLD. Therefore, defendants' motions to dismiss those claims are DENIED. Plaintiffs' claim for negligence/wantonness merges into the claim for AEMLD as both are premised upon the same underlying allegations and theory. *Spain v. Brown & Williamson Tobacco Corp.*, 230 F.3d 1300, 1310 (11th Cir. 2000). In essence, under the facts here, plaintiffs' claim for negligence/wantonness is the same as that for AEMLD. *Id.* Defendants' motions as to plaintiffs' claim for negligence/wantonness are GRANTED and the claim is DISMISSED WITH PREJUDICE.

Plaintiffs' claim for loss of consortium is dismissed by this court as no cause of action exists under Alabama law for that type of claim. The Alabama Supreme Court has specifically found that the "loss of the society of a child...cannot form the element of recoverable damages." *Hannon v. Duncan*, 594 So.2d 85, 93 (Ala. 1992). Defendants' motions as to plaintiffs' claim for loss of consortium are GRANTED and that claim is DISMISSED WITH PREJUDICE.

A parent's claim for loss of services is derivative of the child's claim for personal

3

injury under Alabama law. *Owens v. Lucas*, 604 So.2d 389 (Ala. 1992).   As this is a

derivative claim, it may not proceed at this juncture because Daniel Carr's injury is

currently being adjudicated in the Vaccine Court.  Upon the disposition of the child's

claim, the parents' claim for loss of services may proceed.

Additionally, plaintiffs may not recover any damages for their child's medical

expenses resulting from the alleged injuries from the vaccine.  Plaintiffs cannot make a

double recovery for damages.  Daniel Carr has already made a claim before the Vaccine

Court for his medical expenses.  Daniel Carr may file a civil action following the

adjudication of his claims in Vaccine Court if he is unsatisfied with any recovery

obtained.  Plaintiffs' attempt to recover medical expenses through this action is nothing

more than an attempt to circumvent the bar put in place by the Vaccine Act requiring a

child to first seek recovery from the Vaccine Court for injuries related to a vaccine.

However, it is this court's opinion, that the plaintiffs' remaining claims before this

court are due to be stayed.  "[T]he power to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket with economy

of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.*,

299 U.S. 248, 254, 57 S.Ct. 163, 166 (1936).  However, the court's power to stay an

action should not be abused and any stay should be narrowly tailored so as not to unduly

prejudice the parties. *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198,

203 n.6 (5th Cir. 1985).

4

There are several factors which support the imposition of a stay in this action. In order to recover on their claims, plaintiffs must establish that defendants caused the injuries sustained by their son. The general issue of whether thimerosal causes autism-like disorders is currently pending before the vaccine court. Autism General Order #1, United States Court of Federal Claims, Office of Special Masters, July 3, 2002. If it is found to cause autism or autism-like disorders, it will then be determined if this conclusion can be applied to individual cases before the Vaccine Court, including Daniel Carr's. *Id.* at 3. To reach this conclusion, a number of experts will be retained. In essence, the parties will be required "to conduct a parallel inquiry, on a different timetable, to determine plaintiffs' right to recover." *Case v. Merck & Company*, CV-02-1779, 2003 U.S. Dist. Lexis 770 (E.D. La. Jan. 17, 2003). This would be duplicative, wasteful and inefficient.

Finally, this court notes that the evidence does not demonstrate that a stay of limited duration will cause undue prejudice to the plaintiffs in this action. Therefore, a stay in this action is due to be granted in the interest of justice. In analogous situations to that present before this court, other courts have similarly ordered the implementation of stays. *Case v. Merck, et al.*, No. 02-1779, 2003 U.S. Dist. Lexis 770 (E.D. La. Jan. 17, 2003); *Russak v. Aventis Pasteur*, No. A-02-CA-480-SS, at 8 (W.D. Tex. Sept. 9, 2002); *Owens v. American Home Products Corporation*, No. G-02-185, at 1 (S.D. Tex. July 12, 2002).

5

Based upon the foregoing rationale, defendants' motion to stay is GRANTED. It is further ORDERED that plaintiffs shall file a status report with this court every six months from the date of this order informing the court of the status of Daniel Carr's petition in the vaccine court. This action is STAYED pending the outcome of the Vaccine Court proceedings.

DONE and ORDERED this the ___27___ day of February, 2003.

Inge P. Johnson
U.S. District Judge

6

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.               :          MAY TERM, 2002
                                                                       NO. 0952

               VS.                                     :

AVENTIS PASTEUR, INC., ET AL.            :          CONTROL NO. 100957

## ORDER

AND NOW, this 16th day of December, 2002, the Defendants' Preliminary Objections are

Sustained.  This case is Discontinued pursuant to the dictates of the National Childhood Vaccine

Injury Act.

                                        BY THE COURT:


                                        _____
                                        DiNUBILE, JR., J.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.        :        MAY TERM, 2002
                                                          NO. 0952

            VS.                                  :

AVENTIS PASTEUR, INC., ET AL.      :        CONTROL NO. 100957

MEMORANDUM OF LAW

BY: HON. VICTOR J. DiNUBILE, JR.

    The issue presented in this case is whether plaintiffs' cause of action must be discontinued
because of failure to exhaust remedies provided to the plaintiff under the National Childhood
Vaccine Injury Act, 42 U.S.C. Secs. 300 aa-1 to 300 aa-34 (1994 & Supp. V 1999) (hereinafter
referred to as the "Vaccine Act" or "Act"). This Court agrees with the defendants.
Consequently, this case is Dismissed and Discontinued.

    The parents of minor plaintiff primarily assert products liability claims against various drug
companies for injuries arising from mercury poisoning from certain vaccines administered to him
during the first 18 months of his life (May, 1994 - December, 1995). Plaintiffs' Complaint
maintains that the substance Thimerosal, used as a preservative in these vaccines, contained
mercury which caused an adverse reaction and injury to their son. It is not in dispute that the
vaccines used by the minor child in this case come within the purview of the Vaccine Act. The
Vaccine Act, enacted by Congress, provides that all such causes of action resulting in harm from
the use of certain enumerated vaccines must initially be brought before a specially constituted
court of the United States Court of Federal Claims (hereinafter referred to as Vaccine Court).

The Act unequivocally provides that parties must first exhaust their remedies under this Act before commencing suit in either state or federal court. The Act further directs the state or federal courts to dismiss actions not first pursued under the Vaccine Act. The Act, however, provides an exception to the exhaustion requirement where the vaccine(s) in question contained a "contaminant" or "adulterant".

Plaintiffs maintain suit is proper here under the exception because the preservative Thimerosal constitutes a contaminant or adulterant. This Court disagrees. All the case law contradicts the plaintiffs' position. This Court adopts the well-reasoned opinions of the Vaccine Court and federal district courts that the preservative Thimerosal, contained in the vaccines, is not a contaminant or an adulterant. Leroy v. Secretary of Department of Health and Human Services, No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. October 11, 2002); Blackmon v. American Home Products Corp., No. 6-02-179, slip op. (S.D. Tex. May 8, 2002); Owens v. American Home Products Corp., 203 F.Supp. 2d 748 (S.D. Tex. May 7, 2002); O'Connell v. American Home Products Corp., No. 6-02-184, slip op. (S.D. Tex. May 7, 2002). The purpose of the Act is to provide a uniform federal no-fault system with consistent venue to adjudicate claims of persons seeking redress for injuries stemming from adverse reactions from the use of the enumerated vaccines. The contaminant/adulteration exception would apply if some foreign substance, not ordinarily contained in the vaccine, found its way into the drug causing harm. But where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court. The above cited federal authorities, after an analysis of the purpose of the Act coupled with a medical/general dictionary review of the words "contaminant" and "adulterant", concluded that the Thimerosal preservative is not

2

encompassed in the exception since it is a component of the vaccine. This Court agrees with their rationale.

The plaintiffs also contend that in any event, even if the Court should agree with the federal authorities that the exception does not apply, plaintiff still can maintain the suit in state court because they do not "qualify" as litigants under the Act. The Act requires that all actions must be commenced by litigants within 36 months of the time in which adverse symptoms first occur. The symptoms first manifested themselves in the minor plaintiff in December of 1995. Since no action was ever brought in Vaccine Court, plaintiffs argue the Act does not apply to them and therefore can maintain the within suit in state court. This Court respectfully disagrees. One cannot simply wait out the three year limitations provision and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in district court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress. See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

Plaintiffs also maintain that the requirement of first having to commence an action in the Vaccine Court is unconstitutional. No authority is cited in support of this proposition. The Vaccine Act does not preclude the bringing of a suit in federal or state Courts. It merely provides that suit must first be maintained in the special Court. If the litigant exhausts remedies there and

3

is dissatisfied with the results, then the Act does not preclude subsequent tort actions being brought in federal or state Courts[1]. Weighing the purpose of the Act to have claims quickly, expeditiously and consistently resolved on a no-fault basis by first requiring litigants to proceed in Vaccine Court, certainly does not constitute such an onerous burden as to render the Act unconstitutional.

> The preclusive application of the Act, which prevents plaintiff in her representative capacity from pursing a civil action does not represent an "absurd or unjust result," that would permit us from disregarding its plain language. *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1993). It is, instead, consistent with the stated purpose of avoiding the public harm that would result from either a loss or decline in the production of necessary vaccines. Simply put, Congress wants victims to first try the Program with the expectation that its results will be accepted. Unless a petitioner is required to fully adjudicate a claim, pursuant to the Program's expedited procedures, Congress's objectives will not be realized. McDonald v. Lederle Labs, supra., 775 A.2d 528, 534-535.

Consequently, this case is dismissed/discontinued pursuant to the provisions of the Vaccine Act.[2]

BY THE COURT:

DATED: December 16, 2002

DiNUBILE, JR., J.

---

[1] The Act provides the tolling of the statute of limitations during the pendency of the action before the Vaccine Court.

[2] Plaintiffs also argue that they as parents do not qualify under the Act since they seek medical expenses on their own behalf. They assert that this action for medical bills is not covered under the Vaccine Act. To the contrary, the Act permits reimbursement for medical bills incurred by or on behalf of a minor.

4



IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT - 2 2003

CLERK, U.S. DISTRICT COURT
By _____
            Deputy

BENNETTA CHILES, ET AL.,       §
                               §
          Plaintiffs,          §
                               §
VS.                            §    NO. 4:03-CV-802-A
                               §
AMERICAN HOME PRODUCTS         §
CORPORATION, ET AL.,           §
                               §
          Defendants.          §

<u>ORDER</u>

Came on for consideration the motion of defendants Abbott

Laboratories,[1] SmithKline Beecham Corporation, Aventis Pasteur,

Inc., Merck & Co., Inc., and Wyeth[2] (collectively "vaccine

defendants") and the motion of defendant Eli Lilly & Company

("Lilly") to dismiss.  The court, having considered the motions,

the response of plaintiffs, Bennetta Chiles, individually and as

next friend of Toni Chiles, a minor; Holly Blackburn and Mark

Blackburn, each individually and as next friends of Mitchell Reed

Blackburn, a minor; Lori M. Reed, individually and as next friend

---

[1] Abbott Laboratories says that it was misnamed as "Abbott
Laboratories, Inc."

[2] Wyeth says that it has been incorrectly named as Wyeth
Laboratories, Wyeth-Ayerst, Wyeth-Ayerst Laboratories, Wyeth
Lederle, Wyeth Lederle Vaccines, and Lederle Vaccines.  Mot. to
Dismiss at 1 n.1.  The petition names American Home Products,
doing business as Wyeth, Wyeth Laboratories, Wyeth-Ayerst, Wyeth-
Ayerst Laboratories, Wyeth Lederle, Wyether Lederle, Wyether
Lederle Vaccines, and Lederle Laboratories.  Pls.' Original Pet.
at 5, ¶ 3.05.  The court considers Wyeth to be the intended
defendant.

of Ryan Joseph Reed, a minor; and Krissy Fagan and Carl Fagan, each individually and as next friends of Bradley Kole Fagan, a minor, the replies, the record, and applicable authorities, finds that the motions should be granted as set forth herein.

On June 30, 2003, plaintiffs filed their original petition in the 96th Judicial District Court of Tarrant County, Texas. The action was removed by notice of removal filed July 21, 2003. Plaintiffs contend that they and their minor children were injured as a result of the children having received vaccines containing Thimerosal.[3] They identify causes of action for "strict liability--design defects," "strict liability--marketing defects," breach of common law implied warranties, negligence, violations of the Texas Deceptive Trade Practices--Consumer Protection Act, and assault.[4] They seek compensatory and punitive damages, including for the parent plaintiffs compensation for medical expenses, loss of earning capacity, loss of companionship and society, loss of consortium, and mental anguish.

Movants urge that plaintiffs' claims are barred under the National Childhood Vaccine Injury Compensation Act, 42 U.S.C.

---

[3] Plaintiffs' petition states: "The minor Plaintiffs were administered [Thimerosal] in their childhood vaccinations." Original Pet. at 15, ¶ 9.01.

[4] Contrary to the assertion in plaintiffs' brief, they have not pleaded a claim for fraud. Pls.' Br. at 19-20.

§§ 300aa-1 to 300aa-34 (the "Vaccine Act" or "Act").  They

further argue that the claims of the parent plaintiffs are barred

by state law.

Plaintiffs bring claims individually and on behalf of their

minor children.  Despite their contention otherwise, it is clear

that all of the claims asserted on behalf of the minor plaintiffs

are for "vaccine-related injury."  Owens ex rel. Schafer v. Am.

Home Prods., 203 F. Supp. 2d 748, 754-56 (S.D. Tex. 2002).

Therefore, the claims of the minor children must be pursued in

accordance with the Vaccine Act.  42 U.S.C. § 300aa-11(a)(2)(A).

Plaintiffs admit that they have not yet met all the requirements

of the Vaccine Act to pursue the minor plaintiffs' claims here.[5]

Accordingly, the claims asserted on behalf of the minor

plaintiffs must be dismissed.  42 U.S.C. § 300aa-11(a)(2)(B).

The court recognizes that parents are liable for medical

expenses incurred during the minority of their children; thus, a

cause of action for such expenses belongs to the parents.  Walsh

v. Hershey, 472 S.W.2d 954, 957-58 (Tex. Civ. App.--Fort Worth

1971, writ ref'd n.r.e.).  However, because the Vaccine Act

provides for payment of expenses incurred on the minor child's

behalf, such as medical expenses, these claims must also be

dismissed.  See Strauss v. Am. Home Prods. Corp., 208 F. Supp. 2d

---

[5] Plaintiffs say only that certain child plaintiffs have
exhausted their administrative remedies and are eligible to opt
out of the vaccine court proceedings.  Pls.' Br. at 9.

3

711, 715 n.8 (S.D. Tex. 2002); Benedict v. Sec'y of Dep't of
Health & Human Servs., 29 Fed. Cl. 587, 591 (Fed. Cl. 1993).

The Vaccine Act does not otherwise prevent the parent
plaintiffs from pursuing their other claims. Owens, 203 F. Supp.
2d at 756-57. The question is whether those claims are barred
under Texas law. In this regard, movants urge that the parent
plaintiffs have no cognizable claims for mental anguish,
emotional distress, loss of consortium, or their own lost wages.

Texas law is clear that the parent plaintiffs do not qualify
as bystanders for purposes of mental anguish or emotional
distress claims. They were not in a "zone of danger" and did not
perceive the type of shocking accident contemplated by the
bystander theory of recovery. See United Servs. Auto. Ass'n v.
Keith, 970 S.W.2d 540, 542 (Tex. 1998). "Rather, [the parent
plaintiffs] witnessed the routine vaccination of their children
and the children's subsequent medical problems that are allegedly
linked to thimerosal." Owens, 203 F. Supp. 2d at 758. Thus, the
bystander theory is inapplicable. Id. And, as for the loss of
consortium claim, the Texas Supreme Court has ruled that such a
claim does not exist. Roberts v. Williamson, 111 S.W.3d 113
(Tex. 2003). Finally, Texas does not provide for recovery of a
parent's lost earnings as a result of caring for an injured
child. See Gulf States Utils. Co. v. Reed, 659 S.W.2d 849, 853
(Tex. App.--Houston [14th Dist.] 1983, writ ref'd n.r.e.).

<center>4</center>

The court ORDERS that the motions to dismiss be, and are hereby, granted; that the claims of the minor plaintiffs, Toni Chiles, Mitchell Reed Blackburn, Ryan Joseph Reed, and Bradley Kole Fagan, as asserted through their respective next friends, against the vaccine defendants and Lilly, and the claims of Bennetta Chiles, Holly Blackburn, Mark Blackburn, Lori M. Reed, Krissy Fagan, and Carl Fagan ("adult plaintiffs"), individually, for recovery of medical expenses against the vaccine defendants and Lilly be, and are hereby, dismissed without prejudice; and, that all other claims asserted by the adult plaintiffs, individually, against the vaccine defendants and Lilly be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to the disposition of these claims.

SIGNED October 2, 2003.

JOHN McBRYDE
United States District Judge

5

# THE STATE OF NEW HAMPSHIRE
## Northern District of Hillsborough County
### 300 Chestnut Street
### Manchester, NH 03101 2490
### 603 669-7410

MICHAEL J CONNOLLY ESQ
HINCKLEY ALLEN & SNYDER LLP
28 STATE STREET
BOSTON MA 02109

- 01-C-0663 Mark Cyr, et al.  v.  Aventis Pasteur, Inc., et als

You are hereby notified that on August 8, 2003
the following was entered in the above matter:

RE: ORDER OF COURT:

Copy of order enclosed.

__8/11/2003__          __/s/ John Safford__
    Date                   Clerk of Court

cc: D. Michael Noonan, Esq.         Bruce W Felmly, Esq.
    Debra W. Ford, Esq.             James Q Shirley, Esq.
    Lisa Snow Wade, Esq.            Ronald J Lajoie, Esq.
    Karen F Wolf, Esq.             William D Pandolph, Esq.
    Frank W. Beckstein, III, Esq.   Kenneth G Bouchard, Esq.
    Sarah B. Knowlton, Esq.         Daniel J. Thomasch, Esq.
    Richard W. Mark, Esq.          Lauren J. Elliot, Esq.
    Christopher H.M. Carter, Esq.

AOC Form SUP150 (Rev. 05/09/2001)



RECEIVED
AUG 13 2003
HINCKLEY, ALLEN &
SNYDER

STATE OF NEW HAMPSHIRE

HILLSBOROUGH, SS                                           SUPERIOR COURT
NORTHERN DISTRICT                                          2003

Docket No. 01-C-663

Mark and Julie Cyr *et al.*

v.

Aventis Pasteur *et al.*

## ORDER

The defendants, Aventis Pasteur *et al.*, filed this motion to dismiss pursuant to

section 300aa-11 (a)(2)(B) of the National Childhood Vaccine Injury Act ("Vaccine

Act"). The plaintiffs, Mark and Julie Cyr, object to the motion. For the following

reasons the defendants' motion to dismiss is GRANTED and the court will stay the

proceedings until all administrative remedies are exhausted.

The plaintiffs first filed this case in Hillsborough County Superior Court in

October 2001. On November 14, 2001 the defendants removed the case to Federal

District Court arguing that the National Vaccine Injury Compensation Program ("NVIC")

conferred federal question jurisdiction. The New Hampshire Federal judges recused

themselves and the case was subsequently transferred to the District of Rhode Island.

After oral argument, the case was remanded back to Hillsborough County Superior Court.

The plaintiffs are now before this court with this class action suit seeking compensation

for injuries allegedly sustained as a result of thimerosal poisoning and the defendants

have moved to dismiss.

The defendants argue that the plaintiffs' claims must be dismissed because the plaintiffs have failed to pursue their claims to conclusion through the NVIC and obtain a compensation award or other equitable judgment under the Vaccine Court as required by the Vaccine Act. The plaintiffs argue that their claims are not subject to the Vaccine Act because the toxic exposures at issue are not vaccine related. The plaintiffs allege that thimerosal is not a vaccine but instead is an "adulterant or contaminant" added to the vaccines and injuries caused by "adulterant or contaminants" do not fall within the NVIC. Next, the plaintiffs argue that due to the jurisdictional minimum and the statute of limitations, they are not qualified to bring the claim under the Vaccine Act. Finally, the plaintiffs argue that the manufacturers of thimerosal do not come within the strict confines of the NVIC and, therefore, the manufacturers should not be dismissed from the state case.

The Vaccine Act states in pertinent part,

> A proceeding for compensation under the Program for a vaccine-related injury or death shall be initiated by service upon the Secretary and the filing of a petition containing the matter prescribed by subsection (c) of this section with the United States Court of Federal Claims.

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988...

42 U.S.C. § 300aa-11(a)(1), (2).

The court will first consider whether the alleged injuries from thimerosal are vaccine related and fall within the jurisdiction of NVIC. The same issues and arguments presented here have been fully litigated and rejected by a number of courts. See Leroy v.

2

<u>Secretary of the Department of Health and Human Services</u>, 2002 WL 31730680 (2002)

(citations omitted). In <u>Leroy</u> the plaintiff alleged that thimerosal is an adulterant or

contaminant and is not a constituent material as defined by the Federal Regulations. <u>See</u>

<u>Leroy</u>, at *1. The court in <u>Leroy</u>, similar to many other courts, relied on the reasoning set

forth in <u>Owens v. American Home Products Corp.</u>, 203 F. Supp.2d. 748 (S.D. Tex. 2002)

as well as its own review of the legislative history and statutory interpretation, and

determined that thimerosal is a vaccine-related injury and therefore falls within the

jurisdiction of the NVIC.[1] <u>Id</u>. In this case the plaintiffs have failed to assert any new

arguments or distinguish this case from the number of other cases which hold that

thimerosal related injuries fall within the NVIC. Accordingly, the court finds that the

type of injury alleged in this case is within the jurisdiction of the Vaccine Act.

     Next, the plaintiffs assert that their claim in not within the Vaccine Act since they

are requesting equitable relief and do not meet the NVIC $1000 minimum damages

requirement. The defendants disagree and assert that the plaintiffs seek monetary relief

in many areas and therefore must comply with the procedure set forth in Vaccine Act.

     In their writ the plaintiffs request for relief states in part:

> The court submits an order directing that a court controlled
> fund be created from payments from Defendants that would
> provide for epidemiological, toxicological and clinical
> studies to be conducted on this group of mercury overdosed
> babies, to be designed and conducted by scientists selected
> for their independence from pharmaceutical industry
> control; ongoing medical care, evaluation, testing,
> diagnosis and treatment for the mercury overdosed babies,

---

[1]Other Federal courts have applied the same reasoning or found the same conclusion as that in <u>Owens</u>. <u>See</u>
<u>Liu v. Aventis Pasteur</u> 2002 WL 31007709; <u>Chesklwwicz v. Aventis Pasteur, Inc.</u>, 2002 WL 1880524;
<u>Collins v. American Home Products Corp.</u>, No. 01-979 (2002); <u>McDonald v. Abbots Laboratories</u>, No. 02-
77 (2002); <u>Stewart v. American Home Products</u>, 02-427 (2002), <u>Holder v. Abbott Laboratories</u>, Slip Op.
02-148 (2002)

3

as the court determines appropriate after hearing from
experts for all parties.

See Pl. Writ ¶140 (C). The plaintiffs also state in the writ that "this lawsuit may also

seek money damages, at some future point, for the class members injured by the

injections of toxic mercury, and a prayer for economic and non-economic damages." See

id. at ¶3.

This court finds it is evident that the plaintiffs relief requires a monetary payment

that exceeds that $1000 jurisdictional requirement of the Vaccine Statute. "In order to

bring a negligence action, the plaintiff must allege damages." See 5 N.H. Practice § 94.

"Without damages a *prima facie* case of negligence does not exist." See id. The term

'damages' is "the sum of money which the law awards or imposes as pecuniary,

compensation, recompense, or satisfaction for an injury done or a wrong sustained as a

consequence a tortuous act." See 22 Am. Jur. 2d Damages, § 1. The plaintiffs filed a

negligence civil action, not an equitable action, against the defendants, the plaintiffs,

therefore, must request monetary damages in order to have a cause of action in the state

court.

Here, the plaintiffs attempt to mask the monetary relief sought as equitable relief;

however, the plaintiffs' case could not go forward in state court if the relief sought was

not monetary in nature. The court finds that the request for damages in the form of a

"fund" requires the court to award a monetary sum well over the $1000 minimum.

Accordingly, the court holds that the plaintiffs' have pled the jurisdictional minimum

amount and meet the Vaccine Act requirements in that regard.

The plaintiffs argue, in the alternative, that even if the court finds that this cause

of action falls with the NVIC, the plaintiffs are not qualified to file a petition under the

4

Act. Specifically, the plaintiffs allege that they are barred by the Act's statute of limitations and, therefore, the Vaccine Act permits the plaintiffs to proceed in state or federal court. The defendants argue that the issue of whether the statute of limitations applies to this case is a decision for the Vaccine Court, not this court.

This court agrees that the issue of whether the statute of limitation applies is an issue for the vaccine court. To rule on the merits of whether the statute of limitations applies would require an evidentiary hearing and time for discovery allowing the parties to investigate medical issues and review medical records. This additional hearing would cause unneeded litigation and additional costs therefore, the court will not allow the plaintiffs to conduct discovery in the state court until the parties have complied with the Vaccine Act. See Liu v. Aventis Pasteur, Inc., 219 F. Supp. 2d 762, 767.

Next, plaintiffs allege that manufacturers such as defendant Eli Lilly ("Lilly"), do not come within the confines of NVIC and therefore claims against Lilly should not be dismissed. Specifically, the plaintiffs argue that Lilly is a thimerosal manufacturer, not a vaccine manufacturer, therefore under a plain reading of the statute, the Vaccine Act does not apply to Lilly and the action is not barred. See Toussaint v. Merck, 2003 WL 21406178. Lilly argues that courts across the country have analyzed similar claims and have extended the protections of the Vaccine Act to claims against thimerosal manufacturers and suppliers.

The plaintiffs' argument relies on the plain language of the statute and the decision in Toussaint. The Vaccine Act states:

> No person may bring a civil action for damages in an amount greater that $1000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal Court...

See 42 U.S.C. § 300aa (a) (2)(A). In Toussaint, all of the claims against the vaccine manufacturers were dismissed without prejudice for lack of jurisdiction. Eli Lilly, the thimerosal manufacturer defendant was required to remain a defendant in the state case. See id. The court stated,

> Eli Lilly (as manufacturer of thimerosal) is not a vaccine "manufacturer" as that term is defined by the Vaccine Act…the tort ban set forth in the Vaccine Act is inapplicable to the Minor plaintiff's claims asserted against Eli Lilly in this lawsuit.

See id.

On the other hand, the defendants rely on a number of state and federal courts which have dismissed cases against all defendants, including thimerosal manufacturers, and hold that the NVIC has jurisdiction over the entire case. See Def. Memo Exh B. The court is aware that many of the decisions cited by the defendants do not conduct an analysis of the issue of whether thimerosal manufacturer should be barred from state or federal claims under the Vaccine Act. See Def. Memo Exh. B. However, in Lui, although the court did not decide whether thimerosal manufacturers were included under the Vaccine Act, the court conducted a separate analysis addressing claims against non-vaccine manufacturers. See Lui v. Aventis Pasteur, Inc., 219 F. Supp2d. 762, 768. The Lui court decided that to allow a separate case against non-vaccine manufacturers to go forward during the pendency of claims in the Vaccine Court "would be wholly inconsistent with Congress's goal of minimizing litigation costs…" as a result that, the court dismissed the claims against the thimerosal manufacturers. See id.

This court agrees with the policy decision set forth in Lui. It would be an inefficient use of the courts resources and would not promote judicial economy if the

6

state court were to proceed on an action against the non-vaccine manufacturers while the same suit was occurring in the administrative courts.

Accordingly, the defendants' motion to dismiss is GRANTED and the court will stay the proceedings until the parties have exhausted all of the administrative remedies required under the Vaccine Act.

So Ordered.

Date: August, 2003

James J. Barry, Jr.
Presiding Justice

7

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 02-CV-11664-RGS

ALLISON DAIGLE, et al.

v.

AVENTIS PASTEUR, INC. f/k/a
CONNAUGHT LABORATORIES, INC., et al.

MEMORANDUM AND ORDER ON
MOTION TO REMAND AND MOTIONS TO DISMISS

June 13, 2003

STEARNS, D.J.

On May 31, 2002, plaintiff parents filed this Complaint in the Massachusetts Superior

Court alleging that their minor children had been injured by exposure to vaccines containing

the preservative thimerosal. The defendants consist of most of the vaccine manufacturers

in the United States, the New England Medical Center, and two doctors who administered

the vaccines. The Complaint asserts claims for breach of warranty, failure to warn, fraud,

product defect, violations of Chapter 93A, medical malpractice, "medical monitoring," and

loss of consortium. On August 20, 2002, defendants removed the case to the federal district

court. On August 27, 2002, defendants Aventis Pasteur, Inc., Wyeth Pharmaceuticals, Inc.,

Merck & Co., Inc., SmithKline Beecham Corporation, Ayerst Pharmaceuticals, Inc., Baxter

International, Inc., and Abbott Laboratories, Inc., (the vaccine manufacturers) moved to

dismiss the Complaint on grounds that plaintiffs had failed to comply with the requirement

of the National Vaccination Program (the Vaccination Act), 42 U.S.C. §§ 300aa-1 et seq.,

that vaccine-related injury claims be filed in the first instance in the Court of Federal Claims, the court designated to oversee the National Vaccine Injury Compensation Program (NVICP).[1]  On September 11, 2002, the plaintiffs moved to remand the case for want of federal jurisdiction.[2]  On December 30, 2002, the New England Medical Center joined the vaccine manufacturers' argument that plaintiffs had failed to exhaust their remedies under the NVICP.  On January 8, 2003, the two defendant doctors moved for dismissal on the same grounds.

The court will first address (as the plaintiffs urge) the motion to remand.  Plaintiffs argue that because their claims are framed exclusively on state law, no substantial federal question is implicated by the Complaint.  Moreover, plaintiffs maintain that diversity jurisdiction is lacking because the two defendant doctors are (like plaintiffs) citizens of Massachusetts.  While conceding the lack of facial diversity, defendants maintain that the doctors were named as defendants solely for the purpose of defeating diversity, and should therefore be considered as fraudulently joined.[3]

> When speaking of jurisdiction, "fraudulent" is a term of art. 14A Charles A. Wright, et al., Federal Practice and Procedure § 3723 at 354 (2d ed. 1985). Although false allegations of jurisdictional fact may make joinder fraudulent, B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir.1981), in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success, whatever the plaintiff's motives. Chicago, R.I. & P.R. Co. v. Whiteaker, 239 U.S. 421, 424, 36 S.Ct. 152, 153, 60 L.Ed. 360

---

[1]On October 28, 2002, Eli Lilly & Co., filed a separate motion to dismiss on the same grounds.

[2]Plaintiffs also moved to stay the proceedings pending a decision on the motion to remand.

[3]It is undisputed that the damages alleged in the Complaint exceed $75,000, and that, if the doctors are disregarded as defendants, diversity jurisdiction exists.

(1915); Insinga, 845 F.2d at 254; Dodd v. Fawcett Publications, Inc., 329 F.2d
82, 85 (10th Cir.1964); Chilton Private Bank v. Norsec-Cook, Inc., 99 B.R. 402,
403 (N.D. Ill.1989); Kocot v. Alliance Machine Co., 651 F. Supp. 226, 227
(S.D. Ill.1986).

Poulos v. Naas Foods, Inc., 959 F.2d 69, 73 (7th Cir. 1992). Plaintiffs argue (in the most

general terms) that because a state court might theoretically find the doctors liable under one

or more of the various state claims, they are not "fraudulent" defendants, and therefore,

diversity jurisdiction does not exist. The difficulty with the argument is that while a state court

might find liability, to do so, it would have to disregard the clear command of the Vaccination

Act, which bars the prosecution of any vaccine-related injury claim, whether state or federal,

and regardless of its merits, unless a plaintiff first files a petition under the NVICP. The

Vaccination Act provides, in relevant part, that:

> [n]o person may bring a civil action for damages in an amount greater than
> $1,000 or in an unspecified amount against a vaccine administrator or
> manufacturer in a State or Federal court for damages arising from a vaccine-
> related injury or death associated with the administration of a vaccine after
> October 1, 1988, and no such court may award damages in an amount greater
> than $1,000 in a civil action for damages for such a vaccine-related injury or
> death, unless a petition has been filed, in accordance with section 300aa-16
> of this title, for compensation under the [NVIC] Program for such injury or
> death. . . .

42 U.S.C. § 300aa-11(a)(2)(A). Under § 300aa-11(a)(2)(B), "[i]f a civil action which is barred

under subparagraph (A) is filed in a State or Federal court, the court shall dismiss the

action." (Emphasis added). Defendants argue (correctly) that the claims against the doctors

"simply ha[ve] no chance of success" because plaintiffs undisputedly did not file under the

NVICP, and that a state court that nonetheless entertained their claims would be acting ultra

vires.

Perhaps recognizing that a finding of fraudulent joinder is virtually compelled in this

3

case, plaintiffs argue in the alternative that the children's claims derive from their exposure to thimerosal, which is a vaccine preservative, and not a vaccine.  The logic of the argument is that if thimerosal is not a vaccine, the children's alleged injuries cannot be considered "vaccine-related," and the claims are therefore not subject to the exhaustion requirements of the Vaccination Act.

Under § 300aa-33(5), a "vaccine-related injury" is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." Despite overwhelming authority to the contrary,[4] plaintiffs argue that thimerosal falls within the "adulterant or contaminant" exception of the Vaccination Act.  Not only have most courts rejected this argument, but so has Congress.  In enacting the Homeland Security Act of 2002, Congress amended the definition of a "vaccine-related injury" under § 300aa-33(5), to state that "[f]or purposes of the preceding sentence, an adulterant or contaminant shall not include any component or ingredient listed in a vaccine's product license application or product label."  Because it is undisputed that thimerosal is an ingredient listed in the vaccine product license applications at issue, it is clear that Congress' intention is, and was, that all thimerosal-based claims be channeled in the first instance through the NVICP.

Plaintiffs' final argument is that their consortium claims against the doctors have an

---

[4] The case most often cited is Leroy v. Secretary of Dep't. of Health & Human Services, 2002 WL 31730680 (Fed. Cl. Spec. Mstr., October 11, 2002).  In that case, the Special Master, after an exhaustive analysis, held that thimerosal is a not a contaminant or adulterant within the meaning of § 300aa-33(5), and that thimerosal-related claims were therefore within the primary jurisdiction of the Court of Federal Claims.

existence independent of the claims of the children, and therefore cannot be said to be "vaccine-related." While loss of consortium in the abstract is an independent legal claim, the law is clear that where the child has no viable cause of action, neither does the parent.

> As a general rule, a claim for loss of consortium requires proof of a tortious act that caused the claimant's spouse personal injury. See Agis, supra at 146-147; Diaz v. Eli Lilly & Co., 364 Mass. 153, 161-168 (1973); Mouradian v. General Elec. Co., 23 Mass. App. Ct. 538, 543-544 (1987). See also W.P. Prosser & R.E. Keeton, Torts § 125, at 931-934 (5th ed. 1984). Although we have determined that a claim for loss of consortium is independent of the spouse's cause of action, see, e.g., Feltch v. General Rental Co., 383 Mass. 603, 607-608, (1981), we have not repudiated the implicit prerequisite that the injured spouse have a viable claim.

Sena v. Commonwealth, 417 Mass. 250, 264 (1994). In sum, the court has jurisdiction to hear the case, and in so doing, is bound by the Vaccination Act to dismiss plaintiffs' claims pursuant to § 300aa-11(a)(2)(B).

## ORDER

For the foregoing reasons, plaintiffs' motion to remand is DENIED. The vaccine defendants' motion to dismiss is ALLOWED. Eli Lilly & Co.'s motion to dismiss is ALLOWED. New England Medical Center's motion to dismiss is ALLOWED. Dr. Eileen Homcy and Dr. Mark Blumenthal's motion to dismiss is ALLOWED. Plaintiffs' motion to stay proceedings is DENIED.

SO ORDERED.

UNITED STATES DISTRICT JUDGE

5

** TOTAL PAGE.06 **

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

FILED

OCT 1 5 2002

J T NOBLIN CLERK
BY_____ DEPUTY

ROBERT EDGAR HOLDER AND MATTHEW
CLAYTON HOLDER, BY AND THROUGH
THEIR NATURAL PARENTS AND GENERAL
GUARDIANS, VALLEY HOLDER AND
BRENDA HOLDER                                                    PLAINTIFFS

VS.                                        CIVIL ACTION NO. 4:02CV148LN

ABBOTT LABORATORIES, INC.,
AMERICAN HOME PRODUCTS D/B/A
WYETH, WYETH LABORATORIES, WYETH-
AYERST, WYETH-AYERES LABORATORIES,
WYETH LEDERLE, WYETH LEDERLE, WYETH
LEDERLE VACCINES, AND LEDERLE
LABORATORIES; AVENTIS PASTEUR, INC.,
INDIVIDUALLY AND AS SUCCESSOR IN
INTEREST TO CONNAUGHT; BAXTER
INTERNATIONAL, INC.; ELI LILLY AND
COMPANY; GDL INTERNATIONAL, INC.;
GLAXOSMITHKLINE, INDIVIDUALLY AND AS
SUCCESSOR IN INTEREST TO SMITHKLINE
BEECHAM CORP.; KINGPHARMACEUTICALS,
INC.; MEDEVA PHARMACEUTICALS, INC.;
MERCK & CO., INC.; SIGMA ALDRICH,
INC.; SPECTRUM CHEMICAL MANUFACTURING
CORP.; GREGORY S. MARANTO, M.D.; RUSH
MEDICAL GROUP, P.A., AND JANE/JOHN DOES                          DEFENDANTS

MEMORANDUM OPINION AND ORDER

This cause is before the court on plaintiffs' motion to

remand this case to the Circuit Court of Hinds County,

Mississippi, and on the motion of several defendants to dismiss.

Briefing on the motion to remand has been completed, and the

court, having considered the parties' arguments, concludes that

for the same reasons assigned by the court in Collins v. American

Home Products Corp., Civil Action No. 3:01CV979LN (S.D. Miss. Aug.

1, 2002), and McDonald v. American Home Products Corp., Civil

VP06173

Action No. 3:02CV77LN (S.D. Miss. Aug. 1, 2002), the motion to remand should be denied.  The court further concludes, also for the reasons explained in Collins and McDonald, namely that the case is not cognizable unless plaintiffs shall first present their claim in the Vaccine Court, that this case is due to be dismissed.[1]

Based on the foregoing, it is ordered that plaintiffs' motion to remand is denied, and it is further ordered that this cause is dismissed without prejudice.

SO ORDERED this 15th day of October, 2002.

_____
UNITED STATES DISTRICT JUDGE

---

[1]    The court is aware that while defendants have moved to dismiss, plaintiffs have not yet filed their response in opposition.  They have, however, made their position known, and the court is well familiar with their arguments.

2

44.



IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

DEBORAH LAUGHTER, Individually and        )
as Parent and Legal Guardian              )
of MINOR CHILD ADAMS                       )
                                           )
              Plaintiff,                    )
                                           )
        v.                                  )         1:02CV01087
                                           )
AVENTIS PASTEUR, INC., et al.              )
                                           )
              Defendants.                   )
                                           )

MEMORANDUM OPINION AND ORDER AND JUDGMENT

BEATY, District Judge.

I. PROCEDURAL HISTORY

        Pending before the Court are Defendants' Motions to Dismiss and/or Stay the Complaints

filed by Plaintiff, Deborah Laughter, Individually and as Parent and Legal Guardian of Minor Child

Adams.  Plaintiff has alleged a civil action against multiple manufacturers and distributors of

pediatric vaccines containing Thimerosal, a mercury-based preservative. Plaintiff has further alleged

that the normal life of her minor child has been adversely affected due to the child's exposure to

massive mercury poisoning from the use of pediatric vaccines or their components that were

"marketed, tested, labeled, developed, distributed, manufactured, warranted, and sold" by

Defendants. Specifically, Defendants in Plaintiff's Complaint are identified in the following manner:

Aventis Pasteur, Inc., a Delaware Corporation, Individually and as Successor-in-Interest to

Connaught Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; SmithKline

Beecham Corporation, d/b/a/ GlaxoSmithKline, a Pennsylvania Corporation; Merck & Co. Inc.,

a New Jersey Corporation; and Wyeth d/b/a Wyeth, Inc., Wyeth Laboratories, Wyeth-Ayerst,

Wyeth-Ayerst Laboratories, Wyeth Lederle Vaccines, and Lederle Laboratories and f/k/a American Home Products Corporation, a Delaware Corporation. For purposes of clarity, the Court will collectively refer to the foregoing Defendants as the "Vaccine Defendants." The remaining Defendants are American International Chemical, Inc., a Massachusetts Corporation; Eli Lilly and Company, an Indiana Corporation; Organon Teknika Corporation, a Division of Organon, Inc., and Organon, Inc., both of which are North Carolina corporations, collectively referred to as the "Organon Defendants"; Sigma-Aldrich Corporation, a Delaware Corporation, and Sigma-Aldrich, Inc., a Wisconsin Corporation, collectively referred to as the "Sigma-Aldrich Defendants"; and Spectrum Laboratory Products, Inc., a California Corporation d/b/a Spectrum Chemicals and Laboratory Products, and f/k/a Spectrum Manufacturing Corporation. Each Defendant or collectively identified group of Defendants filed separate Motions to Dismiss. For instance, the Vaccine Defendants filed a Joint Motion to Dismiss and/or Stay Plaintiffs' Complaint [Document # 6]. The same is true of the remaining Defendants and the document references for their respective motions are listed as follows: American International Chemical, Inc. [Document # 2]; Eli Lilly [Document # 9]; Organon Defendants [Document # 12]; Sigma-Aldrich Defendants [Document # 4]; and Spectrum Laboratory Products, Inc. [Document # 11].

Although not yet consolidated, Plaintiff Laughter's civil action is just one of thirteen separate but identical civil actions brought by multiple Plaintiffs, both individually and as Parents and Legal Guardians of their respective minor children. In particular, each of the Plaintiffs has asserted claims against Defendants in his or her representative capacity on behalf of his or her minor child (or children) that consist of the following counts: Negligence, Negligent Failure to Warn, Inadequate Design or Formulation, Breach of Express Warranty of Merchantability, Breach of Implied

2

Warranties, Negligent Misrepresentation, Intentional Misrepresentation, Negligent Infliction of Emotional Distress, Gross Negligence, and a claim for Punitive Damages. In addition, all of the Plaintiffs' Complaints also allege a specific claim against Defendant Eli Lilly for Negligence in the Marketing, Licensing, and Design of Thimerosal. In addition, all of the Plaintiffs, individually as parents, have asserted their own personal claims against each of the Defendants for what is captioned as the loss of consortium of their minor children.

As previously noted, Defendants each filed separate Motions to Dismiss each of the thirteen cases. Plaintiffs, however, each elected to file only one Joint Response to Defendants' Motions to Dismiss [Document # 20]. To the extent that Defendants alternatively request that the Court stay Plaintiffs' Complaints, Plaintiffs' Response expressed a willingness to consent to Defendants' Motions to Stay if the Court deemed a stay to be the appropriate resolution of these matters. It is clear to the Court that the thirteen separate civil actions filed by the different Plaintiffs raise identical claims. It is also clear that all of the Defendants' Motions to Dismiss assert the same bases for dismissing Plaintiffs' claims. Therefore, in the interest of judicial economy, the Court elects to resolve all of these matters in one Order and Judgment. The Court notes, however, that its reference to documents will be based upon the document entries that are filed in case number 1:02CV01087 by Plaintiff, Deborah Laughter, Individually and as Parent and Legal Guardian of Minor Child Adams. The Court's Memorandum Opinion and Order and Judgment entered is to be

1:02CV01086, 1:02CV01088, 1:02CV01089.

II. DISCUSSION AND ANALYSIS

On November 25, 2002, Plaintiffs filed their Complaints against the named Defendants in Durham County, North Carolina Superior Court, asserting the claims as previously listed. On or about December 13, 2002, each of the Defendants consented to removal of this matter to this Court. At various times thereafter, Defendants filed their respective Motions to Dismiss previously identified by the Court. On February 20, 2003, Plaintiffs filed a Joint Response to Defendants' Motions to Dismiss. The substance of each of Defendants' Motions to Dismiss is that the claims filed in this Court by all of the Plaintiffs on behalf of their minor children should be dismissed because they are barred by the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act"), 42 U.S.C. §§ 300aa-1–300aa-34. The Vaccine Act sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-15. Under the Vaccine Act, a vaccine-related injury is defined as "an illness, injury, condition or death associated with" a vaccine identified in the Act. Id. § 300aa-33(5). Congress enacted the Vaccine Act to create "a scheme of recovery designed to work faster and with greater ease than the civil tort system." Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S. Ct. 1477, 1478, 131 L. Ed. 2d 374 (1995). The Vaccine Act requires that all claims alleging a "vaccine-related injury" be brought initially in the Court of Federal Claims, whereupon they are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1), -11(a)(2)(A), -12(d). The Act directs an individual who is injured by a vaccine to file a petition with the Court of Federal Claims against the United States Government rather than against the vaccine manufacturers or the doctors who administered the vaccines. After a judgment has been entered by a special master in the Vaccine Court, the petitioner may elect either to accept the judgment or

4

to file a civil action for damages in state or federal court. Id. § 300aa-21(a). The Vaccine Act further prevents an individual or someone acting on behalf of the individual from filing a separate civil action without either (1) obtaining a judgment from the Vaccine Court and electing to file a civil action or (2) withdrawing the petition from the Vaccine Court pursuant to § 21(b). Id. § 300aa-11(a)(2)(A). The Court of Federal Claims, citing § 11(a)(2)(B) and § 11(a)(3), construed the Act to require that

> if the vaccinee misinterprets or ignores the Court of Federal Claims's jurisdiction over claims brought pursuant to the Vaccine Act, and instead, for whatever reason, files a civil action in state or federal court, the state or federal court must dismiss the claim until the vaccinee exhausts her remedies under the Program.

Leroy v. Sec'y of HHS, No. 02-392V, 2002 WL 31730680, at *5 (Fed. Cl. Oct. 11, 2002). Defendants argue that Plaintiffs' present civil actions before this Court are not in compliance with the Vaccine Act's requirement that Plaintiffs exhaust their remedies pursuant to the Vaccine Act before filing separate civil proceedings in state or federal court on behalf of their minor children who are alleged to have sustained vaccine-related injuries. The Court will separately address Defendants' Motions to Dismiss or Stay Plaintiffs' claims filed in their representative capacities on behalf of their minor children and any individual claims Plaintiffs have alleged.

A. Plaintiffs' Claims as Parents and Legal Guardians

Based upon the language of the Act, Defendants contend that Plaintiffs' Complaints on behalf of their minor children before this Court must be dismissed because each of the Plaintiffs raises claims that are subject to the exclusive jurisdiction of the Court of Federal Claims as vaccine-related injuries. Plaintiffs argue, however, that their claims against Defendants do not fit within the definition of claims for vaccine-related injuries under the Vaccine Act. A review of the Summary

the following:

    1. Since approximately 1983, the manufacturers of Thimerosal and the vaccine companies (hereinafter, the "Defendants") have engaged in the sale and distribution of mercury-laden vaccines to hundreds of thousands of children. The children, their parents and their medical care providers were frequently unaware of the presence of a high toxic preservative, more than 49% mercury by weight, in the vaccines. Over the years, the Defendants continued to sell, market and distribute Thimerosal-containing vaccines without any apparent regard to the cumulative effect on the children who received numerous childhood immunization vaccinations.
. . . .

    2. Upon information and belief, the Thimerosal Manufacturers . . . continued to manufacture, distribute and sell Thimerosal to Vaccine Manufacturer Defendants with the knowledge that this toxic substance would be used in vaccines and without any apparent regard for the poisonous effects of the mercury to the children receiving those vaccines.

    3. Upon information and belief, Plaintiff Minor Child . . . has developed severe neurodevelopmental disorders with associated high mercury exposure levels as a result of the vaccinations he received, and has suffered permanent injury.

(Defs.' Notice of Removal, Ex. A, Pls.' Compls. ¶¶ 1–3.)

    The Court finds that these excerpts and other allegations within Plaintiffs' Complaints clearly fit within the Vaccine Act's definition of a vaccine-related injury or death, which is defined as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table." 42 U.S.C. § 300aa-33(5). Plaintiffs, nevertheless, argue that the Vaccine Act does not apply to their claims because the definition of a vaccine-related injury excludes "an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." Id. As Plaintiffs have recognized, this specific exception would apply to exclude their claims from the jurisdiction of the Court of Federal Claims and the procedures of the Vaccine Act only if Thimerosal, the mercury-based preservative included in the pediatric vaccines, is determined to be an adulterant or contaminant. Plaintiffs acknowledge, however, that the weight of authority

6

is contrary to Plaintiffs' position. Defendants particularly reference the fact that the Vaccine Court itself has decisively answered this question. Specifically, the Vaccine Court indicated that "based upon the plain meaning of the statutory terms, any injury arising from the thimerosal preservative in vaccines is encompassed within the statutory definition of 'vaccine-related injury,' thereby granting jurisdiction over such claims to this court." Leroy v. Sec'y of HHS, 2002 WL 31730680, at *5. This Court agrees with Defendants and holds that the Vaccine Act applies to Plaintiffs' claims.

Having found that the Vaccine Act applies, the only question now before this Court is whether the vaccine-related injury claims that Plaintiffs have before this Court should be dismissed or stayed pending the resolution and exhaustion of these claims in the Federal Court of Claims. Defendants argue that "42 U.S.C. § 300aa-11(a)(5)(B) mandates that the Court dismiss all vaccine-related claims because any pending vaccine-related claims will prevent Plaintiffs from seeking compensation in Vaccine Court." (Eli Lilly's Br. in Supp. of Mot. to Dismiss at 4.) Section 300aa-11(a)(5)(B) provides that "[i]f a plaintiff has pending a civil action for damages for a vaccine-related injury or death, such person may not file a petition under subsection (b) [of this section] for such injury or death." 42 U.S.C. § 300aa-11(a)(5)(B). Plaintiffs respond that Defendants incorrectly rely upon § 11(a)(5)(B) as grounds for dismissal of the claims asserted in this Court because Plaintiffs did not have a pending vaccine-related claim prior to filing a petition in the Vaccine Court. The Court finds that Plaintiffs are correct that § 11(a)(5)(B) does not technically apply to them because twelve of the thirteen Plaintiffs did in fact file their petitions in the Court of Federal Claims before

filing their civil actions in state court on November 25, 2002.[1] Therefore, these twelve Plaintiffs did not have a civil action pending at the time they filed their respective petitions under the Vaccine Act. The key point, however, is that these twelve Plaintiffs did have petitions pending before the Vaccine Court at the time they initiated the civil actions that are before this Court. Therefore, pursuant to § 11(a)(2)(A), Plaintiffs' pending civil actions are subject to dismissal because the Vaccine Act requires that petitioners must first exhaust their remedies under the Act. The Act requires a petitioner to first obtain a judgment from the Court of Federal Claims and then elect either to accept the judgment or file a civil action for damages in state or federal court. Id. § 300aa-21(a). If a petitioner has not exhausted his or her remedies in this fashion, then pursuant to § 11(a)(2)(A) he or she is not allowed to bring a civil action related to the claimed vaccine-related injuries in state or federal court. The Court finds that there is no indication in the record that any of the Plaintiffs exhausted their remedies under the Vaccine Act prior to filing their civil actions on November 25, 2002. For these reasons, the Court must grant Defendants' Motions to Dismiss all vaccine-related claims that each of the Plaintiffs filed on behalf of his or minor child (or children) as Parent and Legal Guardian in state court on November 25, 2002, which Defendants removed to this Court on

---

[1] The dates the various Plaintiffs filed their respective petitions with the Court of Federal Claims are listed here: Deborah Laughter, September 6, 2002; Scott and Laura Bono, August 27, 2002; Lucinda McKinnon, September 6, 2002; Kenneth and Jane Lang, September 3, 2002; Frederick and Shelly Kraft, September 5, 2002; Carolyn Hollar, August 27, 2002; John and Patricia Hamilton, September 3, 2002; Thurman and Virginia Hall, July 23, 2002; Tom and Theresa Vollmer, September 3, 2002; Mark and Robin Arnold, August 27, 2002; Brent and Valerie Koeval, September 3, 2002; Cynthia Davis for child(1), August 27, 2002. As shown, the petitions of these Plaintiffs were pending but not exhausted or resolved by the Court of Federal Claims at the time their civil actions were filed on November 25, 2002.

The Court will separately address the claim of the remaining Plaintiff, Cynthia Davis for minor child(2), who did not file her petition with the Court of Federal Claims until December 12, 2002, well after her civil action was filed in state court on November 25, 2002.

8

December 13, 2002.

The Court finds that this same disposition is warranted for the claims filed by Plaintiff Cynthia Davis as Parent and Legal Guardian for Minor Child(2). As previously noted, this particular Plaintiff filed her civil action on November 25, 2002, asserting the same claims against Defendants as did all of the other Plaintiffs. This Plaintiff subsequently filed her petition with the Court of Federal Claims on December 12, 2002. This case is more appropriately addressed by § 11(a)(5)(B), which requires the Court to dismiss Plaintiff's petition on behalf of her minor child because her civil action was pending at the time she filed her petition with the Court of Federal Claims. Therefore, Defendants' Motion to Dismiss with respect to the civil action filed by Plaintiff Cynthia Davis on behalf of minor child(2) must also be dismissed.

B. Plaintiffs' Individual Claims for Loss of Consortium and Loss of Services

Plaintiffs' Complaints include a specific count that is captioned "Parent's Claim For Loss Of Consortium." The actual language in the Complaints, however, states that each Plaintiff has "suffered and will continue to suffer loss of services, comfort, society and companionship of the Minor Child, medical expenses and hospital expenses incurred on behalf of [the] Minor Child, both past, present and future, and the loss of services earnings [sic] and earning ability of [the] Minor Child . . . ." (Defs.' Notice of Removal, Ex. A, Pls.' Compls. ¶ 95.) Defendants argue that Plaintiffs' claims should be dismissed to the extent that their claims are for loss of consortium because North Carolina does not recognize a claim for loss of consortium outside of the marital relationship. Defendants further argue that North Carolina has specifically rejected the application of the claim of loss of consortium as between parents and children. Vaughn v. Clarkson, 324 N.C. 108, 109–10, 376 S.E.2d 236, 236–37 (1989) (per curiam). In fact, the North Carolina Supreme Court in Vaughn

9

stated the following:

> In <u>Nicholson v. Hospital</u>, this Court expressed its belief that claims for loss of consortium should be limited to the spousal relationship, saying: "If a loss of consortium is seen not only as a loss of service but as a loss of legal sexual intercourse and general companionship, society and affection as well, by definition any damage to consortium is limited to the legal marital partner of the injured. Strangers to the marriage partnership cannot maintain such an action . . . ."

<u>Id.</u> (quoting <u>Nicholson v. Hosp.</u>, 300 N.C. 295, 303, 266 S.E.2d 818, 822–23 (1980) (footnote omitted)) (citation omitted). Plaintiffs respond, however, that <u>Vaughn</u> is distinguishable because the question in <u>Vaughn</u> was whether a child has a claim for loss of consortium against a third party for negligent injuries to a parent. Plaintiffs argue that the facts here are different and that "Defendants have failed to cite any authority for the claim alleged in Plaintiffs' complaint which is whether the <u>parents</u> of a child can recover for the loss of services for that child when that child has been injured by the negligent acts of a third party." (Pls.' Resp. to Defs.' Mots. to Dismiss at 22.) Plaintiffs further cite North Carolina cases which have recognized two independent causes of action for a parent when a minor child is injured through the negligence of another. <u>See</u> <u>Brown v. Lyons</u>, 93 N.C. App. 453, 458, 378 S.E.2d 243, 246 (1989) (citing <u>Flippin v. Jarrell</u>, 301 N.C. 108, 120, 270 S.E.2d 482, 490 (1980)). In <u>Brown</u>, the North Carolina Court of Appeals specifically stated:

> When an unemancipated minor child is injured by another party's alleged negligence, two claims arise: (1) a claim on behalf of the child for her losses caused by the injury, and (2) a claim by the parent for loss of *services* during the child's minority and for medical expenses to treat the injury.

<u>Id.</u> (citing <u>Flippin v. Jarrell</u>, 301 N.C. 108, 120, 270 S.E.2d 482, 490 (1980)) (emphasis added by this Court).

Plaintiffs thus argue that North Carolina recognizes a parent's individual claim for *loss of services* to the parent for the child's minority. Defendants, on the other hand argue, that a claim for

10

*loss of consortium* of a minor child is not recognized under North Carolina law. Both the Defendants and Plaintiffs are correct in what they are arguing. It appears, therefore, that the parties' disagreement may be a matter of semantics. However, for the purposes of Defendants' Motions to Dismiss, Plaintiffs' Complaints could be viewed as asserting a claim for loss of consortium, which is not recognized under North Carolina law. The North Carolina Supreme Court in <u>Vaughn</u> may have stated it indirectly, that is, that "strangers to the marital partnership cannot maintain such an action," but the North Carolina Court of Appeals in <u>Edwards v. Edwards</u>, 43 N.C. App. 296, 302, 259 S.E.2d 11, 15 (1979), put it more directly when it held that "[t]he relation of parent and child supports no legal right similar to that of consortium." The Court must therefore grant Defendants' Motions to Dismiss to the extent that Plaintiffs' Complaints can be read to assert a claim for loss of consortium (as opposed to loss of services) for a parent because of the negligence of a third party.

However, to the extent that North Carolina law does recognize a parent's individual claim for loss of services of a minor child as the result of the negligence of a third party, Plaintiffs are not required to assert this claim under the Vaccine Act because Plaintiffs, in their individual capacities, are not persons under the Act who have vaccine-related injuries. The Act clearly states that it "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). This language does not encompass Plaintiffs in their individual capacities. The Court believes, however, that Plaintiffs' individual loss-of-services claims are derivative of the vaccine-related-injuries claims Plaintiffs are pursuing on behalf of their minor children within the Court of Federal Claims. Given the Court's dismissal of all vaccine-related claims that each of the Plaintiffs filed on behalf of their minor children as Parents and Legal Guardians pending their resolution pursuant to the Vaccine

11

Act, the Court finds that it is appropriate to stay any individual claims Plaintiffs may have that are recognized under North Carolina law.

## III. CONCLUSIONS

For the reasons stated above, IT IS THEREFORE ORDERED, ADJUDGED, and DECREED that Defendants' Motions to Dismiss each of Plaintiffs' claims filed on behalf of their minor children as Parents and Legal Guardians, including the claim of Plaintiff Cynthia Davis on behalf of minor child(2), are hereby GRANTED.[2] IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that each of Plaintiffs' claims filed on behalf of their minor children as Parents and Legal Guardians, including the claim of Plaintiff Cynthia Davis as Parent and Legal Guardian on behalf of minor child(2), is hereby DISMISSED without prejudice pending the exhaustion and resolution of their Petition filed with the Court of Federal Claims pursuant to the procedures of the Vaccine Act.

IT IS FURTHER ORDERED, ADJUDGED, and DECREED that Defendants' Motions to Dismiss are GRANTED with respect to each of Plaintiffs' individual claims for loss of consortium and the same are hereby DISMISSED with prejudice.

IT IS FURTHER ORDERED that Defendants' alternative Motions to Stay are GRANTED with respect to each of Plaintiffs' individual claims for loss of services of their minor children pending the exhaustion and resolution in the Court of Federal Claims of the claims filed by Plaintiffs

---

[2] The Court's Order and Judgment is intended to address the Motions to Dismiss as filed by the following named Defendants: Vaccine Defendants' Joint Motion to Dismiss and/or Stay Plaintiffs' Complaint [Document # 6], American International Chemical, Inc.'s Motion to Dismiss [Document # 2]; Eli Lilly's Motion to Dismiss [Document # 9]; Organon Defendants' Motion to Dismiss [Document # 12]; Sigma-Aldrich Defendants' Motion to Dismiss [Document # 4]; and Spectrum Laboratory Products, Inc.'s Motion to Dismiss [Document # 11].

as Parents and Legal Guardians on behalf of their minor children.  IT IS FINALLY ORDERED that, with respect to the matters that have been stayed, that is, the claims all Plaintiffs have asserted in their individual capacities for loss of services of their minor children, Plaintiffs shall file a status report with this Court on ninety-day (90) intervals informing the Court of the status of their Petition with the Court of Federal Claims.  The first such status report shall be filed with this Court within ninety days of the entry of this Memorandum Opinion and Order and Judgment.

This, the _12_ day of November, 2003.

United States District Judge

13

7-14-03

**FILED IN CLERK'S OFFICE**
U.S.D.C. - Atlanta

JUL -8 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DOUGLAS BRIAN MANN and LESLIE
ANN MANN,

        Plaintiffs,

    v.

GLAXO SMITHKLINE BEECHAM
CORPORATION; WYETH
CORPORATION; LEDERLE
LABORATORIES, INC.; ESI
LEDERLE, INC.; ELI LILLY
COMPANY, INC.; GALLIPOT, INC.;
INTEGRA BIOSCIENCES, INC.;
MEDISCA, INC.; MERIDAN
CHEMICAL AND EQUIPMENT, INC.;
SIGMA-ALDRICH, INC.; AMERICAN
INTERNATIONAL CHEMICAL;
SPECTRUM LABORATORY PRODUCTS;
UNIVERSITY HEALTH CARE SYSTEM;
UNIVERSITY HEALTH SERVICES,
INC.; JOHN DAVID ALLEN, M.D.;
MILDRED COOPER; and REBEKAH
THORPE,

        Defendants.

CIVIL ACTION

NO. 1:02-CV-2660-CAP

## O R D E R

    This matter is currently before this court on a number of
motions including the plaintiffs' motion for remand and several
motions to dismiss. For the reasons set forth below, the
defendants' motion to dismiss pursuant to Federal Rule of Civil
Procedure 12(b)(1) [Doc. No. 3-1] is GRANTED. This action is
dismissed as against all remaining defendants without prejudice.

Accordingly, all other pending motions [Doc. No. 6-1, 8-1, 9-1, 11-1, 14-1, 14-2, 17-1, 17-2, 19-1, 19-2, 20-1, and 30-1] are rendered MOOT.

## LEGAL ANALYSIS

The plaintiffs brought this civil suit, alleging that their children suffer from the effects of heavy metal poisoning, specifically mercury poisoning, due to the conduct of the defendants. The plaintiffs did not bring this suit on behalf of their children. Instead, they have asserted a cause of action in their own personal capacities. This action was originally filed in state court. The defendants removed the action to this court invoking both the diversity of citizenship jurisdiction and the federal question jurisdiction of this court. The plaintiffs have challenged the defendants' assertions of jurisdiction with a motion to remand. Generally, a court may not hear or decide a case when it lacks subject matter jurisdiction. Accordingly, federal courts usually address the question of whether the action was properly removed before assessing other matters. Where, however, dismissal would be inevitable, a district court may pass directly to a procedurally dispositive issue without addressing the merits of the underlying action or a motion to remand. See generally Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 119 S.Ct. 1563 (1999).

2

The court's decision to dismiss this action without addressing the plaintiffs' motion to remand is the result of the careful consideration by this court of the legal standards and principles involved. The court bases the decision on the relatively straightforward subject matter jurisdictional question which would apply with equal force in the state court. Further, such a disposition obviates a more complex fraudulent joinder analysis. Moreover, the court finds the interests of judicial economy and the expedition of the resolution of this matter to weigh in favor of addressing the motion to dismiss.

The National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. § 300aa-1, et seq., states:

> No person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death . . . unless a petition has been filed in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and . . .

42 U.S.C. § 300aa-11(a)(2)(A). Whenever a civil action is brought in violation of the above provision, the presiding court "shall dismiss the action." 42 U.S.C. § 300aa-11(2)(B).

The plaintiffs' allegations and claims arise out of the injuries allegedly sustained by their children as a result of

3

receiving vaccinations.[1]    The parties do not dispute that the plaintiffs' seek damages in excess of $1,000.  Moreover, this court has previously held that claims like the plaintiffs' are "vaccine-related" as contemplated in the Vaccine Act.  See Murphy v. Aventis Pasteur, Inc., et al., No. 1:02-CV-2258-CAP (N.D. Ga. Feb. 25, 2003); and see Murphy v. Aventis Pasteur, Inc., et al., No. 1:02-CV-2257-CAP (N.D. Ga. Feb. 25, 2003).  Additionally, the complaint reveals that the plaintiffs allege each of the defendants to be either manufacturer/distributors or administrators of the vaccines, or constituent components of the vaccines, administered to their children.  Further, the record shows that the plaintiffs had not filed a petition in accordance with § 300aa-16 at the time they filed this action.  Therefore, since their claims arise from a "vaccine-related" injury, this court and all state courts lack subject matter jurisdiction to entertain their complaint.  Thus, this court must dismiss those claims for failure to comply with the mandatory provisions of the Vaccine Act.[2]

---

[1]Legal representatives may petition the Court of Federal Claims and may recover for expenses incurred on behalf of the injured person.  See 42 U.S.C. §§ 300aa-11(b)1)(A) and 300aa-15(a).

[2]The court notes that the plaintiffs filed petitions in the Federal Court of Claims on behalf of their children.  Presumably, the plaintiffs view those claims as separate and distinct from the claims asserted here own their own behalf.  Thus, the filing of those petitions had no effect on the plaintiffs' claims in their own capacities.  As the childrens' petitions have now been lawfully

4

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) [Doc. No. 3-1] is GRANTED. This action is dismissed as against all remaining defendants without prejudice. Accordingly, all other pending motions [Doc. No. 6-1, 8-1, 9-1, 11-1, 14-1, 14-2, 17-1, 17-2, 19-1, 19-2, 20-1, and 30-1] are rendered MOOT.

SO ORDERED, this ___6___ day of July, 2003.

CHARLES A. PANNELL, JR.
United States District Judge

---

withdrawn, the claims of the plaintiffs' children may now be brought in any state or federal court where jurisdiction is otherwise proper.

5

7-14-03

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

DOUGLAS BRIAN MANN and LESLIE
ANN MANN,

              Plaintiffs,

vs.

GLAXO SMITHKLINE BEECHAM, et al

           Defendants.

CIVIL ACTION FILE

NO. 1:02-cv-2660-CAP

## J U D G M E N T

This action having come before the court, Honorable Charles A. Pannell, Jr., United

States District Judge, for consideration of defendants' motion to dismiss pursuant to F.R.C.P.

12(b)(1), and the court having granted said motion, it is

    **Ordered and Adjudged** that the plaintiff take nothing; that the defendants recover its

costs of this action, and the action be, and the same hereby, is **dismissed without prejudice.**

    Dated at Atlanta, Georgia, this 8th day of July, 2003.

LUTHER D. THOMAS
CLERK OF COURT

By: _Anne F. Snading_

Deputy Clerk

Prepared, Filed, and Entered
in the Clerk's Office
  July 9, 2003
Luther D. Thomas
Clerk of Court
By: _Anne F. Snading_

Deputy Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION



JAMIELEE HUGHES MCDONALD, ET AL.                    PLAINTIFF

VS.                                    CIVIL ACTION NO. 3:02CV77LN

ABBOTT LABORATORIES, INC., ET AL.                   DEFENDANTS

## ORDER

This cause is before the court on the motion of defendants
Abbott Laboratories, Inc., Wyeth, Aventis Pasteur, Inc., Baxter
International, Inc., Eli Lilly and Company, Merck & Company, and
SmithKline Beecham Corporation d/b/a GlaxoSmithKline for
reconsideration of this court's June 21, 2002 order granting
plaintiffs' motion to remand.  Plaintiffs have not filed a formal
response in opposition to the motion, but have advised the court by
letter that they do oppose the motion.  For the reasons that
follow, the court concludes that defendants' motion to reconsider
should be granted and that this court's previous order remanding
the case should be vacated.

Among other things, this court expressed the view in its June
21 opinion and order that "defendants unquestionably ha[d] the
better of the argument on the issue of whether injuries alleged to
have resulted from thimerosal in vaccines constitute vaccine-
related injuries under the [National Childhood Vaccine Injury Act
(Vaccine Act)]" so as to be consequently barred by the Vaccine
Act's ban on tort claims,[1] and that the court had no doubt that it

---

[1]    As explained at length in its earlier opinion, the
Vaccine Act provides that "[n]o person may bring a civil action . .

would conclude that the plaintiffs' claims were vaccine-related if the issue were presented to the court in a context other than fraudulent joinder. The court, though, held that it could not say there was no reasonable possibility of recovery. In other words, the court expressed the view that there existed a reasonable possibility that a court might accept the plaintiffs' argument that thimerosal was an adulterant or contaminant so that their claims for injuries from thimerosal in vaccines were not vaccine-related and hence were not barred by the Vaccine Act.

While the court is not persuaded that its conclusion in this regard was manifestly erroneous, the court is persuaded that events which have occurred since entry of the court's order foreclose any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants. To the point, on July 3, 2002, the Court of Federal Claims Office of Special Masters entered Autism General Order #1, in which it expressly assumed jurisdiction under the Vaccine Act over Vaccine Program claims alleging a causal relationship between autism, or neurodevelopment

---

. against a vaccine administrator or manufacturer in a state or federal court for damages arising from a vaccine-related injury or death . . . unless a petition has been filed" first in the Court of Federal Claims, and mandates that if a claimant files such a suit "in a State or Federal court" prior to petitioning the Court of Federal Claims, such state or federal court "shall dismiss the action." 42 U.S.C. § 300aa-11(a); see also Shalala v. Whitecotton, 514 U.S. 268, 270, 115 S. Ct. 1477, 1478, 131 L. Ed. 2d 374 (1995) ("A claimant alleging that more than $1,000 in damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any de novo civil action in state or federal court.").

disorders similar to autism, and certain vaccinations, including the Measles-Mumps-Rubella vaccinations, and/or "by the `thimerosal' ingredient contained in certain Diphtheria-Tetanus-Pertusis ("DTP"), Diphtheria-Tetanus-acellar Pertussis ("dTaP"), Hepatitis B, and Hemophilus Influenza Type B ("HIB") vaccinations," or by some combination of the two. Since the Court of Federal Claims has jurisdiction only to grant relief under the Vaccine Act for "vacine-related" injuries, and since the Office of Special Masters has explicitly assumed jurisdiction over claims for injuries alleged to have been caused by thimerosal in certain vaccines, it necessarily follows that the Office of Special Masters has implicitly rejected the notion that thimerosal is an adulterant or contaminant and has concluded that such claims for these injuries are "vaccine related." Thus, even assuming that this court was correct in its earlier assessment of plaintiffs' possibility of recovery against the resident defendants, given this more recent circumstance, the court now concludes that there no longer exists any no reasonable possibility that the claims asserted by the plaintiffs against the resident defendants are presently cognizable in any forum other than the Court of Federal Claims. Accordingly, the court will vacate its order remanding the case.

Based on the foregoing, it is ordered that defendants' motion to vacate the court's remand order is granted.

SO ORDERED this 1st day of August, 2002.

UNITED STATES DISTRICT JUDGE

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION

JAMIELEE HUGHES MCDONALD, ET AL.                    PLAINTIFF

VS.                              CIVIL ACTION NO. 3:02CV77LN

ABBOTT LABORATORIES, INC., ET AL.                   DEFENDANTS

## ORDER

This cause is before the court on the motions of several
defendants to dismiss. The court has considered the motions and
concludes that they are well taken and should be granted. By their
complaint in this cause, each plaintiff herein seeks recovery for
more than $1,000 in damages on account of "vaccine-related
injuries" and yet none has first filed a petition for compensation
with the Court of Federal Claims, as required by the National
Childhood Vaccine Injury Act. Accordingly, in keeping with the
explicit directive of the Vaccine Act, 42 U.S.C. §§ 300aa-1, this
cause must be dismissed. See 42 U.S.C. § 300aa-11(a)(2)(A)
(providing that "[n]o person may bring a civil action . . . against
a vaccine administrator or manufacturer in a state or federal court
for damages arising from a vaccine-related injury or death . . .
unless a petition has been filed" first in the Court of Federal
Claims); 42 U.S.C. § 300aa-11(a)(2)(B) (stating that if a claimant
files such a suit "in a State or Federal court" prior to
petitioning the Court of Federal Claims, such state or federal
court "shall dismiss the action"). See also Shalala v.
Whitecotton, 514 U.S. 268, 270, 115 S. Ct. 1477, 1478, 131 L. Ed.
2d 374 (1995) ("A claimant alleging that more than $1,000 in

damages resulted from a vaccination after the Act's effective date in 1988 must exhaust the Act's procedures and refuse to accept the resulting judgment before filing any de novo civil action in state or federal court.").

Based on the foregoing, it is ordered that the motions of the defendants to dismiss are granted, and it is therefore ordered that this cause is dismissed without prejudice.

SO ORDERED this 2nd day of August, 2002.

_____
UNITED STATES DISTRICT JUDGE

2

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _6, 14, 2003_
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SCOTT MOSS, INDIVIDUALLY AND          CIVIL ACTION NUMBER: 03-0334
ON BEHALF OF AMBER MOSS, AND
JANICE MOSS                           JUDGE DOHERTY

VERSUS                                MAGISTRATE JUDGE HILL          ,

MERCK & CO., ET AL

## MEMORANDUM RULING

This matter comes before the Court on a Motion to Dismiss
filed on behalf of  Merck & Co., Aventis Pasteur, Inc. and Wyeth
(formerly known as American Home Products), (the "Vaccine
Defendants"), and Eli Lilly & Co. ("Lilly"), (the "Thimerosal
Defendant") seeking to dismiss the parent plaintiffs, Scott and
Janice Moss ("Parent Plaintiffs") vaccine related claims on the
basis all vaccine related claims must first be brought pursuant
to the National Childhood Vaccine Injury Act ("Vaccine Act"),
which requires the claims for injuries and expenses associated
with thimerosal containing vaccines to first be adjudicated in
the Court of Federal Claims (the "Vaccine Court"). 42 U.S.C.
§ 300aa-1, et seq.

The Vaccine Defendants, also, seek dismissal of the Parent
Plaintiffs' claims for "specific damages" flowing from the
Louisiana Products Liability Act as follows: (1) hedonic damages,
on the basis that said damages under Louisiana law are part of
the general damage award available to the minor daughter, Amber

VP13439          4|7

Moss; (2) punitive damages, on the basis such damages are not allowed under Louisiana law without a statutory basis, and the Louisiana Products Liability Act does not allow the award of punitive damages.

Lilly, also, seeks dismissal of the Parent Plaintiffs' claims for both hedonic and punitive damages on the same basis as argued by the Vaccine Defendants; however, plaintiffs' Complaint reads: "THIRD CAUSE OF ACTION AS THE THIMEROSAL MANUFACTURER." Thus, the Third Cause of Action alleged by plaintiffs as against Lilly, is couched against a manufacturer; however, alleges "negligent and/or fraudulent misrepresentation of the safety of thimerosal which caused plaintiffs' injuries." Plaintiffs' Complaint. Thus, plaintiffs claims against Lilly have not been couched under the Louisiana Products Liability Act; however, plaintiffs' petition identified Lilly as a manufacturer. Consequently, this Court has confusion as to whether the Louisiana Products Liability Act would govern plaintiffs' claim made against Lilly as the "Thimerosal Manufacturer." However, plaintiffs have couched their claim against Lilly under La. Civ. Code art. 2315. Nonetheless, this is of no moment at this juncture, as the same threshold analysis would apply for either basis under the law. Thus, Lilly has adopted the arguments of the Vaccine Defendants as to Lilly's Motion to Dismiss plaintiffs' claims. This Court notes, however, plaintiffs have

2

pled the application of La. Civ. Code art. 2315 as to Lilly, couched in negligence.

All plaintiffs have dismissed all state law claims based upon conspiracy as originally pled against the Vaccine Defendants. All plaintiffs have dismissed all claims "for damages for emotional distress" as against all defendants.

Additionally, both the Vaccine Defendants and Lilly seek dismissal and/or stay of the Parent Plaintiff's loss of consortium claim as pled.[1] Both the Vaccine Defendants and Lilly, argue in support of dismissal/stay of the Parent Plaintiffs' loss of consortium claim arguing the loss of consortium claim is a derivative of the claim now filed in the Vaccine Court on behalf of the minor child, Amber Moss, and, therefore, is not subject to determination before this Court.

### Procedural History

Plaintiffs' Memorandum at page 2 states plaintiffs initially filed the instant lawsuit on October 18, 2002, against three classes of defendants: (1) the "Vaccine Defendants," Merck & Co., Aventis Pasteur, Inc. and Wyeth, which manufactured various vaccines; (2) the "Thimerosal Defendant," Eli Lilly & Co., which developed and marketed thimerosal, a preservative for vaccines; and (3) the Medical Defendant, which administered the vaccines.

---

[1] A claim for loss of consortium is incorporated into the Louisiana Products Liability Act by way of incorporation of La. Civ. Code art. 2315, et seq.

3

Plaintiffs have since voluntarily dismissed the Medical Defendant from this litigation.

Plaintiffs have withdrawn their claim for civil conspiracy against the Vaccine Defendants, as well as their claim for damages for emotional distress against both the Vaccine Defendants and Lilly.

Further, plaintiffs have filed no opposition to the Motion to Dismiss filed on behalf of both the Vaccine Defendants and Lilly, plaintiffs' claim for punitive damages. Therefore, this Court DISMISSES plaintiffs' claim for punitive damages as against all defendants, finding no basis for same under applicable Louisiana law.

Additionally, counsel for plaintiff has advised the Court that all claims asserted on behalf of the minor child, Amber Moss by the Parent Plaintiffs, against both Vaccine Defendants and Lilly, will be pursued by the parents on behalf of Amber Moss by way of the recent filing of the claim by the Parent Plaintiffs on behalf of their minor daughter in the "Vaccine Court."

By way of the pending motions, this Court has been asked to determine, considering the suit filed with the "Vaccine Court," whether or not the Parent Plaintiffs' claim for loss of consortium flowing as a defined "damage" from the Louisiana Products Liability Act, as to the Vaccine Defendants, and as to plaintiffs' claim for loss of consortium pursuant to La. Civ.

4

Code art. 2315, based on "negligent and/or fraudulent misrepresentation of the safety of Thimerosal," as against Lilly, can stand.  Defendants suggest the Parent Plaintiffs' claim either should be dismissed or stayed pending resolution of the vaccine related claims of their daughter, Amber Moss, now filed before the Vaccine Court.

Both the Vaccine Defendants and Lilly, argue the source of the Parent Plaintiffs' claim for loss of consortium and the damages sought thereby, is merely a derivative claim flowing from the injury of their minor daughter and the claims pled on her behalf.  Thus, the defendants make several arguments urging dismissal of the Parent Plaintiffs' claims, or in the alternative, stay of the Parent Plaintiffs' claims pending resolution of the minor's claim presently pending before the "Vaccine Court."  In support of their argument for dismissal, or in the alternative, stay of the Parent Plaintiffs' claims, the Vaccine Defendants argue:

> A stay of the derivative proceedings in this Court pending the outcome of the minor's petition in Vaccine Court is both necessary and appropriate because:
>
> 1.  The parents' derivative claims are dependent upon the minor plaintiff's primary-injury claims and, these claims should not be tried until the Vaccine-Court remedies have been exhausted;
>
> 2.  Neither discovery nor any sort of pre-trial procedures can go forward against the vaccine manufacturers until the Vaccine-Court proceedings are completed; and

      3.  The Vaccine Act's mandatory substantive and
procedural limitations on a vaccine related lawsuit
will govern any trial and pre-trial preparation.

After a reading of the Vaccine Act, as cited below, this
Court finds the Vaccine Act, itself, mandates the dismissal of
the Parent Plaintiffs' claims, until the claim now filed in the
Vaccine Court on behalf of the minor child, Amber Moss, has been
resolved.

The Vaccine Act, more particularly 42 § 300aa-11(2)(A)
states (emphasis added):

**(a) General rule**

(2)(A)  No person may bring a civil action for damages in an
amount greater than $1,000 or in an unspecified amount
against a vaccine administrator or manufacturer in a State
or Federal court for damages arising from a vaccine-related
injury or death associated with the administration of a
vaccine after October 1, 1988, and no such court may award
damages in an amount greater than $1,000 in a civil action
for damages for such a vaccine-related injury or death,
unless a petition has been filed, in accordance with section
300aa-16 of this title, for compensation under the Program
for such injury or death and -

      (i)(I) the United States Court of Federal Claims has
issued a judgment under section 300aa-12 of this title
on such petition, and

      (II) such person elects under section 300aa-21(a) of
this title to file such an action, or

      (ii) such person elects to withdraw such petition under
section 300aa-21(b) of this title or such petition is
considered withdrawn under such section.

**(b) Petitioners**

. . . any person who has sustained a vaccine-related injury,
the legal representative of such person if such person is a

6

minor or is disabled, or the legal representative of any
person who dies as the result of the administration of a
vaccine set forth in the Vaccine Injury Table may, if the
person meets the requirements of subsection (c)(1) of this
section, file a petition for compensation under the Program.

Additionally, the statue provides in 42 § 300aa-16(c):

(c) State limitations of actions

If a petition is filed under section 300aa-11 of this title
for a vaccine-related injury or death, limitations of
actions under State law shall be stayed with respect to a
civil action brought for such injury or death for the period
beginning on the date the petition is filed and ending on
the date (1) an election is made under section 300aa-21(a)
of this title to file the civil action or (2) an election is
made under section 300aa-21(b) of this title to withdraw the
petition.

Therefore, all state statutes of limitations are stayed

until, as stated under 42 § 300aa-21(a)(1) and (2):

(a) Election

After judgment has been entered by the United States Court
of Federal Claims or, if an appeal is taken under § 300aa-
12(f) of this title, after the appellate court's mandate is
issued, the petitioner who filed the petition under section
300aa-11 of this title shall file with the clerk of the
United States Court of Federal Claims -

(1) if the judgment awarded compensation, an election
in writing to receive the compensation or to file a
civil action for damages for such injury or death, or

(2) if the judgment did not award compensation, an
election in writing to accept the judgment or to file a
civil action for damages for such injury or death.

The Act also allows a petitioner to file a civil action for

damages for such injury or death, if the petition is withdrawn as

per 42 § 300aa-21(b) due to the failure of the Special Master to

rule on petitioner's claims within 240 days, 42 300aa-21(b)(1) or

7

if the Court fails to enter a judgment on petitioner's claims within 420 days, 42 § 300aa-21(b)(2).

Additionally, this Court notes that § 300aa-15, "Compensation," lists the basis for compensation should the Vaccine Court find compensation due and said compensation includes expenses which will be incurred by or on behalf of the person who suffered such injury. § 300aa-15(a)(1)(A)(ii). Therefore, compensation is available to Parent Plaintiffs for expenses which "have been or will be incurred by or on behalf of the person," in this case, Amber Moss, who allegedly suffered such injury.

The statute further provides for loss of earning capacity and in § (4), for actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000.00. Accordingly, the Vaccine Act defines damages which may be recovered under the Act.

Therefore, the Vaccine Statute addresses the rights of a petitioner to recover on behalf of the minor child expenses incurred by the parents on behalf of the minor child. The Parent Plaintiffs may chose either to accept compensation or a decision awarding no compensation, from the Vaccine Court and not to proceed further or thereafter, to file a civil action for damages under 42 § 300aa-16(c). Additionally, the petitioner is, also, allowed to withdraw his petition, as stated above, for failure of

8

the Special Master or the Court to rule within a specific amount of time. Accordingly, the petitioner may then seek to file a civil action for claimed injury and damages. Regardless of whether judgment is given or the petition is withdrawn, the statute of limitations for any state law claim, in this case, the urged claim of the parents of the minor child, Amber Moss, under the Louisiana Product Liability Act against the Vaccine Defendants, and negligence claim under La. Civ. Code art. 2315 against Lilly, are tolled.

Parent Plaintiffs admit that proof of their claims under the Louisiana Products Liability Act and "negligent misrepresentation" would involve proof of the same facts and involve the same legal issues as their child's claims for alleged injury caused by the vaccine. Plaintiffs' Opp., p. 6. Thus, defendants argue the Parent Plaintiffs' claims are merely derivative claims flowing from the minor child's claim. However, the Parent Plaintiffs have made claims against the two defendants, which the Parent Plaintiffs argue are sufficiently separate and independent as to allow them to exist in tandem with or separately from the claims made on behalf of the minor child before the "Vaccine Court." Whether the claims made by the Parent Plaintiffs are merely claims for damages which are solely derivative of the minor child's cause of action, and thus, must be addressed within the minor child's cause of action or are

9

causes of action owned by the parents themselves, and thus, can stand alone, is a question this Court need not address at this time.  Rather, the language of the statute is clear, either such type of claim should be dismissed at this juncture; the prescription period will be tolled until resolution of the claim now before the "Vaccine Court."  Thus, this Court GRANTS defendants', Lilly, Merck & Co., Aventis Pasteur and Wyeth, Motion to Dismiss without prejudice the Parent Plaintiffs' claims as against Lilly, Merck & Co., Aventis Pasteur and Wyeth pending resolution of the minor child's claim in a fashion as contemplated by the statute.

THUS DONE AND SIGNED this __17__ day of _____, 2003.

COPY SENT:
DATE: 6-3-03
BY: CW
TO: Bachford
Miyagi
Clautra
Owens
Chassaignac
Kruse
Manning

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

10



UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

FILED
USDC, WESTERN DISTRICT OF LA
ROBERT H. SHEMWELL, CLERK
DATE _____
BY _____

SCOTT MOSS, INDIVIDUALLY AND
ON BEHALF OF AMBER MOSS, AND
JANICE MOSS

VERSUS

MERCK & CO., ET AL

CIVIL ACTION NUMBER: 03-0334

JUDGE DOHERTY

MAGISTRATE JUDGE HILL

## O R D E R

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion
to Dismiss [doc. #21] filed on behalf of Eli Lilly and the Motion
to Dismiss [doc. #24] filed on behalf of Merck & Co., Aventis
Pasteur, Inc. and Wyeth, is GRANTED.  This Court GRANTS
defendants' Motion to Dismiss the Parent Plaintiffs', Scott and
Janice Moss's, cause of action under the Louisiana Products
Liability Act as against the Vaccine Defendants and "negligent
and/or fraudulent misrepresentation" against Lilly, the
Thimerosal Defendant, pending ruling by the Vaccine Court.  All
other relief sought in the Motions to Dismiss by Lilly and Merck,
Aventis Pasteur and Wyeth, has been rendered MOOT by actions of



11

the parties.

Lafayette, Louisiana this 17 day of June, 2003.


REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

COPY SENT:
DATE: 6-18-03
BY: SW
TO: Bickford
Miyasi
Cloutier
Owens
Chassaignac
Kruse
Monning

12

FILED
U.S. WESTERN DISTRICT OF L
ROBERT H. SHEMWELL, CLERK
DATE ___9_2__,_2003_
BY _____

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE/OPELOUSAS DIVISION

SCOTT MOSS, INDIVIDUALLY AND          CIVIL ACTION NUMBER: 03-0334
ON BEHALF OF AMBER MOSS, AND
JANICE MOSS                           JUDGE DOHERTY

VERSUS                                MAGISTRATE JUDGE HILL

MERCK & CO., ET AL

## ORDER

Considering the foregoing Memorandum Ruling;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the Motion for

Reconsideration and/or for New Trial [doc. #41] filed on behalf of plaintiffs, Scott Moss,

individually and on behalf of Amber Moss and Janice Moss, is DENIED.

Lafayette, Louisiana this ____ day of _____, 2003.

JUDGEMENT ENTERED  9/8/03
BY
COPY TO

Owens
Chassaignac
Kruse
Manning

REBECCA F. DOHERTY
UNITED STATES DISTRICT JUDGE

3

P12

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

MICHAEL O'CONNELL and EILEEN §
O'CONNELL, individually and as next §
friends to MICHAEL JOSEPH O'CONNELL §
Plaintiffs, §
§
v. §
§
AMERICAN HOME PRODUCTS §
CORPORATION, et al. §
Defendants. §

United States Courts
Southern District of Texas
ENTERED

MAY 7 - 2002

Michael N. Milby, Clerk

CIVIL ACTION NO. G-02-134

<u>ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS,
MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING SIGMA
AND EM'S MOTION TO DISMISS, ORDERING PLAINTIFFS TO CONDUCT
JURISDICTIONAL DISCOVERY OF GDL AND DENYING DEFENDANTS'
REQUEST FOR ORAL ARGUMENT AS MOOT</u>

Plaintiffs Michael O'Connell and Eileen O'Connell, individually and as legal representatives

of their minor child Michael Joseph O'Connell ("Michael"), bring this products liability lawsuit

against Defendants Sigma Aldrich Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc.");

Eli Lilly and Company ("Eli Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc.

("EM"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis")

f/k/a Connaught Laboratories f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc.

("Merck"); Smith Kline Beecham Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum

Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state

laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1)

a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury

Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1-300aa-34, filed by Wyeth, Aventis, Merck and Smith

Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma

RECEIVED

MAY 1 0 2007

Corp. and Sigma Inc. (collectively, "Sigma") and subsequently joined by EM; and (3) a Motion to Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth, Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is GRANTED IN PART and DENIED IN PART, Sigma and EM's Motion to Dismiss pursuant to the Vaccine Act is DENIED and Plaintiffs are hereby ORDERED to conduct jurisdictional discovery before responding to the Motion to Dismiss filed by GDL.

## I.  Background

During the first eighteen months of his life, Michael was allegedly exposed to harmful levels of mercury via routine childhood vaccinations administered to him by his pediatrician. All or some of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and thus, mercury) introduced into Michael's body by way of vaccination allegedly afflicted him with serious and lasting neurological injuries. Plaintiffs filed this action in a Texas state court seeking damages for Michael's personal injuries both individually and on Michael's behalf (as his legal representatives). In their Original Petition, Plaintiffs assert four causes of action (strict liability, negligence, gross negligence and conspiracy) against two distinct categories of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly, EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1]  Defendants subsequently removed the action pursuant to this Court's diversity jurisdiction.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

2

## II.  The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." Id. Two significant concerns are accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. See id. at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[2] See Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S. Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345-6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. See Whitecotton, 514 U.S. at 270, 115 S. Ct. at

_____

[2] The Program became effective on October 1, 1988.

3

1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . . before filing any de novo civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[4] If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[5] See 42 U.S.C. § 300aa-21(a).

---

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

[4] There are a few exceptions. De minimis claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. See id.

[5] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial-care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith

4

### III. Vaccine Manufacturers' Motion to Dismiss

In this case, it is undisputed that Plaintiffs have not filed a petition in the Vaccine Court in accordance with the Program. In their Motion to Dismiss, filed March 28, 2002, the Vaccine Manufacturers highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed. R. Civ. P. 12(b).[6] In response, Plaintiffs contend that they are not required to file a petition in the Vaccine Court because Michael's injuries fall outside the scope of the Vaccine Act. Thus, the Court must initially determine whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on Michael's behalf ("Representative Claims"); or (2) their individual claims that are derivative of Michael's injuries ("Individual Claims").

### Representative Claims Filed Against the Vaccine Manufacturers

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury" or the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if Michael sustained a "vaccine-related injury," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines "vaccine-related injury" as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine

and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(e). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

[6] Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(b)(3).

5

Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."[7] 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . . a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.[8] Conversely, the Vaccine Manufacturers contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act,

---

[7] The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitis B, haemophilli influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. See 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. See id. Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a prima facie case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. See id.

[8] The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to Michael. Rather, the Petition generally refers to vaccines that are "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3) haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that Michael's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that Michael was injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, Thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D., FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

7

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . . vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

Therefore, because Michael's injuries are allegedly linked to a vaccine ingredient, his injuries are definitely "vaccine-related." See, e.g., Bransewetter v. Sec'y of Health and Human Servs., No. 99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Pannell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of

---

[9] A suspension is "a class of pharmacopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients, preservatives, diluents and adjuvants).

claimant's injury). Clearly, the plain language of the Vaccine Act indicates that Michael's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[11] Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for Michael's injuries. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is **GRANTED** with respect to the Representative Claims asserted against them. These claims are hereby **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

Individual Claims Against the Vaccine Manufacturers.

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot

---

[11] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, *available at* <http://www.hrsa.gov/osp/vicp/quanda.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] . . . must first file the claim with the [Program] before pursuing any other civil litigation").

be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

### Vaccine Act Petition

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after he or she receiving a vaccine. See 42 U.S.C. §§ 300aa-11(b)(1)(A); 300aa-11(c)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. See Schafer, 20 F.3d at 7; Head v. Sec'y of Health and Human Servs., 26 Cl. Ct. 546, 547 n.1 (1992), aff'd, 996 F.2d 318 (Fed. Cir. 1993). In this case, neither Plaintiff alleges to have "suffered a relevant injury. . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs., 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an  individual civil action for losses incurred by them.").

10

Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

### Loss of Consortium

In Sanchez v. Schindler, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. See id. at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. See id. At least two Texas courts have extended the Sanchez holding to cover situations involving a non-fatally injured child. See Roberts v. Williamson, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), petition for review filed (August 20, 2001); Enochs v. Brown, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); Cf. Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort,

11

companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon Michael's alleged injuries.

### Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by Michael–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may attempt to recover emotional distress damages is the bystander action. However, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the

12

plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex. 1998) (per curiam). Texas law requires the bystander's presence when the accident occurred and the contemporaneous perception of the accident. See id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed Michael's routine vaccination and his subsequent physical deterioration that is allegedly linked to thimerosal. Moreover, Plaintiffs did not learn of Michael's alleged mercury poisoning until Michael's neurological problems were diagnosed by a physician, well after his vaccinations were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in conformity with Texas law. However, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby DENIED IN PART with respect to Plaintiffs' Individual Claims for loss of consortium. Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are hereby DISMISSED WITH PREJUDICE.

### IV. Sigma and EM's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002 and joined by EM on March 27, 2002 (both Sigma and EM are Chemical Manufacturer Defendants).[12] Sigma and EM contend that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against them. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer or administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma and EM allegedly supply thimerosal (a raw material) to the Vaccine Manufacturers, but do not manufacture or administer vaccines themselves, Plaintiffs' claims against Sigma and EM are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma and EM's Motion to Dismiss is hereby GRANTED IN PART with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Regarding all other claims asserted by Plaintiffs against Sigma and EM, their Motion to Dismiss is hereby DENIED.[13]

### V. GDL's Motion to Dismiss

The Court recently issued an Order denying Plaintiffs leave to conduct jurisdictional discovery of GDL pending further Order of the Court. Having determined that Plaintiffs' claims

---

[12] On May 1, 2002, Sigma filed a second Motion to Dismiss and alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded thereto.

[13] Sigma and EM's Motion to Dismiss also argues for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma and EM's Rule 19 request.

14

against the Chemical Manufacturers are not barred by the Vaccine Act, the Court finds that such discovery is indeed warranted. As such, the Court hereby ORDERS that Plaintiffs have sixty (60) days from the date of this Order to conduct discovery pertaining solely to whether this Court may validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are ORDERED to file their Response to GDL's Motion to Dismiss for Lack of Personal Jurisdiction. The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby DISMISSED WITHOUT PREJUDICE. The only claims against the Vaccine Manufacturers that Plaintiffs may properly assert in this forum are those seeking compensation for loss of consortium. On the other hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers are subject to adjudication in this forum. GDL's Motion to Dismiss remains pending. Finally, this Order renders the Vaccine Manufacturers' Request for Oral Argument on their Motion to Dismiss MOOT. The Court will address all other pending concerns as soon as they are ripe for consideration.

IT IS SO ORDERED.

DONE this ___ day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

15

3 - 10 - 03

IN THE CIRCUIT COURT FOR THE
13TH JUDICIAL CIRCUIT AND FOR
HILLSBOROUGH COUNTY, FLORIDA

DRAGAN RADULOVIC AND TATJANA
RADULOVIC, Individually and as Next Friend of
Minor, MARK RADULOVIC,

      Plaintiffs,

vs.

AMERICAN HOME PRODUCTS d/b/a WYETH CO.,
WYETH-AYERST LABORATORIES and LEDERLE
LABORATORIES, INC.; AVENTIS PASTEUR, INC.,
Individually and as Successor-in-Interest to CONNAUGHT
LABORATORIES, INC.; BAXTER PHARMACEUTICAL
PRODUCTS, INC.; ELI LILLY AND COMPANY; GDL
INTERNATIONAL, INC.; GLAXOSMITHKLINE,
Individually and as Successor-in-Interest to SMITHKLINE
BEECHAM CORP.; GLAXOSMITHKLINE BELGIUM;
MERCK & CO., INC.; PARKE-DAVIS, through its parent
companies, WARNER-LAMBERT CO. and PFIZER INC.;
SIGMA-ALDRICH, INC.; SPECTRUM LABORATORY
PRODUCTS; GRUPO URIACH, Individually and as
Successor-in-Interest to URQUIMA, FLORIDA INFUSION
SERVICES, a Florida Corporation
JOHN DOE CORPORATE DEFENDANTS 1-10;
EDWARD T. WILLIAMS, III, M.D.; FLORIDA
POWER AND LIGHT COMPANY; TAMPA ELECTRIC
COMPANY; and FLORIDA POWER CORPORATION,

      Defendants.

_____/

GENERAL JURISDICTION DIVISION

CASE NO. 02-05033

DIVISION J

**AMENDED ORDER ON AMENDED MOTION TO DISMISS BY VACCINE-
MANUFACTURER DEFENDANTS: WYETH; LEDERLE; AVENTIS PASTEUR, INC.;
MERCK & CO.; SMITHKLINE BEECHAM; BAXTER HEALTHCARE CORP.; AND
FLORIDA INFUSION SERVICES
AND
MOTIONS TO DISMISS BY SPECTRUM LABORATORY PRODUCTS; SIGMA-
ALDRICH, INC.; AND ELI LILLY AND COMPANY**

This matter came before the Court for hearing on November 5, 2002 at 1:30 p.m., on (1)

the Vaccine-Manufacturer Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.;

radulovic.amendedmotion.doc          -1-

SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Services' Amended Motion

to Dismiss, (2) Defendant Spectrum's Motion to dismiss, (3) Defendant, Sigma-Aldrich, Inc.'s

Motion to Dismiss, and (4) Defendant Eli Lilly and Company's Motion to Dismiss Plaintiffs'

Complaint. The Court having heard argument of counsel and being otherwise fully advised in

the premises, issued an order on November 19, 2002. Plaintiffs filed a motion for rehearing on

December 2, 2002. Defendants filed a response to that motion on December 11, 2002, and

Plaintiffs filed a reply on January 17, 2003. Since that time, the parties have filed an agreed

motion for the entry of an amended order and, having considered that motion,

   THE COURT FINDS THAT:

   The order issued by this Court on November 19, 2002, is hereby vacated and rescinded.

The Court finds that the following relief is proper in its stead:

   The attached order by Chief Special Master Golkiewicz in *Leroy vs Secretary of the*

*Department of Health and Human Services,* filed October 11, 2002 in the United States Court of

Federal Claims, Office of Special Masters, Case No. 02-392V, is persuasive authority and its

findings and conclusions as they pertain to the initial jurisdiction of the U.S. Court of Federal

Claims over claims like those made in the above-styled action and, by application, the lack of

initial jurisdiction of this Court over such claims, are adopted and incorporated fully herein; and

   Plaintiffs have notified this Court that they voluntarily dismiss without prejudice all

claims against GlaxoSmithKline Belgium; it is therefore:

   ORDERED and ADJUDGED as follows:

   All claims brought by or on behalf of the minor child, Mark Radulovic, against alleged

Vaccine-Manufacturer Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.;

SmithKline Beecham; Baxter Healthcare Corp.; Florida Infusion Services; and alleged

Thimerosal-Manufacturer Defendants: Spectrum Laboratory Products; Sigma-Aldrich, Inc.; and Eli Lilly and Company are dismissed without prejudice.

All remaining claims in the case, including the parent Plaintiffs' claims against the Vaccine-Manufacturer Defendants and the Thimerosal-Manufacturer Defendants for loss of consortium, medical expenses, and indirect economic loss, are stayed until 30 days after Plaintiffs file with the Court the writing required by § 300aa-21 of the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. § 300aa-1, *et seq.* ("Vaccine Act"), signifying that the Plaintiffs have either (1) completed proceedings in the United States Court of Federal Claims and elected against the relief awarded; or (2) withdrawn the petition and elected against proceeding in the Court of Federal Claims after the statutory time periods set forth in the Vaccine Act have elapsed.

DONE and ORDERED in Chambers in Hillsborough County, Florida this ___ day of February, 2003.

ORIGINAL SIGNED

MAR 0 5 2003

GREGORY P. HOLDER
CIRCUIT JUDGE

Gregory P. Holder
Circuit Court Judge

Copies furnished to counsel on attached service list

APPROVED AS TO FORM:

FERRARO & ASSOCIATES

L.H. Steven Saravia, Esq.
Ferraro & Associates
Suite 3800
200 S. Biscayne Boulevard
Miami, FL 33131
Telephone: 305-375-0111
Telecopier: 305-379-6222
**Counsel for Plaintiffs**

FULBRIGHT & JAWORSKI L.L.P.

Barclay A. Manley, Esq.   for
1301 McKinney, Suite 5100
Houston, TX 77010-3095
Telephone: 713-651-5310
Telecopier: 713-651-5246
**Counsel for SmithKline Beecham Corp.**

HOLLAND & KNIGHT LLP

Calvin Hayes, Esq.
Barbara Ehrich Locke, Esq.
400 North Ashley Drive, Suite 2300
Tampa, FL 33602
Telephone: 813-227-8500
Telecopier: 813-229-0134

**SERVICE LIST**

| | |
|---|---|
| Lauren J. Elliot, Esq.<br>Daniel J. Thomasch, Esq.<br>Richard Mark, Esq.<br>Orrick, Herrington & Sutcliffe LLP<br>666 Fifth Avenue<br>New York, NY 10103<br>**National Counsel for American Home Products d/b/a Wyeth and Lederle** | David S. Nelson, Esq.<br>Barr Murman Tonelli Slother & Sleet<br>201 E. Kennedy Blvd., Suite 1700<br>Tampa, Florida 33602<br>**Counsel for Wyeth & Lederle Pharmaceutical** |
| Marsha Piccone, Esq.<br>Faegre & Benson<br>2500 Republic Plaza<br>370 Seventeenth Street<br>Denver, CO 80202-4004<br>**National Counsel for Aventis Pasteur, Inc.** | James P. Murray, Esq.<br>Fowler White Burnett P.A.<br>Bank of America Tower<br>Seventeenth Floor<br>100 S.E. Second Street<br>Miami, FL 33131<br>**Local Counsel for Aventis Pasteur, Inc.** |
| Barclay A. Manley, Esq.<br>Fulbright & Jaworski LLP<br>1301 McKinney, Suite 5100<br>Houston, TX 77010<br>**National Counsel for SmithKline Beecham Corp.** | Stephanie Smith, Esq.<br>Fulbright & Jaworski LLP<br>600 Congress Ave., Suite 2400<br>Austin, TX 78701-3271<br>**National Counsel for SmithKline Beecham Corp.** |
| G. Calvin Hayes, Esq.<br>Barbara Ehrich Locke, Esq.<br>Holland & Knight LLP<br>701 Brickell Avenue, Suite 3000<br>Miami, FL 33131<br>**Local Counsel for SmithKline Beecham Corp.** | Mark Hicks, Esq.<br>Jennifer Kerr, Esq.<br>Hicks, Anderson & Kneale, P.A.<br>799 Brickell Plaza, Suite 900<br>Miami, FL 33131<br>**Counsel for Florida Infusion Services, Inc.** |
| Chris Bayuk, Esq.<br>Bayuk & Associates, P.A.<br>402 West Broadway, Suite 1550<br>San Diego, CA 92101<br>**National Counsel for Spectrum Laboratory** | Lawrence D. Smith Jr., Esq.<br>Natasha K. Talib, Esq.<br>Walton Lantaff Schroeder & Carson<br>9350 South Dixie Highway<br>Miami, FL 33131<br>**Local Counsel for Spectrum Laboratory** |

| | |
|---|---|
| Raymond G. Kolts, Esq.<br>Dean & Kolts<br>2020 Lakewood Drive<br>Coeur d' Alene, ID 83834<br>**National Counsel for Sigma-Aldrich, Inc.** | Hugh J. Turner, Jr. Esq.<br>Pamela M. Holcombe, Esq.<br>Redgrave & Turner, LLP<br>120 East Palmetto Park Road, Suite 450<br>Boca Raton, FL 33432-9944<br>**Local Counsel for Sigma-Aldrich Inc.** |
| Richard L. Josephson, Esq.<br>Doug Roberson, Esq.<br>Baker Botts, LLP<br>One Shell Plaza<br>910 Louisiana<br>Houston, TX 77002-4995<br>**Counsel for Merck & Co.** | Brett J. Preston, Esq.<br>Hill, Ward & Henderson P.A.<br>101 E. Kennedy Blvd., Suite 3700<br>Tampa, FL 33602<br>**Local Counsel for Merck & Co., Inc.** |
| Eric L. Lundt, Esq.<br>Heinrich Gordon Hargrove Weihe & James,<br>P.A.<br>500 East Broward Boulevard, Suite 1000<br>Fort Lauderdale, FL 33394<br>**Counsel for Parke-Davis** | Richard J. McCrory, Esq.<br>Law Offices of Richard McCrory<br>540 Fourth Street North<br>St. Petersburg, FL 33701<br>**Counsel for Florida Power Corporation** |
| Deborah A. Moeller, Esq.<br>Shook, Hardy & Bacon, L.L.P.<br>One Kansas City Place<br>1200 Main Street<br>Kansas City, MO 64105-2118<br>**National Counsel for Eli Lilly** | David C. Banker, Esq.<br>Toby J. Bonar, Esq.<br>Shook Hardy & Bacon LLP<br>100 North Tampa Street, Suite 2900<br>Tampa, FL 33602-5810<br>**Counsel for Eli Lilly** |
| Benjamin Reid, Esq.<br>Carlton Fields, P.A.<br>Suite 4000 at International Place<br>100 S.E. 2nd Street<br>Miami, FL 33131<br>**Local Counsel for Baxter Pharmaceutical** | Lee Davis Thames, Esq.<br>Butler Snow O'Mara Stevens & Cannada<br>AmSouth Plaza, 17th Floor<br>210 East Capitol Street<br>Jackson, MS 39201<br>**National Counsel for Baxter Pharmaceutical** |
| L.H. Steven Savola, Esq.<br>Ferraro & Associates<br>Suite 3800<br>200 S. Biscayne Boulevard<br>Miami, FL 33131<br>**Counsel for Plaintiffs** | C. Lawrence Stagg, Esq.<br>Margaret D. Mathews, Esq.<br>Ackerman, Senterfitt & Eidson P.A.<br>Suite 1500<br>100 S. Ashley Drive<br>Tampa, FL 33602<br>**Counsel for Tampa Electric Company** |



FILED
· UST·N DIVISION

2002 SP -9 AM 9: 54

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE

BY:_____
                    DEPUTY

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

RON RUSSAK and KARLA RUSSAK,
Individually and as Next Friend of JORDAN
RUSSAK,

                           **Plaintiffs,**

-vs-                                      **Case No. A-02-CA-480-SS**

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; et al.,

                           **Defendants.**

## ORDER

BE IT REMEMBERED on the __7th__ day of September 2002 the Court reviewed the file in

the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#5] and

Plaintiffs' response thereto [#15]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s

Motion to Dismiss [#3] and Plaintiffs' response thereto [#8]; the Vaccine Manufacturers' 12(b)

Motion to Dismiss and Alternative Motion to Stay [#6] and Plaintiffs' response [attached to #24];

and Defendant Austin Energy's Motion to Dismiss [#9], which was filed on August 13, 2002 and

to which the Plaintiffs have not responded. Having considered the motions, responses, the case file

as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Ron Russak and Karla Russak, are Texas residents and the parents of Jordan

Russak, who is approximately five years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear

32

ᗐ

in this lawsuit as individuals and as next friend of Jordan Russak. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 24-26. Jordan received the vaccines between October 2, 1996 and August 2, 2001. *Id.* at ¶ 24. The plaintiffs further contend Jordan's neurological damage was exacerbated by Austin Energy's emission of air toxins such as mercury from fossil-fuel-burning utilities near his residence. *Id.* at ¶¶ 33-34.

On May 30, 2002, the plaintiffs filed this lawsuit in the 53rd Judicial District Court of Travis County, Texas, Cause No. GN201793. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* First Amended Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Jordan's injuries, Ron and Karla Russak's lost wages and income, Ron and Karla Russak's emotional distress and loss of consortium, and the lost services Ron and Karla Russak could have provided to each other and Jordan could have provided to them. *Id.* at 19. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on July 29, 2002 after having obtained consent of all other served defendants except Austin Energy.[1] *See* Notice of Removal [#1].

---

[1] In its motion to dismiss, Austin Energy states it did not learn of the removal until after the fact. In the notice of removal, Wyeth argues it did not need Austin Energy's consent because the plaintiffs' addition of Austin Energy as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Austin Energy are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Jordan

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A).  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Jordan Russak's injuries and, therefore, cannot be held liable.  Austin Energy moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.

## Analysis

### I.    The Vaccine Act's Requirements

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims.  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis.  The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11.  Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system.  *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

---

Russak's primary causes of action, the plaintiffs have not moved to remand the case for improper removal, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Austin Energy the same as the other defendants.  This ruling is without prejudice to any party raising the issue after the stay in the case is lifted.

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Jordan Russak's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Jordan's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

-4-

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[2] On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same).   Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Jordan Russak received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases.  The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

---

[2] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B.  As the plaintiffs note, this order was later withdrawn.

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.,* 467 U.S. 837 (1984).  However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants.  21 C.F.R. § 610.15.

-5-

disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Jordan Russak's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Jordan Russak without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.     Claims against Non-Vaccine-Manufacturers

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Jordan Russak's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Motion to Dismiss [#5], Ex. A ("Fishman Affidavit"), at 1-2.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

-6-

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Jordan Russak's claims against all defendants rather than allow discovery on Eli Lilly.

III.     **Ron Russak and Karla Russak's Individual Claims**

        Ron and Karla Russak bring claims individually and as next friend of Jordan Russak. Individually, they seek recovery for all past and future costs associated with Jordan's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

-7-

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A).  Thus, Ron and Karla Russak can only bring their claims as next friend of Jordan, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Ron and Karla Russak's individual claims for damages because they are derivative of Jordan's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law.  However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Jordan's claims in the Court of Federal Claims.[5]  TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases).  The Court has discretion to stay proceedings.  *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000).  Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication.  *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").  The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims.  Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum.  Accordingly, the Court will stay all proceedings in Ron and Karla Russak's individual causes of action against all defendants until Jordan's claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims.  The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court.  42 U.S.C. § 300aa-16(c).  For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority.  *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#3] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion for Leave to File its Amended Motion to Dismiss [#28] is DENIED;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#5] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Jordan Russak against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on May 9, 2003 informing the Court of the status of their petition, if any, filed on behalf of Jordan Russak in the Court of Federal Claims.

SIGNED this the 7<u>th</u> day of September 2002.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
GENERAL JURISDICTION DIVISION

JOHN F. SHANAUGHY AND CANDACE
SHANAUGHY, Individually and as Next Friend of
Minor, TYLER SHANAUGHY,                          CASE NO. 02-1517 CAWS

     Plaintiffs,                                DIVISION G
vs.

WYETH CO., WYETH, WYETH-AYERST
LABORATORIES and LEDERLE
LABORATORIES, INC. f/k/a AMERICAN HOME
PRODUCTS; AVENTIS PASTEUR, INC.,
Individually and as Successor-in-Interest to CONNAUGHT
LABORATORIES, INC.; BAXTER PHARMACEUTICAL
PRODUCTS, INC.; ELI LILLY AND COMPANY; GDL
INTERNATIONAL, INC.; GLAXOSMITHKLINE, INC.;
GLAXOSMITHKLINE BELGIUM;
MERCK & CO., INC.; PARKE-DAVIS, through its parent
companies, WARNER-LAMBERT CO. and PFIZER INC.;
SIGMA-ALDRICH, INC.; SPECTRUM LABORATORY
PRODUCTS; GRUPO URIACH, Individually and as
Successor-in-Interest to URQUIMA, FLORIDA INFUSION
SERVICES, a Florida Corporation
JOHN DOE CORPORATE DEFENDANTS 1-10;
ANTHONY R. MORELLI, M.D.; TAMPA ELECTRIC
COMPANY; and FLORIDA POWER CORPORATION,

     Defendants.

_____/

**ORDER ON
MOTION TO DISMISS
BY VACCINE DEFENDANTS:
WYETH; LEDERLE; AVENTIS PASTEUR, INC.; MERCK & CO.;
SMITHKLINE BEECHAM; BAXTER HEALTHCARE CORP.;
AND FLORIDA INFUSION SERVICES
AND
MOTIONS TO DISMISS BY TAMPA ELECTRIC COMPANY,
FLORIDA POWER CORPORATION, ANTHONY R. MORELLI, M.D.,
SPECTRUM LABORATORY PRODUCTS; SIGMA-ALDRICH, INC;
AND ELI LILLY AND COMPANY**

-1-                VP09988

This matter having come before the Court for hearing on December 5, 2002 at 2:00 p.m., on motions to dismiss by (1) the Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Services, (2) Defendant Tampa Electric Company, (3) Defendant Florida Power Corporation, (4) Defendant Anthony R. Morelli, (5) Defendant Spectrum Laboratory Products, (6) Defendant Sigma-Aldrich, Inc., and (7) Defendant Eli Lilly and Company, and the Court having heard argument of counsel and being otherwise fully advised in the premises,

IT IS ORDERED AND ADJUDGED THAT:

1.     The motions to dismiss by Tampa Electric Company and Florida Power Corporation are granted without prejudice.

2.     The motions to dismiss by Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Service; and Spectrum, Sigma, and Eli Lilly are (a) granted without prejudice as to the plaintiff children's claims based on this Court's lack of initial jurisdiction over such claims. *See* order by Chief Special Master Golkiewicz in *Leroy vs. Secretary of the Department of Health and Human Services*, filed October 11, 2002 in the United States Court of Federal Claims, Office of Special Masters, Case No. 02-392V; (b) granted without prejudice as to the claims of negligent infliction of emotional distress and intentional infliction of emotional distress; (c) granted with prejudice as to the claims of breach of implied warranty; (d) granted without prejudice as to the plaintiff parents' claims for medical expenses; and (e) granted without prejudice as to the plaintiffs' failure to properly plead a market-share theory.

3.     The motions to dismiss by Vaccine Defendants: Wyeth; Lederle; Aventis Pasteur, Inc.; Merck & Co.; SmithKline Beecham; Baxter Healthcare Corp.; and Florida Infusion Service;

-2-

and Spectrum, Sigma, and Eli Lilly concerning the plaintiff parents' derivative claims are denied. However, their motions to stay the plaintiff parents' derivative claims are granted consistent with this Court's ruling in paragraph 6 below.

4.     The motion to dismiss by Dr. Morelli is granted without prejudice based on this Court's lack of initial jurisdiction. *See* order by Chief Special Master Golkiewicz in *Leroy vs. Secretary of the Department of Health and Human Services*, filed October 11, 2002 in the United States Court of Federal Claims, Office of Special Masters, Case No. 02-392V.

5.     The motions to dismiss by defendants based on plaintiffs' incorporation in each count of all the previous allegations of the complaint are granted without prejudice.

6.     This case is stayed effective as of December 5, 2002, and shall remain stayed until 30 days after the Vaccine Court relinquishes jurisdiction over claims that could be brought before it in this matter.  Plaintiffs may file amended pleadings consistent with this order at the conclusion of the stay of this case.

**DONE AND ORDERED** in Chambers in Pasco County, Florida this _____ day of _____, 2003.

ORIGINAL SIGNED   ORIGINAL SIGNED

JAN 17 2003    JAN 16 2003

STANLEY R. MILLS        STANLEY R. MILLS
CIRCUIT JUDGE           CIRCUIT JUDGE

Stanley R. Mills
Circuit Court Judge

Copies furnished to counsel on Service List

## SERVICE LIST

| | |
|---|---|
| W. Cleveland Acree, II<br>Unger, Acree, Weinstein, Marcus, Merrill,<br>Kast & Metz, P.L.<br>701 Peachtree Road<br>Orlando, FL 32804<br>**Counsel for Anthony R. Morelli, M.D.** | David Nelson, Esq.<br>Barr, Murman, Tonelli, Slother & Sleet<br>Suite 1700<br>201 East Kennedy Blvd.<br>Tampa, FL 33602<br>**Local Counsel for Wyeth and Lederle** |
| Daniel J. Tomasch, Esq.<br>Richard Mark, Esq.<br>Lauren Elliot, Esq.<br>Orrick, Herrington & Sutcliffe LLP<br>666 Fifth Avenue<br>New York, NY 10103<br>**National Counsel for Wyeth and Lederle** | James P. Murray, Esq.<br>Fowler White Burnett P.A.<br>Bank of America Tower, 17th Floor<br>100 S.E. Second Street<br>Miami, FL 33131<br>**Local Counsel for Aventis Pasteur, Inc.** |
| Richard L. Josephson, Esq.<br>Doug Roberson, Esq.<br>Baker Botts, LLP<br>One Shell Plaza<br>910 Louisiana<br>Houston, TX 77002-4995<br>**National Counsel for Merck & Co.** | Brett J. Preston, Esq.<br>Hill, Ward & Henderson P.A.<br>Suite 3700<br>101 E. Kennedy Blvd.<br>Tampa, FL 33602<br>**Local Counsel for Merck & Co, Inc.** |
| Barclay A. Manley, Esq.<br>Reagan Simpson, Esq.<br>Fulbright & Jaworski LLP<br>Suite 5100<br>1301 McKinney<br>Houston, TX 77010<br>**National Counsel for SmithKline Beecham<br>Corp.** | Stephanie Smith, Esq.<br>Fulbright & Jaworski LLP<br>Suite 2400<br>600 Congress Avenue<br>Austin, TX 78702-3271<br>**National Counsel for SmithKline Beecham<br>Corp.** |
| Chris Bayuk, Esq.<br>Bayuk & Associates, P.A.<br>Suite 1550<br>402 West Broadway<br>San Diego, CA 92101<br>**National Counsel for Spectrum Laboratory** | Lawrence D. Smith, Jr., Esq.<br>Natasha K. Talib, Esq.<br>Walton Lantaff Schroeder & Carson<br>9350 Financial Centre, 10th Floor<br>9350 South Dixie Highway<br>Miami, FL 33156<br>**Local Counsel for Spectrum Laboratory** |

-4-

| | |
|---|---|
| Raymond G. Kolts, Esq.<br>Dean & Kolts<br>2020 Lakewood Drive<br>Coeur d' Alene, ID 83834<br>**National Counsel for Sigma-Aldrich, Inc.** | Hugh J. Turner, Jr., Esq.<br>Pamela M. Holcombe, Esq.<br>Redgrave & Turner, LLP<br>Suite 450<br>120 East Palmetto Park Road<br>Boca Raton, FL  33432-9944<br>**Local Counsel for Sigma-Aldrich Inc.** |
| Mark Hicks, Esq.<br>Jennifer Kerr, Esq.<br>Hicks, Anderson & Kneale, P.A.<br>Suite 900<br>799 Brickell Plaza<br>Miami, FL  33131<br>**Counsel for Florida Infusion Services, Inc.** | Richard J. McCrory, Esq.<br>Law Offices of Richard McCrory<br>540 Fourth Street North<br>St. Petersburg, FL  33701<br>**Counsel for Florida Power Corporation** |
| Benjamin Reid, Esq.<br>Karen Stanford, Esq.<br>Carlton Fields, P.A.<br>Suite 4000 at International Place<br>100 S.E. 2nd Street<br>Miami, FL  33131<br>**Local Counsel for Baxter Healthcare Corp.** | Lee Davis Thames, Esq.<br>Butler Snow O'Mara Stevens & Cannada<br>AmSouth Plaza, 17th Floor<br>210 East Capitol Street<br>Jackson, MS  39201<br>**National Counsel for Baxter Healthcare Corp.** |
| Deborah A. Moeller, Esq.<br>Andrew See, Esq.<br>Jeffrey A. Kruse, Esq.<br>Shook Hardy & Bacon LLP<br>One Kansas City Place<br>1200 Main Street<br>Kansas City, MO  64105-2118<br>**National Counsel for Eli Lilly & Co.** | David C. Banker, Esq.<br>Toby J. Bonar, Esq.<br>Shook Hardy & Bacon LLP<br>Suite 2900<br>100 North Tampa Street<br>Tampa, FL 33602-5810<br>**Local Counsel for Eli Lilly & Co.** |
| C. Lawrence Stagg, Esq.<br>Margaret D. Mathews, Esq.<br>Akerman, Senterfitt & Eidson P.A.<br>Suite 1500<br>100 S. Ashley Drive<br>Tampa, FL  33602<br>**Counsel for Tampa Electric Company** | L.H. Steven Savola, Esq.<br>Ferraro & Associates P.A.<br>Suite 3800<br>200 S. Biscayne Boulevard<br>Miami, FL  33131<br>**Counsel for Plaintiffs** |

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION
2003 MAR 10  AM 9: 48
U.S. CLERK'S OFFICE
BY:_____

DARON SWAFFORD AND TINA SWAFFORD,
Individually and as Next Friend of JOEY
SWAFFORD,

              **Plaintiffs,**

-vs-

AVENTIS PASTEUR, INC., et al.,
              **Defendants.**

Case No.  A-03-CA-055-SS

---

## ORDER

BE IT REMEMBERED on the _7th_ day of March 2003 the Court reviewed the file in the

above-styled cause, specifically Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to

Dismiss [#4] and alternative Motion to Stay [#5], the response [#21] and reply [#30]; the Vaccine

Defendants' Motion to Dismiss or Alternatively to Stay [#6] (to which no response has been filed);

Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] and the response thereto [#22]; and

Eli Lilly and Company's Motion to Dismiss and/or to Stay [#23] and supplemental memorandum

thereto [#24] and Plaintiffs' response [#26]. Having considered the motions, responses, case file as

a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Daron and Tina Swafford, are Texas residents and the parents of Joey

Swafford, who is approximately three years old. *See* Petition, at ¶¶ 5, 23. They appear in this

lawsuit as individuals and as next friend of Joey Swafford. *Id.* at ¶ 5. The plaintiffs contend their

son suffered and continues to suffer neurological damage because he was poisoned by mercury

34

contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Joey received the vaccines between September 1, 1999 and approximately January 5, 2001. *Id.* at ¶ 5.

On December 31, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN204657. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Joey Swafford's injuries, Joey Swafford's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 16. The plaintiffs also seek punitive damages for certain causes of action. *Id.* at 17. Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on January 30, 2003 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis.

-2-

<div align="center">Analysis</div>

I.    **The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Joey Swafford's injuries are not vaccine-related.

<div align="center">-3-</div>

The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Joey's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth– an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act. Similarly, the plaintiffs argue their claims are not against "vaccine administrators" or "vaccine manufacturers" as defined under the Vaccine Act, because the defendants are manufacturers, distributors, designers and/or promoters of thimerosal itself, not a vaccine. 42 U.S.C. § 300aa-11(a)(2)(A).

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al,* Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.,* Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.,* 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of

-4-

vaccines.[1] Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Joey Swafford received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism. *See* Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2; Ex. 1 ("Ruling on Jurisdiction"). The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *See* Autism General Order #1. While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Joey

Swafford's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to

dismiss the parents' claims brought on behalf of Joey Swafford without prejudice to refiling after

they have exhausted the requirements of the Vaccine Act.[3]

II.     **Daron Swafford and Tina Swafford's Individual Claims**

        Daron and Tina Swafford bring claims individually and as next friend of their son, Joey

Swafford. Individually, they seek recovery for all past and future costs associated with their son's

injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See*

Petition, at 16. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or

"the legal representative of such person if such person is a minor or is disabled" may file a petition

for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual

may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Daron and Tina Swafford can only bring

their claims as next friend of Joey, not their individual claims, in the Court of Federal Claims.

        The defendants move to dismiss Daron and Tina Swafford's individual claims for damages

because they are derivative of Joey's claims, are duplicative of damages available under the Vaccine

Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims,

their statutes of limitations could expire while they are representing their son's claims in the Court

---

[3] To the extent the plaintiffs sued defendants that allegedly did not manufacture the
thimerosal at issue in this case, the Court dismisses their claims on behalf of Joey Swafford against
those defendants as well in the interest of judicial economy.

-6-

of Federal Claims.[4]  TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases).  The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000).  Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").  The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims.  Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Daron and Tina Swafford's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c).  For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority.  *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#23] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#23] is GRANTED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Joey Swafford to be presented in the Court of Federal Claims, and DENIED IN PART as to Daron and Tina Swafford's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Joey Swafford against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on November 7, 2003 informing the Court of the status of their petition, if any, filed on behalf of Joey Swafford in the Court of Federal Claims.

SIGNED this the 7th day of March 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-8-

| G. Calvin Hayes, Esq.<br>Barbara Ehrich Locke, Esq.<br>Holland & Knight LLP<br>Suite 3000<br>701 Brickell Avenue<br>Miami, FL 33131<br>**Local Counsel for SmithKlineBeecham Corp.** | |

*TPA1 #1362319 v2*

1

2 **ORIGINAL FILED**

3

4 SUPERIOR COURT OF CALIFORNIA    SEP 2 5 2003

5 COUNTY OF LOS ANGELES    **LOS ANGELES**
**SUPERIOR COURT**

6

7 THE VACCINE CASES    Case No: JCCP 4246

8    RULING ON DEFENDANTS'

9    DEMURRER TO FIRST AMENDED

10    MASTER COMPLAINT NO. 1 AND

11    MOTION TO STRIKE PORTIONS OF

12    FIRST AMENDED MASTER

13    COMPLAINT NO. 1

14

15    Hearing date:    9/9/03

16    Ruling date:    9/25/03

17

18    After considering the moving, opposing and reply papers and the arguments of

19 counsel at the hearing, the court now rules as follows:

20

21    **DEMURRER**

22

23    Defendant Wyeth on its own behalf and on behalf of Defendants Abbot

24 laboratories, Aventis Pasteur, Inc., individually and as successor to Connaught

25 Laboratories, Inc., Pasteur Merieux, and Pasteur Merieux Connaught; Bergen Brunswig

26 Corporation; Eli Lilly and Company; King Pharmaceuticals, Inc.; Parkdale

27 Pharmaceuticals, Inc.; Merck & Co., Inc.; Priority Healthcare Corp.; Sigma-Aldrich

28 Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Company; Aldrich Chemical Company;

Bayer Corporation; STAT Pharmaceuticals, Inc. McKesson Medical-Surgical, Inc;

1   Johnson & Johnson Consumer Companies, Inc.; Bioport Corporation; Baxter

2   Healthcare Corporation; Bergen Brunswig Corporation; Celltech Pharmaceuticals,

3   formerly known as Medeva Pharmaceuticals, Inc.; E.M. Industries, Inc.; SmithKline

4   Beecham Corporation dba GlaxoSmithKline; and Spectrum Laboratory Products, Inc.

5   (Defendants) demur to plaintiffs' Master Complaint No. 1 on the grounds that the court

6   lacks subject matter jurisdiction over each cause of action and that each cause of action

7   fails to state facts sufficient to constitute a cause of action and is uncertain.

8         A demurrer simply tests, as a matter of law, if the pleading states facts

9   sufficient to constitute a cause of action. (*La Jolla Village Homeowner's Assn. v.*

10  *Superior Court* (1989) 212 Cal.App.3d 1131, 1141.) In addition, the court in *Trewin v.*

11  *California* (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider

12  evidence outside of the pleadings, not make interpretations of the matter before it when

13  such interpretations involve resolving factual questions, which cannot be answered by

14  looking at the pleadings. Thus, for the purpose of testing the sufficiency of a cause of

15  action, the demurrer admits the truth of all material facts properly pleaded; this does not

16  include contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d

17  584, 591.)

18        Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to

19  ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods*

20  *Corp.* (1983) 35 Cal.3d. 197, 213-14.) A demurrer may be used only to challenge

21  defects that appear on the face of the complaint. Neither extrinsic evidence, nor

22  contentions, deductions, or conclusions can be considered. (*Dyer v. Northbrook*

23  *Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

24

25  **I.    Thimerosal-related Injuries Are Subject to the Vaccine Act**

26

27        The Vaccine Act creates a federal cause of action, requiring that any claims in

28  excess of $1,000 for vaccine-related injuries be first filed in the Vaccine Court. (42

- 2 -

1   U.S.C. § 300aa-11(a)(2)(A).)  A claimant must file a petition for compensation (1)

2   under the Vaccine Compensation Program; (2) in the Vaccine Court; (3) against the

3   Secretary of HHS; (4) where the Department of Justice responds on behalf of the

4   government; and (5) the case is heard by a special master, who determines whether the

5   Act covers the claim, whether a petitioner is entitled to compensation, and the amount

6   of such compensation.  (42 U.S.C. § 300aa-12(a).)

7       A plaintiff's exhaustion of the Vaccine Act's remedy is a condition precedent to

8   the subject matter jurisdiction of a state or federal court to hear the merits of that

9   plaintiff's claim for a vaccine-related injury.  (42 U.S.C. § 300aa-11(a)(2)(A).)  If a

10  plaintiff fails to file a petition in Vaccine Court and exhaust the Act's remedies, a court

11  must dismiss that plaintiff's claims.  (42 U.S.C. § 300aa-11(a)(2)(B).)

12      The statute also prohibits joining Defendants in any civil action until plaintiffs

13  have completed a proceeding in Vaccine Court.  (42 U.S.C. § 300aa-11(a)(3).)

14  However, the Vaccine Act only bars civil claims against "vaccine administrators" or

15  "vaccine manufacturers."  (42 U.S.C.A. § 300aa-11(a)(2)(A); *Schumacher v. Sec'y of*

16  *Dep't of Health & Human Servs.* (Fed. Cir. 1993) 2 F.3d 1128, 1133.)  "Manufacturer"

17  is defined as a corporation or organization "which manufactures, imports, processes, or

18  distributes under its label any vaccine set forth in the Vaccine Injury Table."  (42

19  U.S.C.A. § 300aa-33(3).)  Although thimerosal does not appear on the Vaccine Injury

20  Table, it is a constituent of Table Vaccines.  "[A] vaccine preservative is a constituent

21  part or a component of the vaccine. Consequently, based upon the plain meaning of the

22  statutory terms, any injury arising from the thimerosal preservative in vaccines is

23  encompassed within the statutory definition of 'vaccine-related injury,' thereby

24  granting jurisdiction over such claims to [Vaccine] court."  (*Leroy v. Sec'y, Dept. of*

25  *Health & Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS

26  284, *18.)  Because the Vaccine Court has held that the terms "vaccine" and

27  "thimerosal" are interchangable for purposes of Vaccine Act jurisdiction, claims

28  asserted against thimerosal manufacturers are also barred by the Act.

- 3 -

1    Thimerosal-related injuries are vaccine-related injuries.- (*Owens v. Am. Home*
2    *Prods. Corp.* (S.D.Tex. 2002) 203 F.Supp.2d 748, 756; *Leroy v. Sec'y, Dept. of Health*
3    *& Human Servs.* (Fed. Cl. Spec. Mstr. Oct. 11, 2002) 2002 US Claims LEXIS 284;
4    Defendant RJN, Exh. 1.)
5        The Children and Injured Adult Plaintiffs allege vaccine-related injuries. (See
6    Complaint, ¶ 51 ["The Children through the thimerosal-containing vaccinations
7    administered to them during the first two years of their lives, were poisoned by the
8    cumulative dosage of mercury in the thimerosal....The Injured Adult Plaintiffs, through
9    the thimerosal-containing vaccination administered to them, were poisoned by the
10   cumulative dosage of mercury in the thimerosal"].) The claims made by the Children
11   and Adult Injured Plaintiffs, who have not exhausted remedies available under the
12   Vaccine Act, for vaccine-related injuries (including medical expenses) against any
13   Vaccine Manufacturer Defendant or Thimerosal Manufacturer Defendant are
14   dismissed. (42 U.S.C. § 300aa-11(a)(2)(B).) This includes any plaintiff who is
15   qualified to file a petition in the Vaccine Court, regardless of whether the statute of
16   limitations imposed by the Vaccine Act has run.

17
18   **II.    The Learned Intermediary Doctrine**
19
20       Plaintiffs' strict liability, negligence and fraud claims (the first, second, fifth,
21   eighth and eleventh causes of action) allege that defendants "should have specifically,
22   explicitly and unambiguously communicated to the consumer, end user and general
23   public" the risks allegedly associated with the vaccines. (Complaint, ¶ 65, 78, 130,
24   143, 101, 166.) However, prescription drug manufacturers have no duty to warn the
25   consumer, end user of the general public. A drug manufacturer fulfills its duty to warn
26   if it provides adequate warning to the physician administering, in this case, the vaccine.
27   (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1061-1062 & fn. 9; *Fogo v. Cutter*
28   *Laboratories, Inc.* (1977) 68 Cal.App.3d 744, 754-755.) Plaintiffs argue that an

- 4 -

1  otherwise adequate warning may be rendered inadequate by over-promotion. (See

2  *Stevens v. Parke, Davis & Co.* (1973) 9 Cal.3d 51, 65, 69.)  However, the Master

3  Complaint does not allege an over-promotion theory of liability.  Because defendants

4  had no duty as a matter of law to warn consumers or the public, the demurrer to the

5  first, second, fifth, eighth and eleventh causes of action is sustained with leave to

6  amend.

7

8  **III.    Fraud**

9

10      Plaintiffs fraud allegations assert that "Defendants ... manufactured... sold and

11  placed in the stream of commerce thimerosal and the thimerosal-containing vaccines"

12  (Complaint, ¶ 96); that  Defendants "knew of the risks associated with thimerosal" and

13  "had a duty to warn" of the risks (Complaint, ¶ 98; see also ¶ 101); and that

14  Defendants' "fraudulent concealment, deception and fraud" caused plaintiffs and

15  plaintiffs children injuries (Complaint, ¶ 106).

16      "To withstand a demurrer, the facts constituting every element of the fraud must

17  be alleged with particularity, and the claim cannot be salvaged by references to the

18  general policy favoring the liberal construction of pleadings." (*Goldrich v. Natural Y*

19  *Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, similar to the

20  pleadings at issue here, the plaintiff:

21          simply   contends   the   defendants'   knowledge   about   their   own

22          communications somehow relieves her of her obligation to provide any

23          factual averments at all. We disagree, and we find nothing in *Committee on*

24          *Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197,

25          or in any other case to support this sort of pleading. Mrs. Goldrich has done

26          nothing more than recast her negligence and products liability claims--that

27          the implants were negligently and defectively made and distributed--in the

28          traditional words of fraud, without any supporting facts. That simply is not

-5-

1   enough.

2   (*Id.* at p. 783.)

3       Because here, as in *Goldrich*, Plaintiffs' fraud allegations fail to allege facts

4   setting forth the essential elements of fraud, the demurrer to the fifth and eleventh

5   causes of action is sustained with leave to amend.

6

7   **IV.    Breach of Warranty**

8

9       The express warranty causes of action allege that defendants warranted the

10  safety of the vaccines and breached the warranty when the vaccines exposed plaintiffs

11  to mercury. (Master Complaint, ¶¶ 82, 84, 147, 149.) The implied warranty causes of

12  action allege that Defendants warranted the vaccines to be of merchantable quality and

13  safe for their intended purposes and that the warranty was breached when the vaccines

14  exposed plaintiffs to mercury. (Master Complaint, ¶¶ 89, 91, 93, 154, 156, 158.)

15      Defendants demur based on the California Supreme Court's determination that

16  allowing an action for personal injury for breach of warranty is incompatible with its

17  conclusion that a manufacturer of prescription drugs is not strictly liable for injuries

18  caused by a design defect. (*Brown v. Superior Court* (1988) 44 Cal.3d 1049, 1072;

19  *Carlin v. Superior Court* (1996) 13 Cal.4th 1104, 1108.) In opposition, Plaintiffs argue

20  that their warranty claims are premised on a failure to warn rather than a design defect,

21  citing Master Complaint paragraphs 7, 63-65 and 73-76. None of these cited

22  paragraphs are part of the warranty causes of action. Rather, the warranty causes of

23  action appear to based on the design of the vaccine. Under *Brown*, the demurrer to the

24  third, fourth, ninth and tenth causes of action is sustained with leave to amend.

25

26  **V.    Negligence per se**

27

28      The court declines to revisit the Proposition 65 issues decided in the ruling on

- 6 -

1   the demurrer to Master Complaint No. 3.  For the reasons stated in that ruling and

2   incorporated here--that Defendants' warning fall within the safe harbor provision of

3   regulation 12601(b) and that federal law preempts Proposition 65's warning provision

4   in the prescription drug context--the demurrer to the negligence per se claim asserted in

5   the sixth and twelfth causes of action is sustained without leave to amend.

6

7   **VI.   Emotional Distress Claims**

8

9       The thirteenth cause of action for negligent infliction of emotional distress is

10   based on emotional injury sustained by Adult Plaintiffs while caring for their

11   vaccinated children.  (Master Complaint, ¶ 39.)  This theory was rejected in *Huggins v.*

12   *Longs Drug Stores California, Inc.* (1993) 6 Cal.4th 124, 132-133.  The demurrer to the

13   thirteenth cause of action is sustained without leave to amend.

14       The fourteenth cause of action is a claim for "bystander" emotional distress

15   brought by the Adult Plaintiffs, who allege that they "were in close proximity to their

16   children at the times of exposure and when their children developed symptoms of

17   mercury poisoning" and as a result suffered "great emotional disturbance and shock and

18   injury to their nervous system."  (Master Complaint, ¶¶ 194, 196.)

19       [A] plaintiff may recover damages for emotional distress caused by

20       observing the negligently inflicted injury of a third person if, but only if, said

21       plaintiff: (1) is closely related to the injury victim; (2) is present at the scene

22       of the injury-producing event at the time it occurs and is then aware that it

23       is causing injury to the victim; and (3) as a result suffers serious emotional

24       distress."

25   (*Thing v. La Chusa* (1989) 48 Cal.3d 644, 667-668:)

26       While the Adult Plaintiffs satisfy the close relationship requirement, they fail to

27   meet the other two elements.  The Adult Plaintiffs claim that while their children were

28   being vaccinated, the allegedly dangerous nature of the vaccine was "unbeknownst to

- 7 -

1   plaintiffs at that time." (Master Complaint, ¶¶ 3, 8.)  Plaintiffs cannot allege that they

2   observed the defendants' conduct--the manufacture of the vaccines--nor can they allege

3   that at that time (of the conduct) they knew that the conduct was causing the injury.

4   Alternatively, assuming that administration of the vaccines is the relevant injury

5   causing event, the complaint alleges that any injurious properties of the vaccines were

6   unknown to plaintiffs. (Master Complaint, ¶ 8.)

7       Finally, the nature of the injuries here is far-removed from the type of traumatic

8   injury contemplated in *Thing*. The complaint alleges subtle, latent, long-term

9   developmental impairments. (Master Complaint, ¶¶ 46-52.)  Because plaintiffs did not

10  observe conduct that they also knew at the time to be harmful to their children, the

11  requirements imposed by *Thing* have not been met. The demurrer is sustained without

12  leave to amend as to the fourteenth cause of action.

13

14  **VII.   Loss of Consortium Claims**

15

16      To the extent that the fifteenth cause of action seeks recovery for loss of filial

17  consortium, the demurrer is sustained without leave to amend. (*Burgess v. Superior*

18  *Court* (1992) 2 Cal.4th 1064, 1069.)

19      Defendants demur to the adult injured plaintiffs' cause of action for loss of

20  *spousal* consortium on the ground that there are no remaining viable causes of action

21  for tortious injury asserted by Plaintiffs. The demurrer to the cause of action for loss of

22  consortium is overruled, as Adult Injured Plaintiffs who have exhausted their Vaccine

23  Act remedies have viable personal injury claims against all defendants and all Adult

24  Injured Plaintiffs have viable claims against thimerosal manufacturers.

25

26  **In sum:**

27      **The Demurrer is sustained without leave to amend as to claims against**

28  **vaccine manufacturers asserted by injured Children and injured Adult Plaintiffs**

- 8 -

1     who have not exhausted their remedies under the NVICP; and as to the sixth,

2     twelfth, thirteenth, and fourteenth causes of action; and as to the fifteenth cause of

3     action to the extent that it seeks recovery for loss of filial consortium. The

4     demurrer is sustained with leave to amend as to the first, second, third, fourth,

5     fifth, eighth, ninth, tenth and eleventh causes of action. The demurrer is overruled

6     as to the fifteenth cause of action as asserted by spouses of Adult Injured

7     Plaintiffs. Plaintiff has 30 days to file an amended complaint.

8

9                           **MOTION TO STRIKE**

10

11         Defendants move the court for an order, pursuant to Code of Civil Procedure

12     sections 435 and 436, striking Plaintiffs' request for punitive damages and the

13     allegations of paragraphs 7, 56, 66, 68, 74, 77, 78, 98, 101, 102, 131, 133, 139, 142,

14     163, 166, and 167 of the First Amended Master Complaint No. 1 claiming that

15     defendants have a duty to directly warn plaintiffs, patients, consumers and the general

16     public. The motion is made on the ground that these portions are not drawn in

17     conformity with California law.

18         Punitive damages are only available where defendant has been guilty of

19     oppression, fraud or malice. (Civ. Code, § 3294.) A mere conclusory pleading of

20     fraud, malice or oppression is insufficient to warrant an award of punitive damages.

21     (*Brousseau v. Jarrett* (1977) 73 Cal.App.3d 864, 872.) The 1988 amendment to Civil

22     Code section 3294 added to the definition of malice and oppression that the conduct be

23     "despicable." "Despicable conduct" is conduct which is so vile, base, contemptible,

24     miserable, wretched or loathsome that it would be looked down upon and despised by

25     ordinary decent people. (*Mock v. Michigan Millers Mutual Insurance Co.* (1992) 4

26     Cal.App.4th 306, 331.)

27          Plaintiffs assert the following allegations of conduct done in reckless

28     disregard of plaintiffs' safety:

- Defendants manufactured and added thimerosal to vaccines, knowing that mercury, one of its ingredients, was one of the most toxic materials known and had full knowledge of the dangerous propensities of their product. (Master Complaint, ¶¶ 2, 7.)
- Defendants knew that thimerosal was unnecessary for the safety and efficacy of the vaccines, and was only added for the purpose of allowing distribution of the vaccines in multi-dose packages, decreasing packaging costs and increasing profits. (Master Complaint, ¶ 1.)
- Despite knowledge of the dangerous propensities of their products, Defendants deliberately concealed the fact that these products could cause mercury poisoning in ordinary use. (Master Complaint, ¶ 7.)
- Defendants conduct, including acts constituting common law fraud, was "willful, malicious, intentional, oppressive and despicable, and done in willful and conscious disregard of the rights of Plaintiffs." (Master Complaint, ¶ 108.)

While the demurrer has been sustained with leave to amend as to Plaintiffs' fraud claims, the allegations cited above are sufficient to put Defendants on notice of the basis of Plaintiffs' request for punitive damages.

**In sum:**

**Defendants' motion to strike is DENIED as punitive damages allegations. The motion to strike is moot as to the learned intermediary doctrine as this issue has been addressed in the ruling on Defendants' demurrer.**

1   IT IS SO ORDERED.

2   Dated: 9/25/03

3

4

5

6                                        Victoria Gerrard Chaney

7                                               Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORIGINAL FILED

SEP 2 5 2003

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

LOS ANGELES
SUPERIOR COURT

THE VACCINE CASES

CASE NO. JCCP 4246

RULING ON DEFENDANTS'
DEMURRER TO FIRST AMENDED
MASTER COMPLAINT NO. 2

Hearing date:    9/9/03

Ruling date:     9/25/03

After considering the moving, opposing, and reply papers and the arguments of

counsel at the hearing, the court now rules as follows:

**Defendants' demurrer to Master Complaint No. 2. is sustained without leave**

**to amend.**

Defendant SmithKline Beecham Corporation d/b/a/ GlaxoSmithKline, and on

behalf of Wyeth; Abbott laboratories; Aventis Pasteur Inc., individually and as successor-

in-interest to Connaught Laboratories, Inc.; Bioport Corporation; Baxter Healthcare

Corporation; Bergen Brunswick Corporation; Eli Lilly and Company; Merck & Co., Inc.;

Priority Healthcare Corp.; Sigma-Aldrich, Inc.; Sigma Chemical Corporation; Aldrich

Chemical Corporation; and Spectrum Manufacturing Corp.; Celltech Pharmaceuticals,

Inc. demurs to Plaintiffs' Master Complaint No. 2 on the grounds that the court lacks

-1-

subject matter jurisdiction over this matter and that the complaint does not state facts sufficient to constitute a cause of action.

A demurrer simply tests, as a matter of law, if the pleading states facts sufficient to constitute a cause of action. (*La Jolla Village Homeowner's Assn. v. Superior Court*(1989) 212 Cal.App.3d 1131, 1141.) In addition, the court in *Trewin v. California* (1984) 150 Cal.App.3d 975, 980, stated that a court may not consider evidence outside of the pleadings, not make interpretations of the matter before it when such interpretations involve resolving factual questions, which cannot be answered by looking at the pleadings. Thus, for the purpose of testing the sufficiency of a cause of action, the demurrer admits the truth of all material facts properly pleaded; this does not include contentions, deductions, or conclusions. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

Further, the question of plaintiff's ability to prove pleaded facts is irrelevant to ruling on a demurrer. (*Committee on Children's Television, Inc. v. General Foods Corp.*(1983) 35 Cal.3d. 197, 213-14.) A demurrer may be used only to challenge defects that appear on the face of the complaint. Neither extrinsic evidence, nor contentions, deductions, or conclusions can be considered. (*Dyer v. Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1542-43.)

This is a products liability case in which two different parents and their children allege that the minor children, while not currently manifesting any symptoms, have been subjected to an increased risk for certain neurodevelopmental problems as a result of having received vaccines containing thimerosal. Plaintiffs allege claims for negligence, negligence per se under Proposition 65, and unfair competition under Business and professions code section 17200. (Master Complaint No. 2, ¶¶ 53-58, 59-73, 74-80.) Plaintiffs request relief on behalf of a class, seeking a court-ordered and supervised medical monitoring program to be funded by defendants. (Master Complaint, ¶¶ 31, 32, Prayer for Relief.)

-2-

## I.     Vaccine Act Jurisdiction

Section 300aa-11(a)(2)(A) of the Vaccine Act prohibits any person from filing a civil action seeking damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-related injuries unless a petition is first filed in the Vaccine Court.  A lawsuit filed in violation of this provision must be dismissed.  (42 U.S.C.A. § 300aa-119a)(20(B).)  Claims relating to thimerosal fall within the definition of a vaccine-related injury as defined within the Vaccine Act.  (See, e.g., *Liu v. Aventis Pasteur, Inc.* (W.D.Tex. 2002) 219 F.Supp.2d 762; *Leroy v. Sec'y, Dep't of Health and Human Servs.* (Fed.Cl.Spec.Mstr. Oct. 11, 2002) 02-392V U.S. Claims LEXIS 284.)  Therefore, Plaintiffs' claims against vaccine manufacturers are subject to the jurisdiction of the Vaccine Act if they seek damages in an unspecified amount for vaccine-related injuries.

The California Supreme Court has held that medical monitoring is a form of damages. (*Potter v. Firestone Tire & Rubber Co.* (1993) 6 Cal.4th 956, 1009; *Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1103.)  Because the Vaccine Act's exhaustion requirement applies to "a civil action for damages" (42 U.S.C. § 300aa-11(a)(2)(A)), the remedy requested by Plaintiffs falls within the Act's jurisdiction.

The Vaccine Act defines the term "vaccine-related injury" as an "injury" or "condition." (42 U.S.C. § 300aa-33(5).)  The *Potter* court, in recognizing the existence of the medical monitoring remedy, relied on the Restatement's definition of "injury" as "the invasion of any legally protected interest of another." (6 Cal.4th at p. 1007.)  The distinction between this broad concept of injury and "physical injury" was critical to the holding that exposure could give rise to a compensable tort injury. (*Ibid.*)  If the exposure Plaintiffs allege amounts to sufficient injury to support a cognizable claim for compensatory damages in the form of a medical monitoring class, then Plaintiffs must have an "injury" or "condition" within the meaning of the Vaccine Act, regardless of whether or not Plaintiffs are symptomatic.  Therefore, this court finds that Plaintiffs' causes of action seeking a medical monitoring class constitute a civil action seeking

damages in an unspecified amount against a vaccine manufacturer for alleged vaccine-related injuries within the meaning of the Vaccine Act.

## II.    Unfair Competition Law Claims

The demurrer to plaintiffs' Unfair Competition Law claim is sustained without leave to amend to the extent that it is predicated on violation of Proposition 65, for the reasons stated in the ruling on the demurrer to Master Complaint No. 3 and incorporated here.

To the extent that the UCL cause of action seeks a medical monitoring remedy, the demurrer is sustained without leave to amend because medical monitoring is a form of damages (*Lockheed, supra*, 29 Cal.4th at p. 1103) and damages may not be awarded under the UCL (*Cel-Tech Communications, Inc. v. Los Angeles Cellular Tel. Co.* (1999) 20 Cal.4th 163, 179).

Remaining are Plaintiffs' requests for restitution and disgorgement and a request for unspecified injunctive relief.  To state a claim under the UCL, a plaintiff need only show "that members of the public are likely to be deceived."  (*Bank of the West v. Superior Court* (1992) 2 Cal.4th 1254, 1266-1267.)  The factual recital in Master Complaint No. 2 alleges no conduct which is likely to deceive the public.  Rather, the allegations of deceptive conduct are found in the boilerplate language of paragraph 77.  Further, Plaintiffs' allegations are similar to those alleged in *Goldrich v. Natural Y Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.)  In *Goldrich*, the plaintiff:

> simply contend[ed] the defendants' knowledge about their own communications somehow relieves her of her obligation to provide any factual averments at all. We disagree, and we find nothing in *Committee on Children's Television, Inc. v. General Foods Corp.*, [1983] 35 Cal.3d 197, or in any other case to support this sort of pleading. Mrs. Goldrich has done nothing more than recast her negligence and products liability claims--that the implants were negligently and defectively made and distributed--in the

traditional words of fraud, without any supporting facts. That simply is not enough.

(*Id.* at pp. 783.)

While plaintiffs, in the context of Business and Professions Code section 17200, need not plead fraudulent or deceptive conduct with the same particularity required in a fraud action, the concept is the same—Plaintiffs' factual allegations that the vaccines were negligently made and distributed, without more, are not deceptive.

Finally, because the court finds that Plaintiffs' damages claims are subject to Vaccine Act jurisdiction, the court abstains from entertaining relief under the UCL that would conflict with the Act. (See *Diaz v. Kay-Dix Ranch* (1970) 9 Cal.App.3d 588, 593; *Dep't of Transportation v. Naegele Outdoor Advertising Co.* (1985) 38 Cal.3d 509, 523.) Additionally, Plaintiffs have an adequate remedy at law in the Vaccine Act, as the Vaccine Court has established a procedure and schedule for deciding whether thimerosal-containing vaccines cause autism. (See Autism General Order #1, Defendant's Exh. 30; *Prudential Home Mortgage Co. v. Superior Court* (1998) 66 Cal.App.4th 1236, 1249-1250 [section 17200 claim stricken because it is subject to same equitable rules as any other claim and that plaintiff had an adequate remedy at law].)

**III.   Negligence per se**

Plaintiffs' negligence per se claim stated in the second cause of action is dismissed for the reasons stated in the ruling on the Demurrer to Master Complaint No. 3.

**In sum:**

**Defendants' demurrer to Master Complaint No. 2. is sustained without leave to amend.**

1    IT IS SO ORDERED.

2

3    Dated: 9/25/03

4

5                                              Victoria Gerrard Chaney

6                                                      Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-6-

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL DISTRICT
OF HINDS COUNTY, MISSISSIPPI

CHANDLER McDAVID WHITE, By and Through
His Parents and Next Friend, MICHELLE M. WHITE
and LANEY McDAVID WHITE and MICHELLE M.
WHITE and LANEY McDAVID WHITE,
Individually, as Parents of Minor Child,
CHANDLER McDAVID WHITE                                    PLAINTIFFS

v.                                              CIVIL ACTION NO. 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CIV

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to CONNAUGHT LABORATOIRES,
INC., PASTEUR MERIEUX, and PASTEUR MERIEUX
CONNAUGHT; ELI LILLY AND COMPANY;
GLAXOSMITHKLINE, Individually and as
Successor-in-Interest to SMITHKLINE BEECHAM
CORPORATION; MERCK & CO., INC., SIGMA-ALDRICH
CORPORATION, Individually and as Successor-in-Interest to
SIGMA-ALDRICH, INC.; SIGMA-ALDRICH, INC.,
Individually and as Successor-in-Interest to SIGMA-ALDRICH
CORPORATION; and WYETH d/b/a WYETH, INC., WYETH
LABORATORIES, WYETH-AYERST, WYETH-AYERST
LABORATORIES, WYETH LEDERLE, WYETH LEDERLE
VACCINES, and LEDERLE LABORATORIES and formerly
known as AMERICAN HOME PRODUCTS CORPORATION;
MITZI FERGUSON, M.D., THE CHILDREN'S CLINIC, PLLC;
RIVER OAKS HOSPITAL                                       DEFENDANTS

ORDER DISMISSING ELI LILLY AND COMPANY ,
SIGMA-ALDRICH CORPORATION and SIGMA-ALDRICH, INC.

This Cause came on for hearing on Eli Lilly and Company's, Sigma-Aldrich

Corporation's and Sigma-Aldrich, Inc.'s Motion to dismiss the Plaintiffs' Complaint. The Court

having heard oral arguments on November 7, 2003, and for the reasons cited in the attached

transcript of said hearing, (Exhibit "A"), hereby orders that the Complaint filed herein against Eli

Lilly and Company,  Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. be dismissed without

JM MCC 224082 v1
2139874-000036  11/11/2003

prejudice pursuant to the National Vaccine Injury Compensation Program, 42 U.S.C.§ 300 aa

(2000) with each party to bear their own costs.

SO ORDERED AND ADJUDGED, this the ___ day of ___ Nov ___, 2003.

CIRCUIT COURT JUDGE

ATTEST A TRUE COPY
NOV 2003
BARBARA DUNN, CIRCUIT CLERK
BY ___ D.C.

IN THE CIRCUIT COURT OF THE FIRST JUDICIAL

DISTRICT OF HINDS COUNTY, MISSISSIPPI


WHITE                                    PLAINTIFFS

V.                                  NO. 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

PASTEUR, ET AL                           DEFENDANTS

************************************************************

TRANSCRIPT OF THE PROCEEDINGS HAD AND DONE IN THE

MOTION HEARING OF THE ABOVE STYLED AND NUMBERED CAUSE,

BEFORE THE HONORABLE BOBBY B. DELAUGHTER, CIRCUIT

JUDGE, SOLE PRESIDING, ON THE 7TH DAY OF NOVEMBER,

2003.

************************************************************

APPEARANCES:


    CHARLES S. SIEGEL
    WATERS & KRAUS, LLP
    3219 MCKINNEY AVENUE
    DALLAS, TEXAS 75204
            REPRESENTING THE PLAINTIFFS.

    RICHARD L. JONES
    BRUNINI, GRANTHAM, GROWERS & HEWES, PLLC
    1400 TRUSTMARK BUILDING
    248 EAST CAPITOL STREET
    JACKSON, MISSISSIPPI 39205
            REPRESENTING DEFENDANT AVENTIS-PASTEUR.

    WALKER JONES, III
    MARK C. CARROLL
    BAKER DONELSON BEARMAN & CALDWELL
    P. O. BOX 14167
    JACKSON, MISSISSIPPI 39205
            REPRESENTING DEFENDANT ELI LILLY.



NEVILLE H. BOSCHERT
WATKINS LUDLAM WINTER & STENNIS, P.A.
633 NORTH STATE STREET
JACKSON, MISSISSIPPI 39202
          REPRESENTING DEFENDANT SIGMA ALDRIDGE.

REPORTED BY:
    BRENDA DALE HUNT, CSR
    P. O. BOX 327
    JACKSON, MISSISSIPPI 39205
    CSR NO. 1062

1    THE COURT:  Well, gentlemen, I am a

2  strict constructionist.  Unless there is some

3  ambiguity, I don't even get into the alleged

4  underlying purpose of an act or the intent.

5  I follow what the statute says for whatever

6  reason, and it's very plain to me and

7  unambiguous; therefore, I find that

8  thimerosal being a component rather than an

9  adulterant or a contaminant of a vaccine is a

10  vaccine-related injury or death when it

11  causes such an injury or death.  And under

12  Title 42 USC, Section 300aa-33, subsection 5,

13  that vaccine-related injury means any

14  illness, injury or condition associated with

15  one or more of the vaccines set forth in the

16  vaccine injury table which also includes

17  components or ingredients of which thimerosal

18  is, that that same definition also applies in

19  the subsection dealing with the term

20  manufacturer, or subsection 3.  The term

21  manufacturer means any corporation that

22  manufactures, imports, processes, or

23  distributes any vaccine set forth in the

24  vaccine injury table, including any component

25  or ingredient, which would include

4

1    thimerosal.  And under Title 42, USC Section

2    300aa-11, subsection (a)(2)(A), no person may

3    bring a civil action for damages in any

4    federal or state court against a vaccine

5    manufacturer unless a petition has been filed

6    in accordance with the Act.  No petition has

7    been filed in accordance with the Act and

8    under subsection B, this Court is totally

9    without the authority to stay anything.  It

10   says, "If such a civil action is filed

11   without a petition the Court shall," it

12   doesn't say "may."  It says, "shall dismiss

13   the action."

14        So the complaint against Eli Lilly and

15   Sigma will be dismissed without prejudice.

16   If you will just prepare me an order.

17        MR. SIEGEL:  Your Honor, could I ask one

18   question in clarification.

19        THE COURT:  Yes, sir.

20        MR. SIEGEL:  Sigma is a supplier of

21   thimerosal, and I understand the Court's

22   ruling there.  Eli Lilly is also being sued

23   as a--not for manufacturing or supplying, but

24   as for different claims about fraud and

25   having made misrepresentations in the

1    invention and early development of it.  And
2    so they would not--I don't think they could
3    be encompassed even within the
4    definition--even if you extend thimerosal to
5    vaccine, they are not a vaccine/thimerosal
6    manufacturer in this case.  They are
7    something else.  And I understand they don't
8    think we make out a cognizable tort claim in
9    that other capacity, but that's a separate
10   argument.  And so we are pursuing--and I
11   understand the Court's ruling as it applies
12   to Sigma and as it applies to some
13   allegations, I guess, against Eli Lilly.  But
14   there are our allegations that don't have to
15   do with the manufacture of thimerosal, but
16   have to do with other conduct regarding
17   thimerosal.  Is Your Honor's ruling
18   encompassing those claims as well?
19        We would suggest respectfully that those
20   claims cannot be included in that ruling or
21   in that definition, and maybe the remedy, I
22   guess, at this point with only those claims
23   remaining would be to stay those claims, but
24   we respectfully say those claims aren't
25   covered within the tort suit prohibition that

6

1   you are extending to Eli Lilly and Sigma, in
2   other words.
3            THE COURT:  What damages are you
4   alleging arise out of any other conduct that
5   you don't feel would be barred by the act?
6            MR. SIEGEL:  Well, Your Honor, we say
7   that if they hadn't distorted the early
8   science and development of thimerosal perhaps
9   thimerosal vaccines would have never have
10  been--or thimerosal in these vaccines would
11  have never been used.  So in a way that claim
12  can encompass the full range of damages that
13  we seek.
14           THE COURT:  Well, my reading of
15  subsection (a)(2)(A) is that the act would
16  pertain from all damages arising from a
17  vaccine related injury associated with the
18  administration of a vaccine.  So, yes, my
19  ruling applies to those claims as well.
20           MR. SIEGEL:  I understand.  Thank you.
21           MR. JONES:  I will submit an order, Your
22  Honor.
23           THE COURT:  Court will be adjourned.
24           * * * HEARING CONCLUDED * * *
25

## COURT REPORTER'S CERTIFICATE

STATE OF MISSISSIPPI
COUNTY OF HINDS

    I, Brenda Dale Hunt, Official Court Reporter for the Seventh Circuit Court District of the State of Mississippi, hereby certify that to the best of my Skill and ability I have reported the proceedings had and done in the trial of WHITE V. PASTEUR, ET AL, being No. 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 on the docket of the Circuit Court of the First Judicial District of Hinds County, Mississippi, and that the above and foregoing six (6)pages contain a true, full and correct transcript of my stenographic notes and tape taken in said proceedings.

    I do further certify that my certificate annexed hereto applies only to the original and certified transcript. The undersigned assumes no responsibility for the accuracy of any reproduced copies not made under my control or direction.

    This the 11 th _____ day of November, 2003.

BRENDA DALE HUNT
Official Court Reporter

CSR NO. 1062

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
AUSTIN DIVISION

2003 JA -6  PM 4: 07

WESTERN DISTRICT OF TEXAS
U.S. CLERK'S OFFICE
BY:_____
                    DEPUTY

LESLIE  YOUNG  and  LAURIE  YOUNG,
Individually  and  Next  Friend  of  Leslie  Martin
Young,

            Plaintiffs,

-vs-                                                                Case No.  A-02-CA-734-SS

AVENTIS PASTEUR, INC., et al.,
                        Defendants.

_____

## ORDER

BE IT REMEMBERED on the ____ day of January 2003, the Court reviewed the file in the
above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#14] and
Plaintiffs' response thereto [#20]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s
Motion to Dismiss [#4] and Alternative Motion to Stay [#5] and Plaintiffs' response thereto [#9];
the Vaccine Manufacturers' Motion to Dismiss or Alternatively to Stay [#6], Plaintiffs' response
[#13] and Defendants' reply [#19]; Defendant Spectrum Laboratory Products, Inc.'s Motion to
Dismiss [#7] and Plaintiffs' response thereto [#10]; and Defendant The Dow Chemical Company's
Rule 12(b)(6) Motion to Dismiss and for Summary Judgment [#11] and Motion to Dismiss or,
Alternatively, to Stay [#12] and Plaintiffs' Response thereto [#18]. Having considered the motions,
responses, the case file as a whole and the applicable law, the Court enters the following opinion and
orders.

23

### Factual and Procedural Background

The plaintiffs, Leslie and Laurie Young, are Texas residents and the parents of Leslie Martin Young, who is approximately four years old. *See* Petition, at ¶¶ 5, 23. They appear in this lawsuit as individuals and as next friend of Leslie Martin Young. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 23-25. Leslie received the vaccines between September 15, 1998 and approximately September 10, 1999. *Id.* at ¶ 23.

On October 22, 2002, the plaintiffs filed this lawsuit in the 345th Judicial District Court of Travis County, Texas, Cause No. GN203822. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; and negligence in the marketing, licensing, and design of thimerosal. *Id.* at ¶¶ 29-69. The plaintiffs seek compensatory damages for expenditures necessitated by Leslie Martin Young's injuries, Leslie Martin Young's pain and suffering, all plaintiffs' lost wages and income, all plaintiffs' emotional distress and loss of consortium, and the lost services the plaintiffs could have provided to each other. *Id.* at 17. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on November 15, 2002 after having obtained consent of all other defendants. *See* Notice of Removal [#1].

Defendants Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C.

-2-

§ 300aa-11(a)(2)(A).    Defendants Sigma-Aldrich Corporation, Sigma-Aldrich, Inc., Spectrum Laboratory Products, Inc. ("Spectrum") and Eli Lilly and Company ("Eli Lilly") move to dismiss or alternatively to stay on the same basis. The Dow Chemical Company ("Dow") moves to dismiss and for summary judgment arguing it did not manufacture or sell the vaccines or thimerosal that caused Leslie Martin Young's injuries and, therefore, cannot be held liable.  Dow has also filed a motion to dismiss or, alternatively, to stay based on the plaintiffs' failure to raise their claims first in the Court of Federal Claims.

**Analysis**

I.    **The Vaccine Act's Requirements**

The defendants move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims.  The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11.  Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal

-3-

Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Leslie Martin Young's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Leslie's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth—an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal. On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203

-4-

F.Supp.2d 748 (S.D. Tex. 2002) (same).  Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[1]  Indeed, the HHS's determination that thimerosal is a component of vaccines,[2] not an adulterant, comports with common sense, since at the time Leslie Martin Young received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases.  The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental disorders such as autism.  See Vaccine Manufacturers' Motion to Dismiss, Ex. 3 ("Autism General Order #1"), at 1-2.  The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims.  The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive.  Id.  While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases.  See also Collins vs. American Home Prod. Corp., Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any

---

[1] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the Chevron doctrine. Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc., 467 U.S. 837 (1984).  However, the HHS's official position holds persuasive authority.

[2] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants.  21 C.F.R. § 610.15.

reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Leslie Martin Young's alleged injuries are vaccine-related.[3] Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Leslie Martin Young without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

## II.    Claims against Non-Vaccine-Manufacturers

Dow moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted and moves for summary judgment because it did not manufacture or sell the thimerosal or vaccines that allegedly caused Leslie Martin Young's injuries. Dow contends it has not had a license to manufacture vaccines since 1978.

Dow asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until the plaintiffs follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise the same claims against Dow as against the vaccine manufacturer defendants. To rule on the merits of Dow's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. In fact, the plaintiffs have moved for a continuance to allow them to conduct discovery

---

[3] Eli Lilly also relies on the Homeland Security Act of 2002 Congress recently passed, which amends the definition of "manufacturer" in the Vaccine Act to include manufacturers of "any component or ingredient" of any vaccine, and the definition of "vaccine" to include "a preparation or suspension containing an attenuated or inactive microorganism or subunit thereof or toxin" and "all components and ingredients listed in the vaccines's [sic] product license application and product label." H.R. 5005 (attached as Ex. D to Eli Lilly's Motion to Dismiss). The Homeland Security Act states it applies to all actions pending on the date of its adoption on November 19, 2002. Because these amendments are quite new and the Court has relied in its previous thimerosal rulings on more established authorities, the Court need not interpret these amendments in this Order. However, the Court does not preclude the defendants from raising the Homeland Security Act in future motions.

before the Court rules on the summary judgment motion. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Leslie Martin Young's claims against all defendants rather than allow discovery on Dow.

**III.    Leslie Young and Laurie Young's Individual Claims**

Leslie and Laurie Young bring claims individually and as next friend of Leslie Martin Young. Individually, they seek recovery for all past and future costs associated with their son's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42 U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Leslie and Laurie Young can only bring their claims as next friend of Leslie, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Leslie and Laurie Young's individual claims for damages because they are derivative of Leslie's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents'

-7-

claims, their statutes of limitations could expire while the parents are representing their son's claims in the Court of Federal Claims.[4]  TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases).  The Court has discretion to stay proceedings.  *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000).  Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.").  The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims.  Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum.  Accordingly, the Court will stay all proceedings in Leslie and Laurie Young's individual causes of action against all defendants until their son's claims have been administered in the Court of Federal Claims under the Vaccine Act.

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and

---

[4] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims.  The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c).  For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority.  *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

-8-

their Alternative Motion to Stay [#6] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#4] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and their Alternative Motion to Stay Proceedings [#5] is GRANTED IN PART as to Leslie and Laurie Young's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#14] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Spectrum Laboratory Products, Inc.'s Motion to Dismiss [#7] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and DENIED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's Motion to Dismiss [#12] is GRANTED IN PART as to the claims of Leslie Martin Young to be presented in the Court of Federal Claims, and its Alternative Motion to Stay [#12] is GRANTED IN PART as to Leslie and Laura Young's individual causes of action;

IT IS FURTHER ORDERED that Defendant The Dow Chemical Company's 12(b)(6) Motion to Dismiss and Motion for Summary Judgment [#11] are DENIED without prejudice to refiling;

IT IS FURTHER ORDERED that Plaintiffs' Motion for Continuance [#18] is DENIED;

-9-

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation's Motion for Leave to File Supplemental Memorandum in Support of Their Motion to Dismiss [#16] is GRANTED;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Leslie Martin Young against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on September 8, 2003 informing the Court of the status of their petition, if any, filed on behalf of Leslie Martin Young in the Court of Federal Claims.

SIGNED this the ___6___ day of January 2003.

SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-