IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

United States District Court
Southern District of Texas
FILED

FEB 0 2 2004

Michael N. Milby
Clerk of Court

| | | |
|---|---|---|
| MANUEL TORRES and DOMINGA TORRES, | § | |
| Individually and as Next Fried of DEREK | § | |
| TORRES | § | |
| | § | |
| ERIKA DUREE, Individually and as Next | § | |
| Friend of ERIN JONATHON DUREE | § | CA B-03-222 |
| Next Friend of DANIEL VILLANEUVA | § | |
| | § | (Jury Requested) |
| vs. | § | |
| | § | |
| AMERICAN HOME PRODUCTS d/b/a | § | |
| WYETH, WYETH LABORATORIES, | § | Judge Tagle |
| WYETH-AYERST, WYETH AYERST | § | |
| LABORATORIES, WYETH LEDERLE | § | |
| WYETH LEDERLE VACCINES, and | § | |
| LEDERLE LABORATORIES, et al. | § | |

## PLAINTIFFS' REPLY TO DEFENDANT ELI LILLY
## AND COMPANY'S OPPOSITION TO REMAND

### Introduction

The Motion to Remand should be GRANTED because diversity jurisdiction does not

exist. In its response, Defendant Eli Lilly acknowledges a lack of diversity jurisdiction, but

argues Plaintiffs should not be able to name the correct non-diverse healthcare providers, ABC

Pediatrics and Yogesh Trakru, which was mistakenly named as the City of Laredo in Plaintiffs'

Original Petition filed in state court.[1] Plaintiffs have viable claims against the health care

providers named in Plaintiffs' First Amended Complaint. *See Collins, et al. v. American Home*

*Products Corp., et al.*, 343 F.3d 765 (5th Cir. 2003). A viable cause of action against the non-

---

[1] It is apparent from Plaintiffs' Original Petition that Plaintiffs intended to sue their healthcare provider. However, the healthcare provider was inadvertently named as City of Laredo, when, in fact, the actual healthcare providers for Plaintiffs were ABC Pediatrics and Yogesh Trakru. Defendants first pointed out this error in their Notice of Removal. In response, Plaintiffs corrected the name of the healthcare provider in Plaintiffs' First Amended Complaint, which was the first opportunity to do so after removal.

diverse defendant added after removal is evidence that the amendment is "not to defeat federal jurisdiction." *Tillman v. CSX Transportation, Inc.*, 929 F.2d 1023, 1029 (5th Cir. 1991). Thus, for the reasons set forth below, Plaintiffs respectfully request that this case be REMANDED to state court.

**Argument**

A.   **The Healthcare Providers, ABC Pediatrics and Yogesh Trakru, named in Plaintiffs' First Amended Complaint, were originally sued in state court at the time this lawsuit was originally filed, but simply misnamed**

Defendant Eli Lilly's chief objection to Plaintiffs' Motion to Remand is that Plaintiff should not be permitted to *add* the non-diverse healthcare providers, ABC Pediatrics and Yogesh Trakru, as defendants after this case was removed. However, this is not a case where a plaintiff is attempting to add a wholly new defendant after removal to destroy diversity. Rather, it is clear that Plaintiffs intended to sue their healthcare providers in state court, but, in this case, just mistakenly misnamed the healthcare provider. This clerical mistake does not create federal court jurisdiction, establish fraudulent joinder or lead to the conclusion that ABC Pediatrics and Yogesh Trakru were named in Plaintiffs' First Amended Complaint solely to defeat federal court jurisdiction.

In fact, a review of Plaintiffs' Original Petition filed in state court shows two pages of specific factual allegations against the healthcare provider defendant. The First Amended Complaint merely does what Plaintiffs would have done in state court had this case not been removed – i.e. correctly name the proper healthcare providers as defendants. This point is significant because Eli Lilly contends that Plaintiffs named ABC Pediatrics and Yogesh Trakru solely to defeat diversity. The clear intent of Plaintiffs to pursue claims against their healthcare providers prior to removal belies this contention. Defendants should not be able to parlay their

preemptive removal of this case (prior to any party being served with process and prior to all parties being named in the state court proceeding) into forcing Plaintiffs to pursue this case in a federal forum, when Plaintiffs' clearly asserted claims in their Original Petition that belong in state court. *See Collins,* 343 F.3d at 768. Accordingly, Defendants' argument that Plaintiffs named ABC Pediatrics and Yogesh Trakru solely to defeat diversity should be rejected, and the amendment should be permitted.

### B.   The appropriate factors for determining joinder of a non-diverse defendant

As stated in Plaintiffs' Motion to Remand, Plaintiffs amended their complaint pursuant to FRCP 15 prior to any responsive pleading being filed by any Defendant. As such, Plaintiffs' amendment correcting the name of the healthcare defendants was made as a matter of right under FRCP 15. *Whitaker v. City of Houston*, 963 F.2d 831, 834-835 (5th Cir. 1992). Further, as shown above, in exercising this right to amend the pleadings, Plaintiffs were merely correctly naming the proper healthcare provider defendants – rather than adding any additional defendants.

Defendant Eli Lilly contends that whether the amendment was made as a matter of right does not matter, and, instead, contends that permitting the amendment is committed to this Court's discretion as provided by 28 U.S.C. §1447(e). Further, Defendant Eli Lilly contends that Plaintiffs are in fact adding ABC Pediatrics and Yogesh Trakru as defendants, instead of correctly naming the healthcare providers originally sued under the wrong name in state court. Defendant Eli Lilly makes this argument despite the fact that the City of Laredo does not appear anywhere in Plaintiffs' First Amended Complaint, which is further evidence that Plaintiffs are merely correcting the name of the healthcare provider defendants, rather than adding new defendants.

Assuming that the *Hensgens* factors trump Plaintiffs matter of right to amend, and even assuming that Plaintiffs' First Amended Complaint joins new healthcare providers, instead of correctly naming the healthcare providers, Plaintiffs state that the proper application of the *Hensgens* factors weighs in favor of permitting the amendment in this case. For the reasons set forth in Plaintiffs' Response to Eli Lilly and Company's Motion to Strike Plaintiffs' First Amended Complaint, which is incorporated by reference herein, Plaintiffs state that the *Hensgens* factors weight in favor of remand.

**C.    Other factors cited by the Fifth Circuit weigh in favor of permitting the amendment naming ABC Pediatrics and Yogesh Trakru**

In addition to the *Hensgens* factors, which are more fully discussed in Plaintiffs' Response to Eli Lilly and Company's Motion to Strike Plaintiffs' First Amended Complaint, the Fifth Circuit has identified other factors in other cases that, when applied to this case, weigh in favor of permitting the amendment naming ABC Pediatrics and Yogesh Trakru.

**(1)    A substantial number of common issues of fact and law exist between the claims asserted by Plaintiffs against diverse defendants and the claims against the non-diverse healthcare providers**

For example, courts have found that the equities weigh in favor of permitting amendment when the claims should to be added by amendment involve common issues of fact and law. *Tillman*, 929 F.2d at 1029. *See also Palestini v. General Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000)(amendment permitting when claims "share the substantial issue of causation"). Clearly, the claims asserted against the diverse defendants and the claims asserted against the non-diverse healthcare providers involved a substantial number of common issues of fact and law, including but not limited to issues of general causation, specific causation, damages, and knowledge of the dangers of mercury exposure. In fact, the diverse defendants will most assuredly seek to invoke the learned intermediary doctrine (i.e. blame the non-diverse healthcare

providers) as a defense to Plaintiffs' claims. Likewise, the non-diverse healthcare providers will most assuredly argue that if the minor plaintiffs' injuries are caused by mercury contained in the vaccines, then the diverse defendants are responsible.

As such, disallowing the amendment subjects Plaintiffs to the real risk of having one trial against one defendant in a federal forum in which the diverse defendants blame the absentee healthcare providers, and having a separate trial in state court in which the healthcare providers blame the absentee diverse defendants. In such a situation, Plaintiffs would have successfully convinced two juries their neurological developmental disorders were caused by mercury exposure from Defendants, yet recover no damages due to the fact the case was forced to be tried in two separate forums. This is precisely why courts have permitted amendment when the claims involve the same transaction and occurrence. *Mayes v. Rapaport*, 198 F.3d 457, 463-464 (5th Cir. 1999) (holding that trial court should have permitted post-removal amendment adding non-diverse party and noting that "*danger of parallel lawsuits in federal and state court, which may spawn inconsistent results and inefficient use of judicial resources*" supports permitting amendment)(emphasis added). This is another reason that standing alone warrants permission of the amendment.

### (2)   The applicability of the fraudulent joinder standard to determining whether an amended pleading should be permitted

Defendant Eli Lilly attempts to argue that, in the event the Court should permit the amendment, the healthcare providers have been fraudulently joined. The Fifth Circuit has held that the fraudulent joinder doctrine does not apply to non-diverse defendants named after removal. *Mayes*, 198 F.3d at 463; *Cobb*, 186 F.3d at 677. As such, this argument made in the alternative is misplaced.

However, the Fifth Circuit has held that use of the fraudulent joinder standard is proper as a factor to determine whether the amendment should be permitted. *See Mayes*, 198 F.3d at 463, 466 (appellate court was required to reverse trial court's decision to deny amendment and remand based on finding that there was a "glimmer of hope" of recovery against the non-diverse defendants to be joined); *Tillman*, 929 F.2d at 1029 (existence of valid cause of action against non-diverse defendant added after removal warranted remand); *Cobb*, 186 F.3d at 677 (existence of valid cause of action against non-diverse defendant added by post-removal defendant warranted remand to state court). As shown in Plaintiffs' Motion to Remand and Plaintiffs' First Amended Complaint, and as shown below, Plaintiffs have a real possibility of establishing a cause of action against the healthcare providers. The Fifth Circuit, in a case with identical facts, agrees – holding that non-diverse healthcare providers are not fraudulently joined in this situation. *See Collins*, 343 F.3d at 766.[2] As such, the fact that the healthcare defendants are not fraudulently joined is an additional factor that weighs in favor of permitting the amendment.

**D.   ABC Pediatrics and Yogesh Trakru are not fraudulently joined**

As shown above, the fraudulent joinder doctrine does not apply to preclude adding a defendant after removal by way of an amended pleading. However, in its Opposition to Remand, Eli Lilly contends that ABC Pediatrics and Yogesh Trakru are fraudulently joined for two reasons: (1) the Vaccine Act; and (2) Sovereign Immunity. Assuming that Eli Lilly is arguing that ABC Pediatrics and Yogesh Trakru are fraudulently joined even if they had been correctly

---

[2] Defendant's argument that *Collins* is somehow not applicable to this case misses the point. Clearly, Plaintiffs could maintain a state court medical negligence case against their healthcare providers. See Part D below. The "federal defense" of the Vaccine Act does not preclude such an action, and is no less equally applicable (i.e. common) to the diverse and non-diverse in this case than in a case where the healthcare providers had been named prior to removal. As such, the non-diverse healthcare providers are not fraudulently joined because there is a possibility of recovery against the non-diverse healthcare provider under state tort law.

named as the healthcare providers in the Original Petition filed in state court, this argument fails on both counts.

### 1. The Vaccine Act does not support a finding that ABC Pediatrics and Yogesh Trakru are fraudulently joined

Eli Lilly's first argument, that the Vaccine Act makes ABC Pediatrics and Yogesh Trakru fraudulently joined, has been flatly rejected by the Fifth Circuit. *See Collins, et al. v. American Home Products Corp., et al.*, 343 F.3d 765, 768 (5th Cir. 2003). At best, Eli Lilly argues that this Court should stay any ruling on Plaintiffs' Motion to Remand in hopes that *Collins* will be reversed by way of *en banc* review. This argument demonstrates more clearly than any other that *Collins* supports Plaintiffs' position that ABC Pediatrics and Yogesh Trakru are not fraudulently joined based on application of the Vaccine Act. For the reasons set forth in Plaintiffs' Motion to Remand, Eli Lilly's argument that the Vaccine Act makes ABC Pediatrics and Yogesh Trakru fraudulently joined should be rejected.

### 2. Sovereign Immunity does not bar Plaintiffs' claims against ABC Pediatrics and Yogesh Trakru

Eli Lilly's second argument, that the doctrine of sovereign immunity makes ABC Pediatrics and Yogesh Trakru fraudulently joined, should also be rejected. In short, Eli Lilly argues that Plaintiffs' claims against the non-diverse healthcare providers, ABC Pediatrics and Yogesh Trakru, are barred by the doctrine of sovereign immunity under Texas law. However, Texas law clearly provides a cause of action for medical negligence against a public hospital or public health clinic. *See, e.g., Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 78 (Tex. 1997); *Salcedo v. El Paso Hosp. Dist.*, 659 S.W.2d 30, 31-33 (Tex. 1983); *Overton Memorial Hosp. v. McGuire*, 518 S.W.2d 528, 529 (Tex. 1975). For the reasons set forth below, Plaintiffs clearly

may recover damages against ABC Pediatrics and Yogesh Trakru under Texas law – meaning that ABC Pediatrics and Yogesh Trakru are not fraudulently joined.

Under Texas law, any public agency, including a public health care facility, may be sued under the Texas Tort Claims Act for personal injury caused by a condition or use of tangible personal property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law. TEX.CIV.PRAC. & REM.CODE §101.021(2). To state a claim for medical malpractice against a public entity for use or non-use of tangible property, a plaintiff is not required to prove the tangible property used was defective in some manner. *Salcedo*, 659 S.W.2d at 32. Rather, the plaintiff must merely show that the negligent conduct involves some use of the tangible property. *Salcedo*, 659 S.W.2d at 32. The term "use" is defined as "to put or bring into action or service; to employ for or apply to a given purpose." *Salcedo*, 659 S.W.2d at 33.

The Texas Supreme Court has recently confirmed that use of tangible property by a state facility waives sovereign immunity and subjects the state facility to liability. *See San Antonio State Hospital v. Cowan*, ___ S.W.3d ___ (Tex. January 9, 2004). A copy of the Court's opinion is attached as Exhibit A. In that case, the Texas Supreme Court confirmed that a state facility waives sovereign immunity "for its own use" of the equipment. *See San Antonio State Hospital* at p. 3. The Texas Supreme Court reaffirmed that use means "to put or bring into action or service; to employ for or apply to a given purpose." *Id.* at p. 3.

As stated above, Defendants must carry a heavy burden to establish that Plaintiffs have *no possibility* of recovery against ABC Pediatrics and Yogesh Trakru. Under the authorities cited above, the use by ABC Pediatrics and Yogesh Trakru of the vaccines and the needles to administer injections to Plaintiffs' minor child subjects it to liability under Texas law, and

sovereign immunity does not apply. This possibility of recovery means that there is no fraudulent joinder of ABC Pediatrics and Yogesh Trakru, and the attempted removal must fail.

A recent Texas case confirms that Plaintiffs have a cause of action against the non-diverse health care providers that is not barred by the doctrine of sovereign immunity. *Texas Tech Univ. Health Sciences Ctr. v. Mendoza*, 2003 WL 1359549 (Tex.App.—El Paso 2003)(not designated for publication).[3] In *Medoza*, the court found that the public medical facility waived its sovereign immunity with respect to plaintiffs' medical negligence claim based on use of a walker, fluid machine and surgical instruments. *Mendoza*, at *3. Because the plaintiff was using the walker when she collapsed, the Court found that "its use hardly seems incidental to the pulmonary embolism, [but] rather the use of the walker appears to be a substantial factor in bringing about the injury." *Id.*, at *4. At the time the mercury that forms the basis of the Plaintiffs' claims was injected into Plaintiffs, the tangible property (the needle or syringe) belonging to the non-diverse health care facility was being used.

Moreover, in *Mendoza*, the Court found the equipment used to provide plaintiff's body with fluids caused her to receive an overload of fluids that caused swelling and led to the pulmonary embolism. *Id.*, at *4. "Without the use of such equipment, she would not have received the fluids." Id., at *4. "The mechanism delivering the fluids and the fluids themselves cannot be distinguished in this context." Id., at *4. Likewise, the mercury that forms the basis of Plaintiffs' claims was injected as part of the vaccines (i.e. "fluids") used by the public medical facility.

In this case, the use of tangible property (i.e. the needle) is directly related to the injury claimed by Plaintiffs (i.e. injection of mercury). Moreover, the vaccines that contained mercury

---

[3] Texas cases not designated for publication may be cited with the designation "not designated for publication." Tex.R.App.P 47.7. Unpublished cases are referred to as Memorandum Opinions. Tex.R.App.P. 47.2(a). The use of Memorandum Opinions is reserved for issues that are settled under Texas law. Tex.R.App.P. 47.4.

and were administered by ABC Pediatrics and Yogesh Trakru also constitute tangible personal property **used** at the time the injury occurred. Both the **use** of the needles and the **use** of the vaccines are "not too attenuated from the injury, but rather contemporaneous with it." *See Mendoza*, at *4, citing *Dallas Co. MH&MR v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998). Without the mercury containing vaccine or the needle used to inject the mercury containing vaccine, Plaintiffs would not suffer from mercury poisoning. As such, Defendants have failed to show these non-diverse defendants were fraudulently joined.

In sum, as stated above, to demonstrate fraudulent joinder, Defendants must show that Plaintiffs have no possibility of recovery against the non-diverse medical care providers. Plaintiffs claim damages caused by mercury exposure. The exposure occurred at ABC Pediatrics and the office of Yogesh Trakru where the minor Plaintiffs were injected with mercury containing vaccines. Thus, Plaintiffs' claims arise out of the use of tangible property (needles, vaccines) of ABC Pediatrics and Yogesh Trakru. Clearly, Texas law provides that Plaintiffs may recover from the non-diverse medical care provider if the injury resulted from use of tangible property. As shown above, the evidence shows Plaintiffs' claims against the non-diverse entities that administered the mercury-containing vaccines are viable. Accordingly, Defendants have not, and cannot, demonstrate fraudulent joinder.

### Conclusion

For the reasons set forth above, Plaintiffs respectfully requests that this case be REMANDED to the 404th District Court of Cameron County, Texas.

Respectfully Submitted,

*Steve Hastings*

Steve Hastings, Attorney in Charge
State Bar No. 09211000
Southern District ID# 2232

HASTINGS LAW FIRM
101 N. Shoreline Blvd., Suite 430
Corpus Christi, Texas 78401
(361) 692-2000
Fax (361) 692-2001

Derrick S. Boyd
State Bar No. 00790350
Michael A. Simpson
State Bar No. 18403650

SIMPSON, BOYD & POWERS, P.L.L.C.
P. O. Box 957
Decatur, Texas 76234
(940) 627-8308
Fax (940) 627-8092

Greg McCarthy
State Bar No. 13367500

MILLER & McCARTHY
3811 Turtle Creek Blvd, Suite 1950
Dallas, Texas 75219
(469) 916-2552
Fax (469) 916-2555

ATTORNEYS FOR PLAINTIFFS

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been forwarded to the following counsel of record via Certified Mail, Return Receipt Requested or United States first class mail as set forth below on this 28th day of January, 2004.

*Via Certified Mail*
**David M. Macdonald**
McCauley, Macdonald & Devin, P.C.
3800 Renaissance Tower
1201 Elm Street
Dallas, Texas 75270
*Attorney for Sigma-Aldrich, Inc.*

*Via Certified Mail*
**Michael R. Klatt**
Susan Burnett
Clark, Thomas & Winters, P.C.
300 West Sixth Street, 15th Floor
P.O. Box 1148
Austin, Texas 78701
*Attorneys for American Home Products Corporation*
*d/b/a Wyeth, Wyeth Laboratories, Wyeth Ayerst,*
*Wyeth-Ayerst Laboratories, Wyeth Lederle,*
*Wyeth Lederle Vaccines and Lederle Laboratories*

*Via Certified Mail*
**Bradely S. Wolff**
M. Diane Owens
Swift, Currie, McGhee & Heiers, L.L.P.
The Peachtree, Suite 300
1355 Peachtree Street, N.E.
Atlanta, GA 30309-3238
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

Via Certified Mail
**Lisa Gaye Mann**
Phillips & Akers
3200 SW Freeway
Ste. 3400
Houston, TX 77027
*Attorneys for Aventis Pasteur Inc., Individually and*
*As Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

**Plaintiffs' Reply to Defendant Eli Lilly and Company's Opposition to Remand – Page 12**

*Via Certified Mail*
**Wade L. McClure**
Gibson McClure Wallace & Daniels
8080 N. Central Expressway
Suite 1300, LB 50
Dallas, Texas 75206-1808
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

*Via Certified Mail*
**R. Jo Reser**
Law Offices of Davidson & Troilo
7550 W. IH-10, Suite 800
San Antonio, Texas  78229
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

*Via Certified Mail*
**Miguel Wise**
MIGUEL WISE, P.C.
134 W. 5th St.
Weslaco, TX 78596
*Attorneys for Aventis Pasteur Inc., Individually and*
*as Successor-in-Interest to Connaught Laboratories,*
*Inc., Pasteur Merieux, and Pasteur Merieux Connaught*

*Via Certified Mail*
**Stephanie A. Smith**
Fulbright & Jaworski, L.L.P.
600 Congress Avenue, Ste. 2400
Austin, Texas 78701-3271
*Attorneys for GlaxoSmithKline, Individually and*
*as Successor-in-Interest to SmithKline Beecham Corp.*

*Via Certified Mail*
**Barclay Manley**
Fulbright & Jaworski, L.L.P.
1301 McKinney Street, Ste. 5100
Houston, Texas  77010-3095
*Attorneys for GlaxoSmithKline, Individually and*
*as Successor-in-Interest to SmithKline Beecham Corp.*

*__Via Certified Mail__*
**Richard L. Josephson**
**Doug Roberson**
Baker Botts, L.L.P.
3000 One Shell Plaza
910 Louisiana
Houston, Texas 77002
*Attorneys for Merck & Co., Inc.*

*__Via Certified Mail__*
**Gene M. Williams**
Mehaffey & Webber, P.C.
P.O. Box 16
Beaumont, Texas  77704
*Attorneys for Baxter International, Inc.*

*__Via Certified Mail__*
**Laura J. O'Rourke**
Vinson & Elkins, L.L.P.
2001 Ross Avenue, Suite 3700
Dallas, Texas  75201
*Attorneys for Baxter International, Inc.*

*__Via Certified Mail__*
**Lee Davis Thames**
Butler, Snow, O'Mara, Steves & Cannada, P.L.L.C.
P.O. Box 22567
Jackson, MS  39225

*__Via Certified Mail__*
**John R. Gilbert**
Gilbert & Gilbert, P.L.L.C.
222 N. Velasco Street
P.O. Box 1819
Angleton, Texas  77516
*Attorneys for the Dow Chemical Company*

*__Via Certified Mail__*
**Jennifer Spencer-Jackson**
Bryan Haynes
Locke, Liddell & Sapp, L.L.P.
2200 Ross Avenue, Suite 2200
Dallas Texas  75201
*Attorneys for Eli Lilly and Company*

*__Via Certified Mail__*
**M. Scott Michelman**
Shook, Hardy & Bacon, L.L.P.
JP Morgan Chase Tower
600 Travis Street, Ste. 1600
Houston, Texas  77002-2911
*Attorneys for Eli Lilly and Company*

*__Via Certified Mail__*
**Deborah A. Moeller**
**Jeffery A. Druse**
Shook, Hardy & Bacon, L.L.P.
2555 Grand Blvd.
Kansas City, Missouri  64108-2613
*Attorneys for Eli Lilly and Company*

*__Via Certified Mail__*
**Mathew H. Hand**
Brown & Fortunato, P.C.
905 South Fillmore, Suite 400
P.O. Box 9418
Amarillo, Texas  79105
*Attorneys for Oribi, Inc., Individually and*
 *d/b/a Meridian Chemical & Equipment, Inc.*
*and d/b/a Global Fine Chemicals and National*
*Association of Compounding Pharmacists*


*Steve Hastings*
Steve Hastings

# Exhibit A

# IN THE SUPREME COURT OF TEXAS

No. 02-0348

SAN ANTONIO STATE HOSPITAL, PETITIONER

v.

KIMBERLY COWAN, ET AL., RESPONDENTS

ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTH DISTRICT OF TEXAS

**Argued February 12, 2003**

JUSTICE HECHT delivered the opinion of the Court.

Section 101.021(2) of the Texas Tort Claims Act waives governmental immunity for death caused by a use of tangible personal property.[1] The issue here is whether merely providing someone with personal property that is not itself inherently unsafe is a "use" within the meaning of the Act. We hold that it is not and accordingly reverse the judgment of the court of appeals[2] and dismiss the action against petitioner.

The probate court ordered James Roy Cowan, Jr. involuntarily committed to the San Antonio State Hospital because of his psychotic behavior, acute depression, and suicidal tendencies. As

---

[1] TEX. CIV. PRAC. & REM. CODE § 101.021(2) ("A governmental unit in the state is liable for: . . . (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.").

[2] 75 S.W.3d 19 (Tex. App.—San Antonio 2001).

required by the order, the Hospital took possession of Cowan's personal effects, including his suspenders and walker, but allowed him to keep these latter items with him. Two days later, Cowan used his suspenders and a piece of pipe from the walker to commit suicide. His wife and children, respondents in this Court, sued the Hospital, petitioner here, for wrongful death. The trial court denied the Hospital's plea to the jurisdiction based on sovereign immunity, and the Hospital appealed.[3] A divided court of appeals affirmed, holding that "the Hospital employees misused the suspenders and walker by providing them to Cowan in view of his suicidal state",[4] and therefore its immunity from liability is waived by section 101.021(2) of the Tort Claims Act. We granted the Hospital's petition for review.[5]

Section 101.021(2) waives the State's immunity for death "so caused by a condition or use of tangible personal or real property".[6] Respondents do not complain of the condition of Cowan's walker and suspenders. They do not assert, for example, that the walker and suspenders were defective or that they lacked some safety feature. Rather, respondents contend, as the court of appeals held, that the Hospital misused the walker and suspenders by allowing Cowan to have them. Respondents concede that section 101.021(2) waives immunity for a use of personal property only when the governmental unit is itself the user. This limitation is not expressly stated in section

---

[3] *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(8) ("A person may appeal from an interlocutory order of a district court . . . that: . . . grants or denies a plea to the jurisdiction by a governmental unit . . . .").

[4] 75 S.W.3d at 23.

[5] 46 Tex. Sup. Ct. J. 192 (Nov. 21, 2002); *see* TEX. GOV'T CODE §§ 22.001(a)(1), 22.225(b)(3), (c).

[6] TEX. CIV. PRAC. & REM. CODE § 101.021(2).

2

101.021, but we have read it into section 101.021(1),[7] which waives immunity for the use of motor-driven vehicles and equipment,[8] and there is no reason to construe "use" differently in section 101.021(2).[9] Thus, the Hospital's immunity can be waived only for its own use of Cowan's walker and suspenders, and not by Cowan's use of them.

Respondents argue, and the court of appeals concluded, that the Hospital used Cowan's walker and suspenders by giving them to him to use. But since 1973 we have consistently defined "use" to mean "'to put or bring into action or service; to employ for or apply to a given purpose'".[10] A governmental unit does not "use" personal property merely by allowing someone else to use it and nothing more. If all "use" meant were "to make available", the statutory restriction would have very

---

[7] *LeLeaux v. Hamshire-Fannett Indep. Sch. Dist.*, 835 S.W.2d 49, 51 (Tex. 1992) ("While the statute [section 101.021(1)] does not specify whose operation or use is necessary — the employee's, the person who suffers injury, or some third party — we think the more plausible reading is that the required operation or use is that of the employee. This requirement is consistent with the clear intent of the Act that the waiver of sovereign immunity be limited.").

[8] Tex. Civ. Prac. & Rem. Code § 101.021(1) ("A governmental unit in this state is liable for: (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if: (A) the property damage, personal injury, or death arises from the operation or use of a motor-driven vehicle or motor-driven equipment; and (B) the employee would be personally liable to the claimant according to Texas law . . . .").

[9] *Texas Natural Res. Conservation Comm'n v. White*, 46 S.W.3d 864, 869 n.2 (Tex. 2001); *see also DeWitt v. Harris County*, 904 S.W.2d 650, 654 (Tex. 1995) ("Consistent with subsection 1, we construe subsection 2 of section 101.021 to predicate the governmental unit's respondeat superior liability upon the liability of its employee."); *cf. Texas Dep't of Transp. v. Able*, 35 S.W.3d 608, 612 (Tex. 2000) (distinguishing liability for "use", which must be based on the government's use, from liability for a "condition", which need not be).

[10] *Beggs v. Texas Dep't of Mental Health & Mental Retardation*, 496 S.W.2d 252, 254 (Tex. Civ. App.—San Antonio 1973, writ ref'd); *see also Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *Texas Dep't of Criminal Justice v. Miller*, 51 S.W.3d 583, 588 (Tex. 2001); *White*, 46 S.W.3d at 869; *Kerrville State Hosp. v. Clark*, 923 S.W.2d 582, 584 (Tex. 1996); *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989).

3

little force.  As difficult as the restriction has been to construe,[11] it was clearly intended as a real limit on the waiver of sovereign immunity.[12]  Respondents assert only that the Hospital gave Cowan his walker and suspenders; they do not allege that the Hospital put the suspenders and walker into service or employed them for a given purpose.  By providing Cowan his walker and suspenders, the Hospital did not "use" them within the meaning of section 101.021(2).

Respondents rely on *Overton Memorial Hospital v. McGuire*, but in that case the hospital was alleged to have used a bed without rails in a patient's post-operative treatment.[13]  The hospital did not merely allow the patient access to the bed; it actually put the patient in the bed as part of his treatment.  The use of property respondents allege does not rise to this level.  Respondents also cite *Lowe v. Texas Tech University*[14] and *Robinson v. Central Texas MHMR Center*.[15]  In *Lowe*, a football coach was alleged to have required a player to wear a uniform without a knee brace.[16]  The allegation was that the coach prescribed the uniform to be worn, not merely that he allowed the player to choose what to wear.  Similarly, in *Robinson*, employees of a mental health center gave

---

[11] *See Miller*, 51 S.W.3d at 589 (Hecht, J., concurring).

[12] *Dallas County Mental Health & Mental Retardation v. Bossley*, 968 S.W.2d 339, 343 (Tex. 1998) ("If only involvement were required, the waiver of immunity would be virtually unlimited, since few injuries do not somehow involve tangible personal or real property.  Requiring only that a condition or use of property be involved would conflict with the Act's basic purpose of waiving immunity only to a limited degree.").

[13] 518 S.W.2d 528, 528 (Tex. 1975) (per curiam).

[14] 540 S.W.2d 297 (Tex. 1976).

[15] 780 S.W.2d 169 (Tex. 1989).

[16] 540 S.W.2d at 298.

4

a patient swimwear without a life preserver.[17]  As we explained in *Kerrville State Hospital v. Clark*: "The precedential value of [*Lowe* and *Robinson*] is . . . limited to claims in which a plaintiff alleges that a state actor has provided property that lacks an integral safety component and that the lack of this integral component led to the plaintiff's injuries."[18]  As already noted, respondents make no such claim in this case.

While we continue to be troubled by the difficulties in construing section 101.021(2) that are intrinsic to its language and history, today's decision is rather clearly required by our long-standing definition of the word "use" in the statute.  Because respondents failed to allege that Cowan's death was caused by the Hospital's use of property, its immunity is not waived by section 101.021(2). Accordingly, the judgment of the court of appeals is reversed, and respondents' action against the Hospital is dismissed.

_____
Nathan L. Hecht
Justice

Opinion delivered: January 9, 2004

---

[17] 780 S.W.2d at 169.

[18] 923 S.W.2d 582, 585 (Tex. 1996).

5