**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **MANUEL TORRES and DOMINGA** | § | **CIVIL ACTION NO. 1:03-CV-00222** |
| **TORRES, Individually and as Next Friend** | § | |
| **of DEREK TORRES, ET AL.,** | § | **JURY REQUESTED** |
| | § | |
| *Plaintiffs* | § | |
| | § | |
| **v.** | § | |
| | § | |
| **AMERICAN HOME PRODUCTS** | § | |
| **d/b/a WYETH, ET AL.,** | § | |
| | § | |
| *Defendants* | § | |

**VACCINE DEFENDANTS' RENEWED RULE 12(b) AND 12(c) MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TO STAY THESE PROCEEDINGS**

Pursuant to Federal Rules of Civil Procedure 12(b) and 12(c), the Vaccine Defendants[1] file this their Renewed Motion to Dismiss[2] the claims brought against them in this action. In the alternative, the Vaccine Defendants show that any claims which are not dismissed should be stayed. In support of this motion, the Vaccine Defendants show the Court the following:

**INTRODUCTION**

Plaintiffs Manuel Torres and Dominga Torres, and Erika Duree ("parent Plaintiffs") allege that their minor children, Derek Torres and Erin Jonathon Duree ("minor Plaintiffs"), respectively, have sustained neurological injuries from exposure to FDA-approved vaccines containing the preservative thimerosal. *See* Plaintiffs' First Amended Complaint

---

[1] The "Vaccine Defendants" are Aventis Pasteur Inc., Baxter Healthcare, Inc., Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline (incorrectly named as GlaxoSmithKline, individually and as successor in interest to SmithKline Beecham Corp.), and Wyeth.

[2] This renewed motion to dismiss is being re-filed in accordance with this Court's March 23, 2004, and May 6, 2004 orders. Docket # 55, 57.

(hereinafter "Complaint") at ¶¶ 5.1-5.7. Plaintiffs' Complaint asserts claims based on strict liability, negligence, breach of warranty, and civil conspiracy causes of action against the Vaccine Defendants, and Plaintiffs' Complaint seeks damages for medical care, loss of earning capacity, physical impairment, disfigurement, physical pain, mental anguish, medical expenses, loss of services, loss of consortium, and loss of companionship. The Complaint does not distinguish whether particular relief is sought by the parent Plaintiffs individually or as representatives for their minor children.

The Court should dismiss these claims because the relief sought relates to a claim for a "vaccine-related injury" covered by the National Childhood Vaccine Injury Compensation Act (the "Vaccine Act" or "Act"), 42 U.S.C. §§ 300aa-1 et seq.[3] The Vaccine Act bars all civil actions seeking relief for such an injury unless the claimant has exhausted the administrative remedy the Act provides before filing suit. See 42 U.S.C. § 300aa-11(a)(2)(B). The United States Fifth Circuit Court of Appeals has held that claims alleging that thimerosal caused neurological injury, such as Plaintiffs' claims, are "vaccine-related" and thus covered by the Vaccine Act.[4] Additionally, every one of the numerous courts that has addressed claims like Plaintiffs' has held

---

[3]    See 42 U.S.C. § 300aa-33(5) (defining "vaccine-related injury: as "an illness, injury condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include [conditions] associated with an adulterant or contaminant intentionally added to such a vaccine").

[4]    See, e.g., McDonal v. Abbott Labs., ___ F.3d ___, 2005 WL 957142, at *6 (5th Cir. Apr. 26, 2005) (holding that "the claims asserting vaccine-related injuries brought against the . . . nonresident Vaccine Defendants were required to have first been brought in the Vaccine Court"); see also Moss v. Merck & Co., 381 F.3d 501, 504 (5th Cir. 2004) (characterizing as an "unremarkable proposition" that "a Thimerosal-related injury, occurring as a result of the administration of a vaccine, is a vaccine-related injury within the meaning of the Vaccine Act") (citing Leroy v. Sec'y, Dep't of Health and Human Servs., 02-392V, 2002 U.S. Claims LEXIS 284, at *18-19 (Fed. Cl. Spec. Mstr. Oct. 11, 2002)).

that the Vaccine Act covers claims for injuries attributed to thimerosal in childhood vaccines,[5] including U.S. District Courts within the Southern District of Texas.[6]

The Vaccine Act requires persons allegedly injured by vaccines, and in the case of a minor, their legal representatives, to file and pursue a compensation remedy available through a specially constituted court of the United States Court of Federal Claims ("Vaccine Court") *before* they can proceed to litigation. Moreover, the Vaccine Act unequivocally mandates that "[i]f a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court *must dismiss the action*." *Owens v. Am. Home Prods. Corp.*, 203 F. Supp. 2d 748, 752-53 (S.D. Tex. 2002) (emphasis added) (citing 42 U.S.C. § 300aa-11(a)(2)(B)).

Likewise, claims for past and future medical expenses necessitated by an alleged injury to a child—whether asserted by parent or child—are for expenses incurred "on behalf of"

---

[5]    *See, e.g., Liu v. Aventis Pasteur, Inc.*, 219 F. Supp.2d 762 (W.D. Tex. 2002); *Owens v. Am. Home Prods. Corp.*, 203 F. Supp. 2d 748 (S.D. Tex. 2002); *O'Connell v. Am. Home Prods. Corp.*, No. G-02-184, 2002 WL 31455729 (S.D. Tex. May 7, 2002) (Exhibit 1); *Wax v. Aventis Pasteur, Inc.*, No. CV 02-2018 (JBW) (E.D.N.Y. Oct. 28, 2002, as clarified by Order dated Dec. 16, 2002), 2002 U.S. Dist. LEXIS 25206 (Exhibit 2); *Mead v. Aventis Pasteur, Inc.*, No. 0107-07136 (Or. Cir. Ct. Nov. 5, 2002) (Exhibit 3); *Cheskiewicz v. Aventis Pasteur, Inc.*, No. 0952 (Pa. Ct. Comm. Pls. Dec. 16, 2002), *aff'd*, 843 A.2d 1258 (Pa. Super. 2004) (Exhibit 4); *Murphy v. Aventis Pasteur, Inc.*, 270 F. Supp. 2d 1368 (N.D. Ga. Feb. 25, 2003); *Ashton v. Aventis Pasteur, Inc.*, No. 04026, 2003 WL 21361355 (Pa. Ct. Comm. Pls. May 22, 2003), *aff'd*, 851 A.2d 908 (Pa. Super. 2004) (Exhibit 5). *See also* footnote 4 of Vaccine Defendants' December 15, 2003 Memorandum of Law in Support of their Rule 12(b) and 12(c) Motion to Dismiss, and Exhibits 1-35 thereto (Docket #7).

[6]    *See Owens v. Am. Home Prods. Corp.*, 203 F. Supp. 2d 748, 756 (S.D. Tex. 2002); *Blackmon v. Am. Home Prods. Corp.*, 267 F. Supp. 2d 667 (S.D. Tex. 2002); *O'Connell v. Am. Home Prods. Corp.*, No. G-02-184, 2002 WL 31455729 (S.D. Tex. May 7, 2002) (Exhibit 1); *Strauss v. American Home Prods. Corp*, 208 F. Supp. 2d 711 (S.D. Tex. 2002); *Perez v. Am. Home Prods.*, Civil Action No. C-03-519 (S.D. Tex. June 11, 2004) (Exhibit 6); *Mast v. Am. Home Prods.*, Civil Action No. C-03-516 (S.D. Tex. June 11, 2004) (Exhibit 7).

the child as a result of alleged "vaccine-related" injuries and, thus, are also subject to the Vaccine Act's initial ban against tort suits.

The parent Plaintiffs' individual claims should also be dismissed with prejudice, because they are barred by state law. Because Plaintiffs cannot qualify as "bystanders" under Texas law, their claims for damages for mental anguish must be dismissed. Also, the Texas Supreme Court has expressly declined to recognize a parental claim for loss of consortium with a non-fatally injured child and has rejected the antiquated loss of services cause of action. Nor does Texas law recognize a parental claim for earning capacity lost due to increased care for an injured child. Finally, Plaintiffs' claim of civil conspiracy likewise fails to state a cognizable claim as a matter of law and must be dismissed. Consequently, all of Plaintiffs' claims, whether viewed as representative claims brought on behalf of the minor children or by the parents individually, are either barred by the Vaccine Act or are not cognizable under Texas law, and the entire Complaint should be dismissed as against the Vaccine Defendants.

In the alternative, any claims which are not dismissed should be stayed until the Plaintiffs either properly elect to withdraw their petitions from the Vaccine Court under 42 U.S.C. § 300aa-11(a)(2)(A)(ii), or proceed in the Vaccine Court to a ruling on the merits, and reject any compensation that Court grants them in accordance with 42 U.S.C. § 300aa-11(a)(2)(A)(i).[7] Proof of any individual parental claims would require proof of the same facts and involve the same legal issues as the children's injury claims. Other courts faced with this situation have refused to allow independent parental claims to be litigated ahead of the minor's

---

[7] Plaintiffs in this action have apparently filed a petition for compensation in Vaccine Court. The Vaccine Defendants show, upon information and belief, and based upon the docket information available on PACER, that Plaintiffs have a currently pending petition for compensation in the Court of Federal Claims (*i.e.*, Vaccine Court), but Plaintiffs have not made either of the elections required by 42 U.S.C. § 300aa-11(a)(2)(B). *See Torres v. Sec'y of Health & Human Svcs.*, Case No.: 1:03-vv-02336-UNJ (Fed. Cl.) Docket #1; *Duree v. Sec'y of Health & Human Svcs.*, Case No.: 1:03-vv-02305-UNJ (Fed. Cl.) Docket #1 (Exhibit 8).

primary claim for injury. *Owens v. Am. Home Prods. Corp.*, Civil Action No. G-02-185 (S.D. Tex. July 12, 2002) ("Clarification Order") (Exhibit 9). If the parents were allowed to go forward now without regard to exhaustion of the Vaccine Court remedy, that would allow parties to litigate claims relating to the same injury, at the same time, but on multiple tracks and in different forums. That is wasteful, burdensome, and precisely what the Vaccine Act prohibits. Accordingly, any claims not dismissed with prejudice under Texas law should be stayed so that the compensation program mandated by Congress can proceed as intended.

## ARGUMENT

I.    **The Vaccine Act's Exclusive And Mandatory Remedy For Vaccine-Related Injury Claims Must Be Exhausted Before Filing Suit.**

A.    **The Vaccine Act creates a new remedial system for "vaccine-related" injuries.**

Congress passed the Vaccine Act in 1986, noting that "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken," H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S. Code Congressional and Administrative News ("U.S.C.C.A.N.") at 6345, and that the "[u]se of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease," thereby saving billions in medical costs. *Id.* Likewise, Congress recognized that the cost of litigation initiated on behalf of children claiming injuries traceable to vaccination had resulted in a significant reduction in the number of manufacturers willing to sell childhood vaccines, and it was concerned that the costs of litigation would discourage manufacturers from continued participation in the vaccine market. *See* H.R. Rep. No. 99-908 at 4, 6-7 (1986), *reprinted in* 1986 U.S.C.C.A.N. at 6345, 6347-48.

Because of its "real concern about the future of Federal immunization initiatives," and its desire to safeguard the national vaccine supply, Congress included in the Vaccine Act a compensation program to provide claimants a just and efficient remedy while also protecting vaccine manufacturers from excessive litigation costs. *Id.* at 4, *reprinted in* 1986 U.S.C.C.A.N. at 6345; *Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2-3 (1st Cir. 1994). That Program is a no-fault compensation system, *see, for example*, 42 U.S.C. § 300aa-10(a) (1994), *Mazur v. Merck & Co.*, 767 F. Supp. 697, 702 (E.D. Pa. 1991), *aff'd*, 964 F.2d 1348 (3d Cir. 1992), that was intended to depart from the "traditional tort system" that threatens the national vaccine supply. *O'Connell v. Shalala*, 79 F.3d 170, 173 (1st Cir. 1996). The Act "represents an effort to provide compensation to those harmed by childhood vaccines *outside the framework of traditional tort law*." *Schafer*, 20 F.3d at 2 (emphasis added).

To achieve both congressional goals, the Vaccine Act created a federal cause of action, which requires that any claims in excess of $1,000 for vaccine-related injuries be filed and completed *first* in the Vaccine Court. 42 U.S.C. § 300aa-11(a)(2)(A).[8] Specifically, a claimant must file a petition for compensation (i) under the Vaccine Compensation Program; (ii) in the Vaccine Court; (iii) against the Secretary of the Department of Health and Human Services; (iv) where the Department of Justice responds on behalf of the government; and (v) the case is heard by a federal special master, who determines whether the Act covers the claim,

---

[8]   At the heart of this case against the Vaccine Defendants is the allegation that Plaintiffs' minor children have suffered vaccine-related injuries within the scope of the Act. *See, e.g.*, Complaint at ¶ 5.6 ("The children were poisoned by the cumulative doses of the mercury they received *by way of these vaccinations*.") (emphasis added). The term "vaccine-related injury" is broadly defined in the Vaccine Act as "an illness, injury, condition, or death associated with" a vaccine identified in the Act. 42 U.S.C. § 300aa-33(5).

A wealth of authority—from the plain language of the statute, to the governing regulations, to official determinations by the HHS Secretary and Vaccine Court, to the overwhelming weight of case-law—holds that the Vaccine Act covers claims exactly like those asserted here. *See supra*, notes 4-6.

whether a petitioner is entitled to compensation, and the amount of such compensation. 42

U.S.C. § 300aa-12(a) (1994).

**B.**     **Plaintiffs must *first* exhaust the remedies of the Vaccine Court, or be barred from bringing a civil action in state or federal court.**

The express language of the Vaccine Act and its legislative history establish that a

plaintiff's exhaustion of the Act's statutory remedy is a condition precedent to the subject matter

jurisdiction of any state or federal court to hear the merits of that plaintiff's claim for a vaccine-

related injury.[9] Specifically, the Act provides:

> *No person may bring a civil action* for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, *unless a petition has been filed, in accordance with section 300aa-16 of this title, for compensation under the Program for such injury or death and —*
>
> > *(i)(I) the United States Court of Federal Claims has issued a judgment under section 300aa-12 of this title on such petition, and*
> >
> > *(II) such person elects under section 300aa-21(a) of this title to file such an action,[[10]] or*

---

[9]     The Vaccine Act "is jurisdictional in nature because it defines the jurisdiction of state and federal courts with respect to civil actions against a vaccine administrator or manufacturer for vaccine-related injuries." *Gilbert v. Secretary of HHS*, 31 Fed. Cl. 379, 381 (Fed. Cl. 1994), *aff'd*, 51 F.3d 254 (Fed. Cir. 1995); *see also Brown v. Secretary of HHS*, 874 F. Supp. 238, 241 (N.D. Ind. 1994) ("[T]his Court's jurisdiction over a claim for compensation for a vaccine-related injury or death is determined by the [Vaccine Act]."), *aff'd*, 61 F.3d 905, 1995 WL 395753 (7th Cir. 1995) (unpublished opinion); *Greene v. Aventis Pasteur*, Nos. L-1288-02, L-1351-02, at 3 (N.J. Super. Aug. 8, 2002) ("[W]hether the Vaccine Act precludes Plaintiffs from pursuing their claim in this Count because the Plaintiffs failed to file a petition with the Vaccine court … is a threshold issue of jurisdiction.") (Exhibit 10).

[10]     Section 300aa-21(a) allows a claimant to either accept the compensation award of the Vaccine Court or reject the award and file a civil action in state or federal court. *See* 42 U.S.C. § 300aa-21(a)(1)-(2).

> *(ii) such person elects to withdraw such petition under section 300aa-21(b) of this title or such petition is considered withdrawn under such section.*[11]

42 U.S.C. § 300aa-11(a)(2)(A) (emphasis added).

The Act is equally plain that where a claimant fails to exhaust the remedy provided by the Vaccine Act before filing suit, any civil action for vaccine-related injuries must be dismissed: "If a civil action which is barred under subparagraph (A) is filed in a State or Federal court, *the court shall dismiss the action.*"  42 U.S.C. § 300aa-11(a)(2)(B) (emphasis added).  In such an instance, the state or federal court lacks subject matter jurisdiction to decide the merits of such claim.[12]

---

[11]    Section 300aa-21(b) allows a claimant to withdraw his or her petition from the Vaccine Court proceedings if the Vaccine Court fails to render a decision on the petition within 240 days of the filing of the petition. *See* 42 U.S.C. § 300aa-21(b)(1).

[12]    *See Brown*, 874 F. Supp. at 241 (dismissing claim for lack of subject matter jurisdiction because plaintiffs did not first file a petition for compensation in Vaccine Court); *Greene, supra* note 9 at 5 (dismissing claims for thimerosal-related injuries because the "Court holds that the Plaintiffs' alleged injuries are vaccine-related and this Court lacks jurisdiction over those matters"); *Leroy v. Sec'y Dep't of Health & Human Servs.*, 2002 WL 31730680 at *26 (Fed. Cl. Spec. Mstr. Oct. 11, 2002)(holding that persons alleging injuries from thimerosal in vaccines are "statutorily obligated to file their claim . . . in the Court of Federal Claims *in the first instance*" (emphasis in original)).

Even if Plaintiffs met the statutory requirement of electing to withdraw the minors' petitions from the Vaccine Court proceedings, which they have not, this Court would still have to dismiss all claims covered by the Vaccine Act because Plaintiffs filed suit in state court *before* filing a petition in Vaccine Court. The Vaccine Defendants show, upon information and belief, and based upon the docket information available on the Federal Court System's electronic database, PACER, that Plaintiffs' petition for compensation in the Vaccine Court was not filed until October 7, 2003— approximately a month and a half after Plaintiffs filed their petition in a Texas state court on August 29, 2003. *See* Exhibit 8. Thus, because only the Vaccine Court had initial jurisdiction over Plaintiffs' claims, and regardless of whether Plaintiffs made an election to withdraw their petitions from Vaccine Court, this Court must dismiss this case for lack of subject matter jurisdiction pursuant to 42 U.S.C. 300aa-11(a)(2)(B).

**C.**     **The Vaccine Act bars Plaintiffs' claims for their children's medical expenses and loss of earning capacity.**

Because Plaintiffs have failed to comply with the Vaccine Act's mandate of completing the compensation remedy before filing suit, all of the claims made by or on behalf of the minor children must be dismissed. Plaintiffs' claims for their children's medical expenses and alleged loss of earning capacity should also be dismissed without prejudice on the same basis as the children's personal injury claims: those claims must have been *first* pursued through the Vaccine Compensation Program *before* filing suit. As shown below, Plaintiffs' claims for medical expenses and loss of earnings are specifically included within the Vaccine Act's scope and, thus, within its jurisdictional ban on premature tort suits.

Under the Vaccine Act, as in state or federal court, a minor child may not bring a claim in his own name; rather, the claim is brought by his parents or other legal representatives. The Vaccine Act identifies who may bring a petition as "any person who has sustained a vaccine-related injury [or] *the legal representative of such person if such person is a minor* or is disabled . . . ." 42 U.S.C. § 300aa-11(b)(1)(A) (emphasis added). Furthermore, the Act provides that the compensation awarded "shall include" medical expenses incurred on behalf of the injured person, specifically "unreimbursable expenses" that are "incurred *by or on behalf of* the person who suffered [a vaccine-related] injury," including expenses "for *diagnosis and medical or other remedial care* determined to be reasonably necessary." 42 U.S.C. § 300aa-15(a) (emphasis added). Similarly, Section 300aa-15(a)(3)(B) of the Act provides compensation for a petitioner's anticipated loss of earnings.

Because the Vaccine Act provides for—and indeed mandates—compensation for medical expenses and loss of earnings or future earning capacity incurred by or on behalf of the child making a claim, the Act governs the claims by any plaintiff for these alleged items of damages and requires that these claims be dismissed without prejudice. That was the exact

holding of the United States District Court for the Southern District of Texas in the case of

*Strauss v. American Home Products Corp.*, 208 F. Supp. 2d 711 (S.D. Tex. 2002). As Judge

Samuel B. Kent explained:

> [A]lthough Plaintiffs are not barred outright by the Vaccine Act
> from seeking individual damages (*i.e.*, loss of consortium) from the
> Vaccine Manufacturers, *they cannot recover from the Vaccine
> Manufacturers for any expenses that they have incurred on [the
> minor child's] behalf.* As explained above, the Vaccine Act
> provides compensation for actual and un-reimbursable expenses
> and projected expenses (incurred by the victim or on the victim's
> behalf) for medical or other remedial care determined to be
> reasonably necessary, actual and *anticipated lost earnings*, actual
> and projected pain and suffering of the victim and reasonable
> attorneys' fees and costs. *The covered expenses include those
> costs which "have been or will be incurred by or on behalf of the
> [victim]* . . . for rehabilitation, developmental evaluation, special
> education, vocational training and placement, case management
> services, counseling, emotional or behavioral therapy, residential
> and custodial care and services expenses, and the facilities
> determined to be reasonably necessary."

*Id.* at 715 n.8 (emphasis added) (quoting 42 U.S.C. § 300aa-15(a)(1)).

Additionally, also before Judge Kent in similar cases alleging thimerosal caused

neurological injury, the plaintiffs in *Owens, O'Connell* and *Blackmon* argued that state law

recognizes the right of parents to recover the medical expenses incurred on behalf of a minor

child, and, on that basis, moved for clarification of the Court's decisions dismissing (but not

discussing) the parents' claims for reimbursement of medical expenses. *Owens v. Am. Home

Prods. Corp., supra*; *O'Connell v. Am. Home Prods. Corp., supra*; *Blackmon v. Am. Home

Prods. Corp.*; No. G-02-179 (S.D. Tex. May 8, 2002) (Exhibit 11). Rejecting the plaintiffs'

argument, the Court clarified its order as follows:

> The Court acknowledges that in Texas, "[i]t is well settled law that
> because the parent is primarily liable for a minor's medical
> expenses incurred during minority, any cause of action for medical
> expenses incurred up the age of 18 belongs to such parent."
> [citation omitted] Nevertheless, although Plaintiffs are not barred

> outright by the Vaccine Act from seeking individual damages (i.e., loss of consortium) from the Vaccine Manufacturers, *they cannot recover from the Vaccine Manufacturers for such medical expenses at this time. . . . Plaintiffs are therefore <u>required</u> to seek reimbursement for these expenses in the Vaccine Court, rather than attempting to recover damages via an action wherein they assert individual claims against the Vaccine Manufacturers. Allowing them to do so would clearly undermine the stated objectives of the Vaccine Act.* This result is not in contravention of Texas law, because the Court is in no way holding that Plaintiffs do not possess a valid claim for the medical expenses at issue. *The Court is simply stating that Plaintiffs cannot seek to recover such expenses from the Vaccine Manufacturers until after they have filed a Vaccine Act petition in accordance with the Vaccine Act.*

*Owens* Clarification Order (Exhibit 9) at pp. 2-3 (emphasis in original and underlying added).

Judge Kent's decisions on this issue are well supported by a line of authority in the Vaccine Court which establishes that the Act covers all claims that seek compensation for, *or on behalf of*, a person who actually suffered a vaccine-related injury. *Cf. Black v. Sec'y of Health & Human Servs.*, 93 F.3d 781, 786 (Fed. Cir. 1996) (holding, as to analogous Vaccine Act provision, that, "[i]n the case of injured minors, . . . the statutory reference to expenses 'incurred' by the injured person was plainly meant to refer to expenses incurred on behalf of the victim by his legal representatives"); *Salceda v. Sec'y, Dep't of Health & Human Servs.*, 30 Fed. Cl. 316, 319 (Fed. Cl. 1994) (holding, in analogous context of the section 11(a)(6) bar to Vaccine Act claims brought in courts prior to 1988, that "person" means the individual "who sustained the vaccine-related injury or death and not . . . the individual who happens to represent the interests of that person in the litigation"); *Benedict v. Sec'y, Dep't of Health & Human Servs.*, 29 Fed. Cl. 587, 591 (Fed. Cl. 1993) ("To hold otherwise would render [the litigation bar] meaningless, as it could be easily circumvented simply by supplying a different representative in each case for an injured person.").

11

Indeed, more recently, on June 11, 2004, United States District Judge Hayden Head dismissed the plaintiffs' representative claims against the Vaccine Defendants and Defendants Sigma-Aldrich, Inc., The Dow Chemical Company, and Eli Lilly and Company in two virtually identical cases. *See Perez v. American Home Products*, Civil Action No. C-03-519 (S.D. Tex. June 11, 2004) (Exhibit 6); *Mast v. American Home Products*, Civil Action No. C-03-516 (S.D. Tex. June 11, 2004) (Exhibit 7). Considering motions to dismiss very similar to those presented in the instant case, involving the same allegations about thimerosal used as a preservative in childhood vaccines, and brought by the same plaintiffs' attorneys against many of the same defendants, Judge Head held that all representative claims brought by the parent plaintiffs for injuries allegedly sustained by the minor plaintiffs were barred by the Vaccine Act. Judge Head dismissed those claims without prejudice. *See Perez, supra*; *Mast, supra*.

Furthermore, allowing claims that are compensable under the Act to go forward in a judicial forum—simply because they are alleged by the parent rather than the child—"would clearly undermine the stated objectives of the Vaccine Act." *Strauss,* 208 F. Supp. 2d at 715 n.8. Plaintiffs, as the legal representatives of their children, could have—and should have—first filed a petition and completed proceedings in the Vaccine Court to recover on these claims for medical, residential, and custodial expenses as well as anticipated lost earnings before filing a state court petition. The parent Plaintiffs' claims for any and all medical, residential, and custodial expenses necessitated by the minor Plaintiffs' condition, as well as the claim for the children's loss of earning capacity, are compensable under the Vaccine Act, and thus fall squarely within the Act's tort suit ban, and should be dismissed along with claims for the minor Plaintiffs, without prejudice.

II.    **Parent Plaintiffs Have No Cognizable Claim For Mental Anguish, Emotional Distress, Loss Of Consortium, Loss Of Services, Their Own Lost Wages, Or Civil Conspiracy, And Thus The Remaining Parental Claims Must Be Dismissed With Prejudice.**

The Vaccine Act is intended to prevent a vaccine manufacturer from being made a party—"either by impleader, cross-claim, or *separate suit or any other practice*"—to *any* vaccine-related "civil action brought by a person [who was allegedly injured by a vaccine after the enactment of the legislation] *before that person has completed a compensation proceeding*." H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S. Code Cong. and Ad. News, 6344, 6355 (emphasis added); *see also* 42 U.S.C. § 300aa-11(a)(3).   On this basis alone, the Vaccine Defendants should be entirely dismissed from the lawsuit.

Alternatively, parent Plaintiffs' individual state law claims for mental anguish, emotional distress, loss of consortium, loss of services, lost wages, and civil conspiracy are fatally defective as a matter of Texas law and must be dismissed.[13]

A.    **Parent Plaintiffs do not qualify as "bystanders" under Texas law and therefore may not recover damages for mental anguish or emotional distress.**

Family members of a non-fatally injured plaintiff can only recover mental anguish damages as a result of being "bystanders" to the occurrence of a traumatic event. *See Roberts v. Williamson*, 111 S.W.3d 113, 120 (Tex. 2003).   To recover as a bystander, a plaintiff must show that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the plaintiff and the victim

---

[13]    While the Complaint does not clearly ascribe these claims to the parent Plaintiffs individually, they (and not the minor children) are the only parties who could attempt to assert them.

were closely related. *United Services Automobile Assoc. v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998).

The allegations of Plaintiffs' Complaint eliminate any possibility of establishing the first two elements. Plaintiffs do not qualify as "bystanders" under Texas law for purposes of a mental anguish or emotional distress claim because the alleged injury occurred over time, not as the result of a single traumatic event, and the parent Plaintiffs necessarily learned of their children's alleged injury from others (presumably physicians) well after the children's vaccines were administered. *See Keith*, 970 S.W.2d at 542 (requiring that bystander plaintiff "suffer shock as a result of a direct emotional impact . . . from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence"). Thus, the parent Plaintiffs' bystander claim for emotional distress fails as a matter of law. The routine administration of childhood vaccines is not an accident causing immediate trauma and shock in a bystander.

In *Owens v. American Home Products Corporation,* 203 F. Supp. 2d 748 (S.D. Tex. 2002), Judge Kent addressed this very issue under Texas law, and rejected the bystander claims of parents who alleged their children's autism was caused by thimerosal in childhood vaccines:

> Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal. Moreover, Plaintiffs did not even learn of the children's alleged mercury poisoning until the children's neurological problems were diagnosed by a physician, well after the suspect vaccines were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

*Owens*, 203 F. Supp. 2d at 758.

More recently, in *Mast* and *Perez*, Judge Hayden Head similarly held that the parent plaintiffs could not qualify as "bystanders" for purposes of mental anguish or emotional distress claims under Texas law. *See Perez v. American Home Products*, Civil Action No. C-03-519 (S.D. Tex. June 11, 2004) (Exhibit 6); *Mast v. American Home Products*, Civil Action No. C-03-516 (S.D. Tex. June 11, 2004) (Exhibit 7). Accordingly, Judge Head dismissed the parent plaintiffs' individual claims against all defendants with prejudice to refilling. The same analysis applies here. These circumstances do not meet the standards for bystander recovery.

Even if Plaintiffs were "bystanders" for purposes of such a claim, they could not recover unless their injured children could also recover. *See Edinburg Hosp. Auth. v. Trevino*, 941 S.W.2d 76, 79 (Tex. 1997). ("'[B]efore a bystander may recover, he or she must establish that the defendant has negligently inflicted serious or fatal injuries on the primary victim.'") (quoting *Boyles v. Kerr*, 855 S.W.2d 593, 598 (Tex. 1993)). Thus, because Plaintiffs' children cannot yet state a claim upon which relief can be granted *and* the parent Plaintiffs do not qualify as bystanders under Texas law, *all claims* for damages for mental anguish and emotional distress must also be dismissed.

**B.    Texas does not recognize a parent's cause of action for loss of consortium with a non-fatally injured child nor a cause of action for loss of services.**

In *Roberts v. Williamson*, 111 S.W.3d 113 (Tex. 2003), the Texas Supreme Court expressly held that parents may not recover loss of consortium damages for a non-fatal injury to their minor child. *Roberts*, 111 S.W.3d at 119 ("We . . . decline to extend a claim for loss of consortium to parents of children who have been seriously injured.") The Court found that "no compelling social policy impels us to recognize a parent's right to damages for the loss of filial consortium," and disapproved of cases in the Texas courts of appeals that allowed such damages.

*Id.* at 120.  Under *Roberts*, the parent Plaintiffs' loss of consortium claim fails as a matter of law, and must be dismissed with prejudice.

Similarly, the Texas Supreme Court has held that parents may not recover for the loss of a child's services.  "[T]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child …." *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Texas 1983); *Owens*, 203 F. Supp. 2d at 757.

Moreover, in *Mast* and *Perez*, Judge Head held that Texas law does not recognize parental claims for loss of consortium, loss of services, or loss of companionship in cases with allegations very similar to this one, and so dismissed these parent plaintiffs' individual claims against all defendants with prejudice. *See Perez v. American Home Products*, Civil Action No. C-03-519 (S.D. Tex. June 11, 2004) (Exhibit 6); *Mast v. American Home Products*, Civil Action No. C-03-516 (S.D. Tex. June 11, 2004) (Exhibit 7).  Accordingly, Plaintiffs' claims for loss of consortium and loss of services must be dismissed as to all defendants with prejudice.

**C.    Parent Plaintiffs may not recover their own lost wages incurred in caring for their children.**

The right to recover for necessary services rendered because of injury to a third person belongs to the injured party, not the provider of the services.  Moreover, the measure of damages for such services is the reasonable value of the care, not the earnings or wages earned by the care-giver in other employment. *See, e.g., Pressey v. Patterson*, 898 F.2d 1018 (5th Cir. 1990 (finding that under Texas law, an injured plaintiff may recover for the nursing care provided by his mother at the wage rate for unlicensed medical care); *Gulf States Utils. Co. v. Reed*, 659 S.W.2d 849, 853 (Tex. App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.) (Texas law does not permit a parent to recover his or her own lost earnings as a result of caring for an injured child).

These rules are consistent with the general rule in other jurisdictions:

> The general rule is that *one who has been injured by tortious conduct is entitled to recover the reasonable value of medical and nursing services reasonably required by the injury*, even if those services were furnished gratuitously, and this rule applies when the services are furnished by a family member. The amount of the defendant's liability is the amount for which reasonably competent nursing and attendance by others could have been obtained. *A corollary of this rule is that what the person rendering the services has earned in the past or could earn in a different employment cannot be considered, it being immaterial to the reasonable value of the services*, even if the relative leaves his or her regular employment to render such services.

22 Am.Jur. 2d Damages, Section 209 (footnotes omitted) (emphasis added). *See also Jackson v. United States,* 526 F. Supp. 1149, 1154 (E.D. Ark. 1981), *aff'd without op.*, 696 F.2d 999 (8th Cir. 1982); *Heritage v. Pioneer Brokerage and Sales, Inc.*, 604 P.2d 1059, 1064-65 (Alaska); *Rodriguez v. Bethlehem Steel Corporation*, 12 Cal.3d 382, 409, 115 Cal. Rptr. 765, 525 P.2d 669, 687; *Burns v. Stauder*, No. CV 9970421S, 1999 WL 989412, *3 (Super. Conn. Oct. 13, 1999), *Polio v. Derby Center CVS., Inc.*, No. CV 950372045, 1996 WL 521133, *3 (Super. Conn. Sept. 6, 1996); *Harris v. Hardman*, 133 Ga. App. 941, 947-48, 212 S.E.2d 883 (1975); *Kotsiris v. Ling*, 451 S.W.2d 411, 412 (Ky. 1970); *Scanlon v. Kansas City*, 336 Mo. 1058, 81 S.W.2d 939, 942 (1935); *Redepenning v. Dore*, 56 Wis. 2d 129, 136, 201 N.W.2d 580 (1972).

Thus, as an element of care furnished to the children because of their alleged injury, the recovery, if any, for the services provided by the parent Plaintiffs belongs to the children and must first be pursued through the Vaccine Compensation Program. Therefore, the parent Plaintiffs' claim for these "costs," which are part of the children's claim, is barred by Texas law and should be dismissed.

**D.      Plaintiffs' Complaint fails to state a cause of action for civil conspiracy.**

Because Plaintiffs have failed to state any underlying tort claim for which relief can be granted against the Vaccine Defendants, they can state no claim for civil conspiracy against the Vaccine Defendants under Texas law. *See Sanchez v. Liggett & Meyers, Inc.*, 187 F. 3d 486, 491 (5th Cir. 1999) ("Civil conspiracy requires liability for an underlying substantive tort...") (applying Texas law). Moreover, the Complaint fails to state a claim for civil conspiracy against the Vaccine Defendants because Plaintiffs have failed to allege that the Vaccine Defendants acted (or failed to act) with specific intent. "[T]he 'gist of a civil conspiracy' is the injury the conspirators *intend* to cause." *See Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 614 (Tex. 1996) (quoting *Triplex Communications, Inc. v. Riley*, 900 S.W.2d 716, 720 (Tex. 1995) and *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 856 (Tex. 1968)) (emphasis added). Consequently, the Texas Supreme Court has held that:

> *Civil conspiracy requires specific intent.* For a civil conspiracy to arise, the parties must be aware of the harm or the wrongful conduct at the beginning of the combination or agreement. One cannot agree, expressly or tacitly, to commit a wrong about which he has no knowledge. *Given the specific intent requirement, parties cannot engage in a civil conspiracy to be negligent.*

*Id.* (emphasis added) (internal citations omitted).[14]

Thus, the allegations contained in Plaintiffs' Complaint asserting claims based upon negligence, strict liability, and breach of warranty—which must be dismissed in any event—could not support a cause of action for civil conspiracy. Instead, a viable claim for an

---

[14]      Under Texas law, "a civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means." *See Barajas*, 927 S.W.2d at 614 (citing *Triplex*, 900 S.W.2d at 719).

intentional tort, such as fraud, is required. Because there is no such claim in this case, the claim

for civil conspiracy must be dismissed as against the Vaccine Defendants.[15]

### III. Regardless Of The Vaccine Act, The Minor Plaintiffs' Claims for Loss of Companionship And Society, And For Loss of Consortium Fail To State A Cognizable Claim And Must Be Dismissed With Prejudice.

If the Complaint is read to assert a representative claim on the minors' behalf for

"loss of companionship and society" (see Complaint, ¶ 8.1), that claim fails as a matter of Texas

law. "Love, affection, protection, emotional support, services, companionship, care and society"

are encompassed by a child's claim for loss of parental consortium. *See Reagan v. Vaughn*, 804

S.W.2d 463 (Tex. 1991). The claim would thus be one asserting a child's claim for loss of

parental consortium. Texas law, however, limits a child's claim for loss of consortium to

circumstances in which a third party causes serious, permanent, and disabling injuries to the

child's parents:

> In order to successfully maintain a claim for loss of parental consortium resulting from injury to the parent-child relationship, the plaintiff must show that the defendant physically injured the child's parent in a manner that would subject the defendant to liability.

---

[15]     To the extent that Plaintiffs seek to pursue a cause of action of "fraudulent concealment" against the healthcare providers in this case, Texas law does not permit such a cause of action. This is so because Texas courts do not recognize any theory of recovery against healthcare providers—other than a claim for professional negligence under the Texas Medical Liability and Insurance Improvement Act—where the claim is based on the rendition of healthcare services, such as the administration of childhood vaccines. *See Gomez v. Matey*, 55 S.W.3d 732, 735 (Tex. App.—Corpus Christi 2001, no pet.) (no fraud claim permitted against healthcare provider where allegations related to medical treatment). Thus, Plaintiffs can state no claim for civil conspiracy against the Vaccine Defendants based on the allegations of fraudulent concealment by the healthcare provider defendants. *See, e.g., Stephens v. Halliburton Co.*, No. Civ. A. 3:02-CV-1442-L, 2003 WL 22077752, at *10 (N.D. Tex. Sept. 5, 2003) ("It is well-settled that if the fraud claim fails, the fraud-based conspiracy claim also fails.") (applying Texas law).

*Reagan,* 804 S.W.2d at 467.  With their parents alive and well, the minor Plaintiffs cannot state a

claim for loss of companionship and society, and the Court should therefore dismiss these claims

with prejudice.

**IV.    In The Alternative, Any Claims Which Are Not Dismissed Should Be Stayed.**

In the event that any claims asserted by the Plaintiffs are not dismissed, such

claims should be stayed pending resolution of the Vaccine Court proceedings initiated by these

Plaintiffs.  Numerous courts that have squarely addressed the issue of a stay in the context of the

Vaccine Act have stayed parental claims which were not dismissed pending the resolution of

statutory proceedings in Vaccine Court.  For example, in *Liu v. Aventis Pasteur,* 219 F. Supp. 2d

762, 768 (N.D. Tex. 2002), the court reasoned as follows in staying all claims it did not dismiss:

> This Court has discretion to stay proceedings.  [citation omitted.]  Courts often
> stay proceedings to avoid interference with related proceedings in another forum
> and to avoid the waste of duplication.  *West Gulf Maritime Ass'n v. ILA Deep Sea
> Local* 24, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to
> avoid the waste of duplication, to avoid rulings which may trench upon the
> authority of sister courts, and to avoid piecemeal resolution of issues that call for
> a uniform result.")  The parents' claims brought on behalf of their minor son must
> first be heard in the Court of Federal Claims.

*See also Owens v. American Home Prods. Corp., supra* (noting that the court had previously

stayed all proceedings so that the primary claims could proceed in Vaccine Court).

In *Case v. Merck & Co.,* 2003 WL 145427, 2003 U.S. Dist. LEXIS 770 (E.D. La.

Jan. 17, 2003) (Exhibit 12), Judge Sarah S. Vance of the Eastern District of Louisiana stayed all

claims, including the parents' loss-of-consortium claims (which are cognizable in Louisiana),

pending resolution of the *Case* plaintiffs' petition in the Vaccine Court.  In so holding, Judge

Vance reasoned:

> A number of factors persuade the Court that a stay [of the parents' claims] would
> economize the time of the Court, the counsel and the litigants.  An essential
> portion of plaintiffs' case is now currently pending before an adjudicative tribunal

> investigating the causal link between thimerosal and injuries like those suffered
> by [the minor child]. In order to recover for loss of consortium, plaintiffs must
> establish that defendants caused and are liable for the injuries sustained by [the
> minor child]. [Citations omitted.] The issue of whether thimerosal caused [the
> minor child's injuries] is now before the Vaccine Court . . . . Requiring the
> parties to conduct a parallel inquiry, on a different timetable, to determine
> plaintiffs' right to recover for loss of consortium is duplicative, expensive, and
> wasteful.

See Case, 2003 WL 145427, at *2-3 ("the Court is not aware of any other court that has denied a

stay of parental claims for loss of consortium when their child has a claim pending in the

Vaccine Court").

As recognized by other courts deciding the issue, a stay of these proceedings as to

any claims not dismissed by this Court pending the outcome of the minors' petitions in Vaccine

Court is both necessary and appropriate. Among the chief reasons for a stay are:

- The parent's claims are dependent upon the minor plaintiffs' primary-injury claims, and
  these claims should not be tried until the Vaccine Court remedies have been exhausted;

- Neither discovery nor any sort of pre-trial procedures can go forward against the vaccine
  manufacturers until the Vaccine Court proceedings are completed (see 42 U.S.C. §
  300aa-11(a)(3)); and

- The Vaccine Act's mandatory substantive and procedural limitations on a vaccine-related
  lawsuit will govern any trial and pre-trial preparation (see 42 U.S.C. § 300aa-22, 23).

Beyond causing substantive proof problems, proceeding on the parental claims

will potentially needlessly subject the Vaccine Defendants to the discovery and litigation

expenses against which Congress expressly protected these companies by creating the Vaccine

Court Compensation Program. Congress provided for a streamlined resolution of vaccine-related

claims and intended that claimants be compelled to take a "hard look" at their claims in the

Vaccine Court before filing a civil lawsuit. In the absence of a stay, that purpose will be

frustrated. If any remaining claims are first pursued here, the first "hard look" at the merits of

the underlying claim will be in this court, not the Vaccine Court, a result directly contrary to the

legislative intent.

## CONCLUSION

Because Plaintiffs failed to comply with the Vaccine Act by exhausting the mandatory compensation remedy before filing this lawsuit, this Court must dismiss their claims and those of their minor children. These include all of the claims asserted by or on behalf of the minors whether asserted here by the children or the parents. The remainder of the parent Plaintiffs' "individual" claims must be dismissed with prejudice because they are not cognizable under Texas law. For all of these reasons, the Court should dismiss Plaintiffs' Complaint against the Vaccine Defendants. In the alternative, any claims which are not dismissed should be stayed pending the completion of the proceedings in Vaccine Court. The Vaccine Defendants request such other and further relief as the Court deems appropriate.

Respectfully submitted,

**CLARK, THOMAS & WINTERS,
A PROFESSIONAL CORPORATION**
P.O. Box 1148
Austin, TX  78767
(512) 472-8800 (Telephone)
(512) 474-1129 (Facsimile)


By:    /s/ Michael R. Klatt*
       Michael R. Klatt
       Attorney-in-Charge
       State Bar No. 11554200
       Southern ID No. 13004

**OF COUNSEL:**

Susan E. Burnett
State Bar No. 20648050
Southern ID No. 18604
**CLARK, THOMAS & WINTERS
A PROFESSIONAL CORPORATION**
P.O. Box 1148
Austin, TX.  78767
(512) 472-8800 (Telephone)
(512) 474-1129 (Facsimile)

*Signed with permission by Susan E. Burnett

**ATTORNEYS FOR DEFENDANT WYETH
AND ON BEHALF OF THE VACCINE
DEFENDANTS**

## CERTIFICATE OF SERVICE

     This pleading was served electronically on July 8, 2005 in compliance with Rule 5 of the Federal Rules of Civil Procedure as well as the Administrative Procedures for Electronic Filing, United States District Court, Southern District of Texas. Service upon parties whose attorneys are known to be users of the Electronic Filing system for the Southern District of Texas will be automatically accomplished through the Notice of Electronic Filing. Service for those parties whose attorneys are not known to be users of the Electronic Filing system for the Southern District of Texas was accomplished via certified mail, and/or regular U.S. mail on July 8, 2005.


                                   /s/ Susan E. Burnett