# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

United States Courts
Southern District of Texas
ENTERED

MAY 7 - 2002

Michael N. Milby, Clerk

| | |
|---|---|
| MICHAEL O'CONNELL and EILEEN O'CONNELL, individually and as next friends to MICHAEL JOSEPH O'CONNELL   Plaintiffs, | § § § § § |
| v. | § § |
| AMERICAN HOME PRODUCTS CORPORATION, *et al.*   Defendants. | § § § § |

CIVIL ACTION NO. G-02-184

## ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS, MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING SIGMA AND EM'S MOTION TO DISMISS, ORDERING PLAINTIFFS TO CONDUCT JURISDICTIONAL DISCOVERY OF GDL AND DENYING DEFENDANTS' REQUEST FOR ORAL ARGUMENT AS MOOT

Plaintiffs Michael O'Connell and Eileen O'Connell, individually and as legal representatives of their minor child Michael Joseph O'Connell ("Michael"), bring this products liability lawsuit against Defendants Sigma Aldrich Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc."); Eli Lilly and Company ("Eli Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc. ("EM"); Wyeth ("Wyeth") f/k/a American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc. ("Merck"); Smith Kline Beecham Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1) a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1-300aa-34, filed by Wyeth, Aventis, Merck and Smith Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma

Corp. and Sigma Inc. (collectively, "Sigma") and subsequently joined by EM; and (3) a Motion to Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth, Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is **GRANTED IN PART** and **DENIED IN PART**, Sigma and EM's Motion to Dismiss pursuant to the Vaccine Act is **DENIED** and Plaintiffs are hereby **ORDERED** to conduct jurisdictional discovery before responding to the Motion to Dismiss filed by GDL.

## I.  Background

During the first eighteen months of his life, Michael was allegedly exposed to harmful levels of mercury via routine childhood vaccinations administered to him by his pediatrician. All or some of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and thus, mercury) introduced into Michael's body by way of vaccination allegedly afflicted him with serious and lasting neurological injuries. Plaintiffs filed this action in a Texas state court seeking damages for Michael's personal injuries both individually and on Michael's behalf (as his legal representatives). In their Original Petition, Plaintiffs assert four causes of action (strict liability, negligence, gross negligence and conspiracy) against two distinct categories of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly, EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1]  Defendants subsequently removed the action pursuant to this Court's diversity jurisdiction.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

## II.  The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." Id. Two significant concerns are accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. See id. at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[2] See Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S. Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345-6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. See Whitecotton, 514 U.S. at 270, 115 S. Ct. at

---

[2] The Program became effective on October 1, 1988.

3

1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . . before filing any de novo civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all.[4] If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[5] See 42 U.S.C. § 300aa-21(a).

---

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

[4] There are a few exceptions. De minimis claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. See id.

[5] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith

### III.  Vaccine Manufacturers' Motion to Dismiss

In this case, it is undisputed that Plaintiffs have not filed a petition in the Vaccine Court in accordance with the Program. In their Motion to Dismiss, filed March 28, 2002, the Vaccine Manufacturers highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed. R. Civ. P. 12(b).[6] In response, Plaintiffs contend that they are not required to file a petition in the Vaccine Court because Michael's injuries fall outside the scope of the Vaccine Act. Thus, the Court must initially determine whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on Michael's behalf ("Representative Claims"); or (2) their individual claims that are derivative of Michael's injuries ("Individual Claims").

<u>Representative Claims Filed Against the Vaccine Manufacturers</u>

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury" <u>or</u> the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if Michael sustained a "vaccine-related injury," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines "vaccine-related injury" as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine

---

and that a reasonable basis for asserting the claim existed. <u>See</u> 42 U.S.C. § 300aa-15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, <u>see</u> 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). <u>See</u> 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. <u>See</u> 42 U.S.C. § 300aa-23(d).

[6] Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. <u>See</u> Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(b)(3).

Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."[7] 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . .a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.[8] Conversely, the Vaccine Manufacturers contend that thimerosal is not an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act,

---

[7] The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitus B, haemophilil influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. See 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. See id. Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a *prima facie* case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. See id.

[8] The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to Michael. Rather, the Petition generally refers to vaccines that are "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3) haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that Michael's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that Michael was injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, Thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D., FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . .vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

Therefore, because Michael's injuries are allegedly linked to a vaccine ingredient, his injuries are definitely "vaccine-related." See, e.g., Brausewetter v. Sec'y of Health and Human Servs., No.99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Pannell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of

---

[9] A suspension is "a class of pharmacopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients, preservatives, diluents and adjuvants).

8

claimant's injury). Clearly, the plain language of the Vaccine Act indicates that Michael's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[11] Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for Michael's injuries. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is **GRANTED** with respect to the Representative Claims asserted against them. These claims are hereby **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

<u>Individual Claims Against the Vaccine Manufacturers</u>

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot

---

[11] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, *available at* <http://www.hrsa.gov/osp/vicp/quanda.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] . . . must first file the claim with the [Program] before pursuing any other civil litigation").

9

be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

### Vaccine Act Petition

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after he or she receiving a vaccine. See 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. See Schafer, 20 F.3d at 7; Head v. Sec'y of Health and Human Servs., 26 Cl. Ct. 546, 547 n.1 (1992), aff'd, 996 F.2d 318 (Fed. Cir. 1993). In this case, neither Plaintiff alleges to have "suffered a relevant injury. . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs., 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an individual civil action for losses incurred by them.").

10

Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

### Loss of Consortium

In Sanchez v. Schindler, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. See id. at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. See id. At least two Texas courts have extended the Sanchez holding to cover situations involving a non-fatally injured child. See Roberts v. Williamson, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), *petition for review filed* (August 20, 2001); Enochs v. Brown, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); Cf. Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort,

11

companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon Michael's alleged injuries.

Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by Michael–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may attempt to recover emotional distress damages is the bystander action. However, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the

12

plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541-42 (Tex. 1998) (per curiam). Texas law requires the bystanders's presence when the accident occurred and the contemporaneous perception of the accident. See id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed Michael's routine vaccination and his subsequent physical deterioration that is allegedly linked to thimerosal. Moreover, Plaintiffs did not learn of Michael's alleged mercury poisoning until Michael's neurological problems were diagnosed by a physician, well after his vaccinations were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in conformity with Texas law. However, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby **DENIED IN PART** with respect to Plaintiffs' Individual Claims for loss of consortium. Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are hereby **DISMISSED WITH PREJUDICE.**

### IV.  Sigma and EM's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002 and joined by EM on March 27, 2002 (both Sigma and EM are Chemical Manufacturer Defendants).[12] Sigma and EM contend that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against them. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer* or *administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma and EM allegedly supply thimerosal (a raw material) to the Vaccine Manufacturers, but do not manufacture or administer vaccines themselves, Plaintiffs' claims against Sigma and EM are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma and EM's Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Regarding all other claims asserted by Plaintiffs against Sigma and EM, their Motion to Dismiss is hereby **DENIED**.[13]

### V.  GDL's Motion to Dismiss

The Court recently issued an Order denying Plaintiffs leave to conduct jurisdictional discovery of GDL pending further Order of the Court. Having determined that Plaintiffs' claims

---

[12] On May 1, 2002, Sigma filed a second Motion to Dismiss and alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded thereto.

[13] Sigma and EM's Motion to Dismiss also argues for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma and EM's Rule 19 request.

against the Chemical Manufacturers are not barred by the Vaccine Act, the Court finds that such

discovery is indeed warranted. As such, the Court hereby **ORDERS** that Plaintiffs have sixty (60)

days from the date of this Order to conduct discovery pertaining solely to whether this Court may

validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are

**ORDERED** to file their Response to GDL's Motion to Dismiss for Lack of Personal Jurisdiction.

The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine

Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby **DISMISSED**

**WITHOUT PREJUDICE**. The only claims against the Vaccine Manufacturers that Plaintiffs may

properly assert in this forum are those seeking compensation for loss of consortium. On the other

hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers

are subject to adjudication in this forum. GDL's Motion to Dismiss remains pending. Finally, this

Order renders the Vaccine Manufacturers' Request for Oral Argument on their Motion to Dismiss

**MOOT**. The Court will address all other pending concerns as soon as they are ripe for consideration.

**IT IS SO ORDERED**.

**DONE** this _____ day of May, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

15

# EXHIBIT 2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

————————————————X

ANDREW WAX, et al.,

                  Plaintiffs,

     -against-

AVENTIS PASTEUR INC.,
a/k/a/CONNAUGHT
LABORATORIES, et al.,

                Defendants.

————————————————X

CLARIFICATION
MEMORANDUM
CV 02-2018 (JBW)





FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ DEC 16 2003 ★

APPEARANCES:

Plaintiffs Attorney:      Parker & Waichman
                       111 Great Neck Road, 1st Floor
                       Great Neck, NY 11021
                       By:  Adena Edwards
                            Jerrold S. Parker

                       Douglas & London
                       111 John Street, 8th Floor
                       New York, NY 10038
                       By:  Michael London

Defendants Attorneys:
Aventis Pasteur Inc.:     Wilson, Elser, Moskowitz, Edelman &
                        Dicker LLP
                       150 East 42nd St.
                       New York, NY 10017-5639
                       By:  Patrick J. Brennan

aka
Connaught Laboratories
Lederle, Inc.
Wyeth Pharmaceuticals, Inc.,

Individually and as
Successor in Interest to
American Home Products,
Inc.:                          Orrick Herrington & Sutcliffe LLP
                               66 Fifth Avenue
                               New York, NY 10103
                               By: Daniel James Thomasch
                                   Lauren Jill Elliot


aka
Wyeth-Ayerst Pharmaceutics, Inc.
Merck & Co. Inc.:              Hughes Hubbard & Reed LLP
                               One Battery Park Plaza
                               New York, NY 100004
                               By: Deirdre Joan Sheridan
                                   Theodore V. H. Mayer


                               Venable, Baetjer & Howard LLP
                               Two Hopkins Plaza
                               Suite 1800
                               Baltimore, MD 21201
                               By: Dino S. Sangiamo
                                   Paul F. Strain


Glaxosmithklein, Individually
and as Successor in
Interest to Smithkline
Beecham Corp.:                 Schoeman, Updike & Kaufman, LLP
                               60 East 42nd St., 39th Floor
                               New York, NY 10165
                               By: Beth Lori Kaufman


Parke-Davis & Co.
Baxter Pharmaceutical
Products, Inc.
Abbott Laboratories:           Patterson, Belknap, Webb & Tyler LLPO
                               1133 Avenue of the Americas
                               New York, NY 10036-6710
                               By: Robert D. Wilson, Jr.


Pfizer, Inc., a Subsidiary
of Warner-Lambert, Inc.
Sigma-Aldrich, Inc.:           Harris Beach LLP

2

500 Fifth Avenue, 5th Floor
New York, NY 10110
By: Frederick Fern
        Judi Abbott Curry
        Konrad F. Payne

American International Chemical
Spectrum Laboratory
Products:            Landman Corsi Ballanine & Ford P.C.
                   120 Broadway, 27th Floor
                   New York, NY 10271-0079
                   By: Daniel S. Moretti

                   Shook Hardy & Bacon LLP
                   One Kansas City Place
                   1200 Main Street
                   Kansas City, MO 64105
                   By: Mark A. Dover

                   McCarter & English, LLP
                   300 Park Avenue
                   New York, N.Y. 10022-7402
                   By: Samuel J. Abate, Jr.

EM Industries, Inc.:       Strongin Rothman & Abrams, LLP
                   50 Broadway, Suite 2003
                   New York, NY 10004
                   By: David Abrams

WEINSTEIN, Senior District Judge:

The parties have jointly moved to clarify the order of October 30, 2002. It stayed the case pending application by plaintiffs for relief pursuant to the National Vaccine Injury Compensation Program and a decision by the Office of Special Masters ("OSM"). A stay is inappropriate.

The court clarifies its order by dismissing the case without prejudice. The OSM can decide whether it has jurisdiction. Cf. Leroy v. Sec'y of Dep't of Health & Human Servs., No. 02-392V, 2002 U.S. Claims LEXIS 284 (Fed. Cl. Oct. 11, 2002).

3

Effective November 25, 2002, the Homeland Security Act of 2002 amends section 2133 of the Public Service Health Act, 42 U.S.C. § 300aa-33. The amendment includes a "Clarification of Definition of Vaccine." The term now "includes all components and ingredients listed in the vaccine's product license application and product label," Pub. L. 107-296, 116 Stat. 2135, § 1716 (2002)—which presumably covers the thimerosal (mercury) component plaintiffs contend was not previously included. The amendment applies "to all actions or proceedings pending on or after the date of enactment of this Act, unless a court of competent jurisdiction has entered judgment (regardless of whether the time for appeal has expired) in such action or proceeding disposing of the entire action or proceeding." § 1717.

The court need not consider whether the amendment applies to the pending proceeding. Its decision of October 30, 2002, as clarified, is based on the law prior to the effective date of the amendment, November 25, 2002.

The case is dismissed without costs or disbursements. For good cause, judgment will be deemed entered as of October 30, 2002 for purposes of application of the Homeland Security Act, and as of December 16, 2002 for purposes of appeal, but a thirty-day extension of time to file a notice of appeal is granted. *See* Fed. R. App. Pro. 4(a)(5)(A)(ii). *But see* Fed. R. App. Pro. 4(a)(1)(A).

SO ORDERED.

JACK B. WEINSTEIN

Dated: Brooklyn, New York
December 16, 2002

4

TOTAL P.05

# EXHIBIT 3

1

2

3

4                  IN THE CIRCUIT COURT OF THE STATE OF OREGON

5                       FOR THE COUNTY OF MULTNOMAH

6   GEORGE W. MEAD and VICTORIA MEAD,  )        No. 0107-07136
    parents and guardians ad litem for WILLIAM P. )
7   MEAD, a minor child,                         )
                                                 )        ORDER ALLOWING
8               Plaintiffs,                       )        DEFENDANTS' MOTION FOR
                                                 )        SUMMARY JUDGMENT
9         v.                                      )
                                                 )
10  AVENTIS PASTEUR, INC., et al.,               )
                                                 )
11              Defendants.                       )

12          On September 23, 2002 at 10:00 a.m., the Honorable Nely Johnson heard the motion for

13  summary judgment of defendants Aventis Pasteur Inc. (incorrectly sued herein as Aventis

14  Pasteur, Inc., individually and as successor in interest to Connaught Laboratories, Inc., Pasteur

15  Merieux, and Pasteur Merieux Connaught), formerly known as Connaught Laboratories Inc. and

16  formerly doing business as Pasteur Merieux Connaught; SmithKline Beecham Corporation doing

17  business as GlaxoSmithKline (sued herein as GlaxoSmithKline, individually and as successor in

18  interest to SmithKline Beecham Corp.); Beverly Wittkop, M.D.; and The Children's Clinic.  The

19  motion was brought on behalf of all defendants except Eli Lilly and Company, Inc. and John Doe

20  Defendants 1-20.  The parties were represented by their attorneys at the hearing and given the

21  opportunity for oral argument.  The court, having considered the briefing and oral argument of

22  the parties, hereby **FINDS** as a matter of law that thimerosal is not a contaminant or adulterant

23  and plaintiffs must first seek relief through the National Vaccine Injury Compensation Program.

24  The court hereby **ORDERS**:

25  * * *

26  * * *

Page 1  **ORDER ALLOWING DEFENDANTS' MOTION FOR
        SUMMARY JUDGMENT**

1    1. Moving defendants' motion for summary judgment is **ALLOWED**.

2    2. There is no just reason for delay, and moving defendants shall submit a judgment

3    pursuant to ORCP 67B.

4    Dated this *22nd* day of *October*_____ 2002.

5

6

7    */s/ Nely Johnson*

8    JUDGE NELY L. JOHNSON

9    Submitted by:
George S. Pitcher, OSB #96398

10   Of Attorneys for Aventis Pasteur Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Page 2  **ORDER ALLOWING DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT**

1                    **CERTIFICATE OF SERVICE**

2        I certify that I served the foregoing ORDER ALLOWING DEFENDANTS' MOTION FOR

3    SUMMARY JUDGMENT on the following attorneys on the date noted below by mailing a true and

4    correct copy thereof, addressed to said attorneys at the addresses shown below, and deposited in

5    the United States mail on said day with sufficient postage, in a sealed envelope, at the post office

6    at Portland, Oregon:

7                    Michael L. Williams, Esq,
                     Thomas Powers, Esq.
8                    WILLIAMS DAILEY O'LEARY CRAINE & LOVE PC
                     1001 SW Fifth Avenue, Suite 1900
9                    Portland, OR 97204
                             Attorneys for Plaintiffs
10
                     Marsha M. Piccone
11                   FAEGRE & BENSON LLP
                     2500 Republic Plaza
12                   370 Seventeenth Street
                     Denver, CO 80202-4004
13                           Attorneys for Aventis Pasteur

14                   John A. Anderson
                     STOEL RIVES LLP
15                   201 South Main Street, Suite 1100
                     Salt Lake City, UT 84111
16
                     Leta E. Gorman
17                   STOEL RIVES LLP
                     900 SW Fifth Avenue, Suite 2600
18                   Portland, OR 97204

19                   William B. Crow
                     Kirk Mylander
20                   MILLER NASH LLP
                     111 SW Fifth Avenue, Suite 3500
21                   Portland, OR 97204
                             Attorneys for GlaxoSmithKline
22

23

24

25

26

Page 1   **CERTIFICATE OF SERVICE**

1       James L. Dumas
Edward T. Tylicki
2       LINDSAY HART NEIL & WEIGLER LLP
1300 SW Fifth Avenue, Suite 3400
3       Portland, OR 97201

4       Marie S. Woodbury
SHOOK HARDY & BACON LLP
5       One Kansas City Place
1200 Main Street
6       Kansas City, MO 64105
           Attorneys for Eli Lilly & Company
7

8       Ruth Hooper
HOFFMAN HART & WAGNER LLP
9       1000 SW Broadway, Suite 2000
Portland, OR 97205
           Attorneys for Dr. Wittkopp

10

11     DATED this 18th day of October, 2002.

12              TOOZE DUDEN CREAMER FRANK & HUTCHISON

13

14           By
                  George S. Pitcher, OSB #96398
                  Of Attorneys for Defendant Aventis Pasteur

15

16

17

18

19

20

21

22

23

24

25

26

Page 2   **CERTIFICATE OF SERVICE**

TOOZE DUDEN CREAMER FRANK & HUTCHISON
ATTORNEYS AT LAW
333 S.W. TAYLOR STREET
PORTLAND, OREGON 97204-2496
TELEPHONE (503) 223-5181 · FAX (503) 223-5550

# EXHIBIT 4

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.    :  MAY TERM, 2002
                   NO. 0952

     VS.         :

AVENTIS PASTEUR, INC., ET AL.   :  CONTROL NO. 100957

## O R D E R

AND NOW, this 16th day of December, 2002, the Defendants' Preliminary Objections are

Sustained. This case is Discontinued pursuant to the dictates of the National Childhood Vaccine

Injury Act.

        BY THE COURT:

        _____
        DiNUBILE, JR., J.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.  :  MAY TERM, 2002
               NO. 0952

     VS.       :

AVENTIS PASTEUR, INC., ET AL.  :  CONTROL NO. 100957

**MEMORANDUM OF LAW**

BY: HON. VICTOR J. DiNUBILE, JR.

  The issue presented in this case is whether plaintiffs' cause of action must be discontinued because of failure to exhaust remedies provided to the plaintiff under the National Childhood Vaccine Injury Act, 42 U.S.C. Secs. 300 aa-1 to 300 aa-34 (1994 & Supp. V 1999) (hereinafter referred to as the "Vaccine Act" or "Act"). This Court agrees with the defendants. Consequently, this case is Dismissed and Discontinued.

  The parents of minor plaintiff primarily assert products liability claims against various drug companies for injuries arising from mercury poisoning from certain vaccines administered to him during the first 18 months of his life (May, 1994 - December, 1995). Plaintiffs' Complaint maintains that the substance Thimerosal, used as a preservative in these vaccines, contained mercury which caused an adverse reaction and injury to their son. It is not in dispute that the vaccines used by the minor child in this case come within the purview of the Vaccine Act. The Vaccine Act, enacted by Congress, provides that all such causes of action resulting in harm from the use of certain enumerated vaccines must initially be brought before a specially constituted court of the United States Court of Federal Claims (hereinafter referred to as Vaccine Court).

The Act unequivocally provides that parties must first exhaust their remedies under this Act before commencing suit in either state or federal court. The Act further directs the state or federal courts to dismiss actions not first pursued under the Vaccine Act. The Act, however, provides an exception to the exhaustion requirement where the vaccine(s) in question contained a "contaminant" or "adulterant".

Plaintiffs maintain suit is proper here under the exception because the preservative Thimerosal constitutes a contaminant or adulterant. This Court disagrees. All the case law contradicts the plaintiffs' position. This Court adopts the well-reasoned opinions of the Vaccine Court and federal district courts that the preservative Thimerosal, contained in the vaccines, is not a contaminant or an adulterant. Leroy v. Secretary of Department of Health and Human Services, No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. October 11, 2002); Blackmon v. American Home Products Corp., No. 6-02-179, slip op. (S.D. Tex. May 8, 2002); Owens v. American Home Products Corp., 203 F.Supp. 2d 748 (S.D. Tex. May 7, 2002); O'Connell v. American Home Products Corp., No. 6-02-184, slip op. (S.D. Tex. May 7, 2002). The purpose of the Act is to provide a uniform federal no-fault system with consistent venue to adjudicate claims of persons seeking redress for injuries stemming from adverse reactions from the use of the enumerated vaccines. The contaminant/adulteration exception would apply if some foreign substance, not ordinarily contained in the vaccine, found its way into the drug causing harm. But where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court. The above cited federal authorities, after an analysis of the purpose of the Act coupled with a medical/general dictionary review of the words "contaminant" and "adulterant", concluded that the Thimerosal preservative is not

2

encompassed in the exception since it is a component of the vaccine. This Court agrees with their rationale.

The plaintiffs also contend that in any event, even if the Court should agree with the federal authorities that the exception does not apply, plaintiff still can maintain the suit in state court because they do not "qualify" as litigants under the Act. The Act requires that all actions must be commenced by litigants within 36 months of the time in which adverse symptoms first occur. The symptoms first manifested themselves in the minor plaintiff in December of 1995. Since no action was ever brought in Vaccine Court, plaintiffs argue the Act does not apply to them and therefore can maintain the within suit in state court. This Court respectfully disagrees. One cannot simply wait out the three year limitations provision and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in district court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress. See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

Plaintiffs also maintain that the requirement of first having to commence an action in the Vaccine Court is unconstitutional. No authority is cited in support of this proposition. The Vaccine Act does not preclude the bringing of a suit in federal or state Courts. It merely provides that suit must first be maintained in the special Court. If the litigant exhausts remedies there and

3

is dissatisfied with the results, then the Act does not preclude subsequent tort actions being

brought in federal or state Courts[1]. Weighing the purpose of the Act to have claims quickly,

expeditiously and consistently resolved on a no-fault basis by first requiring litigants to proceed in

Vaccine Court, certainly does not constitute such an onerous burden as to render the Act

unconstitutional.

> The preclusive application of the Act, which prevents plaintiff in her
> representative capacity from pursing a civil action does not
> represent an "absurd or unjust result," that would permit us from
> disregarding its plain language. *United States v. Shriver*, 989 F.2d
> 898, 901 (7th Cir.1993). It is, instead, consistent with the stated
> purpose of avoiding the public harm that would result from either a
> loss or decline in the production of necessary vaccines. Simply put,
> Congress wants victims to first try the Program with the
> expectation that its results will be accepted. Unless a petitioner is
> required to fully adjudicate a claim, pursuant to the Program's
> expedited procedures, Congress's objectives will not be realized.
> McDonald v. Lederle Labs, supra., 775 A.2d 528, 534-535.

Consequently, this case is dismissed/discontinued pursuant to the provisions of

the Vaccine Act.[2]

                                        BY THE COURT:


DATED: December 16, 2002          _____
                                        DiNUBILE, JR., J.


_____

    [1] The Act provides the tolling of the statute of limitations during the pendency of the
action before the Vaccine Court.

    [2] Plaintiffs also argue that they as parents do not qualify under the Act since they seek
medical expenses on their own behalf. They assert that this action for medical bills is not covered
under the Vaccine Act. To the contrary, the Act permits reimbursement for medical bills incurred
by or on behalf of a minor.

4

# EXHIBIT 5

CHARLES R. ASHTON, III and PENNY           :    COURT OF COMMON PLEAS
STARR-ASHTON, parents and natural          :    PHILADELPHIA COUNTY
guardians of MADIGAN ASHTON and            :
LUCINDA ASHTON, et al.                     :    COMMERCE PROGRAM
                                           :
              vs.                          :
                                           :
AVENTIS PASTEUR, INC., individually and    :    JULY TERM, 2002
as successor in interest to CONNAUGHT      :
LABORATORIES, INC., PASTEUR MERIEUX,       :    NO. 04026
and PASTEUR MERIEUX CONNAUGHT, et al.      :
                                                Control #011926, #011965,
                                                #011982, #012004, #012017,
                                                #012035, #012036, #012044,
                                                #012045, #020310

ORDER and MEMORANDUM

AND NOW, to wit, this 22ᵗ day of May, 2003, upon consideration of the

Preliminary Objections of the defendants and the plaintiffs' response thereto, it is hereby

ORDERED and DECREED said Preliminary Objections are SUSTAINED.  The plaintiffs'

Complaint is DISMISSED WITH PREJUDICE.

BY THE COURT:

_____
GENE D. COHEN,                J.

COPIES SENT
PURSUANT TO Pa. R.C.P. 236(b)

MAY 2 2 2003

First Judicial District of Pa.
User I.D.: ___ICY___

CHARLES R. ASHTON, III and PENNY : COURT OF COMMON PLEAS
STARR-ASHTON, parents and natural : PHILADELPHIA COUNTY
guardians of MADIGAN ASHTON and :
LUCINDA ASHTON, et al. : COMMERCE PROGRAM

          vs.                          :
                                       :
AVENTIS PASTEUR, INC., individually and : JULY TERM, 2002
as successor in interest to CONNAUGHT :
LABORATORIES, INC., PASTEUR MERIEUX, : NO. 04026
and PASTEUR MERIEUX CONNAUGHT, et al. :

Control #011926, #011965,
#011982, #012004, #012017,
#012035, #012036, #012044,
#012045, #020310

## MEMORANDUM

*COHEN, GENE D., J.*

## INTRODUCTION:

The instant action is a class action complaint brought by class representatives who seek actual damages and damages in the form of "medical monitoring" based upon injuries they and class members either currently have or may develop. The plaintiffs allege that vaccinations containing the chemical thimerosal were the source of their current and would-be injuries. The Court now has before it preliminary objections filed by all defendants -- manufacturers of the vaccines and thimerosal -- urging this Court to dismiss the plaintiffs' complaint and hold that for several reasons the plaintiffs have no cause of action. The Court hereby sustains said preliminary objections and dismisses the plaintiffs' complaint.

## - BACKGROUND:

The plaintiffs seek damages and "medical monitoring" alleging they were poisoned by the presence of the ingredient Thimerosal in childhood vaccinations they received.

Within a few years after birth most American children receive a series of vaccinations. The vaccines administered control the virulent consequences of such childhood diseases as measles, pertussis, rubella, polio, whooping cough, hepatitis, diphtheria and tetanus. These vaccines often contain either a killed bacteria or live but weakened viruses and, hence, can cause serious adverse affects. *See* O'Connell v. Shalala, 79 Fed. 3d 170, 172 (1st Cir. 1996) (citing Committee to Review the Adverse Consequences of Pertussis and Rubella Vaccines, Institute of Medicine, Adverse Affects of Pertussis and Rubella Vaccines 1 (1991). In 1996, responding to the possibility of a socio-medical catastrophe that might arise if the victims of the adverse consequences of childhood vaccinations made use of the tort liability system, Congress enacted the National Childhood Vaccine Injury Act of 1996, Pub. L. No. 99-660, 1986 U.S.C.C.N. (100 Stat.) 3755 (Codified as amended at 42 U.S.C. §§300aa-1 to 34) (1994). The purpose of the Vaccine Act was to establish a vaccine injury compensation program that would allow claimants to petition to receive compensation for vaccine-related injuries or death. Congress in its wisdom believed that to subject such injuries and deaths to the marketplace of the tort liability system would drive up the prices of vaccines and discourage vaccine manufacturers from remaining in the marketplace as well as leaving many sufferers of vaccine-caused injuries uncompensated. To receive compensation the claimant must petition the Court of Federal Claims and demonstrate by a preponderance of the evidence that (1) the vaccinated child suffered an injury listed on a table or a complication or "sequela" thereof, or (2) that the vaccine caused or significantly aggravated the child's injury or condition. *See* §§300aa-11 to 13 and 14. *See also* 42 C.F.R. §100.3 (1996). The Act in pertinent part requires that a person injured directly by a vaccine first bring a Vaccine Court proceeding. Id. §300aa-11(a)(2)(A). Then the statute gives that person the choice either to accept the court's award and abandon his tort rights (which the Act transfers to the federal

- 2 -

government, Id. §§300aa-17), or to reject the judgment and retain his tort rights. Id. §§300aa-21(a); 300aa-11(a)(2)(A)(i). A claimant can also keep his tort rights by withdrawing the Vaccine Court petition if the court moves too slowly. Id. §§300aa-21(b); 300aa-11(a)(2)(A)(ii).)

This new remedial system further interacts with traditional tort law suits by limiting punitive damage awards and bifurcating trials. The Act establishes a presumption of compliance with Food and Drug Administration requirements meaning the manufacturer provided proper directions and warnings and freeing the manufacturer from liability for not providing direct warnings to an injured person or his representatives. Id. §§300aa-23(a), 23(d), 22(c), 22(b)(1). See Schaeffer v. American Cyanimide Co., 20 Fed. 3d 1, 9 to 12 (1st Cir. 1994).

Further provisions of the Vaccine Act address the real issue of concern in these cases and that is whether the vaccine in question caused injury or death. There are two ways to prove causation under the Act. The Vaccine Injury Table lists certain injuries and conditions which if found to occur within a prescribed period of time following vaccination, create a rebuttable presumption of causation. In such "on table" cases petitioners do not need to show proof of actual causation. For instance, if a petitioner proves that her child received a DPT vaccine on July 20, 1998 and that she suffered an encephalopathy within three days thereafter or anaphylactic shock within 24 hours thereafter, causation is presumed. The Act's Qualifications and Aids to Interpretation further define the compensable conditions. A petitioner is no longer burdened with the onerous task of proving that the vaccine actually caused the condition in question. In the vast majority of cases the presumption of causation does not, however, obviate expert medical testimony. A qualified witness must still attest that the victim suffered the particular medical condition for which the compensation is being sought.

- 3 -

Where the symptoms fall outside the statutory time frames the petitioner must present evidence of causation and fact. The legislative history instructs that "simple similarity to conditions or time periods listed in the table is not sufficient evidence of causation; evidence in the form of scientific studies or expert medical testimony is necessary to demonstrate causation for such a petitioner. Petitioner need not, however, prove causation to a scientific certainty. Rather the petitioner must show a "logical sequence of cause and affect".

Once the petitioner establishes a *prima facie* case, the burden then shifts to the respondent who must prove by a preponderance of the evidence that the claimed injury is attributable to some factor unrelated to the vaccine. Such factors may not include "any idiopathic, unexplained, unknown, hypothetical or undocumentable cause, factor, injury, illness, or condition". In part because of belated participation by the respondent, the precise scope of the alternate cause injury has yet to be defined. Although the alternate cause determination is usually fact specific, the claims court has held as a matter of fact that proof of Sudden Infant Death Syndrome is insufficient to dispel the Act's presumption of causation. *See e.g.*, Daniel Green and Sandra Green, as legal representatives of the Estate of Chad Green v. Secretary of the Department of Health and Human Services, 19 Cl. Ct. 57 (1989).

The system thus establishes standards of proof under which individuals who suffer injuries within specified intervals after being administered a vaccine benefit from a presumption that a vaccine caused those injuries. *See* 42 U.S.C. §300aa-11(c)(1)(C)(i). *See also*, Haggerty v. Wyeth Averst Pharmceutical Co., 79 F.Supp. 2d 182, 184 (E.D.N.Y. 2000).

A program claimant may not file a civil action against a vaccine manufacturer or administrator (i.e., the person or organization on behalf of whom the person administered the

vaccination) unless the claimant initially files a timely petition in accordance with the program's guidelines. *See* Shalala v. Whitecotton, 514 U.S. 268, 270 (1995) and 42 U.S.C. §300aa-11(2)(A), explaining that a claimant alleging an injury after the Vaccine Act's effective date must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court. If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the court must dismiss the action. *See* 42 U.S.C. §300aa-11(a)(2)(B). Simply put, individuals who qualify as program claimants must file petitions in the Vaccine Court in order to pursue any vaccine-related claims at all. If an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her program award, that individual may reject the award and pursue a traditional tort action in any forum. *See* 42 U.S.C. §300aa-21(a).

Under the Vaccine Act, then, a person may not sue in state or federal court for more than $1,000 for a vaccine-related injury unless that person has first filed a petition in Vaccine Court within thirty-six months of the injury. The plaintiffs herein seek to circumvent this bar by claiming (a) they need not file petitions under the Act because the statute of limitations under the Act has expired, and (b) they are not injured. To quote from the plaintiffs' surreply memorandum of law:

> "Without question, the Vaccine Act does not provide relief to the children for whom plaintiffs request medical monitoring relief. As set forth in plaintiffs' Memorandum in Opposition, this case presents a textbook example of the circumstances where medical monitoring should be awarded: *asymptomatic* children who need testing as a result of defendants' tortious conduct in order to determine the extent, if any, of damage caused by direct injection of mercury into their bodies, so early diagnosis or mitigation can occur. These children are *asymptomatic* and therefore unable to obtain relief from the Act. No amount of verbal calisthenics can change that fact."

- 5 -

Initially, and making reference to the amended complaint which is the subject matter of these proceedings, in conjunction with the foregoing assertion that "these children" are not injured and the plaintiffs'-duties under the Vaccine Act, the Court's attention is inevitably drawn to the allegations in the complaint. Pages 6 and 7 of the complaint — a class action — name three representatives of the class. One is Madigan Ashton. She is described as "diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." The next class representative plaintiff is Samuel Kaplan, a minor child who "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." Another plaintiff, Robbie Powell, a minor, according to the complaint "has been diagnosed with an Autism Spectrum Disorder (ASD); Pervasive Developmental Disorder, Not Otherwise Specified (PDD/NOS)." And the fourth plaintiff, Lucinda Ashton, is described as having "achieved the neurological, social and developmental milestones anticipated for a child of her age." From pages 12 through 21 the complaint relates in detail the medical histories of each child, including their exposure to the vaccines in question. Each account of each child concludes with the statement, "In all [plaintiff] was poisoned with 237.5 micrograms of toxic mercury from the vaccines containing thimerosal." Overall, then, the Court has before it four plaintiffs, all "poisoned", three with injuries that the complaint alleges, inferentially if not directly, were caused by their thimerosal-containing vaccinations.

## DISCUSSION:

Preliminary Objections pursuant to Pa.R.C.P. 1028(a)(1) and Pa.R.C.P. 1028(a)(4)

(a)     *This Court lacks jurisdiction under the Vaccine Act — Plaintiffs are Qualified Claimants under the Act.*

Without reiterating the foregoing discussion, it should be plain that this Court has

- 6 -

no jurisdiction to entertain the vaccine-related claims of the plaintiffs for the following reasons. This Court holds that the plaintiffs are persons who would qualify to file original actions under the Vaccine Act because they do allege damages for vaccine-related injuries. Each plaintiff alleges that he or she was "poisoned" by the substance thimerosal added to a series of vaccines. No amount of verbal calisthenics can conceal the fact that plaintiffs do allege injuries, even if they are incubating injuries that may manifest themselves later in time. The plaintiffs Ashton, Kaplan and Powell definitely assert injuries in the form of learning disorders. And, as stated, all four plaintiffs unequivocally state they were poisoned. Being poisoned is being injured. Being injured involves the plenary jurisdiction of the Vaccine Act. Plaintiffs claims are precluded for this reason.

(b)    *This Court lacks jurisdiction under the Vaccine Act – Thimerosal-related Injuries are "Vaccine-related".*

Every court that has had the opportunity to rule on this issue has held that thimerosal is not an "adulterant or contaminant" of the vaccines at issue, but a preservative inherent to the production of a vaccine. *See* McDonell v. Abbott Laboratories, C.A. No. 3:02 CV 437 LN slip opinion at pp. 2-3 (S.D.Miss. August 1, 2002); and Liu v. Aventis Pasteur, Inc., 219 F.Supp. 2d 7622 (W.D.Tex. 2002). What is more, an opinion by a fellow judge of this Court, Cheskiewicz et al. v. Aventis Pasteur, Inc., et al., May Term, 2002 #0952 (DiNubile, J. December 16, 2002) analyzes the very same contention -- that thimerosal is an ingredient outside of the content of the vaccines thus enabling a separate state-related tort action to be brought against the manufacturers who use thimerosal -- and holds that thimerosal does not fall within an exception or foreign substances added to vaccines. As the defendant vaccine manufacturers correctly point it is the unanimous position of the Secretary of United States Department of

- 7 -

Health and Human Services, the Vaccine Court and the Federal District and state trial courts that confronted the issue that thimerosal claims are covered by the Vaccine Act.

    (c)    *This Court lacks jurisdiction under the Vaccine Act — Plaintiffs were Qualified Claimants even though untimely.*

    The plaintiffs through their lawyers support their identities as state tort plaintiffs by claiming that they failed to file their claims "within three years from the onset of a vaccine-related injury" and it is the latent nature of their purported injuries that caused them to do so. For this contorted reason the plaintiffs believe they are exempted from filing a petition in the Vaccine Court. This argument was rejected by the court in Cheskiewicz, *supra*. This Court will re-emphasize the rejection. The Court can simply re-recite the language of Cheskiewicz to dismiss the complaint on these grounds:

> "One cannot simply wait out the three-year limitations period and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in District Court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress." *See* McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J.Super.Ct.App.Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

    The Vaccine Act by its terms unambiguously bars civil actions for damages for alleged vaccine-related injury "unless a petition has been filed in accordance with §300aa-16 of this title." That section provides that "no petition for compensation shall be filed for [a vaccine-related] injury after the expiration of 36 months from the date of the occurrence of the first symptom or manifestation of onset or of the significant aggravation of such injury." 42

- 8 -

U.S.C. 300aa-16(a)(2). Plaintiffs have admittedly missed filing under the foregoing provision within the acceptable period of time. Because this Court holds that only the Vaccine Court has jurisdiction over their claims, their claims must be dismissed with prejudice.

(d)   *Plaintiffs Fail to State a Claim Upon Which Relief Can Be Granted.*

In what this Court views as largely a rhetorical instrument aimed at circumventing the requirements of the Vaccine Act, the plaintiffs base their state tort claim on a right to "medical monitoring" for injuries yet to be ascertained. The Court agrees with the defendants in holding that without an underling tort no relief for medical monitoring can be asserted. *See* Redland Soccer Club. Inc. v. Department of the Army, 696 A.2d 137 (Pa. 1997). The Supreme Court in Redland held that proof of a defendant's negligence is a required element of a cause of action for medical monitoring. The complaint by its terms suggests no proof of the defendants' negligence. The substance at issue is a prescription drug. As the defendants point out, manufacturers of prescription drugs can be held negligent only on a failure to warn formulation. Were the manufacturers' alleged failures to warn issued to doctors insufficient then the manufacturers may be negligent. *See* Demmler v. SmithKlineBeecham, 671 A.2d 1151, 1155 (Pa. Super. 1995) allocatur denied 684 A.2d 557 (Pa. 1996). The plaintiffs are not suing the doctors who administered the vaccinations, so there is no proof that the prescribing doctors were independently aware of the risks at issue. Therefore, proximate cause is not pleaded and thus absent.

The Court further holds that none of the attempted tort formulations the plaintiffs raise in their complaint have a basis under Pennsylvania law. For example, the plaintiffs allege the vaccine defendants negligently failed to test their vaccines and negligently designed,

- 9 -

manufactured and packaged them by using multi-dose vials which require thimerosal as a preservative. *See* Paragraphs 163, 165 and 195(a) and (c) of the Amended Complaint. Again, a brother jurist in this Court has held that negligent failure to test is not an independent tort under Pennsylvania law. *See* In re: Phenylpropanolamine Litigation #0001, September Term, 2001 (Tereshko, J.).

     (e)    *Remaining Counts.*

        1.    Fraud

While it may not be necessary for this Court to address the specific counts of the complaint, having held that the Vaccine Act applies exclusively to the plaintiffs' claims, the Court will specifically dismiss all remaining claims as having no basis under the law. What is more, plaintiffs' claim for fraud is not specifically pleaded as required by Rule 1019(b) of the Pennsylvania Rules of Civil Procedure. *See* Bash v. Bell Telephone Co., 601 A.2d 825, 831 (Pa.Super. 1992). Plaintiffs' claim for loss of consortium is not actionable not only because there is some ambiguity whether or not the plaintiffs are alleging loss of filial consortium due to injury or some other cause, but because this is not a recognized cause of action in Pennsylvania. *See* Quinn v. City of Pittsburgh, A. 353 (Pa. 1914); McCaskill v. Philadelphia Housing Authority, 615 A.2d 382, 384 (Pa.Super. 1992); Jackson v. Tastykake, 648 A.2d 1214, 1217 (Pa.Super. 1994).

        2.    Preliminary Objections as applied to the Vaccine suppliers

This Court specifically rejects as without authority the plaintiffs' claim that the suppliers of thimerosal occupy a separate class apart from that of the vaccine manufacturers and, therefore, regardless of the Court's ruling on the motion of the vaccine manufacturers,

should remain as defendants in this matter. The law contradicts this position. The Vaccine Court in Leroy v. Secretary of HHS No. 02-392V at 12 (Ct. Fed. Cl. Office of Special Masters, October 11, 2002) held that the term "vaccine" included the constituents of the vaccine and this takes in thimerosal as well. The Court agrees with the defendants thimerosal suppliers and distributors that the ingredient is interchangeable with the vaccine for the purposes of the defendants' jurisdictional defense. Thus the exclusive jurisdiction of the Vaccine Act should, this Court holds, apply to the manufacturers, suppliers and distributors of thimerosal as well.

## CONCLUSION:

Because the class plaintiffs have not stated a cause of action cognizable under Pennsylvania law, and principally because their claims are cognizable under the exclusive jurisdiction of the federal Vaccine Act, all defendants' preliminary objections will be sustained and the plaintiffs' complaint is dismissed with prejudice.

BY THE COURT:

GENE D. COHEN,                    J.

- 11 -

# EXHIBIT 6

### UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

**JUN 1 8 2004**

Michael N. Milby, Clerk of Court

| | | |
|---|---|---|
| LYDIA PEREZ, Individually and as Next | § | |
| Friend of NATHANIEL TYLER PEREZ, | § | |
| LONGINO PEREZ, and MARIO | § | |
| ALBERTO PEREZ, minors, | § | *57.* |
| Plaintiffs, | § | |
| v. | § | C.A. No. C-03-519 |
| AMERICAN HOME PRODUCTS d/b/a | § | |
| WYETH, et al., | § | |
| Defendants. | § | |

### ORDER

Pending before the Court are Sigma-Aldrich, Inc.'s Motion to Dismiss (D.E. 5),

Vaccine Defendants' Motion to Dismiss, or in the Alternative, to Stay These Proceedings

(D.E. 10), The Dow Chemical Company's 12(b)(6) Motion to Dismiss and Motion for

Summary Judgment (D.E. 13, 37) and Motion to Dismiss or Alternatively to Stay (D.E. 15,

38), and Eli Lilly and Company's Motion to Dismiss (D.E. 18).

Plaintiff, Lydia Perez, parent of minors, Nathaniel, Longino, and Mario Perez, brings

this lawsuit individually and as next friend of these three children. Plaintiff alleges that her

children suffer from mercury poisoning as a result of receiving vaccines that contained the

preservative thimerosal during the first two years of their lives. Plaintiff further alleges that

the "vaccines and component parts of the vaccines were designed, manufactured, marketed,

and distributed by Defendants"; however, plaintiff does not designate which defendants are

alleged to be vaccine manufacturers and which defendants are alleged to be vaccine

components manufacturers. Plaintiff asserts the following causes of action: strict products

1

liability, negligence, breach of warranty, civil conspiracy, and select claims against unnamed and non-designated "Clinic Defendants" (negligence and fraudulent concealment). Each cause of action is premised upon the causation of compensatory damages in the form of medical care, loss of earning capacity, physical impairment, disfigurement, physical pain, mental anguish, loss of consortium, loss of services, and loss of companionship, as well as exemplary damages.

*Plaintiff's Representative Claims:*

The "Vaccine [Manufacturer] Defendants," as deemed by their motion (Aventis Pasteur, Inc., Baxter Healthcare, Inc., Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline, and Wyeth), move to dismiss, or in the alternative, to stay the case because plaintiff has not yet exhausted her administrative remedies as required by the National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act"). The Vaccine Act provides that "[n]o person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine-related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed . . . for compensation under the [National Vaccine Injury Compensation Program] for such injury or death and– (i)(I) the United States Court of Federal Claims has issued a judgment . . . on such petition, and (II) such person

2

elects . . . to file such an action, or (ii) such person elects to withdraw such petition . . . or such petition is considered withdrawn . . ." 42 U.S.C. § 300aa-11(a)(2)(A). 42 U.S.C. § 300aa-11(a)(2)(B) provides that if "a civil action which is barred [under (2)(A)] is filed in a State or Federal Court, the court shall dismiss the action."

These requirements only apply to "a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). Generally, a qualified petitioner is "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table . . ." 42 U.S.C. § 300aa-11(b)(1)(A). "The term 'vaccine-related injury or death' means an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

Essentially, the Vaccine Act provides that any person (or that person's legal representative if he or she is a minor) who has sustained a vaccine-related injury and who is seeking more than $1,000 or unspecified damages from a vaccine manufacturer or administrator must first file a petition with the United States Court of Federal Claims ("Vaccine Court") before filing suit for such injury in a federal or state court. The Act requires state and federal courts to dismiss such suits if the petitioner has not first exhausted

3

his or her administrative remedies as required by the Vaccine Act. Here, plaintiff is

attempting to bring representative claims, on behalf of her minor children who have sustained

vaccine-related injuries, against vaccine manufacturers for unspecified damages, but she has

not yet exhausted her administrative remedies. As such, the Court must dismiss without

prejudice all of the representative claims against the Vaccine Manufacturer Defendants.[1]

Furthermore, plaintiff's petition frames her claims generally against all defendants by

stating that "the vaccines and the component parts of the vaccines were designed,

manufactured, marketed, and distributed by defendants." However, plaintiff has not

specifically designated which defendants are vaccine manufacturer defendants and which

defendants are non-vaccine manufacturer defendants. Thus, the Court dismisses without

prejudice all of the representative claims against the remaining defendants, as they fall under

a generalized allegation that they too are vaccine manufacturers.

***Plaintiff's Individual Claims:***

The Vaccine Act does not bar plaintiff from filing her individual claims first with the

district court; this bar applies "only to a person who has sustained a vaccine-related injury or

death and who is qualified to filed a petition for compensation under the Program." 42

U.S.C. § 300aa-11(a)(9). Plaintiff, as the parent individually, is not a qualified petitioner

under the Vaccine Act; she has not suffered an injury after *receiving* a vaccine. *See* 42

U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A).

---

[1]The Court also dismisses without prejudice all representative claims against the unnamed and non-designated "Clinic Defendants" as any such defendant would be a vaccine administrator. Such a suit, without the exhaustion of administrative remedies in the Vaccine Court, is barred by the Vaccine Act.

4

Although the Vaccine Act does not bar plaintiff's individual claims, Texas law, as follows, does bar several of these claims. There is no claim under Texas law for "loss of consortium to parents of children who have been seriously injured." *Roberts v. Williamson*, 111 S.W.3d 113, 119-20 (Tex. 2003). Also, Texas law has rejected the claim for the loss of the "pecuniary value of [a] child's services" as it "is based on an antiquated concept of the child as an economic asset." *Sanchez v. Schindler*, 651 S.W.2d 249, 251 (Tex. 1983). Thus, the individual claims for loss of consortium, loss of companionship, and loss of services against all defendants are dismissed with prejudice.

Further, under Texas law, only specified bystanders may recover damages for emotional distress or mental anguish for a close family member's serious injury. *City of Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997). To recover as a bystander, a plaintiff must establish that: (1) he or she was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) he or she suffered shock as a result of a direct emotional impact upon him or her from a sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) he or she and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. *United Services Automobile Ass'n v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998). In the present case, plaintiff, as individual parent, cannot recover for mental anguish as she did not suffer "shock as a result of a direct emotional impact upon [her] from a sensory and contemporaneous observance of an accident." Instead,

5

plaintiff simply witnessed routine vaccinations.  As such, the individual claims of mental anguish against all defendants are also dismissed with prejudice.

As for the remaining individual claims, the Court stays such claims until plaintiff exhausts her administrative remedies as to the other claims under the Vaccine Act.

**Conclusion:**

Thus, it is hereby ORDERED that all of the representative claims against all defendants are DISMISSED WITHOUT PREJUDICE.  Further, plaintiff's individual damages claims for loss of consortium, loss of companionship, loss of services, emotional distress, and mental anguish are DISMISSED WITH PREJUDICE.  Finally, the remainder of plaintiff's individual claims are STAYED pending the exhaustion of plaintiff's administrative remedies as required by the Vaccine Act.

ORDERED this the _____11_____ of _____June_____ 2004.

_____
H.W. HEAD, JR.
CHIEF JUDGE

6