# EXHIBIT 7

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### CORPUS CHRISTI DIVISION

United States District Court
Southern District of Texas
ENTERED

JUN 1 8 2004

Michael N. Milby, Clerk of Court

| | |
|---|---|
| JESSICA MAST, Individually and as Next § | |
| Friend of JACOB ROSSI HINOJOSA and § | |
| JON DANIEL HINOJOSA, minors, § | |
| Plaintiff. § | |
| v. § | C.A. No. C-03-516 |
| AMERICAN HOME PRODUCTS d/b/a § | |
| WYETH, et al., § | |
| Defendants. § | |

65.

## ORDER

Pending before the Court are Sigma-Aldrich, Inc.'s Motion to Dismiss (D.E. 5),

Eli Lilly and Company's Motion to Dismiss (D.E. 8), Vaccine Defendants' Motion to

Dismiss, or in the Alternative, to Stay These Proceedings (D.E. 9), and The Dow

Chemical Company's Motion to Dismiss or Alternatively to Stay (D.E. 10, 15, 45) and

Motion to Dismiss and Motion for Summary Judgment (D.E. 12, 14, 46).

Plaintiff, Jessica Mast, parent of minors, Jacob and Jon Hinojosa, brings this

lawsuit individually and as next friend of these two children. Plaintiff alleges that her

children suffer from mercury poisoning as a result of receiving vaccines that contained

the preservative thimerosal during the first two years of their lives. Plaintiff further

alleges that the "vaccines and component parts of the vaccines were designed,

manufactured, marketed, and distributed by Defendants"; however, plaintiff does not

designate which defendants are alleged to be vaccine manufacturers and which

defendants are alleged to be vaccine components manufacturers. Plaintiff asserts the

1

following causes of action: strict products liability, negligence, breach of warranty, civil conspiracy, and select claims against unnamed and non-designated "Clinic Defendants" (negligence and fraudulent concealment). Each cause of action is premised upon the causation of compensatory damages in the form of medical care, loss of earning capacity, physical impairment, disfigurement, physical pain, mental anguish, loss of consortium, loss of services, and loss of companionship, as well as exemplary damages.

***Plaintiff's Representative Claims:***

The "Vaccine [Manufacturer] Defendants," as deemed by their motion (Aventis Pasteur, Inc., Baxter Healthcare, Inc., Merck & Co., Inc., SmithKline Beecham Corporation d/b/a GlaxoSmithKline, and Wyeth), move to dismiss, or in the alternative, to stay the case because plaintiff has not yet exhausted her administrative remedies as required by the National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act"). The Vaccine Act provides that "[n]o person may bring a civil action for damages in an amount greater than $1,000 or in an unspecified amount against a vaccine administrator or manufacturer in a State or Federal court for damages arising from a vaccine- related injury or death associated with the administration of a vaccine after October 1, 1988, and no such court may award damages in an amount greater than $1,000 in a civil action for damages for such a vaccine-related injury or death, unless a petition has been filed . . . for compensation under the [National Vaccine Injury Compensation Program] for such injury or death and– (i)(I) the United States Court of Federal Claims has issued a

2

judgment . . . on such petition, and (II) such person elects . . . to file such an action, or (ii) such person elects to withdraw such petition . . . or such petition is considered withdrawn . . ." 42 U.S.C. § 300aa-11(a)(2)(A). 42 U.S.C. § 300aa-11(a)(2)(B) provides that if "a civil action which is barred [under (2)(A)] is filed in a State or Federal Court, the court shall dismiss the action."

These requirements only apply to "a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). Generally, a qualified petitioner is "any person who has sustained a vaccine-related injury, the legal representative of such person if such person is a minor or is disabled, or the legal representative of any person who died as the result of the administration of a vaccine set forth in the Vaccine Injury Table . . ." 42 U.S.C. § 300aa-11(b)(1)(A). "The term 'vaccine-related injury or death' means an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such a vaccine." 42 U.S.C. § 300aa-33(5).

Essentially, the Vaccine Act provides that any person (or that person's legal representative if he or she is a minor) who has sustained a vaccine-related injury and who is seeking more than $1,000 or unspecified damages from a vaccine manufacturer or administrator must first file a petition with the United States Court of Federal Claims

("Vaccine Court") before filing suit for such injury in a federal or state court. The Act requires state and federal courts to dismiss such suits if the petitioner has not first exhausted his or her administrative remedies as required by the Vaccine Act. Here, plaintiff is attempting to bring representative claims, on behalf of her minor children who have sustained vaccine-related injuries, against vaccine manufacturers for unspecified damages, but she has not yet exhausted her administrative remedies. As such, the Court must dismiss without prejudice all of the representative claims against the Vaccine Manufacturer Defendants.[1]

Furthermore, plaintiff's petition frames her claims generally against all defendants by stating that "the vaccines and the component parts of the vaccines were designed, manufactured, marketed, and distributed by defendants." However, plaintiff has not specifically designated which defendants are vaccine manufacturer defendants and which defendants are non-vaccine manufacturer defendants. Thus, the Court dismisses without prejudice all of the representative claims against the remaining defendants, as they fall under a generalized allegation that they too are vaccine manufacturers.

**Plaintiff's Individual Claims:**

The Vaccine Act does not bar plaintiff from filing her individual claims first with the district court; this bar applies "only to a person who has sustained a vaccine-related

---

[1] The Court also dismisses without prejudice all representative claims against the unnamed and non-designated "Clinic Defendants" as any such defendant would be a vaccine administrator. Such a suit, without the exhaustion of administrative remedies in the Vaccine Court, is barred by the Vaccine Act.

4

injury or death and who is qualified to filed a petition for compensation under the

Program." 42 U.S.C. § 300aa-11(a)(9). Plaintiff, as the parent individually, is not a

qualified petitioner under the Vaccine Act; she has not suffered an injury after *receiving*

a vaccine. *See* 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A).

Although the Vaccine Act does not bar plaintiff's individual claims, Texas law, as

follows, does bar several of these claims. There is no claim under Texas law for "loss of

consortium to parents of children who have been seriously injured." *Roberts v.*

*Williamson*, 111 S.W.3d 113, 119-20 (Tex. 2003). Also, Texas law has rejected the

claim for the loss of the "pecuniary value of [a] child's services" as it "is based on an

antiquated concept of the child as an economic asset." *Sanchez v. Schindler*, 651 S.W.2d

249, 251 (Tex. 1983). Thus, the individual claims for loss of consortium, loss of

companionship, and loss of services against all defendants are dismissed with prejudice.

Further, under Texas law, only specified bystanders may recover damages for

emotional distress or mental anguish for a close family member's serious injury. *City of*

*Tyler v. Likes*, 962 S.W.2d 489, 496 (Tex. 1997). To recover as a bystander, a plaintiff

must establish that: (1) he or she was located near the scene of the accident, as

contrasted with one who was a distance away from it; (2) he or she suffered shock as a

result of a direct emotional impact upon him or her from a sensory and contemporaneous

observance of the accident, as contrasted with learning of the accident from others after

its occurrence; and (3) he or she and the victim were closely related, as contrasted with

5

an absence of any relationship or the presence of only a distant relationship. *United Services Automobile Ass'n v. Keith*, 970 S.W.2d 540, 541-42 (Tex. 1998). In the present case, plaintiff, as individual parent, cannot recover for mental anguish as she did not suffer "shock as a result of a direct emotional impact upon [her] from a sensory and contemporaneous observance of an accident." Instead, plaintiff simply witnessed routine vaccinations. As such, the individual claims of mental anguish against all defendants are also dismissed with prejudice.

As for the remaining individual claims, the Court stays such claims until plaintiff exhausts her administrative remedies as to the other claims under the Vaccine Act.

*Conclusion:*

Thus, it is hereby ORDERED that all of the representative claims against all defendants are DISMISSED WITHOUT PREJUDICE. Further, plaintiff's individual damages claims for loss of consortium, loss of companionship, loss of services, emotional distress, and mental anguish are DISMISSED WITH PREJUDICE. Finally, the remainder of plaintiff's individual claims are STAYED pending the exhaustion of plaintiff's administrative remedies as required by the Vaccine Act.

ORDERED this the _____ 11 _____ of _____ June _____, 2004.

H.W. HEAD, JR.
CHIEF JUDGE

6

# EXHIBIT 8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **MANUEL TORRES and DOMINGA** | § | **CIVIL ACTION NO. 1:03-CV-00222** |
| **TORRES, Individually and as Next Friend** | § | |
| **of DEREK TORRES, ET AL.,** | § | **JURY REQUESTED** |
| | § | |
| *Plaintiffs* | § | |
| **v.** | § | |
| | § | |
| **AMERICAN HOME PRODUCTS** | § | |
| **d/b/a WYETH, ET AL.,** | § | |
| | § | |
| *Defendants* | § | |

### AFFIDAVIT OF LARK A. CAMPBELL

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF TRAVIS | § |

Before me, the undersigned authority, personally appeared Lark A. Campbell, who, being duly sworn by me, upon oath deposed and said:

1. "My name is Lark A. Campbell. I am more than 21 years of age and capable of making this affidavit. The facts stated in this affidavit are true and correct and within my personal knowledge.

2. I am one of the attorneys representing Defendant Wyeth in the above-entitled action.

3. I have in my possession copies of the United States Court of Federal Claims docket sheets for the following cases:

   Case number 1:03-vv-02336-UNJ, entitled 'Torres et al v. Secretary of Health and Human Services'; and

   Case number 1:03-vv-02305-UNJ, entitled 'Duree et al v. Secretary of Health and Human Services.'

4. I obtained these copies from the United States Court of Federal Claims PACER website on July 5, 2005.

5.  True and correct copies of said docket sheets are attached to this affidavit as Attachment

A."

      Affiant further sayeth not.



LARK A. CAMPBELL

SWORN TO ME and subscribed in my presence this 8th day of July, 2005.

SHELLI CHARNQUIST
Notary Public
STATE OF TEXAS
My Comm. Exp. 09-24-2005

Notary Public, State of Texas

My commission expires: 9/24/2005

# ATTACHMENT A

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
### CIVIL DOCKET FOR CASE #: 1:03-vv-02336-UNJ

TORRES et al v. SECRETARY OF HEALTH AND
HUMAN SERVICES
Assigned to: Unassigned
Referred to: Special Master George L. Hastings
Demand: $0
Cause: 42:300 Vaccine Injury Act

Date Filed: 10/07/2003
Jury Demand: None
Nature of Suit: 492 Injury - Thimerosal
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**MANUEL TORRES**
*and*

represented by **Derrick Scott Boyd**
Simpson & Boyd, PLLC
P.O. Box 957
Decatur, TX 76234
(940) 627-8308
Fax: (940) 627-8092
Email: kdaugherty@sbplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Petitioner**

**DOMINGA TORRES**
*parents of*

represented by **Derrick Scott Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Petitioner**

**DEREK TORRES**
*a minor*

represented by **Derrick Scott Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**SECRETARY OF HEALTH AND
HUMAN SERVICES**

represented by **Vincent James Matanoski**
U. S. Department of Justice
Vaccine/Torts Branch, Civil Division
P.O. Box 146
Ben Franklin Station
Washington, DC 20044-0146
(202) 616-4122
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/07/2003 | 1 | PETITION against SECRETARY OF HEALTH AND HUMAN SERVICES ( Filing fee $150, Receipt number 058899) , filed by DEREK TORRES, DOMINGA TORRES, MANUEL TORRES.Respondents Report Due by 1/5/2004.(jmm, ) (Entered: 10/15/2003) |
| 10/28/2003 | 2 | Notice Regarding Omnibus Autism Proceeding. Signed by Special Master George L. Hastings. (jmm, ) (Entered: 11/17/2003) |
| 11/12/2003 | 3 | NOTICE of Appearance by Vincent James Matanoski for SECRETARY OF HEALTH AND HUMAN SERVICES. Service: 11/12/03.(jmm, ) (Entered: 11/26/2003) |
| 01/15/2004 | 4 | Respondent's Report by SECRETARY OF HEALTH AND HUMAN SERVICES.Service: 1/15/04. (tjk, ) (Entered: 01/22/2004) |
| 06/07/2004 | 5 | ORDER re: the 240-day period for issuance of the special master's decision in this case has expired. Upon petitioner's motion, proceedings in this case are hereby formally suspended pursuant to 42 U.S.C. 300aa-12(d)(3)(C) for up to 180 days, and, thus, the final due date for the special master's decision in this case is formally suspended - for an indefinite period of time, but for no longer then 180 days. Signed by Special Master George L. Hastings. (jat, ) (Entered: 06/07/2004) |
| 12/16/2004 | 6 | ORDER re: the statutory 420-day time period for the special master's issuance of a decision in this case has expired. Petitioner may submit a notice continuing or withdrawing the petition and such notice shall be filed within 30 days. Signed by Special Master George L. Hastings. (tjk, ) (Entered: 12/20/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/05/2005 16:01:26 | | |
| PACER Login: | ct0266 | Client Code: | 1202916 |
| Description: | Docket Report | Search Criteria: | 1:03-vv-02336-UNJ |
| Billable Pages: | 1 | Cost: | 0.08 |

# US Court of Federal Claims
## United States Court of Federal Claims (COFC)
### CIVIL DOCKET FOR CASE #: 1:03-vv-02305-UNJ

DUREE et al v. SECRETARY OF HEALTH AND
HUMAN SERVICES
Assigned to: Unassigned
Referred to: Special Master George L. Hastings
Demand: $0
Cause: 42:300 Vaccine Injury Act

Date Filed: 10/07/2003
Jury Demand: None
Nature of Suit: 492 Injury - Thimerosal
Jurisdiction: U.S. Government
Defendant

**Petitioner**

**ERIKA DUREE**
*parent of*

represented by   **Derrick Scott Boyd**
Simpson & Boyd, PLLC
P.O. Box 957
Decatur, TX 76234
(940) 627-8308
Fax: (940) 627-8092
Email: kdaugherty@sbplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Petitioner**

**ERIN JONATHON DUREE**
*a minor*

represented by   **Derrick Scott Boyd**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Respondent**

**SECRETARY OF HEALTH AND
HUMAN SERVICES**

represented by   **Vincent James Matanoski**
U. S. Department of Justice
Vaccine/Torts Branch, Civil Division
P.O. Box 146
Ben Franklin Station
Washington, DC 20044-0146
(202) 616-4122
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 10/07/2003 | 1 | PETITION against SECRETARY OF HEALTH AND HUMAN SERVICES ( Filing fee $150, Receipt number 058899) , filed by ERIKA DUREE, ERIN JONATHON DUREE.Respondents Report Due by 1/5/2004.(jmm, ) (Entered: 10/14/2003) |

| 10/28/2003 | 2 | Notice Regarding Omnibus Autism Proceeding. Signed by Special Master George L. Hastings. (jmm, ) (Entered: 11/17/2003) |
| 11/12/2003 | 3 | NOTICE of Appearance by Vincent James Matanoski for SECRETARY OF HEALTH AND HUMAN SERVICES. Service: 11/12/03.(jmm, ) (Entered: 11/26/2003) |
| 01/07/2004 | 4 | Respondent's Report by SECRETARY OF HEALTH AND HUMAN SERVICES.Service: 1/07/04. (tjk, ) (Entered: 01/14/2004) |
| 06/07/2004 | 5 | ORDER re: the 240-day period for issuance of the special master's decision in this case has expired. Upon petitioner's motion, proceedings in this case are hereby formally suspended pursuant to 42 U.S.C. 300aa-12(d)(3)(C) for up to 180 days, and, thus, the final due date for the special master's decision in this case is formally suspended - for an indefinite period of time, but for no longer then 180 days. Signed by Special Master George L. Hastings. (jat, ) (Entered: 06/07/2004) |
| 12/16/2004 | 6 | ORDER re: the statutory 420-day time period for the special master's issuance of a decision in this case has expired. Petitioner may submit a notice continuing or withdrawing the petition and such notice shall be filed within 30 days. Signed by Special Master George L. Hastings. (tjk, ) (Entered: 12/20/2004) |

| PACER Service Center | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/05/2005 16:02:33 | | |
| **PACER Login:** | ct0266 | **Client Code:** | 1202916 |
| **Description:** | Docket Report | **Search Criteria:** | 1:03-vv-02305-UNJ |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# EXHIBIT 9

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**GALVESTON DIVISION**

United States Courts
Southern District of Texas
ENTERED

JUL 1 2 2002

Michael N. Milby. Clerk

| | | |
|---|---|---|
| JESSICA OWENS *et al.* | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-02-185 |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION, *et al.* | § | |
| Defendants. | § | |

**ORDER GRANTING PLAINTIFFS' MOTION FOR CLARIFICATION**
**AND DENYING THE MOTIONS TO STAY FILED BY DEFENDANTS SIGMA,**
**ELI LILY AND SMITH KLINE AS MOOT**

Several Motions are now before the Court: (1) a Motion to Stay Proceedings filed by

Defendants Sigma Aldrich Corporation and Sigma Aldrich, Inc. and joined by Defendant Eli Lilly

and Company; (3) a Motion to Stay Proceedings filed by the Vaccine Manufacturer Defendants;[1] and

(4) Plaintiffs' Motion for Clarification.

**Motions to Stay**

At a Rule 16 Conference held in this matter on June 5, 2002, the Court stayed this action until

February 6, 2003. Accordingly, the two pending Motions to Stay are hereby **DENIED AS MOOT**.

**Motion for Clarification**

Plaintiffs' Motion for Clarification points out that in its May 7, 2002 Order regarding various

Defendants' Motions to Dismiss, the Court failed to directly address the viability of Plaintiffs'

individual claims for reasonable and necessary medical expenses incurred on behalf of their minor

children. The Court concludes that Plaintiffs Motion for Clarification is meritorious and therefore,

Plaintiffs' Motion is hereby **GRANTED**. The requested clarification is provided below.

---

[1] The Vaccine Manufacturers are Defendants Wyeth, Aventis Pasteur, Inc., Merck and Company,
Inc. and Smith Kline Beecham Corporation.

*Plaintiffs' Individual Claims Against the Vaccine Manufacturers for Medical Expenses*

The Court acknowledges that in Texas, "[i]t is well settled law that because the parent is primarily liable for a minor's medical expenses incurred during minority, any cause of action for medical expenses incurred up to the age of 18 belongs to such parent." Roth v. Law, 579 S.W.2d 949, 956 (Tex. App.–Corpus Christi 1979, writ ref'd n.r.e.). Nevertheless, although Plaintiffs are not barred outright by the Vaccine Act from seeking individual damages (i.e. loss of consortium) from the Vaccine Manufacturers, they cannot recover from the Vaccine Manufacturers for such medical expenses at this time. As explained in the Court's previous Order, the Vaccine Act provides compensation for actual and un-reimbursable expenses and projected expenses (incurred by the victim or on the victim's behalf) for medical or other remedial care determined to be reasonably necessary, actual and anticipated lost earnings, actual and projected pain and suffering of the victim and reasonable attorneys' fees and costs. The covered expenses include those costs which "have been or will be incurred by or on behalf of the [victim]. . . for rehabilitation, developmental evaluation, special education, vocational training and placement, case management services, counseling, emotional or behavioral therapy, residential and custodial care and services expenses, and facilities determined to be reasonably necessary." 42 U.S.C. § 300aa-15(a)(1). Plaintiffs are therefore required to seek reimbursement for these expenses in the Vaccine Court, rather then attempting to recover damages via an action wherein they assert individual claims against the Vaccine Manufacturers. Allowing them to do so would clearly undermine the stated objectives of the Vaccine Act. This result is not in contravention of Texas law, because the Court is in no way holding that Plaintiffs' do not possess a valid claim for the medical expenses at issue. The Court is simply stating that Plaintiffs cannot seek to recover such expenses from the Vaccine Manufacturers until after they have filed a

2

Vaccine Act Petition in accordance with the Vaccine Act. Plaintiffs' claims for medical expenses incurred on behalf of their minor children are therefore **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

*Plaintiffs' Individual Claims Against the Chemical Manufacturers for Medical Expenses*

As explained in the Court's May 7, 2002 Order, the Vaccine Act does not bar Plaintiffs from bringing any individual claims against the Chemical Manufacturers[2] at this time, as long as those causes of action are otherwise viable under Texas law. Accordingly, Plaintiffs' individual causes of action against the Chemical Manufacturers for medical expenses incurred on behalf of their minor children remain pending before the Court.

IT IS SO ORDERED.

DONE this 12th day of July, 2002, at Galveston, Texas.

SAMUEL B. KENT
UNITED STATES DISTRICT JUDGE

---

[2] The Chemical Manufacturer Defendants include Sigma, Eli Lily, The Dow Chemical Company, EM Industries, Inc., Spectrum Laboratory Products, Inc. and GDL International, Inc..

3

# EXHIBIT 10

NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
LAW DIVISION, MIDDLESEX COUNTY

Steven Alexander Greene, et. al.

     **Plaintiff,**

v.

Aventis Pasteur, et. al.
     **Defendants.**

:
:
:
:
:
:
:
:
:
:
:

DOCKET NO. L-1228-02
CIVIL ACTION

---

Christian Hale Colson, et. al.

     **Plaintiff,**

v.

Aventis Pasteur, et. al.
     **Defendants.**

:
:
:
:
:
:
:
:
:
:

DOCKET NO. L-1351-02
CIVIL ACTION


LETTER OPINION

---

Lauren E. Handler, Esq.
Porzio, Bromberg & Newman, P.C.
100 Southgate Parkway
Morristown, NJ 07962
Attorneys for Defendant Wyeth

Barry R. Sugarman. Esq.
Wilentz, Goldman & Spitzer, P.C.
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, NJ 070951
Attorneys for Plaintiffs Greene and Colson

1

## INTRODUCTION

On January 28, 2002 the Plaintiffs filed Complaints against the Defendants in the above captioned matters. The Plaintiffs, the fathers of the infants, Stephen Alexander Greene and Christian Colson, allege that the infants were exposed to thimerosal through the vaccines that were prescribed and administered to them. The Greene and Colson parents have also filed claims on their own behalf against the Defendants.

The Defendants in these matters are Wyeth, Aventis Pasteur, Merck & Co., Eli Lilly Company, and Meridian Chemical and Equipment. Defendants Wyeth, Aventis Pasteur, and Meridian Chemical Equipment manufacture the vaccine at issue. The vaccine manufacturer Defendants have filed Motions to Dismiss the Plaintiffs' Complaints for failure to state a claim upon which relief can be granted. See, Rule 4:6-2(e).

The National Childhood Vaccine Injury Act, 42 U.S.C. Sect. 300aa-1 to 300aa-34 (the Act), covers injuries caused by vaccines. The Act vests jurisdiction over vaccine-related injuries with the Vaccine Court. The Act also requires plaintiffs seeking compensation for vaccine-related injuries to file a petition in the Vaccine Court prior to filing suit in a State or Federal Court. If a plaintiff fails to file a petition with the Vaccine Court and files suit in a State or Federal Court, the Court is required to dismiss the plaintiff's claim.

It is undisputed that the Greene and Colson Plaintiffs have not filed petitions with the Vaccine Court. In support of their Motions to Dismiss, the Defendants argue that the Vaccine Court has jurisdiction over the Plaintiffs' claims because the Plaintiffs injuries are vaccine-related; the Plaintiffs' injuries are vaccine-related because they were caused by an ingredient of the vaccine at issue, namely,

2

thimerosal. The Defendants argue that since the Vaccine Court has jurisdiction over the Plaintiffs'

claims, the Court should dismiss the Plaintiffs' Complaints for lack of jurisdiction.

The Plaintiffs, on the other hand, argue that their injuries are not vaccine-related because

thimerosal is an adulterant or contaminant, not an ingredient; since the Plaintiffs' injuies are not vaccine-

related, they fall outside the scope of the Vaccine Act. Accordingly, the Plaintiffs argue that this Court

has jurisdiction over the Plaintiffs' claims and request that it deny the Defendants' Motions to Dismiss.


## DISCUSSION

### I. The Defendants' Motions

The Plaintiffs argue that the Court should treat the Defendants' Motions as summary judgment

motions because the Defendants have included material in their Motion papers outside the scope of the

pleadings. The Court disagrees.

The main issue before the Court is whether the Vaccine Act precludes the Plaintiffs' from

pursuing their claims in this Court because the Plaintiffs failed to file a petition with the Vaccine Court.

The Defendants' appropriately address this issue in their Motions to Dismiss because it is a threshold

issue of jurisdiction. There is no reason for these matters to proceed beyond the stage of the

Defendants' Motions to Dismiss before this Court has determined whether it has jurisdiction over the

Plaintiffs' claims.


### II. Standard of Review

When considering a motion to dismiss pursuant to Rule 4:6-2(e) for failure to state a claim upon

3

which relief can be granted, the Court is required to search the Complaint to determine if a cause of action can be found within its four corners. Relying on <u>Printing Mart v. Sharp Electronics Corp.</u>, 116 N.J. 739, 746 (1989), Judge Drier in <u>Van Natta Mechanical Corp. v. Di Staulo</u>, 277 N.J. Super. 175, 180 (App. Div. 1994) followed the analysis set forth in prior rulings by stating:

> A reviewing court 'searches the complaint in depth and with great liberality to ascertain whether the fundamental cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary.' At this preliminary stage of the litigation the court is not concerned with the ability of plaintiffs to prove the allegations contained in the complaint ... For the purpose of analysis, plaintiffs are entitled to every reasonable inference of fact ... The examination of a complaint's allegations of fact required by the aforestated principles should be one that is at once painstaking and undertaken with a generous and hospitable approach.

Quoting, <u>DiCrisofaro v. Laurel Grove Memorial Park</u>, 43 N.J. Super. 244, 252 (App. Div.).

## III. Plaintiffs' Claims on Behalf of Infants Greene and Colson

Thimerosal is an FDA-licensed component of the vaccine at issue; it is included in multi-dose vaccine vials and is designed to preserve the vaccine's effectiveness. It is undisputed that the vaccines that were administered to the infants, Greene and Colson, contained thimerosal.

The gravamen of the Plaintiffs' Complaints are that thimerosal is the agent responsible for the infants Greene and Colson's injuries. The Plaintiffs argue that despite thimerosal's proffered "use" as a preservative, thimerosal is an adulterant or contaminant because it contains mercury, a harmful substance. The Plaintiffs argue that since the Vaccine Act does not cover injuries caused by adulterants or contaminants, this Court has jurisdiction over the Plaintiffs' claims.

4

The Defendants, on the other hand, argue that thimerosal is an FDA-approved ingredient of the vaccine at issue. As an ingredient, thimerosal cannot be considered an adulterant or contaminant; therefore, the Vaccine Act covers the Plaintiffs' claims and the Plaintiffs were required to file a petition with the Vaccine Court before instituting suit in this Court.

The Court agrees with the Defendants. The fact that the Plaintiffs argue that thimerosal is harmful and therefore an adulterant or contaminant does not change the fact that the FDA has approved thimerosal as an ingredient of the vaccine at issue. As the Defendants noted at oral argument, a plaintiff can allege that a seventeen-year-old is not a minor because he has the physical and intellectual maturity of an eighteen-year-old; however, this Court would not have to accept the plaintiff's allegation merely because the allegation was made in opposition to a defendant's motion to dismiss the plaintiff's complaint.

Similarly, this Court is not required to accept the Plaintiffs' allegation that thimerosal is an adulterant or contaminant merely because the Plaintiffs make their allegations in opposition to the Defendants' Motion to Dismiss. The FDA has approved the use of thimerosal as an ingredient and such approval precludes this Court from finding that thimerosal is an adulterant or contaminant. This Court is of the opinion that thimerosal is a constituent material of vaccines. See, 21 C.F.R. Sect. 610.15; Owens v. American Home Products Corp. (S.D. Tex. 2002). The Court holds that the Plaintiffs' alleged injuries are vaccine-related and this Court lacks jurisdiction in these matters; therefore, the Plaintiffs' claims on behalf of the infants, Greene and Colson, are dismissed pursuant to Rule 4:6-2(e).

**IV. Plaintiffs' Claims on their Own Behalf**

 The final issue before this Court is the status of the parents' claims on their own behalf. Sect. 300aa-15 of the Vaccine Act states the following: "Compensation awarded under this Program ... shall include the following: "(1)(A) Actual ... expenses which - (iii)(I) have been or will be incurred by or on behalf of the person who suffered such injury." Furthermore, Schaeffer v. American Cyanamid allowed a suit by the victim's parents only for loss of services and consortium. 20 F.3d 1 (1st Cir. 1994). In Schaeffer, the victim was actually awarded money by the Vaccine Court for medical expenses, etc. The only reason that the Schaeffer Court allowed the parents to recover their claims was because they could not do so in the Vaccine Court.

 Here, the Greene and Colson infants' parents could have sought medical expenses on behalf of their infant sons from the Vaccine Court; therefore, their claims for medical expenses are dismissed. As to the Plaintiffs' claims for negligent infliction of emotional distress, Plaintiffs' counsel acknowledged at oral argument that the Plaintiffs' claims do not meet the primacy requirement of Portee v. Jaffe, 84 N.J.

## CONCLUSION

The Plaintiffs' claims on behalf of the Greene and Colson infants are dismissed because the Plaintiffs' injuries are vaccine-related and therefore this Court lacks jurisdiction over them. See, 21 C.F.R. Sect. 610.15; Owens v. American Home Products Corp. (S.D. Tex. 2002).

The Greene and Colson parents' claims for medical expenses should also be dismissed because the parents could have sought medical expenses on behalf of their infant sons from the Vaccine Court.

The Plaintiffs' claims for negligent infliction of emotional distress should be dismissed because Plaintiffs' counsel acknowledged at oral argument that the Plaintiffs' claims do not meet the primacy requirement of Portee v. Jaffe 84 N.J. 88 (1980).    The Plaintiffs' claims for loss of love and affection should also be dismissed because New Jersey does not recognize such claims.  Tynan v. Curzi, 332 N.J. Super. 267 (App. Div. 2000).

As to the Plaintiffs' claims for loss of services, the Defendants' Motion to Dismiss should be denied because the Plaintiffs could not have pursued these claims in the Vaccine Court.  See Schaeffer v. American Cyanamid 20 F.3d 1 (1st Cir. 1994).

Aug. 8, 2002

_____
Nicholas J. Stroumtsos Jr., J.S.C.

7

# EXHIBIT 11

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| JAY BLACKMON and KENDEL | § | |
| BLACKMON, individually and as next | § | |
| friends to TODD CHRISTOPHER | § | |
| BLACKMON; NORMAN KUEHN and | § | |
| MELISSA KUEHN, individually and as next | § | |
| friends to BRANDON HILTON KUEHN; and | § | |
| TIM SCOTT and SHARON SCOTT, | § | |
| individually and as next friends to COLBY | § | |
| BRENNAN SCOTT | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. G-02-179 |
| | § | |
| AMERICAN HOME PRODUCTS | § | |
| CORPORATION, *et al.* | § | |
| Defendants. | § | |

*United States Courts*
*Southern District of Texas*
*ENTERED*
MAY 0 8 2002
*Michael N. Milby, Clerk of Court*

**ORDER GRANTING IN PART AND DENYING IN PART WYETH, AVENTIS,
MERCK AND SMITH KLINE'S MOTION TO DISMISS, DENYING
SIGMA'S MOTION TO DISMISS, GRANTING PLAINTIFFS' MOTION FOR
LEAVE TO CONDUCT DISCOVERY AND TO EXTEND THE RESPONSE
DATE TO GDL'S AMENDED MOTION TO DISMISS AND DENYING
DEFENDANTS' REQUEST FOR ORAL ARGUMENT AS MOOT**

Plaintiffs Jay Blackmon and Kendel Blackmon, individually and as legal representatives of

their minor child Todd Christopher Blackmon ("Todd"); Norman Kuehn and Melissa Kuehn,

individually and as legal representatives of their minor child Brandon Hilton Kuehn ("Brandon");

and Tim Scott and Sharon Scott, individually and as legal representatives of their minor child Colby

Brennan Scott ("Colby"); bring this products liability lawsuit against Defendants Sigma Aldrich

Corporation ("Sigma Corp."); Sigma Aldrich, Inc. ("Sigma Inc."); Eli Lilly and Company ("Eli

Lilly"); The Dow Chemical Company ("Dow"); EM Industries, Inc. ("EM"); Wyeth ("Wyeth") f/k/a

American Home Products, Corp.; Aventis Pasteur, Inc. ("Aventis") f/k/a Connaught Laboratories

f/d/b/a Pasteur Merieux Connaught; Merck and Company, Inc. ("Merck"); Smith Kline Beecham

Corporation ("Smith Kline") d/b/a GlaxoSmithKline; Spectrum Laboratory Products, Inc. ("Spectrum"); and GDL International, Inc. ("GDL") pursuant to the state laws of Texas. Now before the Court are three Motions to Dismiss filed by various Defendants: (1) a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) and the National Childhood Vaccine Injury Act ("Vaccine Act"), 42 U.S.C. §§ 300aa-1-300aa-34, filed by Wyeth, Aventis, Merck and Smith Kline; (2) a Motion to Dismiss pursuant to the Vaccine Act and Fed. R. Civ. P. 19 filed by Sigma Corp. and Sigma Inc. (collectively, "Sigma"); and (3) a Motion to Dismiss for Lack of Personal Jurisdiction filed by GDL. For the reasons articulated below, Wyeth, Aventis, Merck and Smith Kline's Motion to Dismiss pursuant to the Vaccine Act is **GRANTED IN PART** and **DENIED IN PART**, Sigma's Motion to Dismiss pursuant to the Vaccine Act is **DENIED** and Plaintiffs are hereby **ORDERED** to conduct jurisdictional discovery before responding to the Motion to Dismiss filed by GDL.

## I. Background

While they were infants, Todd, Brandon and Colby were allegedly exposed to harmful levels of mercury via routine childhood vaccinations administered to them by their pediatricians. All or some of the vaccines contained thimerosal, a mercury laden preservative. At that time, vaccine manufacturers routinely added thimerosal to multiple-use vials of vaccines to extend each vial's shelf life. The thimerosal (and thus, mercury) introduced into the children's bodies by way of vaccination allegedly afflicted them with serious and lasting neurological injuries. Plaintiffs filed this action in a Texas state court seeking damages for the children's personal injuries both individually and on behalf of their children (as legal representatives). In their Original Petition, Plaintiffs assert four causes of action (strict liability, negligence, gross negligence and conspiracy) against two distinct

2

categories of Defendants: (1) the manufacturers of thimerosal containing vaccines–Wyeth, Aventis, Merck and Smith Kline ("Vaccine Manufacturers"); and (2) the manufacturers of thimerosal itself–Eli Lilly, EM, Sigma, Dow, Spectrum and GDL ("Chemical Manufacturers").[1] Defendants subsequently removed the action pursuant to this Court's diversity jurisdiction.

## II.  The Vaccine Act

The "[v]accination of children against deadly, disabling, but preventable infectious diseases has been one of the most spectacularly effective public health initiatives this country has ever undertaken. Use of vaccines has prevented thousands of children's deaths each year and has substantially reduced the effects resulting from disease." H.R. Rep. No. 99-908, at 4 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6345. However, while most children enjoy measurable benefit from immunization programs, "a small but significant number of have been gravely injured." Id. Two significant concerns accompany these vaccine-related injuries: the inconsistency, expense, delay and unpredictability of the tort system in compensating claims of vaccine-injured children; and the instability and uncertainty of the childhood vaccine market inevitably caused by the risks of tort litigation. See id. at 7, 1986 U.S.C.C.A.N. at 6348. Fortunately, the National Vaccine Injury Compensation Program ("Program") ameliorates these concerns. The Program provides an avenue of recovery for injuries and deaths traceable to vaccinations that works with greater ease and on a faster timetable than the civil tort system.[2] See Shalala v. Whitecotton, 514 U.S. 268, 269, 115 S.

---

[1] In their Original Petition Plaintiffs do not distinguish between the Vaccine Manufacturers and the Thimerosal Manufacturers. The Court finds, however, that making such a distinction is essential.

[2] The Program became effective on October 1, 1988.

3

Ct. 1477, 1478, 131 L.Ed.2d 374 (1995). In effect, it "ensure[s] that all children who are injured by vaccines have access to sufficient compensation for their injuries," H.R. Rep. No. 99-908 at 6345-6346, and "free[s] manufacturers from the specter of large, uncertain tort liability, and thereby . . . keep[s] manufacturers in the market." Schafer v. Am. Cyanamid Co., 20 F.3d 1, 4 (1st Cir. 1994).

The Program, set forth in the Vaccine Act, requires that vaccine-related claims are initially heard by special masters in the United States Court of Federal Claims ("Vaccine Court"), adjudicated informally and then accorded expeditious review. See Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478. This system streamlines the claims process by establishing standards of proof, under which individuals who suffer injuries within specified intervals after being administered a vaccine, benefit from a presumption that a vaccine caused those injuries. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1), 300aa-14; Haggerty v. Wyeth Ayerst Pharm., 79 F. Supp. 2d 182, 184 (E.D.N.Y. 2000). A Program claimant may not file a civil action against a vaccine manufacturer or administrator unless the claimant initially files a timely petition in accordance with the Program's guidelines.[3] See 42 U.S.C. § 300aa-11(2)(A); Whitecotton, 514 U.S. at 270, 115 S. Ct. at 1478 (explaining that a claimant alleging an injury after the Vaccine Act's effective date "must exhaust the Act's procedures . . . before filing any *de novo* civil action in state or federal court"). If a claimant seeks compensation in a state or federal court for vaccine-related injuries prior to exhausting his or her remedies under the Vaccine Act, the Court must dismiss the action. See 42 U.S.C. § 300aa-11(a)(2)(B). Simply put, individuals who qualify as Program claimants must file petitions in the

---

[3] A proper claimant, or "petitioner," under the Vaccine Act is "any person who has sustained a vaccine-related injury," or the legal representative of such person. 42 U.S.C. § 300aa-11(b)(1)(A).

Vaccine Court in order to pursue any vaccine-related claims at all.[4] Nonetheless, if an individual who prevails in the Vaccine Court is ultimately dissatisfied with his or her Program award, that individual may reject the award and pursue a traditional tort action in any forum.[5] See 42 U.S.C. § 300aa-21(a).

### III.  Vaccine Manufacturers' Motion to Dismiss

In this case, it is undisputed that Plaintiffs have not filed a petition in the Vaccine Court in accordance with the Program. In their Motion to Dismiss, filed March 28, 2002, the Vaccine Manufacturers highlight this fact and argue that Plaintiffs' failure to file a Program petition requires the Court to dismiss all claims filed against them pursuant to Fed. R. Civ. P. 12(b).[6] In response, Plaintiffs contend that they are not required to file a petition in the Vaccine Court because the children's injuries fall outside the scope of the Vaccine Act. Thus, the Court must initially determine

---

[4] There are a few exceptions. *De minimis* claims for less than $1,000 may be brought in state or federal courts without prior filing under the Vaccine Program. See 42 U.S.C. § 300aa-11(a)(2)(A). However, the Vaccine Act requires that any vaccine-related action seeking an unspecified amount of damages (such as the instant lawsuit) be filed under the Program. See id.

[5] Under the Program, the compensation awarded to a petitioner for a vaccine-related injury may include actual and un-reimbursable expenses and projected expenses for medical or other remedial care determined to be reasonably necessary; actual and anticipated lost earnings; and actual and projected pain and suffering subject to a statutory cap of $250,000. See 42 U.S.C. § 300aa-15(a). Punitive and exemplary damages are prohibited. See 42 U.S.C. § 300aa-15(d). Reasonable attorneys' fees and costs are awarded even if the petition is denied, so long as the special master determines that the petition was brought in good faith and that a reasonable basis for asserting the claim existed. See 42 U.S.C. § 300aa-15(c). In the event that a petitioner chooses to reject a Program award, the Vaccine Act limits the tort remedies that become available. For instance, the Vaccine Act establishes compliance with Food and Drug Administration ("FDA") requirements as a partial defense for manufacturers, see 42 U.S.C. § 300aa-22(b)(2), and requires tort suits to be tried in three phases (liability, general damages and punitive damages). See 42 U.S.C. § 300aa-23(a). Moreover, a manufacturer's compliance with FDA guidelines generally precludes an award of punitive damages. See 42 U.S.C. § 300aa-23(d).

[6] Although the Vaccine Manufacturers do not specify which provision of Rule 12(b) they are moving for dismissal under, the Court assumes that they are seeking a dismissal under Rule 12(b)(3) for improper venue, or in the alternative, under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(3); Fed. R. Civ. P. 12(b)(3).

whether Plaintiffs are required to file a Program petition for: (1) the claims they have filed on behalf of their children ("Representative Claims"); or (2) their individual claims that are derivative of the children's injuries ("Individual Claims").

### Representative Claims Filed Against the Vaccine Manufacturers

A proper claimant under the Vaccine Act is "any person who has sustained a vaccine-related injury" or the legal representative of that person. 42 U.S.C. § 300aa-11(b)(1)(A). Therefore, if the children sustained "vaccine-related injuries," Plaintiffs are proper claimants under the Vaccine Act with respect to the Representative Claims. The Vaccine Act defines "vaccine-related injury" as "an illness, injury, condition or death associated with one or more of the vaccines set forth in the Vaccine Injury Table [42 C.F.R. § 100.3], except that term does not include an illness, injury, condition, or death associated with an adulterant or a contaminant intentionally added to such a vaccine."[7] 42 U.S.C. § 300aa-33(5). Plaintiffs maintain that because thimerosal is an "adulterant or contaminant intentionally added to . . .a vaccine," this lawsuit does not involve a "vaccine-related" injury as defined by the Vaccine Act.[8] Conversely, the Vaccine Manufacturers contend that thimerosal is not

---

[7] The vaccines currently listed in the Vaccine Injury Table are diptheria, tetanus, pertussis, measles, mumps, rubella, poliovirus, hepatitus B, haemophilil influenzae type b, varicella zoster virus, rotavirus and streptococcus pneumoniae. See 42 C.F.R. § 100.3 (Vaccine Injury Table). In addition to listing eligible vaccines, the Vaccine Injury Table also lists types of injuries associated with each vaccine. See id. Individuals who suffer a listed injury after being dosed with the corresponding vaccine make out a *prima facie* case for compensation that may be rebutted only by proof that such injury was caused by factors unrelated to the vaccine. See 42 U.S.C. §§ 300aa-11(c)(1)(C)(i), 300aa-13(a)(1)(B). Individuals who suffer injuries not listed in the Vaccine Injury Table may still obtain compensation, but they must prove by a preponderance of the evidence that the injury was in fact caused by a listed vaccine. See id.

[8] The Court notes that Plaintiffs' Original Petition does not specify which thimerosal containing vaccines were administered to the children. Rather, the Petition generally refers to vaccines that are "routinely administered to children" according to the "typical immunization schedule during the first 18 months of life." The Recommended Childhood Immunization Schedule published by the Centers for Disease Control and Prevention ("CDC") specifies that the routine vaccinations for American children within their first eighteen months are (1) hepatitis B vaccine; (2) diphtheria, tetanus and pertussis vaccine; (3)

an "adulterant or contaminant," but rather, a "constituent material" of vaccines. The Court agrees with the Vaccine Manufacturers.

When attempting to discern a statute's meaning, a court must initially look to the plain meaning of the statute's language. See Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253-54 (1992). Here, because "adulterant" and "contaminant" are not specifically defined by the Vaccine Act, dictionary definitions provided the Court with guidance as to the plain meaning of these terms. The definition of an "adulterant" is "a substance which makes an item impure, spurious, or inferior by adding extraneous or improper ingredients." The American Heritage Dictionary 58 (2d ed. 1992). A medical dictionary similarly defines adulterant as "[a]n impurity; an additive that is considered to have an undesirable effect or to dilute the active material so as to reduce its therapeutic or monetary value." Stedman's Medical Dictionary 30 (27th ed. 2000). And a contaminant is "[s]omething that makes impure or corrupt by contact or mixture." Webster's 9th New Collegiate Dictionary 283 (9th ed. 1991).

Thimerosal, when used in vaccines, fails to correspond with any of these definitions. Vaccine manufacturers intentionally add thimerosal to vaccine formulas because it deters microbial and fungal growth, thereby maintaining the safety, purity and potency of vaccines. In fact, thimerosal has been widely used as a vaccine preservative since the 1930s, see Statement by William Egan, Ph.D.,

---

haemophilus influenzae type b vaccine; (4) poliovirus vaccine; (5) measles-mumps-rubella vaccine; and (6) varicella zoster virus vaccine. See Morbidity and Mortality Weekly Report (Centers for Disease Control and Prevention) Vol. 44 Nos. 52 & 52, January 5, 1996, at 942 (Figure 1). Thus, the Court presumes that the reference to vaccines "routinely administered to children" in Plaintiffs' Original Petition refers to the six CDC-recommended vaccines. And because all six of these vaccines are covered by the Vaccine Injury Table, see 42 C.F.R. § 100.3, the Court further assumes that the children's injuries are "table injuries" within the scope of the Vaccine Act. This assumption is supported by the fact that Plaintiffs do not assert that the children were injured by an unlisted vaccine in response to the Vaccine Manufacturers' Motion to Dismiss.

FDA, before the Committee on Government Reform, U.S. House of Representatives, July 18, 2000, and its use satisfies the FDA's requirement that preservatives be added to vaccines distributed in multi-use vials. See 21 C.F.R. § 610.15(a) ("Products in multiple-dose containers shall contain a preservative"). As such, thimerosal cannot be said to "make impure or corrupt" a vaccine or to reduce a vaccine's therapeutic value. Furthermore, thimerosal cannot be characterized as having an undesirable effect or diluting the active material found within a vaccine. In fact, the precise opposite is true. As a preservative, thimerosal prevents a vaccine's corruption. Hence, neither the plain meaning of "adulterant" nor "contaminant" applies to thimerosal when, as here, it is purposefully used as an ingredient in the approved formulation of a vaccine.

The remainder of the language used by Congress to define "vaccine-related injury" (i.e. "associated with one or more . . . vaccines") likewise requires a finding that the Representative Claims are covered by the Program. A "vaccine" is defined as a "suspension of attenuated or killed microorganisms," Dorland's Medical Dictionary 1799 (27th ed. 1988), and "a preparation of killed microorganisms, living attenuated organisms, or living fully virulent organisms." Webster's 9th New Collegiate Dictionary 1301 (9th ed. 1991). Neither of these definitions indicate that a vaccine is comprised of microorganisms alone. On the contrary, they indicate that a vaccine is a "suspension" or "preparation" composed of both microorganisms and additional ingredients.[9] And, as explained above, manufacturers of vaccines add thimerosal to the "preparation" or "suspension" of vaccines.[10]

---

[9] A suspension is "a class of pharmacopeial preparations of finely divided undissolved drugs [or in this case, microorganisms] . . . dispersed in liquid vehicles for oral or parenteral use." Stedman's Medical Dictionary 1713 (26th ed. 1995). A preparation is "a medicinal substance made ready for use." Webster's 9th New Collegiate Dictionary 929 (9th ed. 1991).

[10] The FDA has long recognized that preservatives (i.e. thimerosal) are "constituent materials" of vaccines. See 21 C.F.R. § 610.15 (indicating that constituents of biological materials include ingredients,

8

Therefore, because the children's injuries are allegedly linked to a vaccine ingredient, their injuries are definitely "vaccine-related." See, e.g., Brausewetter v. Sec'y of Health and Human Servs., No.99-278V, 1999 WL 562700, at *3 (Fed. Cl. July 16, 1999) (stating that claims fall under the Vaccine Act when a claimant is exposed to the "chemical/biological components of the tetanus vaccine"); Pannell v. Sec'y of Health and Human Servs., No. 94-658V, 1995 WL 432643, at *2 (Fed. Cl. July 7, 1995) (referring to "vaccine-related injury" as one "caused by the vaccine or by something contained therein"); see also Grant v. Sec'y of Health and Human Servs., No. 956 F.2d 1144, 1149-50 (Fed. Cir. 1992) (affirming award where vaccine's preservative was an alleged cause of claimant's injury). Clearly, the plain language of the Vaccine Act indicates that the children's injuries cannot be "thimerosal-related" without being "vaccine-related" as well.[11]  Therefore, Plaintiffs are required to file a Program petition as a pre-requisite to filing any civil action seeking damages from the Vaccine Manufacturers for injuries to their children. Accordingly, the Vaccine Manufacturers' Motion to Dismiss is **GRANTED** with respect to the Representative Claims asserted

---

preservatives, diluents and adjuvants).

[11] In this case, because the language of the Vaccine Act unambiguously and specifically indicates that injuries caused by vaccine preservatives (i.e. thimerosal) are within its scope, it is clear that Congress has spoken to the precise question at issue. And the Court has given effect to such Congressional intent. However, the Court's decision would remain the same even if Congressional intent was not clearly expressed. In that event, the Court would have adopted the position taken by the Secretary of the Department of Health and Human Services ("Secretary"). See Chevron U.S.A. v. Nat'l Resources Def. Council, Inc., 467 U.S. 837, 843-44, 104 S. Ct. 2778, 2781-82, 81 L.Ed.2d 694 (1984) (explaining that when Congress has not directly spoken to an issue, courts must adopt the interpretation of the administrative agency charged with the duty of enacting the regulation in question "unless they are arbitrary, capricious, or manifestly contrary to the statute"). The Secretary, who is charged with the responsibility of administering the Program, see 42 U.S.C. §§ 300aa-10-300aa34, maintains that any injury claims allegedly caused by thimerosal in covered vaccines are "vaccine related" and therefore, thimerosal-related claims against vaccine manufacturers require adjudication by the Vaccine Court. See, e.g., The National Vaccine Injury Compensation Program web-page, available at <http://www.hrsa.gov/osp/vicp/quanda.htm> ("Because thimerosal is not an adulterant or contaminant, individuals who have claims relating to thimerosal in vaccines covered under the [Vaccine Act] . . . must first file the claim with the [Program] before pursuing any other civil litigation").

against them. These claims are hereby **DISMISSED WITHOUT PREJUDICE** and Plaintiffs are urged to re-file such claims in the Vaccine Court if they so desire.

<u>Individual Claims Against the Vaccine Manufacturers</u>

Having dismissed the Representative Claims against the Vaccine Manufacturers, the Court now turns to Plaintiffs' Individual Claims for loss of consortium, emotional distress and loss of services. In their Motion to Dismiss, the Vaccine Manufacturers argue that Plaintiffs are also required to file a Program petition as a pre-requisite to asserting the Individual Claims. Moreover, the Vaccine Manufacturers assert that even if the Individual Claims are not barred by the Vaccine Act, Plaintiffs' causes of action for loss of consortium, loss of services and emotional distress cannot be maintained in accordance with Texas law. The Court will address each of these contentions in turn.

<u>Vaccine Act Petition</u>

By its own terms, the Vaccine Act's proscription against bringing a civil action for damages prior to the filing of a Program petition "applies only to a person who has sustained a vaccine-related injury or death and who is qualified to file a petition for compensation under the Program." 42 U.S.C. § 300aa-11(a)(9). As such, Plaintiffs are not barred from bringing their Individual Claims against the Vaccine Manufacturers unless they are "qualified to file a petition." An individual becomes eligible to file a petition if he or she suffers a specified injury after receiving a vaccine. <u>See</u> 42 U.S.C. §§ 300aa-11(b)(1)(A), 300aa-11(c)(1)(A). Thus, unless an individual received a vaccine (or is the legal representative of such an individual), that individual cannot file a petition in the Vaccine Court. <u>See</u> <u>Schafer</u>, 20 F.3d at 7; <u>Head v. Sec'y of Health and Human Servs.</u>, 26 Cl. Ct. 546, 547 n.1 (1992), *aff'd*, 996 F.2d 318 (Fed. Cir. 1993). In this case, none of the Plaintiffs allege to have

10

"suffered a relevant injury. . . after he or she received a vaccine." Accordingly, Plaintiffs need not (and cannot, for that matter) file a Program petition with respect to their Individual Claims, and are consequently permitted to file such claims in this forum. See Schafer, 20 F.3d at 5 (explaining that the Vaccine Act's tort suit ban does not apply to individuals who cannot file petition in the Vaccine Court except in a representative capacity); Head, 26 Cl. Ct. at 550 (holding that an award to a mother in her individual capacity in an action arising from vaccine-related injuries received by her daughter did not bar the daughter's subsequent action under the Vaccine Act); McDonald v. Lederle Labs., 775 A.2d 528, 535 (N.J. 2001) ("The [Vaccine] Act does not preclude parents from filing an individual civil action for losses incurred by them."). Having determined that Plaintiffs' Individual Claims are not barred by the Vaccine Act, the Court now considers the merits of these claims under Texas law.

### Loss of Consortium

In Sanchez v. Schindler, 651 S.W.2d 249 (Tex. 1983), the Texas Supreme Court recognized that injuries to the familial relationship are significant injuries worthy of compensation. See id. at 251. Accordingly, parents may recover for loss of companionship for the wrongful death of a child. See id. At least two Texas courts have extended the Sanchez holding to cover situations involving a non-fatally injured child. See Roberts v. Williamson, 52 S.W.3d 343, 352 (Tex. App.–Texarkana 2001) ("To hold that a parent cannot recover [for the loss of consortium of a non-fatally injured child] would ignore the basic idea behind recovery for loss of consortium: to attempt to compensate for the loss of love and companionship"), *petition for review filed* (August 20, 2001); Enochs v. Brown, 872 S.W.2d 312, 322 (Tex. App.–Austin 1994, no writ) ("Within the [Texas] Supreme Court's express recognition of a common law cause of action for a serious injury to a spouse or

parent lies the implicit recognition of a parent's claims for loss of companionship for a similar injury to a child"); Cf. Reagan v. Vaughn, 804 S.W.2d 463, 466 (Tex. 1990) ("[T]he two relationships likely to be most severely affected by a negligent injury to a person are the husband and wife relationship and that of parent and child[.]") Therefore, in light of these decisions, the Court concludes that Plaintiffs have stated a viable claim for loss of consortium under Texas law.

### Loss of Services

On the other hand, the Texas Supreme Court rejected the "antiquated concept of the child as an economic asset," when it explained that "[t]he real loss sustained by a parent is not the loss of any financial benefit to be gained from the child, but is the loss of love, advice, comfort, companionship and society." Sanchez, 752 S.W.2d at 251. Therefore, the Court concludes that, as a matter of Texas law, Plaintiffs cannot maintain a cause of action for loss of services based upon the children's alleged injuries.

### Emotional Distress

Similarly, Plaintiffs cannot recover on their derivative claims of emotional distress. In Texas, emotional distress damages are recoverable in a very limited set of circumstances: (1) as the foreseeable result of a breach of a duty arising out of certain special relationships; (2) for common law torts involving intentional or malicious conduct; (3) for wrongful death; (4) in personal injury cases where the defendant's conduct causes the plaintiff serious bodily injury; and (5) in bystander actions. See Verinakis v. Med. Profiles, Inc., 987 S.W.2d 90, 95 (Tex. App.–Houston [14th Dist.] 1998, pet. denied). In this case, Plaintiffs have not alleged any facts signaling a special relationship, intentional or malicious conduct or wrongful death. And the only personal injuries alleged were incurred by the children–not by Plaintiffs. Thus, the only possible avenue by which Plaintiffs may

attempt to recover emotional distress damages is the bystander action. However, given the facts of this case, this method proves similarly inapplicable.

In Texas, bystanders may recover damages for mental anguish suffered as a result of witnessing a serious or fatal accident involving a close family member. See City of Tyler v. Likes, 962 S.W.2d 489, 496 (Tex. 1997). In order to successfully recover emotional distress damages, a bystander plaintiff must establish that: (1) the plaintiff was located near the scene of the accident, as contrasted with one who was a distance away from it; (2) the plaintiff suffered shock as a result of a direct emotional impact upon the plaintiff from a sensory and contemporaneous observation of the accident, as contrasted with learning of the accident from others after its occurrence; and (3) the plaintiff and victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship. See United Servs. Auto Ass'n v. Keith, 970 S.W.2d 540, 541- 42 (Tex. 1998). Texas law requires the bystanders's presence when the accident occurred and the contemporaneous perception of the accident. See id. at 542.

Here, Plaintiffs clearly did not witness and perceive the type of shocking accident contemplated by the bystander theory of recovery. Rather, Plaintiffs witnessed the routine vaccination of their children and the children's subsequent medical problems that are allegedly linked to thimerosal. Moreover, Plaintiffs did not even learn of the children's alleged mercury poisoning until the children's neurological problems were diagnosed by a physician, well after the suspect vaccines were administered. However anguishing these belated circumstances may have been, the bystander theory is inapplicable to the facts of this case, as a matter of Texas law.

As stated above, although none of the Individual Claims are barred by the Vaccine Act, Plaintiffs' derivative claims for loss of services and emotional distress cannot be maintained in

13

conformity with Texas law. On the other hand, Plaintiffs' cause of action for loss consortium remains viable. As such, the Vaccine Manufacturers' Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' Individual Claims for loss of services and emotional distress; and hereby **DENIED IN PART** with respect to Plaintiffs' Individual Claims for loss of consortium. The Court further **ORDERS** that Plaintiffs' Individual Claims for loss of services and emotional distress against the Vaccine Manufacturers are **DISMISSED WITH PREJUDICE.**

### IV.  Sigma's Motion to Dismiss

The Court now turns to the Motion to Dismiss filed by Sigma on March 22, 2002.[12] In that Motion, Sigma contends that the Vaccine Act requires dismissal of the Representative Claims and Individual Claims brought against itself and the other Chemical Manufacturers. This argument contains a fatal flaw, however, because the Vaccine Act only prohibits the filing of any civil action against a "vaccine *manufacturer* or *administrator*" prior to the filing of a Program petition. 42 U.S.C. § 300aa-11(2)(A) (emphasis added). Because Sigma allegedly supplies thimerosal (a raw material) to the Vaccine Manufacturers, but does not manufacture or administer vaccines itself, Plaintiffs' claims against Sigma are not subject to the Vaccine Act's tort suit bar. Nevertheless, for the reasons discussed previously in conjunction with the Individual Claims against the Vaccine Manufacturers, Sigma's Motion to Dismiss is hereby **GRANTED IN PART** with respect to Plaintiffs' derivative claims for loss of services and emotional distress. Those claims are hereby **DISMISSED WITH**

---

[12] On April 29, 2002, Sigma filed a second Motion to Dismiss and alternatively, a Motion to Stay. The Court is not making any ruling on Sigma's second Motion to Dismiss at this time. The Court will address that Motion, along with Sigma's request for a stay, after Plaintiffs have responded thereto.

14

**PREJUDICE.** Regarding all other claims asserted by Plaintiffs against Sigma, its Motion to Dismiss is hereby **DENIED.**[13]

## V.  GDL's Motion to Dismiss

GDL (a Chemical Manufacturer) filed its Amended 12(b) Motion to Dismiss for Lack of Personal Jurisdiction on March 20, 2002. In response, Plaintiffs filed a Motion for Leave to Conduct Jurisdictional Discovery of GDL. The Court finds that such jurisdictional discovery is indeed warranted. Accordingly, the Court hereby **ORDERS** that Plaintiffs have sixty (60) days from the date of this Order to conduct discovery pertaining solely to whether this Court may validly exercise personal jurisdiction over GDL. At the end of that time period, Plaintiffs are **ORDERED** to file their Response to GDL's Motion to Dismiss. The Court will rule on that Motion as soon as it can be reached.

In conclusion, the Court reiterates that all Representative Claims asserted against the Vaccine Manufacturers fall squarely within the jurisdiction of the Vaccine Court and are hereby **DISMISSED WITHOUT PREJUDICE.** Hence, the only claims against the Vaccine Manufacturers that Plaintiffs may properly assert in this forum are those seeking compensation for their individual loss of consortium. On the other hand, Plaintiffs' Representative Claims and Individual Claims against the Chemical Manufacturers are subject to adjudication in this forum, with the exception of Plaintiffs' derivative claims for emotional distress and loss of services. GDL's Motion to Dismiss remains pending. Finally, this Order renders the Vaccine Manufacturers' Request for Oral Argument on their

---

[13] Sigma's Motion to Dismiss also argues for a dismissal pursuant to Fed. R. Civ. P. 19 in the event that the Court dismisses "any other Defendant or other Defendants." Because the Court has not dismissed any Defendants (only certain claims), the Court does not need to address Sigma's Rule 19 request.

Motion to Dismiss **MOOT**. The Court will address all other pending concerns as soon as they are ripe for consideration.

      **IT IS SO ORDERED**.

      **DONE** this _____ day of May, 2002, at Galveston, Texas.

 

 

**SAMUEL B. KENT**
**UNITED STATES DISTRICT JUDGE**

# EXHIBIT 12

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 JAN 17 PM 3: 21

LORETTA G. WHYTE
CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

JACQUELINE CASE AND                         CIVIL ACTION
MARK REDDING

VERSUS                                      NO: 02-1779

MERCK & CO., AVENTIS PASTEUR,               SECTION: "R" (4)
INC., AMERICAN HOME PRODUCTS
CORP., SMITHKLINE BEECHAM
CORP., SPECTRUM CHEMICAL
MFG. CORP., SIGMA-ALDRICH,
CORP., ELI LILLY CORP., TENET
HEALTHSYSTEM MEMORIAL
MEDICAL CENTER, INC., AND
CHILDREN'S HOSPITAL


### ORDER AND REASONS


Before the Court are defendants SmithKline Beecham, Wyeth
(formerly known as American Home Products), Sigma-Aldrich, Merck
and Aventis Pasteur (the "Vaccine Manufacturers"), which move the
Court to reconsider its denial of their previous motion to stay.
Defendant Eli Lilly also seeks a stay, invoking the protection
recently bestowed upon it by the Homeland Security Act.[1]  The
relevant provision of the Act was expressly made retroactive and
it defines Eli Lilly, for purposes of this lawsuit, as a "vaccine

---

[1]  *See* Homeland Security Act of 2002, H.R. 5005 as amended
by S. Amdt. 4901, 107th Cong., 2nd Sess. §§ 1714-1717 (Nov. 19,
2002); H.R. 5710, 107th Cong., 2nd Sess. §§ 1714-1717 (Nov. 13,
2002).

DATE OF ENTRY

JAN 2 1 2003

Fee_____
Process____
X Dktd____
  CtRmDep___
  Doc.No.____

manufacturer" under the National Childhood Vaccine Injury Act (the "Vaccine Act").  42 U.S.C. § 300aa (2002).[2]  For the following reasons, the Court grants defendants' motion to stay.

## I.  Background

Plaintiffs Jacqueline Case and Mark Redding bring this action to recover damages for loss of consortium and lost wages as a result of the injuries allegedly caused by defendants to their child, Case Redding.  Case Redding took childhood vaccines containing thimerosal, a chemical compound containing mercury that is used as a preservative in vaccines, which allegedly caused him to develop an autism-like disorder.  Preservatives like thimerosal enable manufacturers to cut costs by distributing vaccines in multi-dose packages.

In an Order and Reasons entered on November 5, 2002, this Court determined that the Vaccine Act does not require plaintiffs' to assert claims for loss of consortium and their own lost wages in the court established by the Vaccine Act (the "Vaccine Court") before bringing them in a lawsuit in federal district court.  The Court denied defendants' request to stay this lawsuit, primarily because Case Redding did not have a petition pending in the Vaccine Court.  It has since come to the

---

[2]  Section 1714 of the Homeland Security Act of 2002 redefines the term "manufacturer" to include a corporation that manufactures any component or ingredient of a vaccine.  *See* 42 U.S.C. § 300aa-33(3).

2

attention of the Court that Case Redding has, in fact, filed a petition in the Vaccine Court. In light of this development, defendants re-urge their request that the lawsuit be stayed.

## II. Discussion

### A. The Vaccine Act

The Vaccine Act is a federal statute that provides a no-fault compensation system for injuries caused by the administration of childhood vaccines. 42 U.S.C. § 300aa. The Act enables individuals who sustain vaccine-related injuries to bring their claims before special masters appointed by the United States Court of Federal Claims. Petitioners need only prove causation – and not negligence – to obtain a recovery that is paid out from the federal purse. Petitioners may reject the recovery that is offered in the Vaccine Court and then file a civil lawsuit against the vaccine manufacturer. The purpose of the Act was to encourage vaccine development by sparing vaccine manufacturers certain litigation expenses, as well as the insurance premiums that are associated with such costs. *See Schafer v. American Cyanamid Co.*, 20 F.3d 1, 2 (1st Cir. 1994).

Specifically, the Act provides that before an individual who sustains vaccine-related injuries (or the legal representatives of such an individual) files a civil lawsuit against a vaccine manufacturer for damages greater than $1,000, he or she must first file a petition in the Vaccine Court for the alleged

3

injury. 42 U.S.C. § 300aa-11(a)(2)(A); *see Shalala v.*
*Whitecotton*, 514 U.S. 268, 269, 115 S. Ct. 1477, 1478 (1995). If
a plaintiff fails to file a petition under the Act before the
plaintiff sues in state or federal court, the court is required
to dismiss the action. 42 U.S.C. § 300aa-11(a)(2)(B). The
Vaccine Act provides that "no person may bring a civil action...
for damages arising from a vaccine-related injury... unless a
petition has been filed in accordance with [the Vaccine Act]."
42 U.S.C. § 300aa-11a(2)(A). This bar, however, applies only to
individuals who have sustained vaccine-related injuries or the
legal representatives of such individuals. 42 U.S.C. §§ 300aa-
11a(9) and 11b(1)(A).

Courts have long held that the Vaccine Act does not bar
civil suits brought by parents, on their own behalf, for damages
arising from the vaccine-related injuries of their children.
*Schafer*, 20 F.3d at 6 (noting that the Vaccine Court "has held
that a parent *can* both obtain a loss of consortium 'award' from a
state court... and also obtain compensation for her vaccinated
(and injured) child from the Vaccine Court"); *Owens v. American
Home Products*, 203 F.Supp. 748, 756 (S.D.Tex. 2002); *see also
Cook v. Children's Medical Group*, 756 So.2d 734, 741 (Miss.
1999); *McDonald v. Lederle Laboratories*, 775 A.2d 528, 535 (N.J.
Sup. Ct. 2001). As this Court noted in its Order and Reasons of
November 5, 2002, Congress could have swept loss of consortium

4

claims and lost wages claims within the purview of the Act, but it did not do so.

### B.  The Court's Inherent Power to Stay

The Court begins, as it must, by recognizing its "virtually unflagging obligation" to exercise the jurisdiction that it is given.  *Black Sea Investment, Ltd. v. United Heritage Corporation*, 204 F.3d 647, 650 (5th Cir. 2000).  As Judge Rubin succinctly stated, "[f]ederal courts exist to decide controversy."  *Itel Corporation v. M/S Victoria U*, 710 F.2d 199, 202 (5th Cir. 1983).  A court nevertheless possesses the inherent power to control the disposition of the cases on its docket "with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. North American Co. Same*, 299 U.S. 248, 254, 57 S. Ct. 163, 166 (1936).  Use of the Court's inherent power to stay must not be abused.  *Coastal (Bermuda) Ltd. v. E.W. Saybolt & Co., Inc.*, 761 F.2d 198, 303 n.6 (5th Cir. 1985). Absent statutory authorization, the moving party bears a heavy burden to show why a stay should be granted.  *Id*.  Further, the Court "should tailor its stay so as not to prejudice other litigants unduly."  *Id*.  A stay may be granted to avoid hardship or inequity, but courts should "prevent the ossification of rights which attends inordinate delay."  *Itel*, 710 F.2d at 203 (internal citations omitted).

A number of factors persuade the Court that a stay would

5

economize the time of the Court, the counsel and the litigants.
An essential portion of plaintiffs' case is now currently pending
before an adjudicative tribunal investigating the causal link
between thimerosal and injuries like those sustained by Case
Redding.   In order to recover for loss of consortium, plaintiffs
must establish that defendants caused and are liable for the
injuries allegedly sustained by Case Redding.   *Keener v. Mid-
Continent Casualty*, 817 So.2d 347, 363 (La. Ct. App. 2002); *Junot
v. Morgan*, 818 So.2d 152, 158 n.5 (La. Ct. App. 2002); *Gilbert v.
Laborde*, 632 So.2d 1162, 1169 (La. Ct. App. 1994).   The issue of
whether thimerosal caused Redding's injuries is now before the
Vaccine Court, which is handling, in addition to Redding's
petition, hundreds of similar claims.   (*See* Autism General Order
#1, United States Court of Federal Claims, Office of Special
Masters, July 3, 2002, Attached to Def.'s Mot. to Reconsider, Ex.
2.)   The Chief Special Master has set forth a two-step procedure
whereby, first, the general issue of whether thimerosal causes
autism and similar disorders will be resolved, and, second, if it
does, whether this conclusion can be applied to each of the
individual cases, including Case Redding's.   (*Id.* at 3.)
Undoubtedly, a number of experts, independent or otherwise, will
be retained.   Requiring the parties to conduct a parallel
inquiry, on a different timetable, to determine plaintiffs' right
to recover for loss of consortium is duplicative, expensive, and

6

wasteful.

Finally, the Court notes that a stay of limited duration does not cause undue prejudice to plaintiffs. A stay reduces litigation expenses for plaintiffs as well. Further, plaintiffs' interest in the Vaccine Court's proceedings is not attenuated, as their child's petition is pending there.

In light of these considerations, the Court concludes that stay is in the interest of justice. The Court is not aware of any other court that has denied a stay of parental claims for loss of consortium when their child has a claim pending in the Vaccine Court. To the contrary, on facts nearly identical to those involved in this lawsuit, other courts have ordered stays. *See Russak v. Aventis Pasteur*, No. A-02-CA-480-SS, at 8 (W.D.Tex. Sept. 9, 2002); *Owens v. American Home Products Corporation*, No. G-02-185, at 1 (S.D.Tex. July 12, 2002). In *Owens*, Judge Kent stayed a lawsuit involving parental claims arising out of thimerosal-related injuries for a limited time pending developments in the Vaccine Court. Given that a stay must not give rise to a lengthy delay, the Court agrees that a stay of limited duration is appropriate. *See Saybolt*, 761 F.2d at 203 n.6 (citing *Landis*, 299 U.S. at 257, 57 S. Ct. at 167). The Court grants defendants' motion to stay and hereby stays this lawsuit until August 1, 2003.

### III.  Conclusion

For the foregoing reasons, the Court grants defendants' motion to stay.  This lawsuit is hereby STAYED until August 1, 2003.


New Orleans, Louisiana, this 17th day of January, 2003.

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

8