# EXHIBIT "K"

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

2002 SP -9 AM 9: 54

WESTERN DISTRICT ...
U.S. CLERK'S OFFICE

BY: _____
            DEPUTY

RON RUSSAK and KARLA RUSSAK,
Individually and as Next Friend of JORDAN
RUSSAK,
          Plaintiffs,

-vs-

Case No. A-02-CA-480-SS

AVENTIS PASTEUR, INC., Individually and as
Successor-in-Interest to Connaught Laboratories,
Inc., Pasteur Merieux, and Pasteur Merieux
Connaught; *et al.*,
          Defendants.

## ORDER

BE IT REMEMBERED on the 7th day of September 2002 the Court reviewed the file in the above-styled cause, specifically Defendant Eli Lilly and Company's Motion to Dismiss [#5] and Plaintiffs' response thereto [#15]; Defendant Sigma-Aldrich Corporation and Sigma-Aldrich, Inc.'s Motion to Dismiss [#3] and Plaintiffs' response thereto [#8]; the Vaccine Manufacturers' 12(b) Motion to Dismiss and Alternative Motion to Stay [#6] and Plaintiffs' response [attached to #24]; and Defendant Austin Energy's Motion to Dismiss [#9], which was filed on August 13, 2002 and to which the Plaintiffs have not responded. Having considered the motions, responses, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

### Factual and Procedural Background

The plaintiffs, Ron Russak and Karla Russak, are Texas residents and the parents of Jordan Russak, who is approximately five years old. *See* First Amended Petition, at ¶¶ 5; 24. They appear

in this lawsuit as individuals and as next friend of Jordan Russak. *Id.* at ¶ 5. The plaintiffs contend their son suffered and continues to suffer neurological damage because he was poisoned by mercury contained in thimerosal, a preservative used in vaccines administered to him. *Id.* at ¶¶ 24-26. Jordan received the vaccines between October 2, 1996 and August 2, 2001. *Id.* at ¶ 24. The plaintiffs further contend Jordan's neurological damage was exacerbated by Austin Energy's emission of air toxins such as mercury from fossil-fuel-burning utilities near his residence. *Id.* at ¶¶ 33-34.

On May 30, 2002, the plaintiffs filed this lawsuit in the 53rd Judicial District Court of Travis County, Texas, Cause No. GN201793. The plaintiffs raise causes of actions for strict liability; negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products; gross negligence; fraud and conspiracy; negligence in the marketing, licensing, and design of thimerosal; and negligence in the release of mercury-containing emissions from the burning of fossil fuels. *See* First Amended Petition. The plaintiffs seek compensatory damages for expenditures necessitated by Jordan's injuries, Ron and Karla Russak's lost wages and income, Ron and Karla Russak's emotional distress and loss of consortium, and the lost services Ron and Karla Russak could have provided to each other and Jordan could have provided to them. *Id.* at 19. The plaintiffs also seek punitive damages for certain causes of action. *Id.* Defendant Wyeth, formerly known as American Home Products Corporation, removed the case to this Court on July 29, 2002 after having obtained consent of all other served defendants except Austin Energy.[1] *See* Notice of Removal [#1].

---

[1] In its motion to dismiss, Austin Energy states it did not learn of the removal until after the fact. In the notice of removal, Wyeth argues it did not need Austin Energy's consent because the plaintiffs' addition of Austin Energy as a defendant was a fraudulent joinder for the sole purpose of defeating diversity jurisdiction. The removing party bears the burden of proving fraudulent joinder. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), *cert. denied*, 498 U.S. 817 (1990). The plaintiffs' claims against Austin Energy are based on different facts than their vaccine-related claims against the other defendants. However, because this Court has no jurisdiction over Jordan

-2-

Defendant Aventis Pasteur Inc. ("Aventis"), Wyeth, SmithKline Beecham Corporation ("SmithKline"), and Merck & Co., Inc. ("Merck") (collectively, "the Vaccine Manufacturers") move to dismiss or, in the alternative, to stay because the plaintiffs did not first file an administrative claim in the Court of Federal Claims as required by the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-11(a)(2)(A). Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. Defendant Eli Lilly and Company ("Eli Lilly") moves to dismiss arguing it did not manufacture the vaccines or thimerosal that caused Jordan Russak's injuries and, therefore, cannot be held liable. Austin Energy moves to dismiss for lack of subject matter jurisdiction and failure to state a claim.

### Analysis

**I.   The Vaccine Act's Requirements**

The Vaccine Manufacturers move to dismiss or, in the alternative, to stay the case because the plaintiffs did not first file a petition in the United States Court of Federal Claims. Sigma-Aldrich Corporation and Sigma-Aldrich, Inc. move to dismiss on the same basis. The National Childhood Vaccine Injury Act of 1986 ("the Vaccine Act") sets forth a scheme for compensation for vaccine-related injuries or death. 42 U.S.C. § 300aa-11. Congress enacted the Vaccine Act to streamline the process of seeking compensation for vaccine-related injuries and to avoid the inconsistency, expense and unpredictability of the tort system. *Shalala v. Whitecotton*, 514 U.S. 268, 270, 115 S.Ct. 1477, 1478 (1995) ("For injuries and death traceable to vaccinations, the Act establishes a scheme of

---

Russak's primary causes of action, the plaintiffs have not moved to remand the case for improper removal, and the record and briefing are too scant to determine the fraudulent joinder issue, the Court will treat Austin Energy the same as the other defendants. This ruling is without prejudice to any party raising the issue after the stay in the case is lifted.

-3-

recovery designed to work faster and with greater ease than the civil tort system."); H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 (noting for those injured by vaccines, "the opportunities for redress and restitution are limited, time-consuming, expensive, and often unanswered."). The Vaccine Act prevents plaintiffs from initiating lawsuits against vaccine administrators or manufacturers in state or federal court for unspecified amounts of damages resulting from vaccine-related injuries unless they first file a timely petition in the Court of Federal Claims for compensation under the Vaccine Act. 42 U.S.C. § 300aa-11(a)(2)(A); *see also Shalala*, 514 U.S. at 270, 115 S.Ct. at 1478. Petitions filed in the Court of Federal Claims are assigned to a special master familiar with Vaccine Act claims. 42 U.S.C. §§ 300aa-11(a)(1) & 300aa-12(d). The statute directs courts to dismiss such causes of action that were not first filed in the Court of Federal Claims. 42 U.S.C. § 300aa-11(a)(2)(B).

The plaintiffs have not filed a petition in the Court of Federal Claims. They contend the Vaccine Act does not require them to do so, because Jordan Russak's injuries are not vaccine-related. The Vaccine Act defines a "vaccine-related injury" as "an illness, injury, condition, or death associated with one or more of the vaccines set forth in the Vaccine Injury Table, except that the term does not include an illness, injury, condition, or death associated with an adulterant or contaminant intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The plaintiffs contend Jordan's injuries are not "vaccine-related" because they were caused not by the vaccines themselves but by the thimerosal added to the vaccines as a preservative to deter microbial and fungal growth– an "adulterant . . . intentionally added to such vaccine." 42 U.S.C. § 300aa-33(5). The terms "adulterant" and "contaminant" are not defined in the Vaccine Act.

The plaintiffs are unable to provide the Court any legal authority for their interpretation of the Vaccine Act as applied to thimerosal.[2] On the contrary, it appears every federal court to have ruled on the issue, including this one, has held injuries resulting from thimerosal contained in vaccines are vaccine-related under the meaning of the Vaccine Act. *E.g., Strauss v. American Home Prod. Corp., et al*, Cause No. G-02-226 (S.D. Tex. June 11, 2002) (finding injuries from thimerosal are "vaccine-related" under the Vaccine Act); *Blackmon, et al v. American Home Prod. Corp.*, Cause No. G-02-179 (S.D. Tex. May 8, 2002) (same); *Owens v. American Home Prod. Corp.*, 203 F.Supp.2d 748 (S.D. Tex. 2002) (same). Additionally, the Department of Health and Human Services ("HHS") has taken the position that thimerosal is not an adulterant or contaminant of vaccines.[3] Indeed, the HHS's determination that thimerosal is a component of vaccines,[4] not an adulterant, comports with common sense, since at the time Jordan Russak received the vaccines it was impossible to get the vaccines without thimerosal.

Moreover, the special masters in the Court of Federal Claims are experienced in Vaccine Act claims and are better equipped to handle thimerosal cases. The Court of Federal Claims has been inundated with cases alleging the thimerosal contained in vaccines caused neurodevelopmental

---

[2] The only legal authority the plaintiffs provide for this proposition is an intimation by special master John F. Edwards that thimerosal may be an adulterant in an order directing the government to file a brief on the issue. *See* Plaintiffs' Response to Vaccine Manufacturers' Motion, Ex. B. As the plaintiffs note, this order was later withdrawn.

[3] While the HHS's position is official, in that it is posted on the HHS web site and HHS has taken the position in court papers, it is not a regulation or other agency action entitled to judicial deference under the *Chevron* doctrine. *Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). However, the HHS's official position holds persuasive authority.

[4] The HHS regulation for general biological products standards includes "preservatives" in the category of "constituent materials," indicating the agency's view that preservatives are components of vaccines, not adulterants. 21 C.F.R. § 610.15.

-5-

disorders such as autism. *See* Vaccine Manufacturers' Reply, Ex. 1 ("Autism General Order #1"), at 1-2. The plaintiffs' claims are identical to hundreds of those already before the Court of Federal Claims. The Office of Special Masters within that court recently established procedures to accommodate the thousands of thimerosal cases it expects to receive. *Id.* While the Court of Federal Claims' acceptance of jurisdiction and creation of procedures is not binding on this Court, it indicates the entity with the most experience applying the Vaccine Act finds thimerosal cases within the statute's definition of a "vaccine-related injury" and is prepared and willing to handle such cases. *See also Collins vs. American Home Prod. Corp.*, Cause No. 3:01-CV-979LN (S.D. Miss. Aug. 1, 2002) (dismissing thimerosal claims because Autism Order #1 "foreclose[d] any reasonable possibility that the plaintiffs have stated a currently cognizable claim against the resident defendants."). The Court holds thimerosal is not an adulterant or contaminant under the Vaccine Act and, thus, Jordan Russak's alleged injuries are vaccine-related. Accordingly, the Vaccine Act requires the Court to dismiss the parents' claims brought on behalf of Jordan Russak without prejudice to refiling after they have exhausted the requirements of the Vaccine Act.

II.   **Claims against Non-Vaccine-Manufacturers**

Eli Lilly moves to dismiss the plaintiffs' claims against it for failure to state a claim upon which relief can be granted because it did not manufacture or distribute the thimerosal or vaccines that allegedly caused Jordan Russak's injuries. Eli Lilly contends it stopped distributing childhood vaccines prior to 1980, and all vaccines in 1985, and stopped distributing thimerosal by 1992. *See* Eli Lilly's Motion to Dismiss [#5], Ex. A ("Fishman Affidavit"), at 1-2.

Eli Lilly asks this Court to adjudicate the merits of the plaintiffs' claims against it despite the Court's need to dismiss or stay the plaintiffs' claims against the vaccine manufacturers until they

follow the exhaustion requirements of the Vaccine Act. The plaintiffs raise many of the same claims against Eli Lilly as against the vaccine manufacturer defendants, including strict liability, negligence in the manufacture, marketing and/or sale of mercury contained in vaccine products, gross negligence, and fraud and conspiracy. To rule on the merits of Eli Lilly's substantive defenses would require a period of discovery allowing the plaintiffs to investigate its contentions. The Court will not allow the plaintiffs to conduct discovery on one defendant during the pendency of the minor's claims under the Vaccine Act against the other defendants. To do so would be wholly inconsistent with Congress's goal of minimizing litigation costs and, therefore, the Court will not allow any discovery until the plaintiffs have complied with the Vaccine Act. *See* H.R. Rep. No. 99-908 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6344, 6347 ("Lawsuits and settlement negotiations can take months or even years to complete. Transaction costs – including attorneys' fees and court payments – are very high. And in the end, no recovery may be available."). Accordingly, the Court will dismiss Jordan Russak's claims against all defendants rather than allow discovery on Eli Lilly.

### III. Ron Russak and Karla Russak's Individual Claims

Ron and Karla Russak bring claims individually and as next friend of Jordan Russak. Individually, they seek recovery for all past and future costs associated with Jordan's injuries, lost wages and income, emotional distress, loss of consortium and loss of services. *See* First Amended Petition, at 17. Under the Vaccine Act, "any person who has sustained a vaccine-related injury" or "the legal representative of such person if such person is a minor or is disabled" may file a petition for compensation in the Court of Federal Claims. 42 U.S.C. § 300aa-11(b)(1)(A). An individual may only file a petition on his own behalf if he received a vaccine and alleges a resulting injury. 42

U.S.C. §§ 300aa-11(b)(1)(A) & 300aa-11(c)(1)(A). Thus, Ron and Karla Russak can only bring their claims as next friend of Jordan, not their individual claims, in the Court of Federal Claims.

The defendants move to dismiss Ron and Karla Russak's individual claims for damages because they are derivative of Jordan's claims, are duplicative of damages available under the Vaccine Act, or are not cognizable under Texas law. However, if the Court dismissed the parents' claims, their statutes of limitations could expire while the parents are representing Jordan's claims in the Court of Federal Claims.[5] TEX. CIV. PRAC. & REM. CODE § 16.003 (two-year statute of limitations in personal injury cases). The Court has discretion to stay proceedings. *Black Sea Inv., Ltd. v. United Heritage Corp.*, 204 F.3d 647, 649 (5th Cir. 2000). Courts often stay proceedings to avoid interference with related proceedings in another forum and to avoid the waste of duplication. *West Gulf Maritime Ass'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 728-29 (5th Cir. 1985) ("The concern manifestly is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result."). The parents' claims brought on behalf of their minor son must first be heard in the Court of Federal Claims. Dismissing the parents' individual claims during the pendency of that court's jurisdiction might preclude the parents from bringing their claims in any forum. Accordingly, the Court will stay all proceedings in Ron and Karla Russak's individual causes of action against all defendants until Jordan's claims have been administered in the Court of Federal Claims under the Vaccine Act.

---

[5] The Vaccine Act does not toll the statute of limitations for the parents' claims while they are representing their child in the Court of Federal Claims. The Vaccine Act does, however, toll the statute of limitations for the minor's state law claims while his petition is pending before the court. 42 U.S.C. § 300aa-16(c). For the child's claims against the defendants who do not manufacture vaccines, the statute of limitations will not begin to run until he reaches the age of majority. *See* TEX. CIV. PRAC. & REM. CODE § 16.001.

-8-

In accordance with the foregoing:

IT IS ORDERED that the Vaccine Manufacturers' 12(b) Motion to Dismiss [#6] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and their Alternative Motion to Stay [#6] is GRANTED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Sigma-Aldrich Corporation and Sigma Aldrich, Inc.'s Motion to Dismiss [#3] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion for Leave to File its Amended Motion to Dismiss [#28] is DENIED;

IT IS FURTHER ORDERED that Eli Lilly and Company's Motion to Dismiss [#5] is GRANTED IN PART as to the claims of Jordan Russak to be presented in the Court of Federal Claims, and DENIED IN PART as to Ron Russak and Karla Russak's individual causes of action;

IT IS FURTHER ORDERED that plaintiffs' claims brought as next friend of Jordan Russak against all defendants are DISMISSED without prejudice to refiling;

IT IS FURTHER ORDERED that plaintiffs' claims brought in their individual capacities are STAYED pending further order of this Court;

IT IS FINALLY ORDERED that the plaintiffs SHALL FILE a status report with this Court on **May 9, 2003** informing the Court of the status of their petition, if any, filed on behalf of Jordan Russak in the Court of Federal Claims.

SIGNED this the 7th day of September 2002.

*[signature: Sam Sparks]*
SAM SPARKS
UNITED STATES DISTRICT JUDGE

-10-