# EXHIBIT "P"

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.            :        MAY TERM, 2002
                                                NO. 0952

         VS.                           :

AVENTIS PASTEUR, INC., ET AL.          :        CONTROL NO. 100957

## MEMORANDUM OF LAW

BY: HON. VICTOR J. DiNUBILE, JR.

The issue presented in this case is whether plaintiffs' cause of action must be discontinued because of failure to exhaust remedies provided to the plaintiff under the National Childhood Vaccine Injury Act, 42 U.S.C. Secs. 300 aa-1 to 300 aa-34 (1994 & Supp. V 1999) (hereinafter referred to as the "Vaccine Act" or "Act"). This Court agrees with the defendants. Consequently, this case is Dismissed and Discontinued.

The parents of minor plaintiff primarily assert products liability claims against various drug companies for injuries arising from mercury poisoning from certain vaccines administered to him during the first 18 months of his life (May, 1994 – December, 1995). Plaintiffs' Complaint maintains that the substance Thimerosal, used as a preservative in these vaccines, contained mercury which caused an adverse reaction and injury to their son. It is not in dispute that the vaccines used by the minor child in this case come within the purview of the Vaccine Act. The Vaccine Act, enacted by Congress, provides that all such causes of action resulting in harm from the use of certain enumerated vaccines must initially be brought before a specially constituted court of the United States Court of Federal Claims (hereinafter referred to as Vaccine Court).

The Act unequivocally provides that parties must first exhaust their remedies under this Act before commencing suit in either state or federal court. The Act further directs the state or federal courts to dismiss actions not first pursued under the Vaccine Act. The Act, however, provides an exception to the exhaustion requirement where the vaccine(s) in question contained a "contaminant" or "adulterant".

Plaintiffs maintain suit is proper here under the exception because the preservative Thimerosal constitutes a contaminant or adulterant. This Court disagrees. All the case law contradicts the plaintiffs' position. This Court adopts the well-reasoned opinions of the Vaccine Court and federal district courts that the preservative Thimerosal, contained in the vaccines, is not a contaminant or an adulterant. *Leroy v. Secretary of Department of Health and Human Services,* No. 02-392V, 2002 WL 31730680 (Fed. Cl. Spec. Mstr. October 11, 2002); *Blackmon v. American Home Products Corp.,* No. 6-02-179, slip op. (S.D. Tex. May 8, 2002); *Owens v. American Home Products Corp.,* 203 F.Supp. 2d 748 (S.D. Tex. May 7, 2002); *O'Connell v. American Home Products Corp.,* No. 6-02-184, slip op. (S.D. Tex. May 7, 2002). The purpose of the Act is to provide a uniform federal no-fault system with consistent venue to adjudicate claims of persons seeking redress for injuries stemming from adverse reactions from the use of the enumerated vaccines. The contaminant/adulteration exception would apply if some foreign substance, not ordinarily contained in the vaccine, found its way into the drug causing harm. But where the harm arises from an allergic reaction to non-foreign substances contained in the vaccine itself, the claim should first be heard in Vaccine Court. The above cited federal authorities, after an analysis of the purpose of the Act coupled with a medical/general dictionary review of the words "contaminant" and "adulterant", concluded that the Thimerosal preservative is not

2

encompassed in the exception since it is a component of the vaccine. This Court agrees with their rationale.

The plaintiffs also contend that in any event, even if the Court should agree with the federal authorities that the exception does not apply, plaintiff still can maintain the suit in state court because they do not "qualify" as litigants under the Act. The Act requires that all actions must be commenced by litigants within 36 months of the time in which adverse symptoms first occur. The symptoms first manifested themselves in the minor plaintiff in December of 1995. Since no action was ever brought in Vaccine Court, plaintiffs argue the Act does not apply to them and therefore can maintain the within suit in state court. This Court respectfully disagrees. One cannot simply wait out the three year limitations provision and then file a civil tort action free from all substantive and procedural limitations under the Vaccine Act. It is clear that plaintiffs' attempts to commence this suit in district court and subsequently this Court are to circumvent the requirements of the Act. If the instant suit were permitted, then every litigant who did not want to first assert claims in Vaccine Court simply could wait out the 36 month requirement if the tort actions were not barred by the statute of limitations and then commence their actions in federal or state courts. Such an approach is counter to the intent of Congress. See McDonald v. Lederle Labs, 775 A.2d 528, 532 (N.J. Super. Ct. App. Div. 2001) (affirming the lower court's dismissal of the suit under circumstances similar to the instant case).

Plaintiffs also maintain that the requirement of first having to commence an action in the Vaccine Court is unconstitutional. No authority is cited in support of this proposition. The Vaccine Act does not preclude the bringing of a suit in federal or state Courts. It merely provides that suit must first be maintained in the special Court. If the litigant exhausts remedies there and

3

is dissatisfied with the results, then the Act does not preclude subsequent tort actions being brought in federal or state Courts[1]. Weighing the purpose of the Act to have claims quickly, expeditiously and consistently resolved on a no-fault basis by first requiring litigants to proceed in Vaccine Court, certainly does not constitute such an onerous burden as to render the Act unconstitutional.

> The preclusive application of the Act, which prevents plaintiff in her representative capacity from pursing a civil action does not represent an "absurd or unjust result," that would permit us from disregarding its plain language. *United States v. Shriver*, 989 F.2d 898, 901 (7th Cir.1993). It is, instead, consistent with the stated purpose of avoiding the public harm that would result from either a loss or decline in the production of necessary vaccines. Simply put, Congress wants victims to first try the Program with the expectation that its results will be accepted. Unless a petitioner is required to fully adjudicate a claim, pursuant to the Program's expedited procedures, Congress's objectives will not be realized. *McDonald v. Lederle Labs, supra.*, 775 A.2d 528, 534-535.

Consequently, this case is dismissed/discontinued pursuant to the provisions of the Vaccine Act.[2]

BY THE COURT:

DATED: December 16, 2002

_____
DiNUBILE, JR., J.

---

[1] The Act provides the tolling of the statute of limitations during the pendency of the action before the Vaccine Court.

[2] Plaintiffs also argue that they as parents do not qualify under the Act since they seek medical expenses on their own behalf. They assert that this action for medical bills is not covered under the Vaccine Act. To the contrary, the Act permits reimbursement for medical bills incurred by or on behalf of a minor.

4

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA COUNTY
CIVIL TRIAL DIVISION

ALAN J. CHESKIEWICZ, ET AL.    :   MAY TERM, 2002
                 NO. 0952

     VS.          :

AVENTIS PASTEUR, INC., ET AL.   :   CONTROL NO. 100957

## O R D E R

   AND NOW, this 16th day of December, 2002, the Defendants' Preliminary Objections are

Sustained. This case is Discontinued pursuant to the dictates of the National Childhood Vaccine

Injury Act.

         BY THE COURT:

         _____
         DiNUBILE, JR., J.