# EXHIBIT "T"

Westlaw.

Not Reported in F.Supp.2d
2003 WL 203067 (N.D.Tex.), Prod.Liab.Rep. (CCH) P 16,525
(Cite as: 2003 WL 203067 (N.D.Tex.))

Page 1

**H**

**Motions, Pleadings and Filings**

United States District Court,
N.D. Texas, Dallas Division.
Randall BLOCK, Plaintiff,
v.
WYETH, INC., et al., Defendants.
No. Civ.A. 3:02-CV-1077-.

Jan. 28, 2003.

*MEMORANDUM OPINION AND ORDER*

GODBEY, J.

*1 Before the Court is the motion to dismiss for failure to state a claim of defendant Wyeth, formerly known as American Home Products, individually and as successor in interest to A.H. Robins Company ("Wyeth"). For the reasons stated below, that motion is granted.

Wyeth developed Reglan, a brand name of the drug metoclompramide, and obtained FDA approval for its sale. In conjunction with that process, Wyeth developed package labeling and a product description for inclusion in the *Physician's Desk Reference,* a reference book commonly used by physicians as a source of information regarding medications. Other vendors subsequently manufactured and sold generic forms of metoclompramide, copying the labeling Wyeth formulated for Reglan, pursuant to 21 U.S.C. § 355(j)(2)(A)(v). [FN1] Plaintiff Block alleges that the labeling and PDR description Wyeth formulated were inadequate; as a consequence of that inadequacy, Block took generic metoclompramide, *not manufactured by Wyeth,* and was injured. Block alleges that his injury was a foreseeable consequence of Wyeth's inadequate warnings. Although Block now concedes he has no strict liability claim against Wyeth, he argues that Wyeth nonetheless can be held liable for its conduct in creating the labeling and description, if not its product, under theories of negligence, negligent misrepresentation, fraud, conspiracy, and malice.

> FN1. A manufacturer of a generic drug may alter a drug's labeling "[t]o add or strengthen a contraindication, warning, precaution or adverse reaction" or "[t]o delete false, misleading or unsupported indications for use or claims for effectiveness" without prior FDA approval. 21 C.F.R. §§ 314.70(c)(2), 314.97.

The question before the Court is whether a name brand drug manufacturer owes a legal duty to consumers of a generic equivalent arising out of the content of product labeling and descriptions formulated for the name brand drug. In determining that question, this Court applies Texas law, and absent clear precedent must make an "*Erie* guess" as to how the Texas Supreme Court would decide the issue. *Herrmann Holdings, Ltd. v. Lucent Technologies Inc.,* 302 F.3d 552, 558 (5th Cir.2002). The existence of a legal duty is a question of law for the Court. *Seagram & Sons, Inc. v. McGuire,* 814 S.W.2d 385, 387 (Tex.1991).

In the context of strict liability, the Texas Supreme Court has stated: "A manufacturer does not have a duty to warn or instruct about another manufacturer's products, though those products might be used in connection with the manufacturer's own products." *Firestone Steel Products Co v. Barajas,* 927 S.W.2d 608, 616 (Tex.1996). Block attempts to limit the holding in *Barajas* to strict liability, but the case is not so limited; the plaintiff in *Barajas* also brought negligence and conspiracy claims. In rejecting the negligence claims, the Texas Supreme Court stated: "Firestone conclusively showed it did not design, manufacture or sell the wheel in question. Accordingly, *Firestone owed no duty to the Barajases."* Id. at 615 (emphasis added). Likewise, in rejecting the conspiracy claim, the court stated: "Firestone proved it had no duty to the Barajases. Accordingly, Firestone negated the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
2003 WL 203067 (N.D.Tex.), Prod.Liab.Rep. (CCH) P 16,525
**(Cite as: 2003 WL 203067 (N.D.Tex.))**

Page 2

Barajases' civil conspiracy claim as a matter of law." *Id.* at 617.

*2 It thus appears that *Barajas* directly controls Block's negligence, negligent misrepresentation and conspiracy claims. Although the opinion in *Barajas* did not directly address fraud and "malice," the structure of the analysis strongly suggests how the Texas Supreme Court would address those theories. The quoted portions above reflect a brief Texas two-step analysis: (1) because Firestone did not design, manufacture, or sell the product, it owed no legal duty to plaintiff; and (2) because it owed no legal duty, plaintiff's tort claim failed. There is no indication from the discussion of negligence and conspiracy that the two-step analysis would be any different for any other common law tort theory.

This reading of *Barajas* is reinforced by the dissent. Justice Enoch, concurring in part and dissenting in part, argued that Firestone's liability in its capacity as a designer sounding in negligence was different from its liability as a manufacturer sounding in strict liability.

> *Alm* recognized a duty of non-manufacturing designers to exercise ordinary care in the design of a product. This duty is not dependent on whether Firestone placed the injury-causing product into the stream of commerce, but rather derives from Firestone's actions as designer. The duty should be the same whether the designer designed the entire product or a component part alleged to have been the cause of injury. Because Firestone designed *the* feature of the wheel alleged to have caused the tire explosion ... Firestone owed a duty of ordinary care in its design.
> The fact that Firestone's design has become an industry standard does not militate against a duty. Liability should not be more limited the more widely adopted a design is by an industry. To the contrary, a designer who offers up its design for a product through a royalty-free license in the hopes of gaining widespread adoption of the design in the industry militates in favor of a duty.

*Id.* at 619 (emphasis in original, citing *Alm v. Aluminum Co. of America*, 717 S.W.2d 588 (Tex.1986)). The wheel design in *Barajas* serves a role roughly analogous to the content of the warnings in Block's theory here. Justice Enoch was thus advocating essentially the same position that Block urges this Court to adopt, distinguishing the conduct from the product; the Texas Supreme Court rejected that position, 8-1. This Court believes the Texas Supreme Court would likewise reject Block's claims.

This view in strengthened by what appears to be the only case directly addressing claims like those Block asserts. *Foster v. American Home Products Corp.* 29 F.3d 165 (4th Cir.1994). Applying Maryland law, the Fourth Circuit held that a manufacturer of a name brand drug does not owe a legal duty to a consumer of a generic drug. There is no indication in the opinion that there was anything unusual or unique about Maryland common law that lead to that result. There is also no indication that the Texas Supreme Court would reach a different result.

*3 Block invites this Court to extend Texas tort law into new and uncharted territory. This Court believes the Texas Supreme Court would decline such an invitation and must therefore do likewise. Accordingly, Wyeth's motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED and Block's claims against Wyeth are DISMISSED WITH PREJUDICE.

2003 WL 203067 (N.D.Tex.), Prod.Liab.Rep. (CCH) P 16,525

**Motions, Pleadings and Filings (Back to top)**

. 3:02CV01077 (Docket)
(May. 21, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.